# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-CV-24118- LEIBOWITZ**

JANE DOE,

        Plaintiff,

v.

IBANERA, LLC, et al.,

        Defendants.

                              /
_____

**<u>DECLARATION OF JACK TAMBURELLO</u>**

I, Jack Tamburello, pursuant to 28 U.S.C. § 1746, hereby declare as follow:

1.     My name is Jack Tamburello.   I am over the age of eighteen and am competent to make this Declaration in support of the Motion to Dismiss for improper venue.  The facts set forth herein are based upon my personal knowledge.   If called and sworn as a witness, I would competently testify to the matters discussed in this Declaration.

2.     I am a Custodian of Record of Marriott International, Inc. ("Marriott").  In my role, I have knowledge of Marriott's corporate structure and its franchising system.

3.     During the ordinary course of my regularly conducted business, I have personal knowledge of the business records of Marriott. The information contained herein is based upon my personal knowledge and my review of the business records of Marriott that are maintained in the ordinary course of Marriott's regularly conduct business.

4.     Marriott is a Delaware corporation with its principal place of business in Bethesda, Maryland. Marriott is a publicly traded parent company of a number of direct and indirect subsidiaries that own, franchise, license, operate, and manage hotel properties.

5.      Starwood Hotels & Resorts Management Company, LLC ("Starwood Management Co.") is a Delaware limited liability company with its principal place of business in Maryland.

6.      Starwood Management Co. is a direct subsidiary of Marriott.  Its sole member is Starwood Checkmate Holdings, Inc., a Delaware corporation with is principal place of business in Maryland.

7.      Starwood Hotels & Resorts Worldwide, LLC ("Starwood Worldwide") is a Maryland limited liability company with its principal place of business in Maryland.

8.      Starwood Worldwide is a direct subsidiary of Marriott. Its sole member is Mars Merger Sub, LLC, a Delaware limited liability company with its principal place of business in Maryland.

9.      Starwood Management Co, Starwood Worldwide and Marriott ("Hotel Defendants") are registered to do business in Florida, but do not lease space for corporate offices in Florida.

10.      The Hotel Defendants do not own, operate, or manage the Sheraton Towers located at 39 Scotts RD, Singapore 228230 (the "Singapore Sheraton").

11.      The relationship between the Hotel Defendants and the Singapore Sheraton is governed by a License Agreement, dated December 9, 1990 between Sheraton International, Inc. and Richvein PTE. LTD. (the "License Agreement").  A true and correct copy of the License Agreement is attached to this Declaration as **Exhibit 1**.

12.      The License Agreement is governed by Singapore law and Richvein PTE. LTD. (the "Franchisee") is a legal entity organized under the laws of the Republic of Singapore. Upon information and belief, the Franchisee has no operations in Florida.

13.     The Hotel Defendants have no direct involvement in the Singapore Sheraton's operations and do not have any employees working at the Singapore Sheraton.

14.     No events giving rise to the claims asserted against the Hotel Defendants occurred in the Southern District of Florida.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January __20__, 2026, in ___Bethesda, Maryland___, _____.

_Jack Tamburello_
Jack Tamburello

# **EXHIBIT 1**

Dated the 9 day of December 1990.


SHERATON INTERNATIONAL, INC.


and


RICHVEIN PTE. LTD.


---

LICENSE AGREEMENT

---


WILKINSON & GRIST
SOLICITORS AND NOTARIES
HONG KONG
035D/PGB/SAH/6.12.90

TABLE OF CONTENTS

| | DESCRIPTION | PAGE |
|---|---|---|
| ARTICLE I | DEFINITIONS | 1 |
| ARTICLE II | LICENSE | 4 |
| 2.01 | License | |
| 2.02 | Name of Hotel | |
| 2.03 | Extent of License | |
| 2.04 | Licensor's warranties | |
| ARTICLE III | RESERVATION SERVICE CONTRACT | 5 |
| ARTICLE IV | SHERATON SERVICES | 5 |
| ARTICLE V | LICENSEE'S COVENANTS | 5 |
| 5.01 | Ownership, Legal Compliance and Licenses | |
| 5.02 | Licensor's Exclusive Rights | |
| 5.03 | Operational Standards | |
| 5.04 | Indemnity | |
| 5.05 | Insurance | |
| 5.06 | Taxes | |
| 5.07 | Financial Statements and Operational Reports | |
| 5.08 | Participation in Sheraton System | |
| 5.09 | Management Support and Services Agreement | |
| 5.10 | General | |
| ARTICLE VI | REPRESENTATIONS TO THIRD PARTIES | 9 |
| ARTICLE VII | ASSIGNMENT | 11 |
| ARTICLE VIII | REGISTRATION BY LICENSEE | 12 |
| ARTICLE IX | COMPENSATION | 12 |
| ARTICLE X | DURATION, DEFAULT AND TERMINATION | 13 |
| 10.01 | Period of Agreement | |
| 10.02 | Termination of Management Support and Services Agreement | |
| 10.03 | Termination of Notice | |
| 10.04 | Termination by Licensee | |
| 10.05 | Events of Default | |
| 10.06 | Remittance | |
| 10.07 | Damage, Destruction and Expropriation | |
| 10.08 | Consequences of Termination | |
| ARTICLE XI | NOTICES | 17 |
| ARTICLE XII | | 17 |
| ARTICLE XII | MISCELLANEOUS | 17 |
| APPENDIX A | DESCRIPTION OF PROPERTY | |
| APPENDIX B | DETAILS OF LICENSEE | |
| APPENDIX C | INSURANCE | |

## LICENSE AGREEMENT

LICENSE AGREEMENT made and entered into this 9 day of December , 1990 by and between SHERATON INTERNATIONAL, INC., a Delaware corporation, having its principal offices at Sixty State Street, Boston, Massachusetts 02109, U.S.A., ("Licensor"), and RICHVEIN PTE. LTD., a duly organised and registered legal entity existing under the laws of the Republic of Singapore and having its legal address at 541 Orchard Road, #16-00 Liat Towers, Singapore 0923 ("Licensee").

