UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-cv-24118-DSL

JANE DOE,

        Plaintiff,

v.

IBANERA LLC, *et al.*,

        Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MARRIOTT INTERNATIONAL, INC., STARWOOD HOTELS & RESORTS MANAGEMENT COMPANY, LLC, AND STARWOOD HOTELS & RESORTS WORLDWIDE, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**I. INTRODUCTION**

Plaintiff Jane Doe ("Plaintiff"), by and through undersigned counsel, respectfully submits this Response in Opposition to the Motion to Dismiss filed by Defendants Marriott International, Inc., Starwood Hotels & Resorts Management Company, LLC, and Starwood Hotels & Resorts Worldwide, LLC (collectively, the "Hotel Defendants") [ECF No. 50]. For the reasons set forth below, the Motion should be denied in its entirety.

The Hotel Defendants ask this Court to dismiss Plaintiff's claims on three grounds: lack of personal jurisdiction, forum non conveniens, and failure to state a claim. Each argument fails. The Hotel Defendants are subject to personal jurisdiction in Florida through their extensive, continuous franchising operations in this District, and alternatively under Federal Rule of Civil Procedure 4(k)(2), which permits nationwide service of process for claims arising under federal law when no single state's courts can exercise general jurisdiction. The Eleventh Circuit's most recent application of Rule 4(k)(2) in *Jekyll Island – State Park Authority v. Polygroup Macau Ltd.*, No.

1

23-11415 (11th Cir. June 10, 2025), applied the Supreme Court's *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), broad "relate to" standard – rejecting the narrow "but-for" causation test that the Hotel Defendants implicitly rely upon.

Forum non conveniens does not warrant dismissal because Singapore lacks any private civil remedy under its Prevention of Human Trafficking Act 2014, rendering it an inadequate alternative forum for Plaintiff's TVPRA claims. Congress enacted the TVPRA civil remedy under 18 U.S.C. § 1595(a) precisely to provide trafficking victims with a comprehensive federal cause of action against all participants in a trafficking venture – including financial beneficiaries like hotel franchisors. Congress further provided for extraterritorial jurisdiction under 18 U.S.C. § 1596 when the offender is a U.S. national or entity. Dismissing this case to a forum that lacks any equivalent remedy would frustrate that express congressional purpose.

Finally, the Amended Complaint states plausible claims under the TVPRA and for negligence based on detailed factual allegations that the Hotel Defendants' staff personally witnessed signs of Plaintiff's victimization, took affirmative steps to leave Plaintiff alone with her assailant, and continued to profit from the venture that facilitated her trafficking. Courts across the country have overwhelmingly denied motions to dismiss TVPRA claims against hotel franchisors in circumstances materially similar to those alleged here, including claims against Marriott itself. *See, e.g.*, *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171 (E.D. Pa. 2020); *Timko v. NSPA Lounge LLC*, 2025 WL 2162470 (W.D. Pa. July 30, 2025); *Doe (K.R.D.) v. Hilton Worldwide Holdings Inc.*, 798 F. Supp. 3d 1082 (N.D. Cal. Sept. 4, 2025).

## II. STATEMENT OF FACTS

The following facts are drawn from the Amended Complaint [ECF No. 36] ("FAC") and must be accepted as true at this stage. Plaintiff was engaged by Defendant Ibanera LLC, initially

as a client investing approximately $300,000 to develop a card-to-crypto payment application, and subsequently as an employee performing work for the company. FAC ¶¶ 31–36, 49–50. In September 2024, Defendant David Parr directed Plaintiff to travel to Singapore to attend the TOKEN2024 cryptocurrency convention with Defendant Bjorn Snorrason, whom Plaintiff had only recently been introduced to by telephone. FAC ¶¶ 58–65.

During the trip, Plaintiff stayed at the Sheraton Towers Singapore (the "Singapore Sheraton"), a hotel that the Hotel Defendants own and/or operate. FAC ¶¶ 68–69, 424. As the Hotel Defendants concede in their Motion, the Singapore Sheraton is at minimum a franchised property operating under their brand. See Mot. at 1. Over the course of several days, Defendant Snorrason subjected Plaintiff to repeated acts of sexual harassment, assault, and rape. FAC ¶¶ 72–179.

