UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-cv-24118-DSL

JANE DOE,

        Plaintiff,

v.

IBANERA LLC, *et al.*,

        Defendants.
_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BJORN SNORRASON'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

### I. INTRODUCTION

Plaintiff Jane Doe ("Plaintiff"), by and through undersigned counsel, respectfully submits this Response in Opposition to Defendant Bjorn Snorrason's ("Snorrason") Motion to Dismiss [ECF No. 51]. For the reasons set forth below, the Motion should be denied in its entirety.

Snorrason seeks dismissal on three grounds: (1) lack of personal jurisdiction under Rule 12(b)(2), (2) forum non conveniens, and (3) failure to state a claim as to Counts 1, 2, 3, and 17 under Rule 12(b)(6). Each argument fails.

Personal jurisdiction exists under multiple independent theories. Snorrason purposefully directed his conduct toward an individual working and residing in Florida, participated in a conspiracy and trafficking venture with Florida-based co-defendants that committed overt acts in Florida, and is subject to jurisdiction under Federal Rule of Civil Procedure 4(k)(2) for claims arising under federal law. The Supreme Court's recent decision in *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), has fundamentally reshaped the jurisdictional analysis under the Fifth Amendment, applying a more permissive standard than the Fourteenth Amendment's

1

minimum contacts framework. Under *Fuld* and the Eleventh Circuit's subsequent application in *Jekyll Island-State Park Authority v. Polygroup Macau Ltd.*, No. 23-11415 (11th Cir. June 10, 2025), Snorrason's ownership and control of a Florida limited liability company provides an overwhelming basis for jurisdiction over federal claims.

Singapore is not an adequate alternative forum because its Prevention of Human Trafficking Act 2014 provides no private civil right of action for trafficking victims – placing this case squarely within the exception recognized by *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981), for forums offering "no remedy at all." And the Amended Complaint plausibly alleges that Snorrason participated in a trafficking venture with the other Defendants and conspired to lure Plaintiff to Singapore for the purpose of sexual exploitation, providing more than sufficient factual detail to survive a Rule 12(b)(6) challenge.

## II. STATEMENT OF FACTS

The Amended Complaint's [ECF No. 36] ("FAC") factual allegations, which must be accepted as true at this stage, establish the following.

Plaintiff was employed by Defendant Ibanera LLC ("Ibanera") to develop a cryptocurrency payment application, investing approximately $300,000 of her own funds in the project over two years. FAC ¶¶ 31 – 34. In the course of that work, Plaintiff developed professional relationships with Defendants Michael Carbonara ("Carbonara") and David Parr ("Parr"), two of Ibanera's three owners, operating from Florida. FAC ¶ 38. Snorrason was the third owner of Ibanera, a Wyoming LLC with its principal place of business in Sunrise, Florida. FAC ¶¶ 6, 39.

In or around July 2024, Ibanera promoted Plaintiff to Client Relations and Success Manager and placed her on a salary. FAC ¶ 50. However, Ibanera soon halted all work on Plaintiff's application and began inconsistently paying her owed compensation. FAC ¶¶ 53 – 56.

Plaintiff's continued employment, compensation, commissions, and app development were conditioned – explicitly or implicitly – on compliance with the demands of Ibanera's owners, including attendance at business trips. FAC ¶ 57.

In early September 2024, Parr directed Plaintiff from Florida to travel to Singapore to attend the TOKEN2024 cryptocurrency convention. FAC ¶¶ 58 – 59. The trip was arranged through Ibanera's Florida operations: Parr purchased Plaintiff's plane ticket, arranged lodging, and communicated logistics via telephone and text message. FAC ¶¶ 62 – 63. When introducing Plaintiff to Snorrason via telephone, Parr described her as "the sexiest and most knowledgeable person with the most class that I can send you for this trip." FAC ¶ 65.

