**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-CV-24118- LEIBOWITZ**

JANE DOE,

Plaintiff,

v.

IBANERA, LLC, et al.,

Defendants.

_______________________________________/

**DEFENDANTS MARRIOTT INTERNATIONAL, INC., STARWOOD HOTELS & RESORTS MANAGEMENT COMPANY, LLC, AND STARWOOD HOTELS & RESORTS WORLDWIDE, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF JANE DOE'S AMENDED COMPLAINT**

Rather than substantively respond to the arguments raised by the Hotel Defendants[1] in their Motion to Dismiss [Doc. 50], Plaintiff's Opposition ([Doc. 56],"Opposition" or "Opp.") doubles down on the basic flaws that require dismissal of her Amended Complaint [Doc. 36].

*First*, Plaintiff's arguments in support of personal jurisdiction fail as the claims in question do not arise from or relate to the Hotel Defendants' contacts with Florida and Federal Rule of Civil Procedure 4(k)(2) is inapplicable to the Hotel Defendants who is subject to general jurisdiction in Maryland or Delaware. *Second*, Plaintiff argues that there is no "equivalent remedy" available in Singapore to the TVPRA. Opp. at 2. But Plaintiff misstates the law, as an equivalent statutory remedy is not required as Singapore provides an adequate legal remedy. Moreover, the private and public interest factors clearly weigh in favor of the Singapore venue.

*Third*, Plaintiff's argument that she has alleged a "commercial sex act" as the threshold for her TVPRA claim utterly fails. Opp. at 10. Moreover, the FAC does not allege that the Hotel Defendants participated in a venture that violated the TVPRA as to Plaintiff, that the Hotel Defendants had actual or constructive knowledge of such venture, or that the Hotel Defendants knowingly benefitted from such venture. Instead, all Plaintiff alleges is that employees of the franchised hotel observed interactions between Plaintiff and Defendant Snorrason and did not adequately intervene, but this does nothing to state a TVPRA claim against the Hotel Defendants.

*Finally*, Plaintiff fails to state a negligence claim, as she fails to allege the requisite possession and control elements of her claim to impute the alleged inactions of the franchised hotel staff to the Hotel Defendants and as a result, Plaintiff has failed to allege that the Hotel Defendants owed her a duty under either Florida or Singapore law. In short, Plaintiff's Opposition cannot cure the fatal flaws in her claims against the Hotel Defendants and dismissal with prejudice is appropriate.

## ARGUMENT

### I. Plaintiff's Personal Jurisdiction Argument Eviscerates the Basic Standards for Personal Jurisdiction.

Plaintiff argues that the Hotel Defendants are subject to personal jurisdiction in this Court for two reasons: (1) because the "Hotel Defendants maintain extensive, continuous operations in Florida" and (2) under Fed. R. Civ. P. 4(k)(2). Opp. at 1. Both of these argument fail. Plaintiff

[1] Defined terms not specifically defined herein shall have the meanings ascribed to them in the Motion to Dismiss [Docket 50].

argues that *any* alleged contacts that the Hotel Defendants have with Florida "satisfy the 'arise out of or relate to' standard" because the Hotel Defendants operate other unrelated hotels in Florida under a franchising system. Opp. at 5. But Plaintiff's claims that she was trafficked or assaulted at a hotel in Singapore, operated by an independent franchisee in Singapore, do not arise out of or relate to the Hotel Defendants' contacts with entirely different franchised hotels located in Florida. Even *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) does not allow for personal jurisdiction over the Hotel Defendants in this case. 592 U.S. 351, 362 (2021) (while "some relationships will support jurisdiction without a causal showing[,] . . . [t]hat does not mean anything goes."). There must be a sufficient nexus between the Hotel Defendants' contacts with Florida and the litigation. *See Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1317 (11th Cir. 2025) ("To exercise specific personal jurisdiction, the defendant must have. . . establish[ed] contacts[] in the forum state and there must be a sufficient nexus between those contacts and the litigation."). Even accepting the Hotel Defendants have contacts with Florida through their hotel franchises and advertising, there is no nexus between those contacts and an assault that occurred entirely in Singapore. Accepting Plaintiff's contortion of the standard would eliminate the concept of specific personal jurisdiction for franchisors, as every franchisor would then be subject to jurisdiction in every location in which a franchised property was located, even for claims having nothing to do with those locations.

