**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-cv-24118-DSL**

JANE DOE,

          Plaintiff,

v.

IBANERA LLC, *et al.*,

          Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS**
**IBANERA LLC, MICHAEL CARBONARA, AND DAVID PARR'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**I. INTRODUCTION**

Plaintiff Jane Doe ("Plaintiff"), by and through undersigned counsel, respectfully submits this Response in Opposition to Defendants Ibanera LLC ("Ibanera"), Michael Carbonara ("Carbonara"), and David Parr's ("Parr") (collectively, the "Ibanera Defendants") Motion to Dismiss (the "Motion") [ECF No. 60]. For the reasons set forth below, the Motion should be denied in its entirety.

The Ibanera Defendants seek dismissal on two grounds: (1) forum non conveniens, and (2) failure to state a claim under Rule 12(b)(6) as to Counts 1, 2, 3, 11, 12, 13, 14, and 17. Each argument fails.

Forum non conveniens is inapplicable because Singapore is not an adequate alternative forum. Singapore's Prevention of Human Trafficking Act 2014 is an exclusively criminal statute that provides no private civil right of action for trafficking victims. This case falls squarely within the exception recognized by *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981), for forums

offering "no remedy at all." Dismissing this case to Singapore would not merely disadvantage Plaintiff – it would extinguish her federal statutory claims entirely.

The Ibanera Defendants' 12(b)(6) arguments fare no better. The Amended Complaint alleges in detail that the Ibanera Defendants – as co-owners and operators of a Florida-based company – coordinated, directed, and profited from a venture that recruited Plaintiff to travel to Singapore where she was subjected to repeated sexual assault by their co-owner, Bjorn Snorrason. These allegations are more than sufficient to state plausible claims under the TVPRA and Florida negligence law.

## II. STATEMENT OF FACTS

The Amended Complaint's [ECF No. 36] ("FAC") factual allegations, which must be accepted as true at this stage, establish the following.

Plaintiff was employed by Ibanera to develop a cryptocurrency payment application, investing approximately $300,000 of her own funds over two years. FAC ¶¶ 31–34. Ibanera is a Wyoming LLC with its principal place of business in Sunrise, Florida. FAC ¶ 6. Snorrason, Carbonara, and Parr were the three co-owners of Ibanera. FAC ¶¶ 26-28.

In or around July 2024, Ibanera promoted Plaintiff to Client Relations and Success Manager and placed her on a salary. FAC ¶ 50. However, Ibanera soon halted all work on Plaintiff's application and began inconsistently paying her owed compensation. FAC ¶¶ 53–56. Plaintiff's continued employment, compensation, commissions, and app development were conditioned – explicitly or implicitly – on compliance with the demands of Ibanera's owners, including attendance at business trips. FAC ¶ 57.

In early September 2024, Parr directed Plaintiff from Florida to travel to Singapore to attend the TOKEN2024 cryptocurrency convention. FAC ¶¶ 58–59. The trip was arranged through

Ibanera's Florida operations: Parr purchased Plaintiff's plane ticket, arranged lodging, and communicated logistics via telephone and text message from Florida. FAC ¶¶ 62–63. When introducing Plaintiff to Snorrason via telephone, Parr described her as "the sexiest and most knowledgeable person with the most class that I can send you for this trip." FAC ¶ 65.

Over the course of several days in Singapore, Snorrason subjected Plaintiff to repeated sexual harassment, drugging, assault, and rape. FAC ¶¶ 72–179. Snorrason drugged Plaintiff's drink; paramedics confirmed a near-zero blood alcohol content despite Snorrason's insistence she was merely intoxicated. FAC ¶¶ 114–130. Snorrason raped Plaintiff while she was incapacitated. FAC ¶¶ 140–145. He raped her again on subsequent nights. FAC ¶¶ 161, 169. Snorrason extended Plaintiff's trip against her will, forced her to stay in his room, and threatened her when she tried to leave. FAC ¶¶ 151–159, 175.

Critically, Snorrason made clear that Plaintiff's professional future depended on her sexual compliance, telling her "sleeping with the boss has its perks" and that her app development, salary, title, and job security were tied to their sexual relationship. FAC ¶¶ 163–165, 171, 173. Snorrason also told Plaintiff that Parr and Carbonara agreed she would "get whatever she wanted" now that she was Snorrason's "girlfriend." FAC ¶ 171.

