**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 1:25-cv-24118-LEIBOWITZ/Augustin-Birch**

JANE DOE,

     *Plaintiff*,

vs.

IBANERA LLC, *et al*.,

     *Defendants*.

_____/

**DEFENDANT BJORN SNORRASON'S REPLY IN SUPPORT OF HIS**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 51]**

Defendant Bjorn Snorrason submits this reply brief in further support of his motion to dismiss [ECF No. 51] Plaintiff Jane Doe's Amended Complaint.

## INTRODUCTION

To begin, we would be remiss not to start with the incongruity between Plaintiff's Amended Complaint and her response to the motion to dismiss on the question of whether Mr. Snorrason is an owner of Ibanera LLC. That allegation was, objectively speaking, a very small part of Plaintiff's pleading. It appears only a few times in Plaintiff's 435-paragraph Amended Complaint, and then only in brief declaratory statements without any explanation as to how Plaintiff reached her belief that Mr. Snorrason was an owner of Ibanera LLC. That omission was odd given Plaintiff's role with Ibanera LLC. She alleges that she worked closely with Ibanera LLC and its leadership for years. Based on the level of involvement she alleges, it is not unreasonable to suggest she could have pleaded some factual basis for her belief that Mr. Snorrason is an owner of Ibanera LLC.

With this background in mind, Plaintiff's brief is surprising. While the point was a bit player in her pleading, in her opposition, she now has leaned fully into legal arguments that are premised on the theory that Mr. Snorrason is an owner of Ibanera LLC. Really, her entire personal jurisdiction theory against Mr. Snorrason rises and falls on that premise.

But we won't bury the lede; so here is the surprise: ***Plaintiff does not challenge the undisputed jurisdictional evidence showing Mr. Snorrason is not, and has never been, an owner of Ibanera LLC***. Regardless, even indulging Plaintiff's new emphasis on those allegations only underscores what Mr. Snorrason's motion already showed: Plaintiff's allegations do not provide any viable basis for personal jurisdiction.

1

**A.      Plaintiff Has Failed To Satisfy Her Burden As To Personal Jurisdiction Because She Did Not Rebut The Defendants' Declarations**

Plaintiff does not dispute a single fact in the declarations executed by Mr. Snorrason, Mr. Parr, and Mr. Carbonara. [ECF Nos. 33-1, 32-2, 32-3]. She submits no counter-declaration, no documentary evidence, and did not make any request for jurisdictional discovery in her response to Mr. Snorrason's motion to dismiss. Once a defendant comes forward with a sworn declaration controverting jurisdictional allegations, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (cleaned up); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Plaintiff offers none. That silence is outcome-determinative.

The unrebutted facts set forth in the declarations negate the core allegations on which Plaintiff bases personal jurisdiction against Mr. Snorrason. All of her jurisdictional theories depend on the allegation that Mr. Snorrason is an owner of Ibanera LLC. The declarations refute that premise, confirming that Mr. Snorrason is not, and has never been, an owner of Ibanera LLC.

Plaintiff had every opportunity to respond to the declarations since they were filed with each defendant's respective motion (and, in fact, are the same declarations that were filed in the earlier round of motions that preceded Plaintiff's Amended Complaint). Plaintiff's opposition, however, ignores the declarations and instead relies on the bare allegations in her Amended Complaint. Such allegations, however, cannot overcome sworn jurisdictional evidence. *See Mazer*, 556 F.3d at 1282; *easyGroup Ltd. v. Skyscanner, Inc.*, 2020 WL 5500695, at *15-16 (S.D. Fla. Sept. 11, 2020) (Altonaga, J.). This alone supports dismissal of all claims against Mr. Snorrason for lack of personal jurisdiction.

**B.      Plaintiff Has Not Satisfied Any Provision of Florida's Long-Arm Statute**

Plaintiff contends that the corporate shield doctrine is inapplicable because her claims alleged against Mr. Snorrason involve intentional torts. Even accepting that premise as true, it does not relieve Plaintiff of her burden to establish jurisdiction under Florida's long-arm statute. Plaintiff contends she has alleged personal jurisdiction under § 48.193(1)(a)1 because Mr. Snorrason purportedly carried on a business venture in Florida, but her Amended Complaint contains no such allegations. Instead, Plaintiff asks the Court to infer a business venture solely on her allegation that Mr. Snorrason is an owner of Ibanera LLC, which maintains an office in Florida.