WHEREAS:-

(1) Licensor is the owner of the rights in the Country (as hereinafter defined) to the Sheraton Marks (as hereinafter defined);

(2) Licensee owns or leases and has the legal right to the exclusive use and occupation of the Property and the Hotel (both as hereinafter defined) for the Term (as hereinafter defined) and wishes to obtain for the Hotel the benefits of the use of the Sheraton Marks and to operate the Hotel as a "Sheraton Towers" hotel; and

(3) Licensor has agreed to grant Licensee a license to use the Sheraton Marks and to operate the Hotel as a "Sheraton Towers" hotel for a fee and on the terms and conditions set out herein.

NOW THEREFORE, Licensor and Licensee hereby mutually covenant and agree as follows:-

### ARTICLE I

### DEFINITIONS

1.01    "Affiliate" and "affiliated company" means save where a different meaning is apparent, a company in which the relevant named company is a shareholder or has management control.

1.02    "Agreement" means this License Agreement.

1.03    "Approved Auditor" means Arthur Andersen & Co. ("AA"), or a certified public accountant registered in the Country working as a correspondent of AA or otherwise approved by Licensor. However, if AA shall no longer carry on business in the Country, or if Licensee shall desire to substitute another accounting firm, a reputable international firm of independent auditors rendering services in the Country which is experienced in hotel accounting and auditing nominated by Licensee and approved by Licensor shall be substituted.

1.04    "Centralized Services" means Sheraton Group accounting services (including the Sheraton Account Management Effectiveness Program), centralized bulk purchasing, joint marketing services (including cluster advertising), joint sales offices, Sheraton Guest

- 1 -

Satisfaction System, Sheraton Club International, Sheraton executive staff recruitment and training programs and other services as are and will be made available generally to licensed hotels, motels and inns in the same general geographical location and appealing to the same market in the Sheraton hotel system in the Sheraton Asia-Pacific Division.

1.05    "Centralized Services Cost" means the Hotel's proportionate share of the total cost of the Centralized Services which is reasonably estimated by ITTSC or other relevant Sheraton affiliate to be incurred on a system-wide basis by the Sheraton Group in respect of the Hotel.

1.06    "Country" means Republic of Singapore.

1.07    "gross room sales" means all revenue derived from guest rooms and apartments rented for part-day occupancy, a full day, week or longer, provided that where a single charge is made for room and other services from time to time provided by the Hotel such as meals and laundry, an equitable portion for such other charges shall be excluded from gross room sales in a manner consistent with the Sheraton Group's current method of accounting for such other charges or, if no such current method exists, in a manner as the Approved Auditor shall conclusively determine.

1.08    "Hotel" means the building and appurtenances situated on the Property comprising approximately 410 guest rooms (each with private bath), restaurants, lobbies, bars and lounges, banquet rooms, conference rooms, commercial space for the sale of merchandise or goods or for services, back-of-the-house and parking areas, recreational facilities, appropriate landscaping, and other related facilities necessary or appropriate for a hotel complying with Sheraton Standards for a "Sheraton Towers", together with all installations necessary for its the operation for hotel purposes including, without limitation, heating, lighting, sanitary equipment, air-conditioning, laundry, refrigerating equipment, built-in bar and kitchen equipment and elevators.

1.09    "License Fee" means ███████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

1.10    "Effective Date" means 1st July 1991.

1.11    "ITTSC" means ITT Sheraton Corporation a corporation incorporated with limited liability in the State of Delaware U.S.A. having its principal offices at Sixty, State Street, Boston, Massachusetts U.S.A., 02109.

- 2 -

1.12    "Management Support and Services Agreement" means the agreement of even date herewith and made between ITT Singapore Pte. Limited and Licensee.

1.13    "Property" means the land located at Scotts Road, Singapore more particularly described in Appendix A.

1.14    "Rescorp" means Sheraton Reservations Corp., a Delaware corporation and a wholly owned subsidiary of ITTSC, and its successors and assigns.

1.15    "Reservation Cost" has the meaning set forth in the Reservation Service Contract.

1.16    "Reservation Service Contract" means the Sheraton Reservation Service Contract by and between Licensee and Rescorp, executed on even date herewith.

1.17    "Sheraton Group" means ITTSC and all of its subsidiary and affiliated companies.

1.18    "Sheraton Marks" means the word "Sheraton", the Sheraton stylized "S" mark, and any other service mark, trademark, trade name, emblem, insignia, slogan, symbol, design or distinguishing characteristic now or in the future used and associated with the chain of hotels bearing the name "Sheraton" and the Sheraton Group.

1.19    "Sheraton Reservations System" means the worldwide network for the making and confirming of reservations at Sheraton hotels throughout the world maintained by Rescorp.

1.20    "Sheraton Standards" means the operating standards and the quality standards as may be established from time to time by the Sheraton Group for the buildings and appurtenances, furnitures, fixtures and equipment, operating equipment and operating supplies of hotels of similar type licensed or managed by the Sheraton Group, and meeting the requirements of: A. a Sheraton Towers as defined in the Hotel Standard & Guidelines Manual, B. the Sheraton Hotel Design Guide, C. the Fire and Life Safety Guidelines, D. the Licensor's Operating Manuals for licensees, and E. achieving an acceptable score, as established by the Sheraton Group for similar hotels in the Asia-Pacific Division, on the Asia-Pacific Division Quality Checklist.

1.21    "Term" means the period between the Effective Date and the expiration or termination of this Agreement.

1.22    "Uniform System" means "A Uniform System of Accounts for Hotels" (Eighth Revised Edition, 1986 as amended, supplemented and revised from time to time) as adopted by the American Hotel & Motel Association of the United States of America and Canada.

- 3 -

1.23    "Dollars" or "$" means the currency of the Country.

ARTICLE II

LICENSE

2.01    License

Licensor hereby grants to Licensee during the Term, only within the terms and conditions of this Agreement, and Licensee accepts, a license to operate the Hotel as a "Sheraton Towers" hotel and a non-exclusive license to use, in connection with such operation, the Sheraton Marks.