Critically, the Amended Complaint alleges specific, affirmative conduct by hotel staff that goes far beyond mere observation. Hotel staff personally observed Plaintiff screaming for help, crying and begging staff not to leave her alone with Snorrason, and stating explicitly that Snorrason had drugged her and was dangerous. FAC ¶ 124. The hotel manager contacted paramedics, who confirmed that Plaintiff had a near-zero blood alcohol content – contradicting any suggestion that Plaintiff's visible distress was attributable to intoxication. FAC ¶¶ 129–130. Despite this confirmation, hotel staff left Plaintiff incapacitated and alone with Snorrason in a hotel room – despite Plaintiff's repeated, explicit pleas that she did not know Snorrason, that they were not a couple, and that she could not be left alone with him. FAC ¶¶ 125–128, 131, 133–137. The FAC does not allege that any hotel employee contacted law enforcement, separated Plaintiff from her assailant, or took any other protective measure despite Plaintiff's explicit warnings. These are not

allegations of passive inaction; they describe affirmative custodial decisions by hotel personnel who had direct knowledge of Plaintiff's distress and chose to return her to her assailant.

The Hotel Defendants are Delaware entities with their principal places of business in Maryland. FAC ¶¶ 12–14. They maintain continuous franchising operations in Florida, including numerous Marriott-branded hotel properties in this District and throughout the State. FAC ¶ 15. As the Hotel Defendants' own Motion concedes, the Singapore Sheraton is operated by a franchisee under a license from the Hotel Defendants. The Hotel Defendants' Motion and supporting Declaration of Lauren Tamburello describe a franchise system that grants the Hotel Defendants the right to dictate brand standards, security protocols, staff training, reservation systems, and the authority to terminate the franchise for non-compliance. *See* License Agreement (Ex. A-1 to Hotel Defendants' Motion).

### III. LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim need only be "plausible on its face" to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff need only establish a prima facie case of jurisdiction when the court rules without an evidentiary hearing. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (the court must "construe all reasonable inferences in favor of the plaintiff"). For forum non conveniens, the defendant bears a heavy burden, the plaintiff's choice of forum is entitled to substantial deference, and the doctrine "should not be exercised lightly." *Kolawole v. Sellers*, 863 F.3d 1361, 1369 (11th Cir. 2017).

## IV. ARGUMENT

**A. This Court Has Personal Jurisdiction over the Hotel Defendants.**

The Hotel Defendants' jurisdictional argument rests on a false premise: that this case is merely about events at a hotel in Singapore with no connection to Florida. In reality, the Hotel Defendants maintain extensive, continuous operations in Florida and derive substantial revenue from this forum. Moreover, the federal nature of Plaintiff's TVPRA claims provides an independent basis for jurisdiction under Rule 4(k)(2).

**1. Specific Jurisdiction Exists Under Florida's Long-Arm Statute.**

Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(1), authorizes jurisdiction over any person who "operate[s], conduct[s], engage[s] in, or carr[ies] on a business or business venture in this state or having an office or agency in this state." The Florida Supreme Court has held that the statute "bestows broad jurisdiction on Florida courts." *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010). The Hotel Defendants continuously franchise and license branded hotel properties in South Florida, maintain corporate sales offices, employ Florida-based marketing staff, and operate a centralized reservation platform that knowingly transacts with Florida residents.

These contacts satisfy the "arise out of or relate to" standard articulated in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 362 (2021), which the Supreme Court held "does not require" strict "but-for" causation. Just as Ford's extensive marketing and servicing of the same vehicle model in Montana supported jurisdiction even though the specific vehicle was purchased elsewhere, the Hotel Defendants' operation of dozens of Florida hotels using the same brand, same reservation system, and same safety and security standards that failed at the Singapore Sheraton creates a sufficient jurisdictional nexus. The Eleventh Circuit adopted this broad "relate

to" standard in *Jekyll Island – State Park Authority v. Polygroup Macau Ltd.*, No. 23-11415 (11th Cir. June 10, 2025), reversing a dismissal for lack of personal jurisdiction.