Over the course of several days in Singapore, Snorrason subjected Plaintiff to repeated sexual harassment, drugging, assault, and rape. FAC ¶¶ 72 – 179. Snorrason drugged Plaintiff's drink; paramedics confirmed a near-zero blood alcohol content despite Snorrason's insistence she was merely drunk. FAC ¶¶ 114 – 130. Snorrason raped Plaintiff while she was incapacitated. FAC ¶¶ 140 – 145. He raped her again on subsequent nights. FAC ¶¶ 161, 169. Snorrason extended Plaintiff's trip against her will, forced her to stay in his room, and threatened her when she tried to leave. FAC ¶¶ 151 – 159, 175.

Throughout, Snorrason made clear that Plaintiff's professional future depended on her sexual compliance, telling her "sleeping with the boss has its perks" and that her app development, salary, title, and job security were tied to their sexual relationship. FAC ¶¶ 163 – 165, 171, 173.

Plaintiff escaped by having a friend purchase a flight home. FAC ¶ 174. When she tried to leave, Snorrason blocked the door and threatened that "if you leave now, this will be the last thing you do." FAC ¶ 175. Parr actively messaged Plaintiff during her escape, directing her to return to Snorrason. FAC ¶¶ 179 – 180. After Plaintiff returned to Miami and reported the assaults to

3

Carbonara, Ibanera cut off all communications, ceased work on her application, and terminated her. FAC ¶¶ 182 – 199.

### III. LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim need only be "plausible on its face" to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff need only establish a prima facie case of jurisdiction when the court rules without an evidentiary hearing. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). For forum non conveniens, the defendant bears a heavy burden, and the plaintiff's choice of forum is entitled to substantial deference. *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1343 (11th Cir. 2020).

### IV. ARGUMENT

**A. This Court Has Personal Jurisdiction over Snorrason.**

**1. Rule 4(k)(2) Provides the Strongest Independent Basis for Jurisdiction.**

Even if the Court were to find that Florida's long-arm statute does not reach Snorrason, jurisdiction is independently proper under Federal Rule of Civil Procedure 4(k)(2). This rule – the federal "national long-arm statute" – was specifically designed to close a jurisdictional gap that allowed foreign defendants to escape federal law by dispersing their contacts across states. *See* Fed. R. Civ. P. 4(k)(2) advisory committee's note to 1993 amendment. Rule 4(k)(2) applies when (1) the claim arises under federal law, (2) the defendant is not subject to jurisdiction in any single state's courts of general jurisdiction, and (3) exercising jurisdiction comports with due process.

*Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). All three elements are satisfied.

*First*, Plaintiff's TVPRA claims under 18 U.S.C. § 1595 indisputably arise under federal law. The TVPRA's civil remedy is coextensive with its criminal predicates, which have explicit extraterritorial reach. *See Roe v. Howard*, 917 F.3d 229, 242 – 43 (4th Cir. 2019). The Eleventh Circuit has confirmed that Congress has the constitutional authority to reach extraterritorial trafficking under the Foreign Commerce Clause. *United States v. Baston*, 818 F.3d 651, 667 – 68 (11th Cir. 2016).

*Second*, Snorrason is an Icelandic citizen who is not subject to general jurisdiction in any U.S. state. Under the Eleventh Circuit's burden-shifting framework in *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218–19 (11th Cir. 2009), when a defendant contends he cannot be sued in the forum state and fails to identify any other state where he is amenable to suit, the court is entitled to apply Rule 4(k)(2). *See also Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004). Here, Snorrason's Motion argues he cannot be sued in Florida but does not identify any U.S. state where jurisdiction would be proper. This element is therefore satisfied.