Plaintiff argues Fed. R. Civ. P. 4(k)(2) provides general jurisdiction for her claims, because the TVPRA is a federal statute and that the Hotel Defendants are not subject to general jurisdiction in Florida. Opp. at 6. But this argument misreads the language of the rule. By its very language, Rule 4(k)(2), only applies when a defendant is not subject to general jurisdiction in *any* state's courts. *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1307 (11th Cir. 2022) (citing Fed. R. Civ. P. 4(k)(2)). Plaintiff concedes that the Hotel Defendants are Delaware entities with their "principal places of business in Maryland," making them subject to general jurisdiction in those state courts. Opp. at 6; *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction."). In *Herederos*, by contrast, the defendant's "principal place of business [was not] in the United States, and it [was not] incorporated [t]here," nor were "its other contacts sufficient to render it 'at home' in the United States." 43 F.4th at 1308. As the Hotel Defendants are subject to general jurisdiction in both Delaware and Maryland, Rule

4(k)(2) does not provide an independent basis for personal jurisdiction in this case.

**II. Plaintiff's FAC Should Be Dismissed for Improper Venue.**

**a. Singapore is an adequate alternative forum.**

Plaintiff argues that Singapore is not an adequate alternative forum because Singapore's Prevention of Human Trafficking Act is purely a criminal statute. Opp. at 8. But the mere fact that the same specific statutory remedy may not exist in the alternative forum does not mean the forum is inadequate, where a legal remedy does exist. An alternative forum does not require identical remedies but will be adequate so long as it offers "at least some relief." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001); *see also Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) ("An adequate forum need not be a perfect forum."). "[S]ome inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." *Id.* at 1283. Singapore is an adequate forum for the dispute. The Singapore legal system also provides access to evidence and witnesses and permits actions in negligence and the recovery of damages in personal injury cases. Thus, Singapore provides an available and adequate alternative forum.

Plaintiff also raises the TVPRA's "extraterritorial jurisdiction" as a reason for why Florida is the appropriate venue. As an initial matter, the question of the extraterritorial application of the TVPRA has no bearing on whether *this* Court is the proper forum for Plaintiff's claims in this case. Even so, Plaintiff is incorrect that Congress specifically provided for extraterritorial jurisdiction of the civil remedy provision of the TVPRA. The statute is completely silent on the issue of extraterritorial application. "Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 335 (2016). To apply extraterritorially, the statute must "give[] a clear, affirmative indication" that it does. *Id.* at 337. "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).

Considering extraterritorial application of the TVPRA, the case law is, at best, mixed. Most courts that have considered the issue have held that it cannot be applied outside the territorial boundaries of the United States. *See Doe 1 v. Apple, Inc.*, 2021 WL 5774224, at *14–16 (D. D.C. Nov. 2, 2021), *aff'd on other grounds*, *Doe 1 v. Apple, Inc.*, 96 F.4th 403 (D.C. Cir. 2024) (Section 1596's grant of extraterritorial jurisdiction over criminal offenses was insufficient to expand the territorial scope of civil claims, and the absence of the same language in Section 1595 evidenced "an intentional decision not to extend extraterritorially the reach of the statute's civil

component.”); *Lun v. Milwaukee Electric Tool Co.*, 2025 WL 3443536, at *15 (E.D. Wis. Dec. 1, 2025) (civil remedy portion of TVPRA does not apply extraterritorially where the violation occurred outside of the United States); *see also Mia v. Kimberly-Clark Corp.*, 2025 WL 752564, at *6–8 (D.D.C. Mar. 10, 2025) (rejecting the Fourth Circuit’s analysis in *Howard*); *Pavlovich v. Gaiman*, 2025 WL 2819372, at *7–8 (W.D. Wis. Oct. 3, 2025) (rejecting *Howard* and noting that the TVPA’s civil remedy contains no clear indication of extraterritorial application). Even so, because Plaintiff’s TVPRA claim fails, it provides no basis for venue in this Court.