When Plaintiff attempted to escape by having a friend purchase a flight home, Snorrason blocked the door and threatened that "if you leave now, this will be the last thing you do." FAC ¶¶ 174–175. Parr actively messaged Plaintiff during her escape, directing her to return to Snorrason. FAC ¶¶ 179–180.

After Plaintiff returned to Miami and reported the assaults to Carbonara, Ibanera cut off all communications, ceased work on her application, and terminated her. FAC ¶¶ 182–199. Upon information and belief, Ibanera has engaged in a pattern of trafficking female employees; another

employee, Japman Kharbanda, was flown to Singapore for work and made accusations of sexual assault against Snorrason, which had been previously reported to Ibanera. FAC ¶¶ 84, 197–198.

### III. LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim need only be "plausible on its face" to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For forum non conveniens, the defendant bears a heavy burden, and the plaintiff's choice of forum is entitled to substantial deference. *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1343 (11th Cir. 2020).

### IV. ARGUMENT

**A.      The Forum Non Conveniens Motion Should Be Denied.**

The Ibanera Defendants bear a heavy burden on forum non conveniens. The Eleventh Circuit has held that courts must "require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest" before denying access to U.S. courts. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (citing *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 n.7 (11th Cir. 1983)). The Ibanera Defendants do not come close to meeting this standard.

**1.      Singapore Is Not an Adequate Alternative Forum.**

The Ibanera Defendants' forum non conveniens motion fails at the threshold because Singapore is not an adequate alternative forum for Plaintiff's federal trafficking claims. Singapore's Prevention of Human Trafficking Act 2014 is an exclusively criminal and administrative statute. It provides no private civil right of action for trafficking victims to sue their traffickers or entities that benefited from trafficking. It contains no civil damages provision, no

mechanism for suing third-party beneficiaries of trafficking, and no equivalent to 18 U.S.C. § 1595. The only compensation mechanism available is a discretionary criminal compensation order under Singapore's Criminal Procedure Code § 359, available only after a criminal conviction.

Under *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), while a less favorable change in law generally does not defeat forum non conveniens, the critical exception applies when "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." This is not a case of "lesser remedies" – it is the complete absence of any civil remedy for trafficking. Plaintiff's core federal claims – Counts 1 through 3 – have no Singaporean equivalent whatsoever.

The TVPRA's civil remedy under § 1595 represents a deliberate congressional policy choice to empower trafficking victims with civil recourse. Dismissal to a forum that lacks any equivalent remedy would not merely disadvantage Plaintiff; it would extinguish her most important claims entirely. This Court should not require a trafficking victim to abandon her federal statutory rights to pursue diminished common-law claims in a foreign jurisdiction.

The Ibanera Defendants cite *Lambert v. Melia Hotels Int'l S.A.*, 526 F. Supp. 3d 1207 (S.D. Fla. 2021), but that case involved a slip-and-fall negligence claim at a Bahamas resort – a garden-variety tort that could be sufficiently litigated in the alternative forum. This case involves federal sex trafficking claims with no foreign equivalent, making *Lambert* inapposite.

### 2. The Private and Public Interest Factors Favor Retention.

Even if the Court were to reach the private and public interest factors, they favor retention of this case. While the physical assaults occurred in Singapore, the trafficking venture – recruitment, enticement, and transportation – was orchestrated from Florida through Ibanera's Florida operations. The Ibanera Defendants are all in Florida. Key documentary evidence

regarding the venture's planning, communications, employment records, and financial arrangements is in Florida or the United States.

The Ibanera Defendants emphasize the location of witnesses in Singapore, but the critical evidence for the TVPRA claims, venture planning, employment records, communications between Defendants, and financial records, is in Florida. While certain evidence (hotel records, police reports, medical records) is in Singapore, modern discovery tools, including the Hague Evidence Convention and letters rogatory, provide mechanisms to obtain such evidence.

Florida has a direct interest in protecting individuals who perform work in this State from trafficking schemes organized through Florida-based entities. The TVPRA is a federal statute that this Court routinely applies. The Ibanera Defendants also cannot demonstrate that Plaintiff can reinstate her TVPRA suit in Singapore, because she cannot. Dismissal would not transfer the case; it would eliminate Plaintiff's federal statutory claims altogether. See *Otto Candies*, 963 F.3d at 1337–39 (plaintiff's choice of home forum is entitled to the highest deference).