Even assuming *arguendo* Mr. Snorrason was an owner of Ibanera LLC, Plaintiff's theory still would fail as a matter of law because it conflates passive ownership with carrying on a

business venture. Courts have repeatedly rejected that proposition, and stated that "[t]he mere fact that one holds shares in or is a director of a corporation is not the functional equivalent of doing business in the state." *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1142 (S.D. Fla. 2007) (Altonaga, J.) (quoting *Newberry v. Rife*, 675 So. 2d 684, 685 (Fla. 2d DCA 1996)); *see also Blixseth v. Disilvestri*, 2013 WL 12063940, at *9 (S.D. Fla. Jan. 31, 2013) (Seitz, J.) (same). Thus, her reliance on alleged ownership, standing, alone is insufficient to satisfy §48.192(1)(a)1.

Plaintiff also fails to allege personal jurisdiction under § 48.193(1)(a)6. She offers no developed argument on this point and does not identify supporting authority for her position. Instead, she merely relies on generalized assertions that she suffered injury after returning to Florida. That is insufficient. Rather, to satisfy this provision of the long-arm statute, a plaintiff must plausibly allege *both* tortious injury in Florida caused by an out-of-state act *and* that the defendant engaged in solicitation or service activities in Florida. Fla. Stat. § 48.194(1)(a)6.a. (stating the defendant must "be engaged in solicitation or service activities within this state"). Plaintiff alleges no such conduct by Mr. Snorrason.

### C.       Plaintiff Has Not Plausibly Alleged The Existence of a Conspiracy Or An Association In Fact Between Mr. Snorrason And Any Other Defendant

Plaintiff asserts she has plausibly alleged both a conspiracy claim and a basis for personal jurisdiction premised on that conspiracy. Although her opposition does not expressly contend that the Trafficking Victims Act claim independently supplies personal jurisdiction, she nevertheless argues that she has adequately stated such a claim. Whether the conspiracy and trafficking-venture claims are analyzed under 12(b)(2) or 12(b)(6), they fail for the same fundamental reason identified in Mr. Snorrason's motion: Plaintiff pleads no facts plausibly showing that Mr. Snorrason participated in a conspiracy or was associated in fact with any other defendant for a human trafficking purpose.

A civil conspiracy requires, *inter alia*, "an agreement between two or more parties." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Thus, "[a] conspiracy requires the combination of two or more persons—a meeting of two independent minds intent on one purpose." *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991). Although such an agreement may be tacit and may be inferred from circumstantial allegations, an actual agreement must still be plausibly alleged. *Doe v. Finkelman*, 2025 WL 3466498, at *9 (Fla. 4th DCA Dec. 3, 2025). As Courts in this District have explained "[a] Plaintiff cannot allege conspiracy

by 'stringing together' adverse acts of individuals to demonstrate the existence of a conspiracy … [w]ithout any allegations indicating that the parties reached an understanding …." *Wardak v. Goolden*, 2020 WL 9718811, at *7 (S.D. Fla. May 22, 2020) (Becerra, J.) (cleaned up).

But that is what Plaintiff is trying to do; she cites alleged conduct by various defendants and then asserts that the conduct must have been coordinated. [ECF No. 36] at ¶¶ 59-61, 182-94, 196-99, 233-34. But Plaintiff alleges no facts showing when any agreement was formed, how it was formed, what role Mr. Snorrason supposedly agreed to play, or any facts that would permit the Court to infer that Mr. Snorrason shared a trafficking objective with any other defendant.

That omission dooms the claim because, absent any additional facts, one could just as easily infer that the allegations are showing nothing more than independent conduct of separate defendants. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 554 (2007) (noting that if allegations can be inferred as either the existence of a conspiracy agreement or as merely the occurrence of independent conduct, they do not plausibly allege a conspiracy.).