2.02    Name of Hotel

During the Term, the Hotel shall be known as "Sheraton Towers, Singapore" or such other name which includes the word "Sheraton" as the Licensee shall propose and the Licensor shall approve such approval not to be unreasonably withheld.

2.03    Extent of License

(i)  The license granted herein is personal to Licensee and is restricted to the operation of the Hotel.  It is to be construed to permit only such activities as would normally be incident to the operation of a hotel, which activities, unless consented to in writing by Licensor (any such consent once given may be withdrawn in the Licensor's absolute discretion at any time), do not include gambling activities of any kind.

(ii)  In particular, without prejudice to generality of Section 2.01 the license granted herein to use the name "Sheraton" and Sheraton's stylized "S" mark is restricted to use only in combination with such colour scheme, pattern, appearance, characteristics and words as are used generally by Sheraton hotels, motels, and inns and are approved in writing by Licensor.  Licensee agrees to display on the exterior of the Hotel appropriate signs displaying the name "Sheraton" in combination with other appropriate words, colour scheme, pattern, appearance, and characteristics as will enable the Hotel to be readily recognizable by the public as a "Sheraton Towers" hotel.

2.04    Licensor's Warranties

Licensor warrants to Licensee that it is the owner of the rights in the Country to the Sheraton Marks and that it will continue to own the same during the Term.

- 4 -

ARTICLE III

RESERVATION SERVICE CONTRACT

3.01     Licensee will participate in and Licensor will cause Rescorp to provide to the Hotel and its guests the full benefit of the Sheraton Reservations System in accordance with the provisions of the Reservation Service Contract to the extent available at other similar Sheraton licensed hotels, motels and inns in the same geographical area and appealing to the same market in the Sheraton hotel system in the Sheraton Asia-Pacific Division.  In the event of the occurrence of a change in the Sheraton Reservation System and policies, Licensee will enter into a Sheraton Reservation Service agreement in substitution for the Reservation Service Contract with Rescorp or any other member of the Sheraton Group designated by Licensor for participation in the revised Sheraton Reservation System on the same basis as offered to other licensees of Licensor located in the same general geographical area as the Hotel.

3.02     Licensee shall be enrolled in the Sheraton Reservations System no later than the Effective Date.

ARTICLE IV

SHERATON SERVICES

4.01     Licensor shall list the Hotel in any international, national or regional directory hereafter published by the Sheraton Group of Sheraton hotels, motels and inns in accordance with the Sheraton Group's practices applicable to licensed hotels generally.

4.02     Licensee, at its option, may purchase supplies and equipment for the Hotel from the Sheraton Group or its purchasing and selling affiliates on the same basis as licensed hotels generally and may also obtain the services of Sheraton Group specialists and consultants in hotel operations in such manner, to such extent and at such rates as may be mutually from time to time agreed upon.

4.03     Licensee will cause the Hotel to participate in such Centralized Services as agreed by Licensee with Licensor and will pay but only to the extent that it does so participate the Centralized Services Cost.

ARTICLE V

LICENSEE'S COVENANTS

5.01     Ownership, Legal Compliance and Licenses

    (i)  Licensee hereby covenants and warrants as follows:-

        (a)  it is entitled to and shall maintain throughout the Term full and exclusive right of use and occupancy of the

- 5 -

Hotel and the Property (if Licensee's right and interest in the Hotel and/or the Property is derived through a lease or land use agreement then Licensee agrees to procure that such lease or land use agreement remains in full force and effect during the Term and if required by Licensor, to obtain in writing the consent of the owner to this Agreement in such form as Licensor may deem appropriate);

(b)   the Hotel has been constructed in conformity with all applicable rules and regulations now or hereafter in force (governmental, municipal or otherwise), laws and ordinances of the Country;

(c)   it has obtained and will maintain throughout the Term all licenses, permits, consents, approvals and authorisations (governmental, municipal or otherwise) required for the operation of the Hotel and its related facilities.

(ii)  Licensee undertakes to maintain such right of use, ownership and licenses, permits, consents, approvals and authorisations throughout the Term and further agrees that throughout the Term it will perform all payments, terms and conditions required under any land use agreement or lease in respect of the Hotel and/or the Property.

5.02      Licensor's Exclusive Rights

Licensee acknowledges that the Sheraton Marks have acquired a primary significance indicating that the Hotel during the Term is a part of the system of hotels, motels, and inns owned, leased, operated or franchised by Licensor or its affiliated companies.  Licensee will always acknowledge and recognize, both before and after the expiration of this Agreement, the exclusive right of Licensor and its affiliated companies to use or to grant to any third party the right or license to use, whether separately, or as part of or in connection with other words, slogans, symbols or designs, the Sheraton Marks.  Except to the extent authorized hereunder, while this Agreement is in effect Licensee agrees that it will not use, imitate, or infringe upon any of the Sheraton Marks in whole or in part.

5.03      Operational Standards

Licensee acknowledges that to avoid irreparable injury to the goodwill of the public towards Sheraton hotels, motels and inns, it is essential that the Hotel and its operation comply with Sheraton Standards.  To this end:-

(i)  Licensee covenants that the Hotel will be operated as a first-class hotel :-

(a)   in a clean, safe and orderly manner, provide sufficient courteous and first-class service to the public, and

(b)   in compliance with all laws and ordinances of the Country and rules and regulations applicable thereto;

all in accordance with Sheraton Standards, provided that, Licensee shall not be in breach of this covenant if, in respect to any addition to or amendment to Sheraton Standards after the date hereof (other than Fire and Life Safety Guildlines), it fails to comply with the same if the capital expenditure required to do so would exceed S$250,000.00 in respect of any single instance.