The Hotel Defendants' reliance on *Doe v. Hyatt Hotels Corp.*, 2023 WL 7181703 (S.D. Fla. Oct. 17, 2023), is misplaced. In *Hyatt*, the plaintiff could not connect the defendant's Florida contacts to the claims. Here, by contrast, the Hotel Defendants' Florida operations are not "completely separate and unrelated" to Plaintiff's claims – they are the mechanism through which the Hotel Defendants participated in and profited from the franchise venture that facilitated Plaintiff's trafficking. The Singapore Sheraton operated under the same brand standards, same centralized reservation system, and same operational protocols that the Hotel Defendants enforce at their Florida properties.

**2. Rule 4(k)(2) Provides an Independent Basis for Jurisdiction.**

Even if the Court were to find that the Hotel Defendants lack sufficient contacts with Florida specifically, jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2). Under *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303 (11th Cir. 2022), the three-part test requires: (1) the claim arises under federal law; (2) the defendant is not subject to general jurisdiction in any state's courts; and (3) exercising jurisdiction is consistent with the U.S. Constitution and laws. All three elements are met here.

The TVPRA claim arises under federal law. The Hotel Defendants are Delaware entities with principal places of business in Maryland – they are not subject to general jurisdiction in Florida. And under the Fifth Amendment due process analysis applicable to Rule 4(k)(2), the Hotel Defendants' nationwide franchise operations, centralized reservation systems, and U.S.-based corporate headquarters collectively establish more than sufficient contacts with the United States as a whole. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

6

In *Doe v. WebGroup Czech Republic, A.S.*, 93 F.4th 442 (9th Cir. 2024) (overruled on other grounds), the Ninth Circuit applied Rule 4(k)(2) specifically to TVPRA claims, holding that defendants' use of U.S.-based content delivery networks, U.S. trademark registrations, and substantial U.S. user base established purposeful direction toward the United States sufficient to satisfy the Fifth Amendment. The court further held that once Rule 4(k)(2) authorizes jurisdiction for a federal claim, pendent personal jurisdiction extends to related state-law claims arising from the same nucleus of operative facts. *Id.* This holding is consistent with the uniform approach of at least eight circuits. *See, e.g.*, *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997); *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) ("the majority of federal courts and every circuit court of appeals to address the questions have upheld the application of pendent jurisdiction…").

In *Jekyll Island*, the Eleventh Circuit reversed dismissal for lack of personal jurisdiction and held – applying *Ford Motor* – that the "arise out of or relate to" standard "does not require a strict causal relationship between the defendant's in-state activity and the litigation." Here, the Hotel Defendants' nationwide franchise operations, centralized reservation systems, brand-standards enforcement, and U.S.-based corporate headquarters are directly "connected" to the venture that facilitated Plaintiff's trafficking. The Singapore Sheraton operated under the Hotel Defendants' brand, processed reservations through their centralized U.S.-based systems, and was subject to their security protocols and staff training requirements.

**B. Forum Non Conveniens Does Not Warrant Dismissal.**

**1. Singapore Is Not an Adequate Alternative Forum.**

The Hotel Defendants' forum non conveniens argument fails at the threshold because Singapore is not an adequate alternative forum for Plaintiff's TVPRA claims. An alternative forum

7

is "inadequate" when "the remedy provided by that alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981).

Singapore's Prevention of Human Trafficking Act 2014 (Act 45 of 2014) is an exclusively criminal and regulatory statute. It creates criminal offenses, grants enforcement powers to authorities, and provides limited victim protection in the form of shelter and counseling at the Director of Social Welfare's discretion. It provides no private civil right of action, no right to sue traffickers or their beneficiaries for damages, no attorneys' fees provision, and no beneficiary liability. A trafficking victim in Singapore cannot bring a civil suit against her traffickers, let alone against a hotel franchisor, under any anti-trafficking statute. Plaintiff's TVPRA claims, which provide for compensatory damages and attorneys' fees under 18 U.S.C. § 1595(a), have no equivalent in Singapore.