*Third*, the exercise of jurisdiction comports with the Fifth Amendment's Due Process Clause. The constitutional analysis under Rule 4(k)(2) has been fundamentally reshaped by the Supreme Court's recent decision in *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025). Before *Fuld*, most circuits assumed the Fifth and Fourteenth Amendments imposed essentially identical minimum-contacts requirements, differing only in that Fifth Amendment contacts are measured against the nation rather than a single state. *Fuld* changed this. The Court held unanimously that the Fifth Amendment does not impose the same jurisdictional limitations as the Fourteenth, because the interstate-federalism concerns that animate Fourteenth Amendment

5

doctrine are entirely inapplicable to the Fifth Amendment. The Court upheld jurisdiction under a reasonableness standard – asking whether the federal statute reasonably ties the assertion of federal jurisdiction to conduct that involves the United States. *Id*. at 16–19.

The Eleventh Circuit recently ruled in *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, No. 23-11415 (11th Cir. June 10, 2025), which is now binding precedent. In *Jekyll Island*, the court reversed dismissal of claims against a foreign IP holding company incorporated in the British Virgin Islands that had no direct U.S. operations but had registered U.S. trademarks, filed patent applications, and allowed affiliated companies to sell branded products in the United States. The court expressly held that the due process requirement under Rule 4(k)(2) stems from the Fifth Amendment rather than the Fourteenth and that the minimum contacts analysis is therefore not state-specific. The court found purposeful availment based on the defendant's engagement with U.S. legal structures – registering trademarks, filing patents, and using U.S. law firms – even though the defendant itself claimed it did not directly conduct business in the United States.

Snorrason's contacts with the United States are substantially more significant than those in *Jekyll Island*. He formed and owns Ibanera LLC, a Florida limited liability company. FAC ¶¶ 6, 39. LLC formation requires significant voluntary engagement with the U.S. legal system: filing articles of organization with the Florida Secretary of State, appointing a registered agent, obtaining a federal Employer Identification Number, opening U.S. bank accounts, and continuously complying with U.S. tax and regulatory requirements. If obtaining a U.S. trademark constitutes purposeful availment under *Jekyll Island*, forming and operating a U.S. LLC is purposeful availment *a fortiori*.

The Ninth Circuit's decision in *Doe v. WebGroup Czech Republic, A.S.*, 93 F.4th 442 (9th Cir. 2024) (overruled on other grounds), further supports jurisdiction. In *WebGroup*, the court

applied Rule 4(k)(2) to assert jurisdiction over Czech entities in a sex trafficking case where the defendants' only U.S. contacts consisted of using U.S.-based content delivery networks to serve their websites to American users. The court reversed the district court's dismissal, holding that this differential targeting constituted purposeful availment of the United States. If website hosting through U.S. servers sufficed in *WebGroup*, then forming and operating a Florida LLC presents an overwhelmingly stronger case.

The *Baston* due process standard independently supports jurisdiction. In *Baston*, the Eleventh Circuit held that due process prohibits extraterritorial TVPRA jurisdiction only when it would be "arbitrary or fundamentally unfair," and found this standard satisfied where the defendant used the United States as a home base and took advantage of the protections of its laws. 818 F.3d at 669 – 70. Snorrason did precisely that: he formed a U.S. entity and directed Plaintiff through that entity to travel to Singapore where she was assaulted. It is neither arbitrary nor fundamentally unfair to require him to answer for those acts in a U.S. court.

The exercise of jurisdiction also comports with fair play and substantial justice. Florida has a strong interest in protecting individuals who work in this state from trafficking ventures organized through Florida-based entities. The TVPRA vindicates powerful congressional interests in combating trafficking. And Snorrason's co-defendants – Ibanera, Parr, and Carbonara – are all in Florida, promoting efficient resolution of this dispute in a single forum.

**2. Specific Jurisdiction Exists Under Florida's Long-Arm Statute.**

Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(1), confers jurisdiction over any person who operates, conducts, engages in, or carries on a business or business venture in this state. The Amended Complaint alleges that Snorrason was one of three owners of Ibanera LLC, FAC ¶ 39, which maintains its principal place of business in Sunrise, Florida, FAC ¶ 6. Ibanera conducts

7

continuous business in Florida, and Snorrason, as an owner, operated and carried on a business venture through this Florida entity.