**b. Private and public factors favor dismissal.**

Plaintiff argues that the “Hotel Defendants overstate Singapore’s connection to this dispute by focusing exclusively on the location of the assault while ignoring the location of the trafficking venture’s infrastructure.” Opp. at 9. Instead, Plaintiff contends that the “key witnesses and evidence are in Florida” based on the fact that Plaintiff does work in Florida, that Ibanera is based in Florida and that the Hotel Defendants are United States-based companies. Opp. at 9. Plaintiff argues that “[t]he Singapore-based witnesses – hotel staff, paramedics, police – are peripheral to the TVPRA’s focus on venture participation and knowledge.” *Id.* But it is the conduct of those specific witnesses that Plaintiff alleges to be the basis for her claims against the Hotel Defendants. Thus, it defies both reason and credulity to suggest that they are “peripheral.” To prevail on her claim, Plaintiff must impute the knowledge of the hotel staff to the Hotel Defendants, rendering those witnesses critical, not “peripheral” to Plaintiff’s claims against the Hotel Defendants.

Regarding the public interest factors, Plaintiff suggests that “Florida has a strong interest in protecting employees who work in the state of Florida” and that the “TVPRA is a federal statute that this Court is equipped to apply without the foreign law complications.” Opp. at 9. But this does not address the public interest factors set forth in *Lambert* which require consideration of the “administrative difficulties …; the local interest in having localized controversies decided at home; having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.” *Lambert v. Melia Hotels Int’l S.A.*, 526 F. Supp. 3d 1207, 1222–23 (S.D. Fla. 2021) (quotation omitted). Plaintiff fails to address these factors at all and therefore concedes them.

**III. Plaintiff’s TVPRA Claim Fails.**

**a. There is no predicate “commercial sex act” alleged in Plaintiff’s FAC.**

As to the predicate "commercial sex act" required for a violation 18 U.S.C. § 1591, Plaintiff argues that she "was recruited to attend the Singapore conference under the guise of professional advancement, that Defendants used her employment relationship to coerce her attendance and that when she refused to submit to the sexual assaults, Defendants retaliated by terminating her professional opportunities." Opp. at 11. Plaintiff relies on *United States v. Raniere*, 55 F.4th 354 (2d Cir. 2022) and *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) to conclude that professional opportunities could constitute the "anything of value" portion of the TVPRA's definition of a "commercial sex act." The failure with this analysis is that Plaintiff neglects to give the phrase "on account of" any meaning.

Plaintiff's attempt to distinguish *Reed v. Barnes* is disingenuous, at best. Far from focusing only on the knowledge and participation elements of the TVPRA claim, the *Reed* court held specifically that "it is necessary that there be a causal connection between the sex act and the exchange of the thing of value." *See Reed v. Barnes*, 2025 WL 963072, at *3 (N.D. Tex. Mar. 31, 2025). "Courts have also held that 'on account of,' as used in § 1591, means 'because of' and requires a causal connection between the sex act and the conveyance of a thing of value." *Ramsbottom v. Ashton*, 2024 WL 4993391, at *4 (M.D. Tenn. Dec. 5, 2024); *see also Treminio v. Crowly Maritime Corp.*, 707 F. Supp. 3d 1234, 1245 (M.D. Fla. Dec. 13, 2023) ("Courts have interpreted . . . Section 1591's language to require a causal relationship between the 'anything of value' and the sex act to constitute a commercial sex act under the TVPRA."); *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) ("[T]he use of the phrase 'on account of which' suggests that there . . . needs to be a causal relationship between the sex act and an exchange of an item of value.") (citation omitted).

Far from alleging that threshold element, Plaintiff alleges that she was recruited to attend the Singapore conference independent of and prior to any sex act. And once there, Plaintiff alleges she was harassed and assaulted but she alleges no item of value that was given to her or received by her "on account of" any sex act. Like the Plaintiff in *Reed*, Plaintiff here has failed to allege facts "that enable the court to draw the reasonable inference that [the trafficker] provided [Plaintiff with something of value] because of, or 'on account of,' the alleged sex acts." *Reed*, 2025 WL 963072, at *3. Accepting Plaintiff's strained construction of the TVPRA statute would potentially convert any sexual assault into a trafficking claim, a result that is certainly not contemplated by the plain language of the statute.