**B.      Counts 1, 2, and 3 (TVPRA Claims) State Plausible Claims.**

The Ibanera Defendants' arguments for dismissal of the TVPRA claims rest on fundamental mischaracterizations of both the Amended Complaint's allegations and the governing legal standard. As thoroughly discussed above, the Amended Complaint contains detailed factual allegations, not conclusory assertions, establishing each element of TVPRA liability.

**1.      The Amended Complaint Plausibly Alleges a "Commercial Sex Act."**

The Ibanera Defendants argue that no "commercial sex act" occurred because no one "paid something of value in relation to [Plaintiff] performing sex acts." This argument reflects an erroneously narrow reading of the statute. The TVPRA defines "commercial sex act" as "any sex

act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). The term "anything of value" is not limited to monetary payments.

In *Noble v. Weinstein*, 335 F. Supp. 3d 504, 517–21 (S.D.N.Y. 2018), the court held that career opportunities and professional advancement constitute "anything of value" for purposes of the TVPRA's commercial sex act definition. The Second Circuit elevated this to appellate law in *United States v. Raniere*, 55 F.4th 354, 366 (2d Cir. 2022), holding that "anything of value" need not have a monetary or financial component and encompasses intangible benefits such as maintaining a privileged position within an organization. The Eleventh Circuit itself has recognized that "thing of value" includes intangible objectives. *United States v. Nilsen*, 967 F.2d 539 (11th Cir. 1992) (overruled on other grounds).

Here, the Amended Complaint alleges that Snorrason expressly linked Plaintiff's continued app development, salary, title, and job security to her sexual compliance. FAC ¶¶ 163–165, 171, 173. Snorrason told Plaintiff that "sleeping with the boss has its perks" and that her professional future was tied to their sexual relationship. These employment benefits – salary, title, job security, and the development and monetization of her $300,000 application investment – are plainly "things of value" exchanged on account of sex acts. Under *Noble* and *Raniere*, this is a textbook commercial sex act.

### 2. The TVPRA Venture Is Adequately Alleged (Count 2).

The Ibanera Defendants argue that the Amended Complaint fails to allege a TVPRA "venture," importing structural requirements from RICO that have been expressly rejected in the TVPRA context. The TVPRA defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6). The Eleventh Circuit in *Red Roof* interpreted this term to require only that the defendant took part in a common undertaking

or enterprise involving risk and potential profit. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). The court defined "venture" by its plain, ordinary dictionary meaning without imposing any structural requirements. *Id.*

The Ibanera Defendants' reliance on RICO's enterprise requirements is misplaced. RICO requires three structural features: (1) a purpose, (2) relationships among associates, and (3) longevity sufficient to permit pursuit of the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). The TVPRA demands none of these. The Seventh Circuit has held that a continuous business relationship giving rise to participation in a venture suffices. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 557–59 (7th Cir. 2023). The First Circuit found a venture existed between a motel operator and a single trafficker based on an entirely informal arrangement that would never satisfy RICO's structural requirements. *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017).

No court of appeals has held that the TVPRA's venture requirement incorporates the *Reves v. Ernst & Young*, 507 U.S. 170 (1993), "operation or management" test. The district court decisions the Ibanera Defendants cite – including *MSP Recovery Claims* and *Montoya*–address RICO claims, not TVPRA claims, and their reasoning has not been adopted in the TVPRA context.

The Amended Complaint alleges facts sufficient to establish a venture under the TVPRA's actual standard. First, common purpose and coordinated conduct: Snorrason, Carbonara, and Parr were co-owners of Ibanera who collectively directed Plaintiff's work and travel. FAC ¶¶ 38–39, 42–43. Parr directed Plaintiff to travel to Singapore specifically to meet Snorrason. FAC ¶¶ 58–59. Parr purchased her ticket. FAC ¶ 63. Parr introduced Plaintiff with a sexualized description signaling Snorrason's intentions. FAC ¶ 65. Snorrason confirmed to Plaintiff that Parr and Carbonara agreed she would "get whatever she wanted" now that she was Snorrason's "girlfriend."

FAC ¶ 171. And Parr messaged Plaintiff during her escape directing her to return to Snorrason. FAC ¶¶ 179–180. These are not isolated, independent acts–they are coordinated steps in a common scheme.

Second, ongoing organization: Ibanera LLC itself is the ongoing organization. It is a functioning business entity with multiple owners, employees, and operations. The TVPRA contemplates that trafficking can be facilitated through otherwise legitimate business structures– as the Eleventh Circuit recognized in *Red Roof* when it held that hotel operators could constitute venture participants. 21 F.4th at 725–27.