Plaintiff's trafficking-venture claim fails to provide a viable basis for personal jurisdiction for similar reasons. Although Plaintiff devotes most of her argument to "disputing" the structural requirements for pleading an association-in-fact, she ultimately relies on a framework that is analogous to the framework used by Mr. Snorrason in his motion. In other words, Plaintiff's purported disagreement is largely semantic rather than substantive.

Regardless, even under Plaintiff's own framing, her allegations fall short. Plaintiff alleges no facts showing an agreement, coordinated decision-making, or any ongoing organizational structure linking Mr. Snorrason with the other defendants. Instead, she alleges only discrete, individualized conduct occurring over a brief period in Singapore. Nor does Plaintiff plead facts establishing a shared trafficking purpose, active collaboration toward a collective objective, or that Mr. Snorrason participated in directing the affairs of any alleged venture. These pleading deficiencies foreclose any plausible inference of an association-in-fact.

Accordingly, Plaintiff's trafficking-venture and conspiracy allegations do not satisfy the plausibility standard and cannot support either personal jurisdiction or a viable claim for relief.

**D.     Plaintiff Has Not Satisfied the Constitutional Requirement of Due Process**

To sustain jurisdiction, Plaintiff must demonstrate that due process is satisfied under the United States Constitution by showing that: (1) her claims against Mr. Snorrason arise from or relate to his Florida contacts; (2) Mr. Snorrason purposefully availed himself of the privilege of

conducting activities in Florida; and (3) the exercise of jurisdiction over Mr. Snorrason would comport with traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). However, Plaintiff largely bypasses the analysis by invoking Rule 4(k)(2). However, she does not explain why the Fifth Amendment standard utilized under Rule 4(k)(2) would materially differ from the traditional Fourteenth Amendment framework, nor does she identify any consequence flowing from applying one standard rather than another. In either event, due process still requires purposeful forum-directed conduct and a nexus between said contacts and the claims at issue. Notwithstanding, these elements are briefly addressed in turn below.

### 1. The Claims Against Mr. Snorrason Do Not Arise From Any Florida Contacts

Even if Mr. Snorrason had contacts with Florida, Plaintiff's claims would have to arise out of or relate to those contacts to sustain personal jurisdiction against Mr. Snorrason. That requirement is not satisfied where, as here, the alleged misconduct occurred entirely abroad and bears no connection to the forum.

Although Plaintiff argues that she suffered injury in Florida after returning from Singapore, the Supreme Court has made clear this is insufficient. In *Walden v. Fiore*, 571 U.S. 277 (2014) the Court held personal jurisdiction did not exist in Nevada because the defendant's alleged tortious conduct occurred outside the state and the only connection to Nevada was the fact that plaintiffs experienced their injury in Nevada. *Id.* at 278. The Court explained that "mere injury to a forum resident is not a sufficient connection to the forum" and "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290; *Brunswick Records Corp. v. Lastrada Entm't Co., Ltd.*, 2022 WL 17968852, at *7 (S.D. Fla. Nov. 29, 2022) (Reid, J.) (citing *Walden* and concluding that the injury in Florida was insufficient to satisfy due process), *report and recommendation adopted*, 2022 WL 17960846 (S.D. Fla. Dec. 27, 2022) (Altman, J.). Here, Plaintiff alleges conduct that occurred entirely in Singapore. Any injury she later experienced in Florida stems solely from her own unilateral connections to the forum. That is insufficient as a matter of law.

### 2. Plaintiff Has Not Plausibly Alleged That Mr. Snorrason Purposefully Availed Himself of Florida

Plaintiff likewise fails to show that Mr. Snorrason purposefully availed himself of Florida. Purposeful availment requirements intentional forum-directed conduct, not contacts that are "random, isolated, or fortuitous." *Ford Motor Co. v. Montana Eighth Jud. Dist. Court*, 592 U.S.