(ii)   Licensee will not infringe upon the rights of third persons with respect to the use of any service marks, trademarks, trade names, slogans, symbols, designs, emblems or other identifying characteristics of such third persons;

(iii)   Licensee will make available to patrons supplies bearing those Sheraton Marks which it is permitted to use hereunder in accordance with generally prevailing practices in licensed Sheraton hotels, motels and inns;

(iv)   Licensee will recognize for the purpose of identification and credit all credit cards which Licensor now or hereafter specifies in accordance with Licensor's procedures established from time to time and to execute central billing agreements as required by the issuers of such credit cards.  It is understood that neither Licensor nor the Sheraton Group shall in any way be held responsible for any charges incurred by the holder of any such credit cards;

(v)   Licensee will ensure that the Hotel will at all times be kept and maintained in good repair.  Licensee agrees that no structural improvements, additions, or changes in design or decor shall be made at the Hotel unless :-

(a)   required by any law or ordinances of the Country or rule or regulation applicable thereto; or

(b)   in accordance with the Sheraton Standards.

(vi)   Representatives of the Licensor's Divisional Office (presently located in Hong Kong) will be permitted from time to time to inspect and review the Hotel and its operations, including the operations of any facility within the Hotel, whether or not operated by Licensee, it being understood that Licensee will provide Licensor's representatives with free food and lodging and use of the Hotel's facilities and shall be responsible for the cost of their travel to and from the Licensor's Divisional Office and related out of pocket expenses in respect of not more than three (3) such inspections annually by persons not exceeding two (2) in number for each such inspection.

5.04      Indemnity
          Licensee will protect, indemnify and save harmless Licensor,

- 7 -

ITTSC, ITT Corporation and their respective subsidiaries and affiliates from and against any and all claims demands, loss, damage, liability or expense, including lawyer's fees, in any way related to or alleged to relate to the financing, construction or operation of the Hotel, including, without limiting the generality of the foregoing, any such claims, demands, loss, damage, liability or expense, related to or alleged to relate to:-

(i) any damage to person or property caused or alleged to have been caused by Licensee, its agents, employees, guests or any other persons in connection with the operation of the Hotel or the sale of food, beverages or services thereon or therefrom; or

(ii) any obligation incurred or alleged to have been incurred by Licensee in connection with the financing, construction or operation of the Hotel.

Licensee agrees, at the request of Licensor, at Licensee's sole expense, to assume the defense of any action brought against any of the indemnitees to which the foregoing indemnity applies. Provided that, the foregoing indemnity shall be without prejudice to Licensee's right to establish and shall not apply where the Licensee establishes, the ultimate primary legal responsibility of Licensor, ITTSC, ITT Corporation or any of their respective subsidiaries or affiliates.

5.05    Insurance

Licensee will maintain at all times comprehensive general public liability insurance for the benefit of the Licensor, ITTSC, ITT Corporation, ITT Singapore Pte. Limited and their respective subsidiaries and their respective successors and assigns ("insureds") as well as for the benefit of Licensee in amounts not less than such amounts as may from time to time be reasonably specified by Licensor, and, in addition, to maintain such insurance as was in force prior to the Effective Date and such other as may be reasonably required by Licensor from time to time. Such policies shall provide that they may not be cancelled without thirty (30) days prior written notice to Licensor, and Licensee shall deliver to Licensor copies or certificates of such insurance coverage. It is agreed that the insurance requirements set forth in Appendix C hereto are reasonable as at the date hereof.

5.06    Taxes

(i) Licensee will make payment in a timely manner of all real estate, personal property taxes and all other taxes on property and all income and profit taxes and all other taxes payable in connection with and levied against or in respect of the operation of the Hotel.

(ii) Licensor will be responsible for all taxes, charges and levies payable in respect of payments made under this Agreement by the Licensee

to the Licensor charged levied or imposed by the Government of the Country.

**5.07**    Financial Statements and Operational Reports

Licensee will file with Licensor within thirty (30) days after the end of each month a financial statement showing gross room sales for such month, and will file within sixty (60) days after the end of each such year a similar statement certified by the Approved Auditor showing monthly gross sales, such statements to substantially comply with the Uniform System.

**5.08**    Participation in Sheraton System

Licensee will recommend and promote all Sheraton inns, hotels and motels, and make every reasonable effort to encourage the use of same by all of its customers and guests, it being intended that licensees will benefit from the promotion of Sheraton facilities by other licensees. All individual guest and group referrals and reservation requests to the Hotel for accommodations in cities or markets in which the Sheraton Group is represented shall be referred to the Sheraton hotels, motels and inns in that city or market;

**5.09**    Management Support and Services Agreement

Licensee will make payment of the fee in accordance with Clause 5 of the Management Support and Services Agreement and the Reservation Cost in accordance with the Reservation Service Contract.

**5.10**    General

(i)  Licensee's covenants under this Article V are agreed to be unconditional and in no way dependent upon the performance by Licensor of any of its agreements hereunder.

(ii)  The generality of any obligations hereinbefore expressed in general terms is not to be restricted or limited by any provisions relating to a specific matter.

ARTICLE VI

REPRESENTATIONS TO THIRD PARTIES

6.01 (i)  Licensor and Licensee agree that the parties hereto are completely separate entities and are not partners, joint venturers or agents of each other in any sense, and that no party has the power to obligate or bind the other in any way.

(ii) Licensee agrees that it shall not use the name "Sheraton" either alone or in any combination of words in its corporate or partnership name, and that it will in its dealings indicate that the Hotel is operated by an independent entity to such extent and in such manner as from time to time Licensor may deem necessary or appropriate. In particular, in all dealings with suppliers or persons other than guests in the ordinary course of business, Licensee will disclose in some appropriate manner approved by Licensor that it is an independent entity. Under no circumstances will Licensee use the name "Sheraton" except in connection with the operation of the Hotel in accordance with the requirements of this Agreement. Licensee agrees that it is solely responsible for its own acts and contracts and Licensor is in no way obligated therefor.