The unavailability of Plaintiff's federal statutory cause of action in Singapore renders that forum inadequate. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001) (alternative forum must provide "at least some relief"); *Lambert v. Melia Hotels Int'l S.A.*, 526 F. Supp. 3d 1207, 1214 (S.D. Fla. 2021). The Hotel Defendants suggest that Singapore's common-law tort system provides adequate remedies, but common-law negligence and assault claims are not substitutes for the TVPRA's specialized civil remedy, which was enacted precisely to provide trafficking victims with a comprehensive federal cause of action against all participants in a trafficking venture – including financial beneficiaries like hotel franchisors.

Moreover, Congress specifically provided for extraterritorial jurisdiction under the TVPRA. 18 U.S.C. § 1596 confers jurisdiction when the offender is a U.S. national or entity present in the United States. Marriott, as a U.S. corporation headquartered in Maryland, squarely satisfies this requirement. *See Roe v. Howard*, 917 F.3d 229, 241–42 (4th Cir. 2019) (holding that

8

"§ 1595 directly incorporates predicate offenses that govern foreign conduct, providing strong textual evidence of its extraterritorial effect"). Dismissing this case to a forum that lacks any equivalent remedy would frustrate that express congressional purpose.

**2. The Private and Public Interest Factors Favor Retention.**

Even if Singapore were an adequate forum, the balance of private and public interest factors favors retaining this case in Florida. *See Otto Candies LLC v. Citigroup Inc.*, 963 F.3d 1331, 1335 (11th Cir. 2020) (reversing forum non conveniens dismissal). The Hotel Defendants overstate Singapore's connection to this dispute by focusing exclusively on the location of the assault while ignoring the location of the trafficking venture's infrastructure.

Key witnesses and evidence are in Florida and the United States. Plaintiff routinely performs work in Florida. Co-defendant Ibanera has its principal place of business in Sunrise, Florida. FAC ¶ 6. The Hotel Defendants' corporate compliance officers, brand-standards architects, and reservation system personnel are in the United States. The franchise license agreements, brand-standards manuals, incident-reporting protocols, and royalty records are maintained electronically on U.S.-based servers and can be produced anywhere. The Singapore-based witnesses – hotel staff, paramedics, police – are peripheral to the TVPRA's focus on venture participation and knowledge. Where evidence is largely under the defendant's control and can be produced anywhere, courts deny forum non conveniens dismissal. *See Lambert*, 526 F. Supp. 3d at 1219.

The public interest factors likewise favor retention. Florida has a strong interest in protecting employees who work in the state of Florida from sex trafficking facilitated through franchise systems operated by entities doing continuous business in this state. The TVPRA is a federal statute that this Court is equipped to apply without the foreign-law complications that

would attend Singapore tort claims. Indeed, requiring a Singapore court to apply American federal trafficking law would impose a far greater administrative burden than adjudicating these claims in this Court.

## C. Plaintiff States Plausible Claims Under the TVPRA.

### 1. The Amended Complaint Alleges a "Commercial Sex Act."

The Hotel Defendants argue that Plaintiff fails to allege a predicate violation of 18 U.S.C. § 1591 because the allegations describe "retaliation" rather than a commercial sex act. This argument fundamentally misconstrues the statute and the controlling case law. Section 1591(e)(3) defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." The Second Circuit – in the highest appellate authority on this provision – has held that "'anything of value' need not have a monetary or financial component." *United States v. Raniere*, 55 F.4th 354, 362 (2d Cir. 2022). Rather, value is a "subjective, rather than objective concept," and intangible benefits – including privileged positions in organizations, career opportunities, and professional advancement – constitute "anything of value" under the statute. *Id.* at 361.

Notably, the *Raniere* court cited *United States v. Nilsen*, 967 F.2d 539, 543 (11th Cir. 1992), for the proposition that "monetary worth is not the sole measure of 'value.'" This Eleventh Circuit authority provides an in-circuit foundation for the broad construction that courts nationwide have adopted.

In *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018), the court denied a motion to dismiss TVPRA claims where the defendant promised career advancement in the entertainment industry, holding that professional opportunities constituted "anything of value" and that

10

Congress's use of the terms "any sex act," "anything of value," and "given to or received by any person" "requires a liberal reading." *Id.* at 521.