Snorrason's attempt to invoke the fiduciary shield doctrine – citing *Carter v. Estate of Rambo*, 925 So. 2d 353 (Fla. 5th DCA 2006), and *Doe v. Thompson*, 620 So. 2d 1004 (Fla. 1993) – is unavailing. The Florida Supreme Court in *Kitroser v. Hurt*, 85 So. 3d 1084 (Fla. 2012), significantly narrowed the corporate shield doctrine, holding that it applies only to nonresident employees who work exclusively outside Florida, commit no acts in Florida, and have no personal connection with Florida. *Id*. at 1087–88. Critically, the court recognized an explicit exception: a corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction regardless of corporate capacity. *Id*. at 1088 n.3. Sex trafficking is among the most serious intentional torts recognized by law, and Snorrason is not a remote corporate officer – he is an owner and controller of a Florida-based LLC who participated in intentional tortious conduct directed at an employee who performed work in Florida.

Additionally, Fla. Stat. § 48.193(1)(a)(6) provides jurisdiction over a person who causes injury in Florida by an act or omission outside the state, provided the person engages in solicitation or service activities within Florida. The Amended Complaint alleges that Plaintiff suffered continuing injury in Florida – including psychological trauma, loss of employment, and professional retaliation – as a direct result of Snorrason's conduct. The conduct was directed at an employee who performed work in Florida through a Florida-based enterprise.

Due process is independently satisfied. Snorrason's ownership of a Florida entity, combined with his participation in a scheme that recruited an employee to perform work in Florida for exploitation abroad, creates constitutionally sufficient minimum contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). This is not a case where the plaintiff is the only

8

link between the defendant and the forum. *Cf. Walden v. Fiore*, 571 U.S. 277, 285 (2014). The Florida-based enterprise Ibanera LLC, which Snorrason owns, is an independent connection to the forum.

### 3. The Conspiracy Theory of Personal Jurisdiction Applies.

The Eleventh Circuit has expressly recognized the conspiracy theory of personal jurisdiction. In *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1339 (11th Cir. 2025), the court held that Florida's long-arm statute confers personal jurisdiction over nonresident alleged conspirators even if none of them personally acted in Florida, so long as any co-conspirator committed an act in Florida in furtherance of the conspiracy. *See also United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280 – 82 (11th Cir. 2009); *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 585 (Fla. 2000).

All three requirements are satisfied. *First*, the Court has jurisdiction over the Florida-based co-defendants Ibanera, Carbonara, and Parr, all of whom operate and conduct business in Florida. *Second*, the Amended Complaint alleges a conspiracy among all Defendants to recruit, entice, and transport Plaintiff to Singapore for the purpose of sexual exploitation. FAC ¶¶ 232 – 236. *Third*, overt acts in furtherance of this conspiracy took place in Florida: Parr directed Plaintiff from Florida to travel to Singapore, FAC ¶ 58; Parr purchased Plaintiff's plane ticket, FAC ¶ 63; Parr introduced Plaintiff to Snorrason via telephone while Plaintiff was in Florida, FAC ¶ 65; and Parr messaged Plaintiff during her escape directing her to return to Snorrason, FAC ¶¶ 179 – 180. These are overt acts in furtherance of the conspiracy occurring in the forum state.

Snorrason's argument that the conspiracy theory requires "specificity" absent here ignores the procedural posture. At the pleading stage, Plaintiff need only allege facts sufficient to establish a prima facie case. The detailed allegations – describing Snorrason's role as owner of the Florida

9

entity, the coordinated trip planning, and the subsequent retaliation – more than satisfy this standard. *Goldwind* was decided in January 2025, well after *Walden*, and the court expressed no doubt about the doctrine's continued vitality.