**b. Plaintiff Fails to plausibly allege that the Hotel Defendants participated in a venture which violated the TVPRA as to Plaintiff.**

There is a critical distinction between a franchisor and hotel operator in the context of a TVPRA case. None of the allegations in the FAC establish that the Hotel Defendants participated in a venture violating the TVPRA or had actual or constructive knowledge of any such venture as to Plaintiff. Here, as in *Red Roof* and other cases involving claims against hotel franchisors, allegations regarding conduct or actions by the franchisee or its employees cannot establish the franchisor's participation in a venture. *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1067 (D. Colo. 2021); *S.C. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 2186173, at *2 (N.D. Ohio May 15, 2024) (granting summary judgment in favor of franchisor defendants on TVPRA claim).

Plaintiff argues that no venture was found in the *Red Roof* case because "the plaintiffs there alleged only generic 'sex trafficking ventures' involving unnamed traffickers, without alleging the specific franchise business relationship itself or tying knowledge allegations to the particular franchisors' operational control." Opp. at 12. But this argument does not support Plaintiff's claims. The Amended Complaint makes no allegations about a franchise relationship and the paragraphs that Plaintiff cites do not show participation in a venture by the Hotel Defendants. Paragraph 69 states only that "the Sheraton is owned and/or operated by the Hotel Defendants," while paragraphs 238–242 bizarrely and impossibly suggest that the Hotel Defendants somehow committed "sexual assault" and failed to place Plaintiff in "any future endeavors." FAC ¶ 69, 238–242; Opp. at 12.

Plaintiff's reliance on *Ricchio v. McLean*, is misguided. As an initial and critical distinction, the TVPRA claim in *Ricchio* was asserted not against a franchisor, but against the owner and operator of the motel. 853 F.3d 553, 555 (1st Cir. 2017). In *Ricchio*, the Court found that the plaintiff stated a TVPRA claim where the trafficker "had prior commercial dealings with the [hotel owners], which the parties ***wished*** to reinstate for profit," and the trafficker and hotel owners "expressed this ***intent*** by exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again.'" *Id.* It was "inferable that the [owners] understood that in receiving money as rent for the quarters where [the trafficker] was mistreating [the victim], they

were associating with him ***in an effort*** to force [the victim] to serve their business objective." *Id.* (emphasis added). Plaintiff's FAC contains no such allegations to enable the Court to conclude that the parties were participating in a venture.

Finding no support for her claims in the Amended Complaint itself, Plaintiff now relies on the License Agreement to argue that Plaintiff alleged operational control. But the express language of the Franchise Agreement negates this argument. To be sure, the Agreement provides that the franchisee and ***not*** Hotel Defendants have sole responsibility to operate the hotel. *See* Exhibit 1 to Tamburello Dec. at § 7.02 (hereinafter "License Agreement"). Moreover, this argument fails because the License Agreement only provides that the Hotel Defendants have the ability to control brand standards. *See* License Agreement at § 5.03. And the law is clear that that controlling brand standards alone is not enough. *See K.M. v. CPA Hotels of Atlanta, LLC*, 2023 WL 5747490, at *2 (N.D. Ga. Aug. 30, 2023) (allegations that "show that the franchisors' involvement was limited to uniformity and standardization of the brand have been found to be insufficient to establish complete control over the day-to-day operations of the franchisee's business.").

**c. The Hotel Defendants lacked actual or constructive knowledge of a venture that violated the TVPRA as to Plaintiff.**

The entirety of Plaintiff's claims against the Hotel Defendants is premised on the knowledge and actions of the Singapore Sheraton's employees. As these employees are not the Hotel Defendants' agents, their knowledge or actions cannot be imputed to the Hotel Defendants. Plaintiff alleges that because the franchisee had either actual or constructive knowledge of Plaintiff's trafficking, it follows that the Hotel Defendants had actual or constructive knowledge of Plaintiff's trafficking. However, for a direct liability claim, the law requires that the Hotel Defendants themselves must have actual or constructive knowledge of a venture which violates the TVPRA. To plead a direct liability claim, a plaintiff cannot rely on the franchisee's alleged knowledge because such a claim "depends upon Defendant['s] *own* state[] of mind." *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 705 (E.D. Mich. 2020); *see also Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, 2023 WL 8890229, at *5 (D.N.J. Dec. 26, 2023) (dismissing direct liability claim against franchisor where complaint did not adequately plead that franchisors, rather than franchisees, had "actual or constructive knowledge of plaintiff's particular trafficking").