Third, financial benefit: All Defendants benefited financially from the venture. Ibanera stood to gain from Plaintiff's ability to manage and retain clients, secure new clients at the conference, and generate commissions and transaction fees. FAC ¶ 166. Ibanera also stood to benefit from the continued development and monetization of Plaintiff's app, which was explicitly tied to her sexual compliance. FAC ¶ 167. The Ibanera Defendants' argument that any benefit was "never realized" is irrelevant at the pleading stage and, in any event, misreads the statute – § 1595(a) requires only that the defendant "knowingly benefit[ted]," and the knowing receipt of labor obtained through a trafficking venture satisfies this element. See *Red Roof*, 21 F.4th at 725– 27.

Fourth, knowledge: Under *Red Roof*, a plaintiff need only plead that the defendant "knew or should have known" of the trafficking. 21 F.4th at 726. Here, the Amended Complaint alleges that another Ibanera employee, Japman Kharbanda, had previously been flown to Singapore and made accusations of sexual assault against Snorrason, which were reported to Ibanera. FAC ¶ 84. This prior incident–involving the same perpetrator, the same location, and the same pattern of

sending female employees to Singapore–gave the Ibanera Defendants constructive knowledge that sending Plaintiff to Singapore to work with Snorrason posed a risk of sexual exploitation.

### 3.    Direct Liability Under § 1591(a)(1) Is Adequately Alleged (Count 1).

Count 1 alleges that the Ibanera Defendants "recruit[ed], entice[d], ... transport[ed], [and] provide[d]" Plaintiff in connection with a sex trafficking venture. 18 U.S.C. § 1591(a)(1). The Amended Complaint alleges precisely this: Parr recruited and enticed Plaintiff to travel to Singapore, purchased her plane ticket, arranged her lodging, and transported her to a foreign country where she was provided to Snorrason–their co-owner–who subjected her to repeated sexual assault. FAC ¶¶ 58–65.

The Ibanera Defendants' argument that they did not "expect[] or intend[]" harm is a factual assertion improper at the pleading stage. The Amended Complaint alleges otherwise: Parr's sexualized introduction of Plaintiff (FAC ¶ 65), the prior accusation of sexual assault against Snorrason by another female employee sent to Singapore (FAC ¶ 84), and Parr's directive that Plaintiff return to Snorrason during her escape (FAC ¶¶ 179–180) support a plausible inference that the Ibanera Defendants knew, or were deliberately indifferent to, the risk that Plaintiff would be subjected to sexual exploitation.

### 4.    The Conspiracy Claim Is Adequately Pleaded (Count 3).

Count 3 alleges a conspiracy under 18 U.S.C. § 1594. A conspiracy requires an agreement between two or more persons and knowledge of the essential nature of the conspiracy's unlawful scheme. See *United States v. Bascaro*, 742 F.2d 1335, 1359–60 (11th Cir. 1984). Conspiracy may be demonstrated by circumstantial evidence, and a defendant need not know all details of the conspiracy. *Id.*

The agreement is alleged through the coordinated conduct of the co-owners. Parr directed Plaintiff to travel to Singapore. FAC ¶ 58. Snorrason was the designated recipient. FAC ¶ 59. Parr's sexualized introduction of Plaintiff to Snorrason demonstrates a meeting of the minds regarding Snorrason's intentions. FAC ¶ 65. Snorrason confirmed that Parr and Carbonara agreed Plaintiff would benefit professionally from the sexual relationship. FAC ¶ 171. And after the assault, Parr actively directed Plaintiff to return to Snorrason–conduct that is inexplicable absent an understanding of the scheme. FAC ¶¶ 179–180.

The Amended Complaint further alleges a pattern: upon information and belief, Ibanera has engaged in a pattern of trafficking female employees to Singapore. FAC ¶¶ 197–198. Another employee was flown to Singapore and made accusations of sexual assault against Snorrason, which had been previously reported to Ibanera. FAC ¶ 84. These allegations of prior conduct further support the inference of an agreement.

The Ibanera Defendants' contention that Parr's statement – calling Plaintiff "the sexiest and most knowledgeable person with the most class that I can send you" – is "merely unpleasant" trivializes its significance. Viewed in context and drawing all reasonable inferences in Plaintiff's favor, as the Court must at this stage, the statement signals that Parr was presenting Plaintiff to Snorrason in sexualized terms, consistent with the alleged scheme of providing female employees for Snorrason's sexual exploitation.