351, 359 (2021). Plaintiff appears to contend that purposeful availment exists because Mr. Snorrason partially owns Ibanera LLC. But even accepting that allegation as true, ownership of a corporate entity, standing alone, does not establish purposeful availment. *See Diaz-Verson v. Aflac Inc.,* 2012 WL 398353, at \*6 (M.D. Fla. Jan. 11, 2012) (finding that the plaintiff did not demonstrate that the defendant "purposely avail[ed] itself, as opposed to a subsidiary, of the privilege of conducting business in Florida" because the plaintiff was required to demonstrate "that the Florida Subsidiaries [we]re the entities through which the … Defendant conduct[ed] substantial business activity in Florida"). Plaintiff alleges no alternative basis for purposeful availment: she does not allege that Mr. Snorrason entered contracts in Florida, conducted business in Florida, owned property in Florida, or traveled to Florida.

### 3. The Exercise Of Jurisdiction Over Mr. Snorrason in Florida Would Offend Traditional Notions Of Fair Play And Substantial Justice

Further, if Plaintiff had established minimum contacts, the exercise of jurisdiction would offend the traditional notions of fair play and substantial justice. The Court must consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985) (cleaned up). Here, all of these factors weigh against jurisdiction.

Mr. Snorrason is a foreign national domiciled in Iceland with no presence in Florida. The alleged conduct occurred abroad and involves foreign witnesses and evidence. Florida has little interest in adjudicating this dispute. Consequently, haling Mr. Snorrason into this forum would not comport with traditional notions of fair play and substantial justice.

### E.        Plaintiff Has Not Plausibly Alleged Personal Jurisdiction Under Rule 4(k)(2)

Plaintiff also invokes Rule 4(k)(2) and asks this Court to aggregate Mr. Snorrason's supposed nationwide contacts. Before we jump into any Rule 4(k)(2) analysis, it is important to note that Plaintiff did not advance this ground in her Amended Complaint; either by specifically citing the statute or by discussing any non-Florida U.S. contacts by Mr. Snorrason. Courts in this District have ruled that no substantive analysis is needed without those allegations. *See, e.g., Alston v. www.calculator.com,* 476 F. Supp. 3d 1295, 1311, n.2 (S.D. Fla. 2020) (Bloom, J.) (rejecting a plaintiff's argument to base jurisdiction under Rule 4(k)(2) where the defendant "rightfully note[d] … the Complaint does not assert Rule 4(k)(2) as a basis for personal jurisdiction, nor does it

contain any allegations regarding [the defendant's] additional nationwide contacts that would support this basis for personal jurisdiction."); *Universal Invs. L.P., v. Borodich*, 2026 WL 467345, at *5 (S.D. Fla. Feb. 18, 2026) (Shaw-Wilder, J.) (same result).

Furthermore,. because Rule 4(k)(2) applies only to claims that "arise under federal law," *see Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000), it could at most provide jurisdiction for Plaintiff's trafficking-venture claim, not for Plaintiff's remaining causes of action. Indeed, Plaintiff seemingly recognizes this as she invokes Rule 4(k)(2) only with respect to that claim. And even as it relates to that claim, Rule 4(k)(2) requires that jurisdiction be based on the defendant's own contacts with the U.S.; it does not allow a plaintiff to impute the contacts of alleged co-conspirators to the nonresident defendant. *Schrier v. Qatar Islamic Bank*, 632 F. Supp. 3d 1335, 1366 (S.D. Fla. 2022) ("Rule 4(k)(2) does not permit the exercise of conspiracy-based personal jurisdiction.").

In any event, Rule 4(k)(2) is not an escape hatch for plaintiffs who cannot satisfy the Fourteenth Amendment. Rather, it "close[d] a loophole that would otherwise have allowed a foreign defendant with sufficient contacts with the United States to evade enforcement of federal law simply because its contacts were spread too thinly across various states to support jurisdiction in any one state." *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 994 (C.D. Cal. 2013). It was not intended to supply jurisdiction where, as here, the plaintiff's allegations place the operative conduct abroad and identify no meaningful U.S.-directed activity tied to the claims.