6.02 (i) Licensee shall not represent in any proposed financing arrangement or to any proposed lender or participant in a private or public investment offering that Licensor, ITTSC, ITT Corporation, ITT Singapore Pte. Limited or any of their subsidiaries or affiliates is or shall be in any way responsible for Licensee's obligations under said financing arrangement, nor are or shall be participating in said private or public investment offering, other than to state that the Hotel will bear the name "Sheraton" as a franchisee of Licensor pursuant to the terms of this Agreement.

(ii) To this end, and in order to avoid any erroneous interpretation on the part of any financing or investing person or entity Licensor and Licensee agree as follows:-

(a) prior to the conclusion of any such proposed financing arrangement, Licensee shall furnish to Licensor all relevant details of such proposed financing and copies of all proposed draft documents, and the Licensor shall have the right to notify any party participating in such financing of the contractual relationship between Licensor, ITTSC, ITT Corporation, ITT Singapore Pte. Limited and their subsidiary or affiliated companies and Licensee and to indicate that none of them make any warranties or representations in connection with any information provided to him by the Licensee or assumes with Licensee any obligation of any nature in respect thereto; and

(b) prior to the printing and issuance of any document relating to a private or public investment offering, Licensee shall furnish the Licensor with a copy of the draft form which shall not be published and/or issued without the prior written approval of Licensor.

- 10 -

Licensor's approval shall only be withheld if such draft contains statements which might reasonably be misleading as to the contractual relationship between Licensor, ITTSC, ITT Corporation, ITT Singapore Pte. Limited and their subsidiary and affiliated companies, and Licensee, or on account of the use of the name Sheraton or the name of Licensor, ITTSC, ITT Corporation or any of their affiliated or subsidiary companies other than in the manner permitted by this Agreement. In addition, Licensor will have the right to require Licensee to insert in any such draft document a statement that neither Licensor, ITTSC, ITT Corporation, ITT Singapore Pte. Limited nor any of their affiliated or subsidiary companies makes any warranties or representations in connection with any information contained in such document and will have the further right to inform any participant in any such private investment offering of the aforesaid contractual relationship between Licensor, ITTSC, ITT Corporation, ITT Singapore Pte. Limited their affiliated and subsidiary companies and Licensee and to further inform such participant that neither Licensor, ITTSC, ITT Corporation, ITT Singapore Pte. Limited nor any of their affiliated or subsidiary companies make any warranties or representations in connection with any information contained in any such document or any other information provided to such participant by the Licensee.

6.03    Licensee agrees that there shall be no liability on the part of Licensor, ITTSC, ITT Corporation, ITT Singapore Pte. Limited or any of their affiliated or subsidiary companies to Licensee or any other person by reason of any approval given by Licensor to Licensee of any act or omission on the part of Licensee, or by reason of Licensee complying with the standards and requirements of Licensor or the provisions of this Agreement.

ARTICLE VII

ASSIGNMENT

7.01    Licensee shall not have any right to assign or transfer this license or any rights hereunder, whether in connection with a sale or other disposal or lease of the Hotel, transfer of management, or otherwise, without the prior written consent of Licensor ("assignment" or "transfer" includes any assignment, sale, pledge or transfer of the voting stock of Licensee (except a transfer by will or by descent and distribution) and any increase in the number of outstanding shares of voting stock of Licensee which would result in any person, firm or corporation which has a controlling interest in Licensee losing their controlling interest in Licensee (controlling interest being defined as ownership of not less than fifty-one per cent (51%) of all classes of

the voting stock of Licensee.  Attached hereto as Appendix (B) is a description of the legal organization of Licensee, the names and addresses of each person owning an interest in Licensee and the percentage of such interest owned by such person.  Licensee agrees to notify Licensor in writing whenever there is any change to the information contained in Appendix (B).  In the event of any such assignment or transfer, without the prior written consent of Licensor, Licensor may, in its sole discretion, enjoin the said assignment or transfer and/or again, in its sole discretion, immediately terminate this Agreement by written notice to Licensee, effective on dispatch.

7.02     Licensee also agrees that the Hotel shall either be operated directly by Licensee or operated by others under a lease or concession or management agreement provided that such operations shall be subject to the same terms and conditions and the same requirements as would apply if the same were operated directly by Licensee, including, without limitation, the requirement that the lessee, concessionaire or manager of the same comply with Sheraton Standards, carry all insurance required of Licensee hereunder in respect thereof, and provided further that no such lessee, concessionaire or manager shall have the right to use the Sheraton Marks except on such terms and conditions as Licensor may require, and only as long as this Agreement is in force and, provided further that, any such lessee, concessionaire or manager shall not be a direct competitor of the Sheraton Group in the Country in the business of operating or licensing the operation of hotels, motels or inns and shall not be of illrepute.

ARTICLE VIII

REGISTRATION BY LICENSEE

8.01     Any public registration by Licensee of the right to use any of the Sheraton Marks to which the license hereby granted is applicable, shall specify that the Licensee's use thereof is limited to their use in relation to the operation of the Hotel and that upon the termination of this Agreement Licensee's use thereof shall likewise terminate; and Licensee agrees that by virtue of said registration, no right in or privilege to use the Sheraton Marks is created which will extend beyond the termination of this Agreement or create any rights to use same except as herein provided.  No registration shall be filed or made by Licensee except where required by the laws of any governing body and such registration shall be subject to the prior written approval of Licensor.

ARTICLE IX

COMPENSATION

9.01     In consideration of the issuance and continuance of the license granted pursuant to this Agreement, Licensee shall during the Term pay to Licensor the License Fee for each calendar month or part

- 12 -

thereof such License Fee to be paid on the tenth (10th) day of the following month and to be accompanied by a monthly statement, setting forth in reasonable detail the basis of the computation.

ARTICLE X

DURATION, DEFAULT AND TERMINATION

10.01    Period of Agreement

This Agreement and the license granted herein shall commence on the Effective Date and, subject to earlier termination as provided herein, remain in full force and effect for a period of ten (10) years.

10.02    Termination of Management Support and Services Agreement

Termination of the Management Support and Services Agreement as a result of the default of one party, shall, entitle the Licensor (if Licensee is the defaulting party) or Licensee (if ITT Singapore Pte. Limited is the defaulting party) by written notice to the other effective on despatch, to terminate this Agreement.