Here, the Amended Complaint alleges that Plaintiff was recruited to attend the Singapore conference under the guise of professional advancement, that Defendants used her employment relationship to coerce her attendance, and that when she refused to submit to the sexual assaults, Defendants retaliated by terminating her professional opportunities. FAC ¶¶ 182–199. These allegations plausibly establish that the sex acts were committed "on account of" professional benefits – including continued employment, client relationships, and application development opportunities – that were given or withheld depending on Plaintiff's submission. This is the quintessential quid pro quo pattern that *Noble* and *Raniere* hold sufficient.

The Hotel Defendants' reliance on *Reed v. Barnes*, 2025 WL 963072 (N.D. Tex. 2025), is inapposite. *Reed* addressed the adequacy of pleading hotel defendants' knowledge and participation in a trafficking venture – not the "anything of value" definition or the "commercial sex act" element. The plaintiff in *Reed* did not allege a quid pro quo linking sex acts to professional compensation; Plaintiff here specifically does.

**2. The Hotel Defendants "Participated" in a "Venture."**

The Hotel Defendants argue that the Amended Complaint fails to allege "participation" in a "venture" under *Red Roof*. This argument misstates *Red Roof*'s holding, ignores its analytical framework, and disregards the substantial body of post-*Red Roof* case law that has applied the "participation in a venture" element to hotel franchisors in circumstances materially similar to those alleged here.

In *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), the Eleventh Circuit held that a TVPRA plaintiff must allege that the defendant "took part in a common undertaking or

11

enterprise involving risk and potential profit." *Id.* at 725. Critically, the court rejected the criminal statute's narrower definition of "participation" under § 1591(e)(4) (which requires "knowingly assisting, supporting, or facilitating"), holding that the civil remedy in § 1595 employs the broader, plain-meaning definition. *Id.* at 724. The court endorsed the First Circuit's analysis in *Ricchio v. McLean*, 853 F.3d 553. 555 (1st Cir. 2017), where a motel operator who "nonchalantly ignored" a victim's pleas for help while continuing to accept payment was held to have participated in a venture. *Red Roof*, 21 F.4th at 725.

The reason the complaints in *Red Roof* failed was not because hotel franchise relationships can never constitute "ventures" – it was because the plaintiffs there alleged only generic "sex trafficking ventures" involving unnamed traffickers, without alleging the specific franchise business relationship itself or tying knowledge allegations to the particular franchisors' operational control. *Id.* at 726–28. This deficiency has been cured in the wave of subsequent cases that have successfully pled venture participation by hotel franchisors.

Here, the Amended Complaint alleges that the Hotel Defendants exercised similar operational control over the Singapore Sheraton through their franchise license. The License Agreement grants the Hotel Defendants the right to dictate brand standards, security protocols, staff training and recruitment programs, reservation-system integration, and the authority to inspect, penalize, and terminate the franchisee. FAC ¶¶ 69, 238–242; *see also* License Agreement (Ex. A to ECF No. 50). This level of operational control is precisely what courts have found sufficient to establish "participation" under *Red Roof* and its progeny.

The Hotel Defendants' assertion that "observing something is not the same as participating in it" oversimplifies the Amended Complaint's allegations. The FAC does not merely allege that hotel staff "observed" trafficking. It alleges that hotel staff (1) personally witnessed Plaintiff

screaming for help, FAC ¶ 124; (2) summoned paramedics who confirmed Plaintiff had a near-zero blood alcohol content, FAC ¶¶ 129–130; (3) were aware that Plaintiff was incapacitated in the presence of her assailant, FAC ¶ 131; and (4) allowed Snorrason into Plaintiff's room over her express objection, FAC ¶¶ 126–128; and (5) affirmatively chose to leave Plaintiff alone with Snorrason despite her repeated pleas, FAC ¶¶ 133–137. These are deliberate custodial decisions that facilitated the continuation of the assault – not passive observation. *Cf. Ricchio*, 853 F.3d at 555–57 (motel operator's indifference to victim's obvious physical deterioration while demanding continued payment established venture participation).