**B. The Forum Non Conveniens Motion Should Be Denied.**

Snorrason bears a heavy burden on forum non conveniens, and Plaintiff's choice of her home forum is entitled to the highest deference. *Otto Candies*, 963 F.3d at 1337 – 39. The Eleventh Circuit has held that courts must require positive evidence of unusually extreme circumstances and should be thoroughly convinced that material injustice is manifest before denying access to U.S. courts. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004). Snorrason does not come close to meeting this standard.

**1. Singapore Is Not an Adequate Alternative Forum.**

Snorrason's forum non conveniens motion fails at the threshold because Singapore is not an adequate alternative forum for Plaintiff's federal trafficking claims. Singapore's Prevention of Human Trafficking Act 2014 is an entirely criminal and administrative statute – it provides no private civil right of action for trafficking victims. Importantly, the Act does not authorize trafficking victims to bring civil suits against traffickers or entities that benefited from trafficking.

Under *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), while a less favorable change in law generally does not defeat forum non conveniens, the critical exception applies when "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id*. at 254. This is not a case of "lesser remedies" – it is the complete absence of any civil remedy for trafficking. Plaintiff's core federal claims – Counts 1 through 3 – have no Singaporean equivalent whatsoever.

10

The TVPRA's civil remedy under § 1595 represents a deliberate congressional policy choice to empower trafficking victims with civil recourse. Dismissal to a forum that lacks any equivalent remedy would not merely disadvantage Plaintiff; it would extinguish her most important claims entirely. This Court should not require a trafficking victim to abandon her federal statutory rights in order to pursue diminished common law claims in a foreign jurisdiction.

**2. The Private and Public Interest Factors Favor Retention.**

Snorrason's emphasis on the location of the assault overstates Singapore's connection to this dispute. While the physical assault occurred in Singapore, the trafficking venture – recruitment, enticement, and transportation – was orchestrated from Florida through Ibanera's Florida operations. The co-defendants are in Florida. Key documentary evidence regarding the venture's planning, communications, employment records, and financial arrangements is in Florida or the United States.

As to access to sources of proof, the critical evidence for the TVPRA claims – venture planning, employment records, communications between Defendants, and financial records – is in Florida. While certain evidence (hotel records, police reports, medical records) is in Singapore, modern discovery tools, including the Hague Evidence Convention and letters rogatory, provide mechanisms to obtain such evidence. Moreover, Plaintiff's key witnesses are the co-defendants, many of whom are in Florida and subject to this Court's subpoena power.

The public interest factors also strongly favor retention. Florida has a direct interest in protecting individuals who perform work in this State from trafficking schemes organized through Florida-based entities. The TVPRA is a federal statute that this Court routinely applies.

Snorrason also cannot demonstrate that Plaintiff can reinstate her TVPRA suit in Singapore, because she cannot. Singapore offers no private civil cause of action for trafficking.

11

Dismissal would not transfer the case; it would eliminate Plaintiff's federal statutory claims altogether.

**C. Plaintiff States Plausible Claims Against Snorrason.**

    **1. The Amended Complaint Plausibly Alleges a TVPRA Venture (Counts 1 & 2).**

Snorrason argues that the Amended Complaint fails to allege a TVPRA "venture" because the allegations describe only "isolated, individual misconduct" rather than an organized trafficking scheme. This argument relies on a fundamental mischaracterization of both the Amended Complaint's allegations and the governing legal standard.

Snorrason's argument is built on equating the TVPRA's "venture" requirement with RICO's "enterprise" standard. This analogy is inapt and has been rejected by every circuit to consider the question. While 18 U.S.C. § 1591(e)(6) defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity," the Eleventh Circuit in *Red Roof* interpreted this term to require only that the defendant took part in a common undertaking or enterprise involving risk and potential profit. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). The court defined "venture" by its plain, ordinary dictionary meaning – an undertaking that involves risk; especially, a speculative commercial enterprise – without imposing any structural requirements. *Id*.