Plaintiff argues that the "Amended Complaint alleges far more than constructive knowledge; it alleges actual, contemporaneous awareness by hotel staff of Plaintiff's distress" and

that "[k]nowledge of the franchisee's staff is properly imputed to the franchisor through the agency and reporting relationships established by the franchise agreement." Opp. at 13–14. Yet, the Amended Complaint does not allege an agency relationship or that any incident reports were made to "connect the dots" between the franchisee and the Hotel Defendants. *See K.H. v. Riti, Inc.*, 2023 WL 3644224, at *3 (N.D. Ga. Apr. 17, 2023), *aff'd* 2024 WL 505063 (11th Cir. Feb. 9, 2024) (Plaintiff must "'connect the dots' between the plaintiff's experience as a victim of sex trafficking and the specific defendant in the lawsuit," either by alleging "a 'direct association' between the defendant hotel and the plaintiff's trafficker, or by showing a 'continuous business relationship' between a defendant hotel and a sex trafficker" who trafficked the Plaintiff); *A.B. v. H.K. Grp. of Co., Inc.*, 2022 WL 467786, at *4 (N.D. Ga. Feb. 9, 2022) ("Plaintiff has not alleged any interactions between Defendants or their employees and the alleged traffickers sufficient to establish that Defendants 'took part in a common undertaking' with the alleged traffickers.").

Imputing knowledge of the franchisee's staff to a franchisor requires allegations of an agency relationship. In *Doe v. Wyndham Hotels & Resorts, Inc.*, the Court indicated that for the franchisors to be held vicariously liable "under Section 1595, knowledge or constructive knowledge of the plaintiff's sex trafficking must be imputed to them from the franchisee employees." 2025 WL 725268, at *8 (E.D. Va. Mar. 6, 2025). Yet, Plaintiff has made no allegations of an agency relationship and "a complaint must 'allege[] more than an ordinary franchise relationship.'" *Id.*

Even so, as franchisor, the Hotel Defendants do not control the day-to-day operations of the Singapore Sheraton and do not employ or supervise the hotel employees. *See* Exhibit A, Tamburello Dec. at ¶ 10, 13. The License Agreement explicitly provides that the Hotel Defendants and the franchisee "agree that the parties are completely separate entities and are not partners, joint venturers or agents of each other in any sense . . ." License Agreement at § 6.01. The imposition of brand standards aimed at promoting uniformity and quality across the franchise does not establish an agency relationship. *See L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1362 (S.D. Fla. 2022); *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *8–9 (N.D. Ca. May 19, 2023) (allegations that Franchisors "control[] the training, procedures, and policies for its brand hotels…and require[] franchises to comply with its brand standards" were "far too uncertain and vague to plausibly establish that the Franchisor Defendants controlled the franchisees' operations to such an extent that the franchisees were Franchisor Defendants' agents") (internal citations

omitted). Further, there are no allegations that any employee or other Defendant informed the Hotel Defendants of any of these alleged signs of trafficking. Thus, Plaintiff does not plausibly allege that the Hotel Defendants had actual or constructive knowledge of a venture that violated the TVPRA.

**d. The Hotel Defendants did not knowingly benefit from or participate in Plaintiff's alleged sex trafficking.**

Plaintiff argues that the Hotel Defendants "knowingly benefitted" financially from her trafficking through "royalties, franchise fees, loyalty-program earnings, and a share of room-rental and food-and-beverage revenue generated by Ibanera's repeated patronage of the Singapore Sheraton." Opp. at 14. However, Plaintiff's interpretation of the law erases the knowledge requirement, so that a defendant may be liable where they receive a benefit from a plaintiff's trafficking when they do not have actual or constructive knowledge of the trafficking or they have not participated in the venture. This is not the law in this Circuit.

In this Circuit, where a plaintiff fails to allege participation in a venture, they are unable to establish that the defendant "knew [they were] receiving some value from participating in the alleged venture." *Red Roof*, 21 F.4th at 724; *see also L.H.*, 604 F. Supp. 3d at 1359 (rejecting Plaintiff's argument that she pled the "knowingly benefitted from" element when she alleged an unsupportable Section 1591(a) venture); *H.G.*, 489 F. Supp. 3d at 705 ("That Defendants knew or should have known about trafficking by other (or unspecified) ventures in which they are not alleged to have participated is not enough under the financial benefit prong of the TVPRA."). The allegations that Plaintiff relies on to establish participation relate only to the franchisee and its employees. Because Plaintiff has not plausibly alleged the Hotel Defendants' participation, Plaintiff has also not plausibly alleged that they knowingly benefitted from the alleged venture. As such, Plaintiff's TVPRA claim must be dismissed.