## C. Counts 11 Through 14 (Negligence Claims) State Plausible Claims.

### 1. Count 11 (General Negligence).

Under Florida law, duty is determined by whether the defendant's conduct created a foreseeable zone of risk. *McCain v. Florida Power Corp.*, 593 So. 2d 500, 502–04 (Fla. 1992) (citing *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989) ("Where a defendant's conduct creates a

foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses."). Duty is a "minimal threshold" requirement, and the relevant inquiry is whether the defendant's conduct created a foreseeable zone of risk–not whether the defendant could foresee the specific injury that occurred. *Id.*

The Ibanera Defendants owed a duty to Plaintiff because they directed her to travel to a foreign country to work closely with an individual about whom they had received prior complaints of sexual misconduct. FAC ¶ 84. Florida law holds that a prior similar incident involving the same perpetrator is highly probative of foreseeability. *Stevens v. Jefferson*, 436 So. 2d 33, 35 (Fla. 1983) (holding that a proprietor has a duty to protect against foreseeable criminal acts, with foreseeability established by a general pattern of prior incidents); *Nova Southeastern University, Inc. v. Gross*, 758 So. 2d 86, 89–90 (Fla. 2000) (holding that an entity assigning an individual to a known dangerous situation may be liable).

The Amended Complaint specifically alleges that another female employee, Japman Kharbanda, was previously sent to Singapore to work with Snorrason and made accusations of sexual assault against him, which were reported to Ibanera. FAC ¶ 84. This prior incident – involving the same perpetrator, the same location, and the same modus operandi – gave Ibanera actual or constructive knowledge that sending Plaintiff to Singapore to work with Snorrason posed a foreseeable risk of sexual assault. The Ibanera Defendants' assertion that this prior complaint is insufficient to establish foreseeability is a factual dispute inappropriate for resolution at the pleading stage.

The Florida Supreme Court's decision in *Malicki v. Doe*, 814 So. 2d 347 (Fla. 2002), is directly on point. *Malicki* held that negligent supervision claims were allowed where the employer

"knew or should have known" of the employee's propensity for sexual assault, and that "the core predicate for imposing liability is one of reasonable foreseeability–the cornerstone of our tort law." *Id.* (quoting *Garcia v. Duffy*, 492 So.2d 435, 438 (Fla. 2nd DCA 1986)). The prior accusation against Snorrason, combined with the pattern of sending female employees to Singapore, satisfies the foreseeability requirement at the pleading stage.

Nor were Snorrason's criminal acts a superseding intervening cause as a matter of law. Where the very risk that makes a defendant negligent is the risk of third-party criminal conduct, the criminal act cannot be a superseding cause. *Nova Southeastern*, 758 So. 2d at 90. Here, the Amended Complaint alleges that Ibanera knew of the risk of sexual assault by Snorrason and sent Plaintiff into that dangerous situation anyway. The criminal conduct is the precise harm that Ibanera's negligence made foreseeable.

### 2.    Count 12 (Negligent Retention).

Under Florida law, negligent retention arises when, during the course of employment, the employer becomes aware or should have become aware of problems indicating the employee's unfitness and fails to take further action. *Garcia*, 492 So. 2d at 438–39. Specific knowledge of the individual's particular dangerous propensity is not required; a general awareness of the propensity for the type of harm that occurs suffices.

The Ibanera Defendants argue that Plaintiff fails to plead "the date, content, recipient, investigation, or outcome" of the prior accusation against Snorrason. But this level of specificity is not required at the pleading stage. The Amended Complaint alleges that another female employee was flown to Singapore and made accusations of sexual assault against Snorrason which had been previously reported to Ibanera. FAC ¶ 84. This is sufficient to plausibly plead that Ibanera knew or should have known of Snorrason's dangerous propensities and nevertheless continued to

allow him to interact closely with female employees. Detailed information about the prior report – its exact date, recipient, and outcome – is within the Ibanera Defendants' exclusive possession and is properly the subject of discovery.

### 3.       Count 13 (Negligent Supervision).

The Ibanera Defendants argue they could not have "supervised or controlled Snorrason's alleged off-hours criminal acts in Singapore." This misstates the claim. The negligence is not the failure to supervise Snorrason during the assaults; it is the failure to implement any safeguards, chaperones, or safety protocols *before* sending Plaintiff on the trip–particularly in light of the prior complaint. Ibanera could have declined to send Plaintiff to Singapore, sent a companion or additional employees, established check-in protocols, or at minimum warned Plaintiff about the prior accusation against Snorrason. The failure to take any such precautions constitutes negligent supervision.