Given the lack of any U.S. contacts outside of Florida, Plaintiff's Rule 4(k)(2) comes back to the same premise as her other theories: her allegation that Mr. Snorrason owned Ibanera LLC. That allegation cannot carry the weight Plaintiff places on it. Even accepting this allegation as true, Rule 4(k)(2) still requires that Plaintiff demonstrate that Mr. Snorrason purposefully directed his activities toward the U.S. or purposefully availed himself of the privilege of conducting business in the U.S., and that Plaintiff's claims arise out or relates to Mr. Snorrason's U.S.-related activities. *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 451 (9th Cir. 2024). Plaintiff has made no such showing. She cites no authority suggesting Rule 4(k)(2) applies in a case like this where there are minimal, if any, U.S. contacts and there are no allegations that Mr. Snorrason has even been to the U.S. Indeed, the authorities on which Plaintiff relies underscore why Rule 4(k)(2) provides no jurisdiction in this case.

Plaintiff's reliance on *United States v. Baston*, 818 F.3d 651 (11th Cir. 2016) is misplaced. In *Baston*, the Eleventh Circuit affirmed a conviction in a criminal case tried (by now Judge Altman) before Chief Judge Altonaga and upheld extraterritorial Human Trafficking Act jurisdiction where the defendant used the U.S. as a home base for his trafficking enterprise:

> Baston's contacts with the United States … are legion. Baston portrayed himself as a citizen of the United States. He resided in Florida, where he rented property, started businesses, and opened bank accounts. He was present at his mother's home in New York when arrested. Baston used a Florida driver's license and a United States passport to facilitate his criminal activities. He trafficked K.L. in both the United States and Australia, and when he trafficked her in Australia, he wired the proceeds back to Miami. In short, Baston used this country as a home base and took advantage of its laws; he cannot now complain about being subjected to those laws.

*Id.* at 669-70. Those facts established both purposeful availment and a direct nexus between the defendant's U.S. activities and the charged conduct. Nothing comparable is alleged here. Plaintiff does not allege that Mr. Snorrason operated from the U.S., directed any relevant conduct from here, or used U.S. systems to facilitate the alleged misconduct. Instead, her allegations center exclusively on events abroad. Partial ownership of Ibanera LLC that happens to have an office in Florida is not analogous to the extensive, U.S.-centered conduct at issue in *Baston*.

Nor does *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304 (11th Cir. 2025) or the Ninth Circuit's decision in *WebGroup* assist Plaintiff. In those cases, the courts found Rule 4(k)(2) jurisdiction over international companies based on those companies' deliberate, sustained efforts to serve the U.S. market through activities such as registering and enforcing U.S. trademarks, marketing and selling to U.S. consumers, or operating U.S. targeted web platforms with domestic infrastructure. *Jekyll Island*, 140 F.4th at 1318-24; *WebGroup*, 93 F.4th at 453-55. Plaintiff alleges no comparable U.S.-directed conduct here. She does not allege that Mr. Snorrason engaged in U.S.-focused commercial activity, invoked U.S. protections, or otherwise purposefully directed conduct towards the U.S. Instead, her theory rests solely on her unsubstantiated ownership allegation, which is untethered to any U.S. activity.

### F.      *Forum Non-Conveniens* Independently Requires Dismissal

#### 1.  Singapore Is An Adequate Alternative Forum

Plaintiff overstates what adequacy requires under the *forum non conveniens* analysis. The adequacy inquiry does not require that Singapore provide a statutory cause of action identical to the private remedy under the U.S. Trafficking Victims Act. Rather, it requires only that Singapore

offer some potential avenue for redress for the alleged tortious conduct. Therefore, the question is not whether Singapore offers a perfectly symmetrical statutory cause of action, but whether Singapore provides any remedy whatsoever for alleged misconduct. That standard is satisfied here as Singapore recognizes most well-established torts that otherwise exist under the common law. *See Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 775 (C.D. Cal. 2006) (finding Singapore to be adequate because *inter alia* "Singapore's civil proceedings derive from the English common law"). That alone establishes adequacy.

Moreover, Plaintiff assumes, without any authority, that Singapore courts would not adjudicate her claims if Singapore's trafficking statute did not apply. However, federal courts have rejected similar arguments in comparable circumstances. For instance, *in Creative Technologyy, Ltd. v. Aztech Systems Pte.*, 61 F.3d 696 (9th Cir. 1995), the Ninth Circuit explained during a *forum non conveniens* analysis that even if Singapore statutory law did not provide the requested remedy, that did not render Singapore inadequate because it can be assumed that the Singapore courts are capable of applying U.S. statutory law as needed. *Id.* at 702-03.