10.03    Termination Notice

Licensor and Licensee shall have the right to terminate this Agreement without obligation or payment at the end of the period five (5) years following the Effective Date provided that at least six (6) months prior written notice is given by the party exercising this right to the other party before the effective date of termination.

10.04    Termination by Licensee

Licensee shall have the right to terminate this Agreement in the following manner :-

(i)  Licensee may terminate this Agreement at any time by giving six (6) months written notice accompanied by a payment of an amount equal to the whole of the total payments that would have accrued between the date of termination specified in the notice and the next succeeding date as of which the Agreement could have been terminated under Section 10.03 or the expiration of the period of ten (10) years referred to in Section 10.01 whichever is sooner.  For this purpose payments due under Section 9.01 above shall be computed on the assumption that sales would have been at the same rate throughout the remainder of such period as during the twelve (12) months preceding the giving of the notice.

(ii)  The Licensee may terminate this Agreement by giving the Licensor three (3) months' written notice thereof at any time whilst any one of the following events has occurred and is continuing :-

- 13 -

(a)  Licensor is in breach of the warranties contained in Section 2.04 hereof so that it is impossible or unreasonable for Licensee to continue to operate the Hotel as a "Sheraton Towers" hotel;

(b)  Licensor grants a licence to use or authorises the use of the Sheraton Marks or any of them to any hotel operated in the Country by any person other than Licensee;

(c)  any member of the Sheraton Group concludes any agreement with any person other than the Licensee for the provision of management services in relation to any hotel operated in the Country.

10.05   Events of Default

(i)  The following events shall constitute events of default under this Agreement:-

(a)  the failure of Licensee to pay when due all or any part of the Licence Fee or Centralised Service Cost to Licensor or the fee payable to ITT Singapore Pte. Limited under Clause 5 of the Management Support and Services Agreement, or the Reservation Cost to Rescorp and any such default shall continue for more than seven (7) days after written notice from Licensor to Licensee regarding the same; or

(b)  the misuse, or unauthorized or wrongful use at any time of any of the Sheraton Marks and any such misuse, or unauthorised or wrongful use shall continue for more than thirty (30) days after written notice from the Licensor to the Licensee regarding the same; or

(c)  the failure of Licensee to comply at its own expense with all laws and other governmental regulations compliance with which is required to make this Agreement a fully binding legal agreement including all required registrations with governmental entities; or

(d)  the default by Licensee in any other way in the performance of any of its material obligations or agreements hereunder or under the Reservation Service Contract, and such default continues for a period of thirty (30) days after written notice from Licensor to Licensee regarding the same; or

(e)  the default by Licensee in its performance of the terms and conditions of any mortgage, deed of trust or lease covering the Property and/or the Hotel such as would jeopardize Licensee's ability to operate the Hotel and such default shall continue for more than thirty (30) days; or

- 14 -

(f)  any closure of the operation of the Hotel in the normal course of business for a period of sixty (60) days; or

(g)  the filing of a petition of bankruptcy or an arrangement for the benefit of creditors or a petition for reorganization by or against Licensee, or the making of any assignment for the benefit of the creditors by Licensee, or the appointment of a receiver or trustee of the Property and the same is not vacated within sixty (60) days or the committing of any act or deed or judical or administrative proceeding in the nature of an expropriation, confiscation, nationalization, intervention, acquisition, seisure, sequestration or condemnation of or with respect to the Licensee, the business and operations, management or ownership thereof, or its capital stock, property or assets, or any substantial portion thereof, undertaken or instituted by any government, government agency, or authority of instrumentality purporting to exercise governmental authority, present or future.

(ii)  If any of such events of default shall have occurred, Licensor may at any time thereafter, without further demand, by written notice to Licensee, effective on dispatch, terminate this Agreement and all rights hereunder of Licensee.  Termination of this Agreement whether under this or any other Section of this Article shall be without prejudice to any obligations of Licensee for any accrued fees or other liabilities or obligations arising out of any acts or omissions of Licensee prior to termination, and without in any way affecting the enforceability of any provisions of this Agreement which are intended to survive termination in particular, but without prejudice to the generality of the foregoing Section 5.04, Article VI, Section 10.08.

10.06   Remittance

If at any time ITT Singapore Pte. Limited, Licensor, ITTSC or Rescorp should be unable for any reason for a consecutive period of three (3) months to receive in or covert into United States currency, and remit to the United States of America all or any part of their respective fees under Clause 5 of the Management Support and Services Agreement, License Fee, Centralized Services Cost or Reservation Cost Licensor may, on thirty (30) days' written notice to Licensee, terminate this Agreement.  Upon such termination ITT Singapore Pte. Limited, Licensor, ITTSC and Rescorp shall be paid forthwith their respective fees under Clause 5 of the Management Support and Services Agreement, License Fee, Centralized Services Cost and Reservation Cost to the date of such termination, without prejudice to any other claims Licensor may have against Licensee for breach of this Agreement.

- 15 -

10.07    Damage, Destruction and Expropriation

If the whole of the Hotel shall be damaged or destroyed at any time during the Term by fire, casualty or any other cause or shall be taken in any expropriation, condemnation or similar proceedings or, if such portion thereof shall be damaged or destroyed or taken as to make it unreasonable to use the remaining portion as an hotel of the type and class preceding such taking, Licensor may on thirty (30) days' written notice to Licensee terminate this Agreement. Upon such termination Licensor, ITTSC and Rescorp shall be paid forthwith the License Fee, Centralized Services Cost and Reservation Cost to the date of such termination.