### 3. The Hotel Defendants Had Constructive Knowledge.

*Red Roof* holds that constructive knowledge suffices under § 1595. 21 F.4th at 725–26. Constructive knowledge is "knowledge that one using reasonable care or diligence should have." *Treminio v. Crowley Mar. Corp.*, 707 F. Supp. 3d 1234, 1245 (M.D. Fla. 2023). The Amended Complaint alleges far more than constructive knowledge; it alleges actual, contemporaneous awareness by hotel staff of Plaintiff's distress.

Staff heard Plaintiff screaming for help. Staff witnessed paramedics confirm that Plaintiff was not intoxicated. Staff observed Plaintiff in an incapacitated state in the presence of her assailant. And staff made the affirmative decision to leave Plaintiff alone with Snorrason despite these observations. FAC ¶¶ 124, 128–137. These allegations exceed the pleading standard in virtually every reported TVPRA hotel case, most of which involve inferential "red flags" rather than direct observation of distress. *Compare M.A. v. Wyndham Hotels*, 425 F. Supp. 3d 959, 967 (S.D. Ohio 2019) (denied MTD where staff ignored "desperate pleas and screams for help"); *A.B. v. Marriott Int'l*, 455 F. Supp. 3d at 192–94 (visible violence against victim observed by Marriott

13

hotel employees sufficient); *J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1319–20 (N.D. Ga. 2022) (victim visibly injured and emaciated – denied MTD under *Red Roof* four-element test).

Knowledge of the franchisee's staff is properly imputed to the franchisor through the agency and reporting relationships established by the franchise agreement. *See Doe v. Wyndham Hotels & Resorts*, 2025 U.S. Dist. LEXIS 40993 (E.D. Va. Mar. 6, 2025) ("Knowledge or constructive knowledge… must be imputed to them from the franchisee employees." *Id*. at 16).

**4. The Hotel Defendants "Knowingly Benefited."**

The Amended Complaint plausibly alleges that the Hotel Defendants knowingly benefited from their participation in the venture. The *Red Roof* court had "little difficulty in deciding what 'knowingly benefits' means," finding that franchisors' receipt of "royalty and other fees based on a percentage of their gross room revenue" satisfied the element. 21 F.4th at 720–23. Here, the Hotel Defendants received royalties, franchise fees, loyalty-program earnings, and a share of room-rental and food-and-beverage revenue generated by Ibanera's repeated patronage of the Singapore Sheraton. FAC ¶ 242. This is precisely the type of financial benefit that courts have consistently held sufficient at the pleading stage.

**5. Plaintiff States a Plausible Negligence Claim.**

The Hotel Defendants argue that Plaintiff's negligence claim fails because (a) Singapore law governs and (b) no duty exists under either Singapore or Florida law. Both arguments fail.

    **a.  Choice of law is premature at the motion to dismiss stage.**

Florida follows the "most significant relationship" test under the *Restatement (Second) of Conflict of Laws*. *See Jeffers v. Kerzner Int'l Hotels Ltd.*, 319 F. Supp. 3d 1267, 1270 (S.D. Fla. 2018). This test requires weighing factual contacts – including the Hotel Defendants' degree of

operational control over the Singapore Sheraton, the location of the franchise relationship's center, and the parties' domiciles – that are inappropriate for resolution on the pleadings.

### b. Under either Singapore or Florida law, the Amended Complaint states a plausible negligence claim.

Under the *Spandeck Engineering* framework applied in Singapore, a duty of care requires factual foreseeability, legal proximity, and an absence of countervailing policy considerations. *Spandeck Engineering (S) Pte Ltd v. Defence Science & Technology Agency* [2007] SGCA 37. The hotel staff's direct observation of Plaintiff's distress establishes factual foreseeability; the innkeeper-guest relationship establishes legal proximity; and no countervailing policy consideration negates the duty to refrain from affirmatively placing an incapacitated guest alone with her apparent assailant. *See also Tan Woo Thian v. PricewaterhouseCoopers Advisory Services Pte Ltd* [2021] SGCA 20 (applying the *Spandeck* test with particular emphasis on the assumption-of-responsibility factor).

Under Florida law, registered hotel guests are business invitees owed the highest duty of care, including a duty to protect against reasonably foreseeable third-party criminal acts. *See Banosmoreno v. Walgreen Co.*, 299 F. App'x 912, 913 (11th Cir. 2008). Here, the hotel staff did know of the danger: they heard Plaintiff screaming, witnessed her distressed state, and confirmed she was not intoxicated. These facts create a plausible inference that the Hotel Defendants knew of the dangerous condition and failed to act.