By contrast, RICO requires three structural features: (1) a purpose, (2) relationships among associates, and (3) longevity sufficient to permit pursuit of the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). The TVPRA demands none of these. The Seventh Circuit has held that a continuous business relationship giving rise to a tacit agreement suffices, and that participation does not require getting your hands dirty. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 557–59 (7th Cir. 2023). The First Circuit in *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017),

found a venture existed between a motel operator and a single trafficker based on an entirely informal arrangement that would never satisfy RICO's structural requirements.

Snorrason's further contention that the TVPRA imports RICO's "operation and management" test from *Reves v. Ernst & Young*, 507 U.S. 170 (1993), is similarly unsupported. No court of appeals has held that the TVPRA's venture requirement incorporates the *Reves* standard. The district court decisions Snorrason cites – including *MSP Recovery Claims* and *Montoya* – address RICO claims, not TVPRA claims, and their reasoning has not been adopted in the TVPRA context.

The Amended Complaint alleges facts sufficient to establish a venture under the TVPRA's actual standard:

**Common purpose and coordinated conduct.** Snorrason, Carbonara, and Parr were co-owners of Ibanera who collectively directed Plaintiff's work and travel. FAC ¶¶ 38 – 39, 42 – 43. Parr directed Plaintiff to travel to Singapore specifically to meet Snorrason. FAC ¶¶ 58 – 59. Parr purchased her ticket. FAC ¶ 63. Parr introduced Plaintiff with a sexualized description signaling Snorrason's intentions. FAC ¶ 65. Snorrason confirmed to Plaintiff that Parr and Carbonara agreed she would "get whatever she wanted" now that she was Snorrason's "girlfriend." FAC ¶ 171. And Parr messaged Plaintiff during her escape directing her to return to Snorrason. FAC ¶¶ 179 – 180. These are not isolated, independent acts – they are coordinated steps in a common scheme.

**Ongoing organization.** Ibanera LLC itself is the ongoing organization. It is a functioning business entity with multiple owners, employees, and operations. The TVPRA contemplates that trafficking can be facilitated through otherwise legitimate business structures – as the Eleventh Circuit recognized in *Red Roof* when it held that hotel operators could constitute venture participants. 21 F.4th at 725–27.

**Commercial sex act.** The Amended Complaint alleges that Plaintiff's sexual assault was committed "on account of" professional benefits – that Snorrason expressly linked Plaintiff's continued app development, salary, title, and job security to her sexual compliance. FAC ¶¶ 163 – 165, 171, 173. Under *Noble v. Weinstein*, 335 F. Supp. 3d 504, 517-21 (S.D.N.Y. 2018), career opportunities and professional advancement constitute "anything of value" for purposes of the TVPRA's commercial sex act definition. The Second Circuit elevated this to appellate law in *United States v. Raniere*, 55 F.4th 354, 366 (2d Cir. 2022), holding that anything of value "need not have a monetary or financial component" and encompasses intangible benefits such as maintaining a privileged position. The Eleventh Circuit itself has held that "thing of value" includes intangible objectives. *United States v. Nilsen*, 967 F.2d 539 (11th Cir. 1992) (overruled on other grounds).

**Financial benefit.** All Defendants benefited financially from the venture. Ibanera stood to gain from Plaintiff's ability to manage and retain clients, secure new clients at the conference, and generate commissions and transaction fees. FAC ¶ 166. Ibanera also stood to benefit from the continued development and monetization of Plaintiff's app, which was explicitly tied to her sexual compliance. FAC ¶ 167.