## IV. Plaintiff Cannot Plausibly State a Claim for Negligence.

As an initial matter, it is not premature to resolve choice of law in this situation as no further factual development is necessary. In Florida, "absent special circumstances, '[t]he state where the injury occurred would . . . be the decisive consideration in determining the applicable choice of law.'" *In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 6072406, at *4 (S.D. Fla. Oct. 14, 2016). Here, there is no dispute that the injury occurred in Singapore.

Plaintiff argues that she has stated a claim under both Singapore and Florida law arguing

that "registered hotel guests are business invitees owed the highest duty of care" and that the Hotel Defendants' "own License Agreement grants them operational control over the franchise's safety and security protocols, establishing the requisite 'possession or control' of the premises for purposes of premises liability." Opp. at 15. Yet, Plaintiff does not cite to a specific provision of the License Agreement where it provides for such control. This is because the License Agreement expressly negates such control. *See* License Agreement at § 7.02.

Even under Florida law, a franchise relationship on its own does not place a duty on the franchisor with respect to an invitee of the franchisee. *See McDonald's Rests. of Fla., Inc. v. Doe*, 87 So. 3d 791, 792 (Fla. 2d DCA 2012) (franchisor in a premises liability case had no duty to prevent assault). Plaintiff has not alleged any facts to show that the Hotel Defendants control the Singapore Sheraton and has not adequately alleged the existence of any duty of the Hotel Defendants. Relying on the License Agreement to support her claims, Plaintiff concedes that the Hotel Defendants are not the operators of the hotel, and the assertion of a premises liability claim against a franchisor requires more than the requirement of brand standards. *See Madison v. Hollywood Subs, Inc.*, 997 So. 2d 1270, 1270 (Fla. 4th DCA 2009) (affirming summary judgment in favor of franchisor where the franchisor merely implemented brand standards to ensure "uniformity in the standardization of products and services," which is not sufficient); *see also Walker v. Super 8 Worldwide, Inc.*, 2012 WL 13102078, at *3 (M.D. Fla. June 21, 2012) (claim failed where plaintiff failed to show that the franchisor owned, operated, or controlled the subject property). Lacking any well-pled allegation that the Hotel Defendants controlled the day-to-day operations of the premises of the Singapore Sheraton, the negligence claim should be dismissed.

Plaintiff relies on the alleged inaction of the hotel staff and nothing more. Yet, Plaintiff fails to allege sufficient facts to suggest that the Hotel Defendants knew or should have known of the dangerous propensities of Plaintiff's alleged trafficker. Any knowledge of the Singapore Sheraton's staff as to the events alleged in the FAC cannot be imputed to the Hotel Defendants. As such, Plaintiff has alleged no facts to support the existence of a legal duty running between the Hotel Defendants and her. For these reasons, Plaintiff's claim for negligence should be dismissed.

## CONCLUSION

For the reasons set forth herein and in their Motion to Dismiss, the Hotel Defendants respectfully request that this Court dismiss the Amended Complaint in its entirety with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: March 10, 2026

By: */s/ Virginia Regis Callahan*

Virginia Regis Callahan
Florida Bar No. 1058943
Virginia.Callahan@us.dlapiper.com
**DLA PIPER LLP (US)**
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 200
Tampa, Florida 33607-6233
Telephone: 410.580.4328
Facsimile: 410.580.3011

and

Ellen Dew (admitted *Pro Hac Vice*)
Ellen.Dew@us.dlapiper.com
**DLA PIPER LLP (US)**
650 South Exeter Street, Suite 1100
Baltimore, Maryland 21202
Telephone: 410.580.4127
Facsimile: 410.580.3001

*Counsel for Marriott International, Inc., Starwood Hotels & Resorts Management Company, LLC, and Starwood Hotels & Resorts Worldwide, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2026, I electronically filed the foregoing document via CM/ECF, which caused a true and correct copy to be served electronically upon all counsel of record.

*/s/ Virginia Regis Callahan*
Virginia Regis Callahan