Moreover, the Ibanera Defendants' characterization of the assaults as "off-hours" criminal conduct is directly contradicted by the Amended Complaint, which alleges that the assaults occurred in the course of a business trip that the Ibanera Defendants directed, organized, and funded. FAC ¶¶ 58–65. Business trips blur the line between on-duty and off-duty conduct, and an employer that sends an employee to a foreign country to work closely with a known danger cannot disclaim responsibility by labeling the resulting harm "off-hours."

### 4.       Count 14 (Negligent Failure to Train).

The Ibanera Defendants dismiss the failure-to-train claim as "conclusory" without identifying any specific deficiency. However, the Amended Complaint alleges that Ibanera failed to train employees on recognizing and reporting sexual harassment and assault, failed to establish policies for safe business travel, and failed to train management on responding to complaints of

sexual misconduct. These are specific and cognizable training failures, particularly in light of the prior complaint against Snorrason. An employer that receives a sexual assault complaint against a co-owner and then sends another female employee to work with that person–without any training, policies, or protocols in place–has breached a duty of care.

The Ibanera Defendants' argument that these negligence counts "substantially overlap" and are "duplicative" does not warrant dismissal. Federal courts routinely permit alternative and overlapping theories of negligence at the pleading stage. Fed. R. Civ. P. 8(d)(2) expressly permits a party to set out two or more statements of a claim alternatively.

**D.      Count 17 States a Plausible Claim.**

The Ibanera Defendants argue that Plaintiff's negligent infliction of emotional distress claim (Count 17) fails because no duty exists and because Plaintiff does not satisfy the "impact rule." Both arguments fail.

First, as established above, the Ibanera Defendants did owe a duty to Plaintiff. Second, Florida's impact rule is satisfied here because the underlying conduct involved direct physical contact–namely, sexual assault. The Florida Supreme Court has held that a plaintiff may meet the impact rule's "rather slight requirements" through "any outside force or substance that touches the body, no matter how large or small, visible or invisible," and once impact is established, the plaintiff may recover for all emotional distress stemming from the incident. *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007). Sexual assault involving nonconsensual physical contact and penetration plainly constitutes sufficient "impact" under *Willis*.

Additionally, the Florida Supreme Court has recognized that emotional distress is recoverable for intentional torts without requiring physical impact. *Eastern Airlines, Inc. v. King*, 557 So. 2d 574 (Fla. 1990) (adopting Restatement (Second) of Torts § 46 and recognizing the tort

of intentional infliction of emotional distress under which emotional distress is recoverable even absent physical impact). To the extent the underlying conduct constitutes intentional misconduct by the Ibanera Defendants, including their alleged intentional facilitation of trafficking, the impact rule presents no barrier.

**E.      Workers' Compensation Exclusivity Does Not Bar These Claims.**

The Ibanera Defendants suggest, without committing to the argument, that workers' compensation exclusivity under Fla. Stat. § 440.11 may bar Plaintiff's negligence claims. This argument fails for multiple reasons.

First, state workers' compensation exclusivity cannot bar federal statutory claims. The Supreme Court has held that state workers' compensation provisions do not preempt independent federal causes of action. *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649–50 (1990). The TVPRA (18 U.S.C. § 1595) creates an independent federal right that Florida's § 440.11 cannot override.

Second, sex trafficking is not a "workplace injury" arising out of work performed in the course and scope of employment – it is criminal conduct entirely outside the workers' compensation system. Third, § 440.11(1)(b) provides an intentional tort exception where the employer engaged in conduct "virtually certain to result in injury" while concealing the danger.

Fourth, individual officers and directors lose immunity under § 440.11(1) when their conduct constitutes a violation of law carrying a maximum penalty exceeding 60 days' imprisonment – whether or not a violation was formally charged. Fla. Stat. § 440.11(1); *Kennedy v. Moree*, 650 So. 2d 1102 (Fla. 4th DCA 1995) (holding officers and directors lose statutory immunity when their conduct constitutes criminal activity punishable by more than 60 days' imprisonment); *Pendergrass v. R.D. Michaels, Inc.*, 936 So. 2d 684 (Fla. 4th DCA 2006) (confirming criminal-conduct exception applies to individual officers and directors). Human

trafficking under section 787.06, Florida Statutes, ranges from a second-degree felony to a capital felony, with penalties from 15 years' imprisonment to life. See Fla. Stat. §§ 787.06, 775.082. Even the least severe classification vastly exceeds the 60-day threshold.