The same logic applies here. Plaintiff identifies no legal barrier preventing Singapore courts from adjudicating her claims or applying foreign law where appropriate. That omission is dispositive. Courts in this District routinely reject adequacy challenges grounded in conjecture about foreign law and procedure as opposed to actual proof or evidence. *See, e.g., Snee v. Sunrise Props. Ltd.*, 2009 WL 2163179, at *6 (S.D. Fla. July 17, 2009) (Hopkins, J.).

### 2.   The Private And Public Interest Factors Strongly Favor Dismissal

Plaintiff's treatment of the private and public interest factors confirm that dismissal is warranted. Rather than meaningfully engage the governing analysis, Plaintiff devotes barely a page of her opposition to the factors. In doing so, she relies entirely on her own *ipse dixit* and cites no legal authority whatsoever in support. This is hardly surprising, however, considering that these factors overwhelming weigh in favor of dismissal.

The private interest factors strongly favor dismissal. The alleged conduct occurred entirely abroad and involves foreign actors, foreign witnesses, and foreign evidence. The key documentary evidence and knowledgeable witnesses are located overseas, while Plaintiff identifies no material evidence in Florida. Compulsory process likewise favors a foreign forum. This Court cannot compel testimony from nonparty foreign witnesses central to Plaintiff's allegations, whereas courts

in Singapore can. Litigating here would also impose substantial logistical burdens. These considerations weigh decisively in favor of dismissal.

The public interest factors point the same way. Florida has little connection to this dispute beyond Plaintiff's residence. The alleged conduct occurred abroad, implicates foreign actors and evidence,[1] and will likely require application of foreign law. By contrast, foreign jurisdictions have a far stronger interest in adjudicating allegations concerning conduct within their borders. Trying this case in Florida would also burden local jurors and courts with a dispute lacking meaningful ties to this forum while creating unnecessary administrative complications involving foreign witnesses and evidence.

### G.    Singapore Law Governs and The Parties' Contention Regarding the Same Further Supports Dismissal Under Both Forum Non and 12(b)(6)

Plaintiff's final argument concerns her intentional infliction of emotional distress ("IIED") claim. Contrary to Plaintiff's assertion, the Singapore Court of Appeal's decision in *Reed v. Bellingham*, 2022 SGCA 60 (Sing.) makes clear that, as a general matter, Singapore common law does not recognize common law claims predicated on emotional distress. Regardless, the parties' competing interpretations of this Singapore decision only underscores why dismissal on *forum non conveniens* grounds is appropriate. Questions regarding the scope of Singapore common law and what claims Singapore recognizes are best left for the Singapore courts to resolve. Accordingly, the dispute over Plaintiff's IIED theory provides yet another reason this case should proceed, if at all, in Singapore rather than this forum.

### CONCLUSION

For the reasons set forth here and in Mr. Snorrason's motion to dismiss, the Court should dismiss all claims against Mr. Snorrason for lack of personal jurisdiction or forum *non conveniens*. Alternatively, the Court should dismiss Counts, 1, 2, 3, and 17 for failure to state a claim for which relief can be granted.

---

[1] One small point: contrary to Plaintiff's suggestion. Mr. Snorrason did not rely on the Singapore police investigation as a basis for dismissal in his motion. But since Plaintiff harped on that point, it is fair to say that the Singapore investigation is indeed relevant to the *forum non conveniens* analysis as it underscores that the alleged conduct occurred abroad, that key witnesses and evidence are located in Singapore, and that Singapore has a substantial interest in adjudicating disputes arising from conduct within its borders.

Dated: March 17, 2026

Aaron S. Weiss (FBN 48813)
Email: aweiss@carltonfields.com
Naomi M. Berry (FBN 69916)
Email: nberry@carltonfields.com
Carlton Fields, P.A.
700 NW 1st Ave., Ste. 1200
Miami, Florida 33136-4118
Telephone:  305-530-0050

*Attorneys for Defendant Bjorn Snorrason*