10.08    Consequences of Termination

(i) Upon the expiration or termination of this Agreement for any cause whatsoever, all rights and privileges granted to Licensee hereunder shall immediately terminate, and Licensee and all persons claiming under it shall as soon as practicable but, in any event no later than six (6) month after the date of such termination, cease and desist from the use of the Sheraton Marks and the use of supplies, equipment, and other items bearing the Sheraton Marks. Furthermore, Licensee shall give to Licensor or any one or more of its affiliates the opportunity to purchase from Licensee any and all supplies, equipment and other items which bear or contain the Sheraton Marks at their then fair market value, as determined by the Approved Auditor. In furtherance of the foregoing, Licensee agrees forthwith after such termination to take any and all necessary steps to completely disassociate itself from the Sheraton system and to thereafter operate in such a way as to avoid any possible implication that is a "Sheraton Towers" or any other kind of Sheraton hotel, motel or inn or a licensee of Licensor and at its expense, to forthwith remove any signs incorporating Sheraton Marks and make whatever changes as may be necessary to any advertising and promotional material to comply with this provision. Licensee agrees that Licensor shall be entitled to injunctive and equitable relief or any other relief available under the laws of the Country for any violation of this provision.

(ii) Licensee agrees to pay all costs and expenses, including reasonable lawyer's fees, incurred by Licensor or any member of the Sheraton Group in enforcing any provisions of this Agreement, including the provisions in this Section 10. Moreover, Licensee will pay to Licensor as a penalty the sum of S$1,000.00 for each day that Licensee shall be in violation of its obligations under Section 10.08.

(iii) Nothing herein shall be construed to restrict the right of Licensor to institute appropriate proceedings at law or in equity to obtain injunctive or other relief on account of any default hereunder, whether or not Licensor has exercised its right to terminate this Agreement.

- 16 -

ARTICLE XI

NOTICES

11.01    Any notice required to be given under this Agreement shall be in writing and shall be deemed to have been effectively given (i) when personally delivered, (ii) seven (7) working days after being sent by registered or certified airmail, postage prepaid and return receipt requested, or (iii) when sent by facsimile, telex or telegraph, in each such case addressed as follows, or (iv) to such other address as either party may subsequently designate by notice to the other party :-

            Licensee: 541 Orchard Road
                      #16-00 Liat Towers
                      Singapore 0923

            Licensor: Sheraton International, Inc.
                      Sixty State Street
                      Boston
                      Massachusetts 02109
                      U.S.A.
                      c/o Legal Department
                      Fax: (617) 367-5636

ARTICLE XII

12.01    This Agreement shall be subject to and shall take effect only upon its approval and all of its Appendices by the Executive Committee of the Board of Directorsof ITTSC and by the Board of Directors of Licensee within thirty (30) days of the date of its execution.

ARTICLE XIII

MISCELLANEOUS

13.01    The remedies granted to Licensor or Licensee hereunder are cumulative and are not intended to be exclusive of any other remedies to which either party may be lawfully entitled in case of any breach or threatened breach of the terms and provisions hereof.  Failure of either party to insist on strict performance of any of the terms and provisions of this Agreement or to exercise any right or remedy shall not be construed as a waiver of any such rights.

13.02    Licensee will enter into all agreements, execute all documents and at its own expense make all recordings in public offices in the Country (other than the initial registration of the said trade names and trademarks, which is Licensor's responsibility) necessary for Licensor to preserve, protect and appropriately record its trade name and trademark rights herein described in the Country notwithstanding the existence of this Agreement, and to legitimately set forth the rights of Licensee to the use thereof, and Licensee, at Licensor's request and at

- 17 -

its own expense, will withdraw any such recordings upon the expiration or termination of this Agreement.

13.03    Licensee will also at its own expense do all acts, execute and record in appropriate public offices all documents and obtain all approvals of appropriate governmental entities as may be necessary to cause this Agreement to be and remain throughout the term hereof a valid and binding legal agreement enforceable in the courts of the Country. Licensee will from time to time, at the Licensor's reasonable request, furnish Licensor with evidence reasonably satisfactory to the Licensor that it has complied in its obligations under this Clause 13.03.

13.04    This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts together shall constitute but one and the same instrument. If this Agreement is translated into any language for purposes of filing with appropriate governmental authorities or otherwise, in the event of any conflict between this Agreement in English and any such translation, the English language text contained herein will control.

13.05    Should any part of this Agreement for any reason be declared invalid, such decision shall not affect the validity of any remaining portion, which remaining portion shall remain in force and effect as if this Agreement had been executed with the invalid portion thereof eliminated, and it is hereby declared the intention of the parties hereto that they would have executed the remaining portion of this Agreement without including therein any such part, parts or portion which may, for any reason, be hereafter declared invalid, except that if Article II, III, IV, V, VI or IX shall be so declared invalid, either party shall have the option, exercisable by written notice within (30) days thereafter, to terminate this Agreement.

13.06    No amendment, change or variation from this Agreement shall be binding upon either party unless executed in writing, signed on behalf of both parties.

13.07    There are no other agreements or understandings, either oral or in writing, between the parties affecting this Agreement.

13.08    This Agreement shall be governed and construed in accordance with the laws of the Country and the parties submit to the non-exclusive jurisdiction of the courts of the Country.  Any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof, shall be settled by arbitration in Singapore in accordance with the UNCITRAL Arbitration Rules in force at the date of this Agreement.  The language to be used in the arbitral proceedings shall be English.

13.09 (i) Licensor    shall    have    the    right    to    assign    its    rights, obligations, liabilities, title and interest under or in this Agreement to any other member of the Sheraton Group.

- 18 -

(ii)  Licensor shall also have the right to assign its rights, obligations, liabilities, title and interest under or in this Agreement to any successor or assignee of Licensor or any member of the Sheraton Group  which may result from any merger, consolidation or reorganization or to another corporation which acquires all or substantially all of the business and assets of ITTSC or any subsidiary or affiliate of such corporation.

(iii)  Upon any assignment permitted by this Clause and upon assumption of all the Licensor's obligations and liabilities this Agreement by the assignee, the assignor shall be relieved of any obligation or liability under this Agreement.  Neither party shall have the right to assign any of its rights, obligations, liabilities, title or interest under or in this Agreement save as provided in this Clause.