Moreover, the Hotel Defendants' own License Agreement grants them operational control over the franchise's safety and security protocols, establishing the requisite "possession or control" of the premises for purposes of premises liability. And under the Restatement (Second) of Torts § 323, where hotel staff began assisting the Plaintiff (by escorting her) and then voluntarily

15

abandoned that assistance – leaving her incapacitated with her assailant – they breached an assumed duty of care by increasing the risk of harm.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Hotel Defendants' Motion to Dismiss in its entirety.

Dated this 3rd day of March, 2026.

                                                Respectfully submitted,

                                                **DEREK SMITH LAW GROUP, PLLC**
                                                *Counsel for Plaintiff*

                                                *s/ Derek T. Smith*
                                                Derek T. Smith, Esq.
                                                Florida Bar No.: 1014216
                                                Derek Smith Law Group, PLLC
                                                520 Brickell Key Drive, Suite O-301
                                                Miami, FL 33131
                                                Tel: (305) 946-1884
                                                Derek@dereksmithlaw.com

                                                */s/ Daniel J. Barroukh*
                                                Daniel J. Barroukh, Esq.
                                                Florida Bar No.: 1049271
                                                Derek Smith Law Group, PLLC
                                                520 Brickell Key Drive, Suite O-301
                                                Miami, FL 33131
                                                Tel: (305) 946-1884
                                                Danielb@dereksmithlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on March 3, 2026, on all counsel of record on the service list below via CM/ECF.

By: */s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.

## SERVICE LIST

**COLE SCHOTZ P.C.**
Scott J. Topolski
Florida Bar No. 0006394
2255 Glades Road, Suite 300E
Boca Raton, Florida 33431
Telephone: (561) 609-3856
Facsimile: (561) 423-0392
Email: stopolski@coleschotz.com
*Co-Counsel for Defendants Ibanera LLC,*
*Michael Carbonara, and David Parr*
**VIA CM/ECF**

**COGENT LAW GROUP, LLP**
Evan Ronald Smith
2001 L St. NW, Suite 500
Washington, DC 20036
Telephone: 202.644.8880
Email: esmith@cogentlaw.com
*Co-Counsel for Defendants Ibanera LLC,*
*Michael Carbonara, and David Parr*
**VIA CM/ECF**

**CARLTON FIELDS, P.A.**
Naomi M. Berry
Florida Bar No. 69916
2 Miami Central
700 NW 1st Avenue, Ste. 1200
Miami, FL 33136-4118
Telephone: (305) 530-0050
Email: nberry@carltonfields.com
*Counsel for Defendant Bjorn Snorrason*
**VIA CM/ECF**

**CARLTON FIELDS, P.A.**
Aaron S. Weiss
Florida Bar No. 48813
2 Miami Central
700 NW 1st Avenue, Ste. 1200
Miami FL, 33136-4118
Telephone: (305) 530-0050
Email: aweiss@carltonfields.com
*Counsel for Defendant Bjorn Snorrason*
**VIA CM/ECF**

**DLA PIPER LLP (US)**
Virginia Regis Callahan
Florida Bar No. 1058943
3111 W. Dr. Martin Luther King Jr. Blvd., Suite 200
Tampa, Florida 33607
Telephone: (410) 580-4328
Facsimile: (410) 580-3011
Email: Virginia.Callahan@us.dlapiper.com
*Counsel for Marriott International, Inc,*
*Starwood Hotels & Resorts Management Company, LLC, and*
*Starwood Hotels & Resorts Worldwide, LLC*
**VIA CM/ECF**

**DLA PIPER LLP (US)**
Ellen Dew
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
Tampa, Florida 33607
Telephone: (410) 580-4127
Fax: (410) 580-3001
Email: Ellen.Dew@us.dlapiper.com
*Counsel for Marriott International, Inc,*
*Starwood Hotels & Resorts Management Company, LLC, and*
*Starwood Hotels & Resorts Worldwide, LLC*
**VIA CM/ECF**