**2. The Conspiracy Claim Is Adequately Pleaded (Count 3).**

Count 3 alleges a conspiracy under 18 U.S.C. § 1594. The agreement is alleged through the coordinated conduct of the co-owners. Parr directed Plaintiff to travel to Singapore. FAC ¶ 58. Snorrason was the designated recipient. FAC ¶ 59. The trip was arranged through Ibanera's operations, and all three co-owners benefited from the arrangement through Ibanera's continued operations. FAC ¶¶ 58 – 65, 166 – 167. Parr's sexualized introduction of Plaintiff to Snorrason demonstrates a meeting of the minds regarding Snorrason's intentions. FAC ¶ 65. And after the

assault, Parr actively directed Plaintiff to return to Snorrason – conduct that is inexplicable absent an understanding of the scheme. FAC ¶¶ 179 – 180.

The Amended Complaint further alleges a pattern and practice: upon information and belief, Ibanera has engaged in a pattern of trafficking female employees across state lines and sexually exploiting them. FAC ¶¶ 197 – 198. Another employee, Japman Kharbanda, was flown to Singapore for work and made accusations of sexual assault against Snorrason, which had been previously reported to Ibanera. FAC ¶ 84. These allegations of prior conduct further support the inference of an agreement.

As for overt acts in Florida, the Amended Complaint identifies several: Parr's direction from Florida that Plaintiff travel to Singapore; Parr's purchase of Plaintiff's plane ticket; the communications between Parr and Plaintiff arranging the trip; and the introduction of Plaintiff to Snorrason via telephone while Plaintiff was in Florida. FAC ¶¶ 58 – 65. These are overt acts in furtherance of the conspiracy that took place in Florida.

### 3. Plaintiff's IIED Claim Is Viable (Count 17).

Snorrason argues that Count 17 should be dismissed because Singapore law governs Plaintiff's common-law tort claims and Singapore does not recognize intentional infliction of emotional distress. This argument is premature and, in any event, overstates the limitations of Singapore law.

*First*, the choice-of-law determination is premature at the motion to dismiss stage. While Snorrason cites the most significant relationship test, the analysis requires consideration of multiple factors – including the parties' domicile, the place where the relationship is centered, and the place of the conduct causing injury. Here, the relationship between Plaintiff and Snorrason was centered through Ibanera LLC, a Florida entity. The conduct that set the chain of events in motion

– Plaintiff's recruitment and direction to travel – occurred in Florida. The choice-of-law analysis, which turns on contested factual issues, should not be resolved on a motion to dismiss.

*Second*, Snorrason mischaracterizes *Reed v. Bellingham* (A'tty Gen. intervening), 2022 SGCA 60. *Reed* is a data protection case concerning interpretation of loss or damage under Singapore's Personal Data Protection Act 2012. It is not a sexual assault case and says nothing about the tort of assault, battery, or the rule in *Wilkinson v. Downton*, [1897] 2 Q.B. 57 (Eng.). While *Reed* reaffirmed the common law position that emotional distress *per se* is not independently actionable, that holding is inapposite here because the Amended Complaint does not allege emotional distress in the abstract – it alleges severe psychological trauma resulting from repeated violent rapes and batteries. FAC ¶¶ 383 – 413.

*Third*, Singapore law recognizes the tort in *Wilkinson v. Downton*, which imposes liability for intentionally causing physical harm through extreme conduct. Moreover, Singapore law permits recovery of emotional distress damages as consequential damages in connection with recognized torts such as assault and battery. The violent, repeated sexual assaults alleged here are precisely the type of extreme conduct to which these principles apply. Snorrason's argument that Singapore's "presumptive position" against recovery for emotional distress bars Plaintiff's claim ignores that this presumption is overcome when emotional distress is consequential to physical assault – as is plainly the case here.

**4. The Singapore Police Investigation Is Irrelevant.**

In his introduction, Snorrason touts that the Singapore police "cleared him of wrongdoing." This assertion fails on multiple grounds and should be disregarded entirely.

The Court cannot consider the Singapore police investigation at the Rule 12(b)(6) stage. Review is confined to the four corners of the complaint and documents attached to or incorporated

16

by reference in it. *Iqbal*, 556 U.S. at 678; *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). A foreign police report is neither central to Plaintiff's claims nor undisputed, and therefore may not be considered without converting the motion to summary judgment under Rule 12(d).