**F.      Claims Against Carbonara and Parr Individually Are Viable.**

The Ibanera Defendants' argument that Carbonara and Parr are individually entitled to dismissal fails. As to Parr: the Amended Complaint alleges that Parr personally directed Plaintiff to travel to Singapore (FAC ¶ 58), purchased her plane ticket (FAC ¶ 63), introduced her to Snorrason in sexualized terms (FAC ¶ 65), and directed her to return to Snorrason during her escape (FAC ¶¶ 179–180). These are specific, concrete allegations of participation–not "routine business communications."

As to Carbonara: the Amended Complaint alleges that Carbonara was one of three co-owners who collectively directed Ibanera's operations (FAC ¶¶ 38–39), that Snorrason confirmed Carbonara agreed Plaintiff would benefit from the sexual relationship (FAC ¶ 171), and that Carbonara received Plaintiff's report of the assaults and responded by terminating her and cutting off communications (FAC ¶¶ 182–199). The retaliation, terminating a trafficking victim who reported her assault, is itself evidence of participation in the venture. At a minimum, these allegations raise a plausible inference that Carbonara knew of and acquiesced in the scheme.

The Ibanera Defendants' request for dismissal with prejudice is, at best, premature and unwarranted. Even if any count were found deficient, the appropriate remedy at this early stage is leave to amend, not dismissal with prejudice.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Ibanera Defendants' Motion to Dismiss in its entirety.

Dated this 17th day of March, 2026.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*


*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Danielb@dereksmithlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on March 17, 2026, on all counsel of record on the service list below via CM/ECF.

By: */s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.

## SERVICE LIST

**COLE SCHOTZ P.C.**
Scott J. Topolski
Florida Bar No. 0006394
2255 Glades Road, Suite 300E
Boca Raton, Florida 33431
Telephone: (561) 609-3856
Facsimile: (561) 423-0392
Email: stopolski@coleschotz.com
*Co-Counsel for Defendants Ibanera LLC,*
*Michael Carbonara, and David Parr*
**VIA CM/ECF**

**COGENT LAW GROUP, LLP**
Evan Ronald Smith
2001 L St. NW, Suite 500
Washington, DC 20036
Telephone: 202.644.8880
Email: esmith@cogentlaw.com
*Co-Counsel for Defendants Ibanera LLC,*
*Michael Carbonara, and David Parr*
**VIA CM/ECF**

**CARLTON FIELDS, P.A.**
Naomi M. Berry
Florida Bar No. 69916
2 Miami Central
700 NW 1st Avenue, Ste. 1200
Miami, FL 33136-4118
Telephone: (305) 530-0050
Email: nberry@carltonfields.com
*Counsel for Defendant Bjorn Snorrason*
**VIA CM/ECF**

**CARLTON FIELDS, P.A.**
Aaron S. Weiss
Florida Bar No. 48813
2 Miami Central
700 NW 1st Avenue, Ste. 1200
Miami FL, 33136-4118
Telephone: (305) 530-0050
Email: aweiss@carltonfields.com
*Counsel for Defendant Bjorn Snorrason*
**VIA CM/ECF**

**DLA PIPER LLP (US)**
Virginia Regis Callahan
Florida Bar No. 1058943
3111 W. Dr. Martin Luther King Jr. Blvd., Suite 200
Tampa, Florida 33607
Telephone: (410) 580-4328
Facsimile: (410) 580-3011
Email: Virginia.Callahan@us.dlapiper.com
*Counsel for Marriott International, Inc,*
*Starwood Hotels & Resorts Management Company, LLC, and*
*Starwood Hotels & Resorts Worldwide, LLC*
**VIA CM/ECF**

**DLA PIPER LLP (US)**
Ellen Dew
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
Tampa, Florida 33607
Telephone: (410) 580-4127
Fax: (410) 580-3001
Email: Ellen.Dew@us.dlapiper.com
*Counsel for Marriott International, Inc,*
*Starwood Hotels & Resorts Management Company, LLC, and*
*Starwood Hotels & Resorts Worldwide, LLC*
**VIA CM/ECF**