13.10    It is agreed that all manuals and other written materials which may be furnished to Licensee by Licensor are of a confidential nature and remain the property of Licensor, that the contents thereof will not be disclosed to any third parties and that upon the expiration or termination of this Agreement all of same will be returned to Licensor.

13.11    Whenever the approval or consent of either party is required pursuant to the terms of this Agreement, the said approval or consent may, unless otherwise stated, be granted or denied in either party's absolute discretion.

13.12    All communications and other matter related to this Agreement which Licensee sends to Licensor shall be in English or accompanied by an English translation.

13.13    Notwithstanding any other provision contained in this Agreement, Licensee shall not operate, or permit the operation, of a casino or any other gambling device at the Hotel without the prior written consent of Licensor, even if such operation is or shall become permissible under the laws of the Country at any time during the Term. The right to grant or withhold such consent shall be in the sole and absolute discretion of the Licensor.

13.14    It is agreed that Licensee shall not sell, offer for sale, or otherwise establish condominium ownership or cooperative ownership for all or any part of the Hotel without the specific prior written approval by Licensor of (i) said ownership, (ii) all documents related thereto and (iii) execution by Licensee of such other documents as Licensor shall require relating to said ownership.  The right to grant or withhold such approval shall be in the sole and absolute discretion of Licensor.

13.15    This Agreement shall be binding upon and shall enure to the benefit of Licensee and Licensor and their respective successors and permitted assignees and any members of the Sheraton Group  herein referred to.

- 19 -

13.16    The SHERATON INTERNATIONAL MANAGEMENT CONTRACT dated 18th February 1981 between RICHVEIN (1) SHERATON INTERNATIONAL INC. (2) and SHERATON (3) as amended shall terminate on the Effective Date but without prejudice to the rights and the obligations of the parties accrued to that date.

IN WITNESS WHEREOF, Licensor and Licensee have duly executed and delivered this Agreement on the day, month and year first above written.

Witness:                               SHERATON INTERNATIONAL, INC.

By: _____                   By: _____

Name: ___Carl Kono___                  Name: ___R. Hartman___

                                       Title: ___Senior Vice President___


Witness:                               RICHVEIN PTE. LTD.

By: _____                   By: _____

Name: ___Carl Kono___                  Name: ___HENRY NGO___

                                       Title: ___CHAIRMAN & MANAGING DIRECTOR___

APPENDIX A

DESCRIPTION OF PROPERTY

All that piece of land situate in the District of Claymore in the Republic of Singapore marked on the Government Resurvey Map as Lot No.418 of Town Subdivision 26 estimated according to Government Resurvey to contain an area of 3,464.2 square metres which said piece of land forms part of the Grant comprised in Grant No.40.

All that piece of land situate in the District of Claymore in the Republic of Singapore marked on the Government Resurvey Map as Lot No.420 of Town Subdivision 26 estimated according to Government Resurvey to contain an area of 3,713.6 square metres which said piece of land forms part of the Grant comprised in Grant No.40.

APPENDIX B

DETAILS OF LICENSEE

Authorised share capital : S$ 30,000,000 divided into 30,000,000 shares of S$ 1.00 each.

Issued share capital : S$ 20,200,000

Shareholders : Unicurrent Finance Limited whose registered office is situate at Rm 2207 Wing On Centre, 111 Connaught Rd Central, Hong Kong and is the registered and beneficial owner of 70% shares in the Licensee.

: Over & Over Limited whose registered office is situate at 2208 Wing On House, 71 Des Voeux Road Central, Hong Kong and is the registered and beneficial owner of 30% shares in the Licensee.

<u>APPENDIX C</u>

<u>INSURANCE</u>

I.   <u>COMPREHENSIVE GENERAL LIABILITY INSURANCE</u>

US$10,000,000* per occurrence for Bodily Injury and Property Damage coverage to include but not limited to :-

1.   Personal Injury Liability
2.   Contractual Liability
3.   Liquor Law Legal Liability*
4.   Product Liability
5.   Non-owned and Hired Auto Liability

* NOTE:   Part of this minimum liability may be provided by an Umbrella Policy.  This minimum liability may be provided in the Dollar equivalent of the US$ amount.

II.  <u>COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE</u>

US$10,000,000* per occurrence for Bodily Injury and Property Damage coverage to include but not limited to :-

1.   Owned Automobiles
2.   Non-owned and Hired Auto (if not included in CGL policy)

* NOTE:   Part of this minimum liability may be provided by an Umbrella Policy.  This minimum liability may be provided in the Dollar equivalent of the US$ amount.

III. <u>UMBRELLA LIABILITY INSURANCE</u>

This policy must include all of the above-mentioned underlying coverages.

MINIMUM REQUIRED - US$9,000,000 per occurrence excess of US$1,000,000 per occurrence Primary Coverage or the Dollar equivalent of the US$ amount.

IV.  All policies must include the following endorsement:
"ITT Sheraton Corporation, ITT Corporation, Sheraton Inns, Inc., Sheraton International, Inc. and their respective subsidiaries" as Additional Insureds.

V.   All policies must not have any exclusions for punitive or exemplary damages.

VI.  In the event of cancellation or changes to the policy, Sheraton International, Inc. as an Additional Insured, must receive at least 30 days written notice.

VII. "The Certificate must also state that the policy will respond for claims brought anywhere in the world."

DEFINITIONS

1.  Personal Injury Liability - coverage for false arrest, defamation of character, libel, slander, wrongful entry or eviction, etc.

2.  Contractual Liability - coverage for assumption of liability of others.

3.  Liquor Law Legal Liability - coverage for bodily injury and/or property damage arising from the consumption of alcoholic beverages on insured's premises.

4.  Product Liability - food poisoning or foreign object in food or beverage.

5.  Non-owned and Hired Auto Liability - liability arising out of employee using his own or hired car on company business.

6.  US$ means the currency of the United States of America.

NOTE:

Please refer to your International Operations Manual (Administration 11) for more detailed information on the above mentioned, as well as other insurance requirements and recommendations.