Even a full criminal acquittal after trial does not bar civil claims – one of the most well-established principles in American law. The criminal standard (beyond a reasonable doubt) differs fundamentally from the civil pleading standard (plausibility), which is explicitly not akin to a probability requirement. *Iqbal*, 556 U.S. at 678. A police clearance involving no adversarial proceeding, no judicial findings, and no evidentiary hearing carries even less weight than a full acquittal. Moreover, TVPRA civil claims under § 1595 do not require a criminal conviction; the civil remedy is entirely independent of criminal prosecution.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Snorrason's Motion to Dismiss in its entirety.

Dated this 3rd day of March, 2026.

                 Respectfully submitted,

                 **DEREK SMITH LAW GROUP, PLLC**
                 *Counsel for Plaintiff*

                 *s/ Derek T. Smith*
                 Derek T. Smith, Esq.
                 Florida Bar No.: 1014216
                 Derek Smith Law Group, PLLC
                 520 Brickell Key Drive, Suite O-301
                 Miami, FL 33131
                 Tel: (305) 946-1884
                 Derek@dereksmithlaw.com

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Danielb@dereksmithlaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on March 3, 2026, on all counsel of record on the service list below via CM/ECF.

By: */s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.

**SERVICE LIST**

**COLE SCHOTZ P.C.**
Scott J. Topolski
Florida Bar No. 0006394
2255 Glades Road, Suite 300E
Boca Raton, Florida 33431
Telephone: (561) 609-3856
Facsimile: (561) 423-0392
Email: stopolski@coleschotz.com
*Co-Counsel for Defendants Ibanera LLC,*
*Michael Carbonara, and David Parr*
**VIA CM/ECF**

**COGENT LAW GROUP, LLP**
Evan Ronald Smith
2001 L St. NW, Suite 500
Washington, DC 20036
Telephone: 202.644.8880
Email: esmith@cogentlaw.com
*Co-Counsel for Defendants Ibanera LLC,*
*Michael Carbonara, and David Parr*
**VIA CM/ECF**

**CARLTON FIELDS, P.A.**
Naomi M. Berry
Florida Bar No. 69916
2 Miami Central
700 NW 1st Avenue, Ste. 1200
Miami, FL 33136-4118
Telephone: (305) 530-0050
Email: nberry@carltonfields.com
*Counsel for Defendant Bjorn Snorrason*
**VIA CM/ECF**

**CARLTON FIELDS, P.A.**
Aaron S. Weiss
Florida Bar No. 48813
2 Miami Central
700 NW 1st Avenue, Ste. 1200
Miami FL, 33136-4118
Telephone: (305) 530-0050
Email: aweiss@carltonfields.com
*Counsel for Defendant Bjorn Snorrason*
**VIA CM/ECF**

**DLA PIPER LLP (US)**
Virginia Regis Callahan
Florida Bar No. 1058943
3111 W. Dr. Martin Luther King Jr. Blvd., Suite 200
Tampa, Florida 33607
Telephone: (410) 580-4328
Facsimile: (410) 580-3011
Email: Virginia.Callahan@us.dlapiper.com
*Counsel for Marriott International, Inc,*
*Starwood Hotels & Resorts Management Company, LLC, and*
*Starwood Hotels & Resorts Worldwide, LLC*
**VIA CM/ECF**

**DLA PIPER LLP (US)**
Ellen Dew
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
Tampa, Florida 33607
Telephone: (410) 580-4127
Fax: (410) 580-3001
Email: Ellen.Dew@us.dlapiper.com
*Counsel for Marriott International, Inc,*
*Starwood Hotels & Resorts Management Company, LLC, and*
*Starwood Hotels & Resorts Worldwide, LLC*
**VIA CM/ECF**