**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-cv-24118-DSL**

JANE DOE,

        Plaintiff,

v.

IBANERA LLC, *et al.*,

        Defendants.

_____/

**PLAINTIFF'S AMENDED RESPONSE IN OPPOSITION TO DEFENDANT IBANERA LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND COMBINED MOTION TO DISMISS**

Plaintiff JANE DOE ("Plaintiff"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56, and this Court's March 26, 2026 Order Allowing Limited Discovery (the "Order") (ECF No. 76), hereby files this Amended Response in Opposition to Defendant Ibanera LLC's (hereinafter "Ibanera" or "Defendant") Motion for Partial Summary Judgment (ECF No. 58) on Title VII and FCRA numerosity.

**STATEMENT OF MATERIAL FACTS**

Plaintiff hereby incorporates by reference Plaintiff's Statement of Material Facts and Additional Facts in Support of her Response in Opposition to Defendant's Partial Motion for Summary Judgment and Combined Motion to Dismiss (ECF No. 68) ("PSOMF").

**I.  INTRODUCTION**

Ibanera has judicially admitted the two facts that defeat its motion. In response to Plaintiff's Requests for Admission served during the limited discovery period this Court authorized, Ibanera admitted (1) that it produced the "Staff Directory" filed at ECF 68-1 during the relevant time period

– authenticating that document under Rule 56 – and (2) that the Staff Directory "lists 15 individuals who provided services to Ibanera." *See* Exhibit A (Def.'s Resp. to Req. for Admission Nos. 26, 27). Those admissions are "conclusively established" under Federal Rule of Civil Procedure 36(b). They cure precisely the evidentiary gap this Court identified in its March 26, 2026 Order, and they do so as to a document the Court's prior Order failed to address.

Those admissions do not stand alone. Newly produced discovery – an Ibanera Org Chart and a Phoenix Connect Org Chart showing identical ownership through Odessa Partners LLC and a common Wyoming trust (*see* Exhibits B and C); sworn interrogatory responses admitting shared management, shared funding, and shared workforce with Phoenix Connect LLC (*see* Exhibit D at Interrogatory Responses # 3, 4, 5, 6, and 10); compensation statements identifying twelve U.S.-based payees in 2024 alone (*see* Exhibit E); a Form W-2 for Japman Kharbanda (*see* Exhibit F); consulting agreements, addendums, and *termination letters* for the purported "contractors" (*see* Composite Exhibits G-1, G-2, and G-3, which are hereinafter collectively referred to as "Composite Exhibit G"); a Weekly Worker Presence log (*see* Exhibit H); and bank statements from seven institutions showing regular weekly and biweekly payments (*see* Composite Exhibit I[1]) – establishes, or at minimum creates a genuine dispute as to, every element Ibanera contests.

Three independent pathways each defeat summary judgment. First, Ibanera's Rule 36 admissions, read with the authenticated Staff Directory (ECF No. 68-1), directly satisfy the 15-employee threshold of 42 U.S.C. § 2000e(b) and Fla. Stat. § 760.02(7). Second, under *Lyes v. City of Riviera Beach*, Ibanera and Phoenix Connect LLC must be aggregated as a single or joint employer on this record. Third, under the common-law agency test of *Nationwide Mutual*

---

[1] Plaintiff's Composite Exhibit I is one copy of each bank's pay statement – to be clear, Plaintiff is in possession of identical pay periods for each institution, for many consecutive months, however not all statements were included in the interest of efficiency.

*Insurance Co. v. Darden* and the Eleventh Circuit's hybrid test of *Cobb* and *Cuddeback*, the "independent contractor" label Ibanera placed on its workers cannot survive the record evidence of control, including Ibanera's own admission that its restrictive-covenant provisions were "not observed or enforced." At minimum, the genuine dispute of Ibanera's mislabeling of its "independent contractors" must survive Ibanera's summary judgment effort and be determined by a jury. Ibanera's residual extraterritoriality defense is a contested legal question that, even if accepted, does not change the numerical result. As a result, summary judgment must be denied.

## II.   FACTUAL BACKGROUND

### A.   The Court's March 26, 2026, Order and the Unaddressed Staff Directory

On March 3, 2026, Ibanera moved for partial summary judgment on Title VII and FCRA numerosity (ECF No. 58), supported by Michael Carbonara's declaration asserting that Ibanera had "only one employee in the United States" and "never had 15 or more employees." Plaintiff filed her original opposition at ECF No. 69, supported by, among other things: ECF 68-1 (the "Staff Directory"); ECF 68-2 (Plaintiff's declaration); ECF 68-4 (a WhatsApp chat roster consisting of 100+ participants); and ECF 69-1 through 69-9 (LinkedIn printouts for nine individuals).

In the Order, the Court found the LinkedIn printouts unauthenticated and, on their own, insufficient because they identified only nine individuals. The Order, however, did not address the Staff Directory at ECF 68-1. Recognizing the unresolved record, the Court authorized thirty days of limited discovery on Ibanera's employer status.

### B.   Ibanera's Binding Rule 36 Admissions

During that discovery window, Ibanera served Responses to Plaintiff's Requests for Admission on April 16, 2026. Two admissions are central here.

**RFA 26.** Ibanera admitted that it produced the document filed at ECF 68-1 (the Staff Directory) during the relevant time period. That admission authenticates the document for purposes of Rule 56.

**RFA 27.** Ibanera admitted that "the document lists 15 individuals who provided services to Ibanera." Ibanera appended qualifying language suggesting that some of those individuals were foreign-based or worked as independent contractors, but it did not withdraw or deny the core fact that the Staff Directory identifies 15 service-providing individuals. Under Rule 36(a)(4), a qualified response that admits part of the matter admits that part; the admitted portion – that the document lists 15 individuals who provided services to Ibanera – is conclusively established.

## C.  The Authenticated Staff Directory – 15 Named Individuals Providing Services

With RFA 26 supplying authentication and RFA 27 supplying admission of content, the Staff Directory (ECF 68-1) now stands before the Court as authenticated, admitted Rule 56 evidence that 15 individuals provided services to Ibanera during the relevant period. As discussed in ECF No. 69, "The Staff Directory is an Ibanera document listing approximately ninety-eight (98) individuals as company staff. The directory is organized by name, anniversary date, region, department, role, location, primary phone, emails, Skype ID, and Telegram username. Every listed individual has an '@ibanera.com email.'" This document captures the true nature of Ibanera's employment of nearly 100 individuals, with 26 individuals identified to work in the United States. This statistic alone satisfies the numerosity requirement under Title VII and the FCRA, defeating Defendant's Motion.

## D.  Ibanera's Produced Records Show Payment and Continuous Engagement

Produced discovery corroborates the Staff Directory. The "2023/2024 U.S. Contractor Information" spreadsheet (*see* Exhibit B) identifies each individual Ibanera paid as a "contractor"

in the United States. The "Weekly Worker Presence 2023–2024" log (*see* Exhibit H) records "calendar weeks during the relevant time period when each U.S.-domiciled employee and each individual working as an independent contractor were contracted with and eligible for payment from either Ibanera or Phoenix Connect LLC." The 2023 1099s name four individuals (Angie Brian, Jennifer Tregre, Jondalar Diepeveen, James Cecil). *See* Composite Exhibit J. The 2024 1099s name twelve individuals (Ana Gamez, Frances Tort, Jesus Alex Mesa, Angie Brian, Jorge Fraga, Rita Whaley, Samuel Teitelbaum, Belkys Garcia, Jay Torres, Jondalar Diepeveen, Jennifer Tregre, and Rita Whaley via Ibanera LLC). *See* Composite Exhibit E. Payroll Liability/Summary and Payroll Detail records document the payroll flow. *See* Composite Exhibit K. Bank statements from Mercury, TD Bank, U.S. Bank, Capital One, Barclays, Bluevine, and American Express show regular weekly or biweekly payments to these individuals from Ibanera and Phoenix Connect accounts. *See* Composite Exhibit I.

**E.  Ibanera and Phoenix Connect Share Ownership, Management, and Workforce**

Ibanera's own produced organizational charts establish structural identity. The Ibanera Org Chart 2023–2024 shows Wyoming Partners Irrevocable Statutory Trust holding 99% of Odessa Partners LLC, which in turn owns Ibanera LLC (Nevada). *See* Exhibit B. The Phoenix Connect Org Chart shows the *same* Wyoming Partners Irrevocable Statutory Trust holding 99% of the *same* Odessa Partners LLC, which in turn owns Phoenix Connect LLC (Nevada). *See* Exhibit C.

Ibanera's sworn interrogatory responses admit the operational consequences of that common parentage. Michael Carbonara is Manager of Phoenix Connect *and* President of Ibanera. Jondalar Diepeveen is COO of Ibanera *and* Director of Operations of Alpha Watt LLC – a third entity admitted to share the same Odessa Partners parent. Ibanera admits that "Ibanera and Phoenix

Connect had sources of funding in common," and that "some of Phoenix Connect LLC's independent contractors performed work for Ibanera LLC." *See* Exhibit D at 10.

## F.  Indicia of Employment Over the "Contractors"

The produced personnel file for each "contractor" mirrors an employee file. Consulting agreements were signed by Glenn Marchant (Apr. 7, 2023), Angie Brian (Jan. 4, 2021), Ana Gamez, and Jesus Alex Mesa. Addenda extending or modifying terms exist for Angie Brian (Mar. 1, 2025 and Nov. 1, 2024), Jennifer Tregre (Aug. 1, 2024), Samuel Phillip Teitelbaum, Jay Torres (commission structure), and Ana Gamez (Sept. 11 amendment). Ibanera issued formal *termination letters* – not contract-expiration notices – to Jesus Alex Mesa, Jay Torres, Jorge Fraga, and Ana Gamez, and a "Termination of Consulting Agreement" to Samuel Teitelbaum. Frances Tort submitted a resignation letter. Japman Kharbanda signed an Employment Contract (Aug. 19, 2020). NDAs were executed by James Cecil (Jan. 2022) and Japman Kharbanda (Jan. 2022). Ibanera also maintained W-9s, Powers of Attorney, resumes, and government IDs or passports for numerous individuals. *See* Composite Exhibit G.

Crucially, Ibanera admitted in its Interrogatory Responses that "[s]ome independent contractor agreements contained boilerplate language requiring permission from the company to work for other parties. However, those requirements were not observed or enforced." *See* Exhibit D at 7. It also admitted it filed Form 941 reporting only one employee per quarter and carried no workers' compensation insurance. *Id*. at 16.

### III.  LEGAL STANDARD

Summary judgment is warranted only where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A dispute is "genuine" if a reasonable jury could return a

verdict for the non-movant, and "material" if it could affect the outcome under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The court must view the record in the light most favorable to the non-movant and draw all reasonable inferences in her favor. *Id.* at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court does not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255.

Title VII's 15-employee requirement is an element of the plaintiff's substantive claim, not a jurisdictional prerequisite, and is accordingly resolved under Rule 56's familiar burden-shifting framework. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006); *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1264–65 (11th Cir. 1997). Summary judgment in Title VII cases is "not favored, especially on a 'potentially inadequate factual presentation'." *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 407 (5th Cir. 1983)). FCRA claims are analyzed under Title VII standards. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

## IV.  ARGUMENT

### A.  Ibanera's Rule 36 Admissions Conclusively Establish That the Staff Directory Is Authenticated and Identifies 15 Individuals Who Provided Services to Ibanera.

Ibanera's Rule 36 admissions authenticate the Staff Directory at ECF 68-1. "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). An admission under Rule 36 is "comparable to an admission in pleadings or a stipulation drafted by counsel" and "cannot be rebutted by contrary testimony." *American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991). Ibanera has not moved to withdraw or amend its admissions; those admissions are therefore binding.

The admissions cure the two deficiencies the Court identified in the Order. First, RFA 26 authenticates the Staff Directory: Ibanera admits it produced ECF No. 68-1 during the relevant period. A party's admission that it produced a document necessarily establishes that the document is what it purports to be: a document Ibanera itself created, maintained, or possessed. Second, RFA 27 admits the directory's content – that it "lists 15 individuals who provided services to Ibanera." Together, the admissions establish, without more, a threshold-level prima facie showing that defeats summary judgment.

The Court's Order at ECF 76 explicitly did not address the Staff Directory. With that document now authenticated and its substance admitted, the basis for the Court's prior concern no longer applies to this evidence.

**B.     Under Walters, the 15-Employee Threshold Asks Whether an Employment Relationship Existed on Each Working Day – Not Whether Each Individual Was Actively Performing Work.**

The Supreme Court has definitively rejected the counting framework implied by Ibanera's motion. In *Walters v. Metro. Educ. Enters.*, the Court adopted the "payroll method": an employer "has" an employee on any working day on which it maintains an employment relationship with that individual, regardless of whether the individual was actually present at work or actually received compensation that day. 519 U.S. 202, 206–07 (1997); *Stinnett v. Iron Works Gym/Exec. Health Spa*, 301 F.3d 610, 613 (7th Cir. 2002). The "ultimate touchstone" is "whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question." *Walters*, 519 U.S. at 212.

The Weekly Worker Presence log produced by Ibanera supplies exactly this data. That log identifies, by calendar week, each U.S.-domiciled individual "contracted with and eligible for payment from either Ibanera or Phoenix Connect LLC." Under *Walters*, eligibility-for-payment

throughout the work week is the definition of an employment relationship "for each working day" of that week. Ibanera's own log, combined with the Staff Directory, provides the 20-week/15-individual count – or, at minimum, raises a triable dispute about whether that count is reached.

**C.      The "Independent Contractor" Label Does Not Control; Under the Darden–Clackamas–Cobb–Cuddeback Framework, the Record Shows Employee Status or at Least a Triable Dispute.**

Whether an individual is an "employee" for Title VII purposes is governed by the common-law agency test, not by the defendant's own labeling. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–24 (1992); *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448–50 (2003). The Eleventh Circuit applies a hybrid economic-realities test "viewed in light of the common law principles of agency," which considers the right to control, skill, source of tools, location, duration, method of payment, provision of benefits, tax treatment, and whether the work is part of the hiring party's regular business. *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 341 (11th Cir. 1982); *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1234 (11th Cir. 2004). "[A]ll of the incidents of the employment relationship must be assessed and weighed with no one factor being decisive." *Darden*, 503 U.S. at 324. And summary judgment "is not favored" in Title VII cases on contested employment-status questions. *McKenzie*, 834 F.2d at 934.

The record here establishes employee-like control in six overlapping ways.

**1. Admitted control over outside work.** Ibanera's own interrogatory answer states that "[s]ome independent contractor agreements contained boilerplate language requiring permission from the company to work for other parties." *See* Exhibit D at 7. That admission is dispositive on the right-to-control factor in two directions: the contracts *asserted* a right to control outside employment, and the enforcement pattern shows Ibanera retained discretion to direct or waive that

control – classic hallmarks of an employment relationship, not an arm's-length vendor engagement.

**2.   Formal termination letters, not contract expirations.** Ibanera issued termination letters to Jesus Alex Mesa, Jay Torres, Jorge Fraga, Ana Gamez, and Samuel Teitelbaum, and accepted a resignation letter from Frances Tort. Independent contractors do not "resign" and are not "terminated" – their engagements expire or are not renewed. *See* Composite Exhibit G. The nomenclature reflects reality.

**3.   Continuous engagement through addendums.** Ibanera extended or modified its relationships with Angie Brian (multiple addendums), Jennifer Tregre, Samuel Teitelbaum, Jay Torres, and Ana Gamez. The pattern is of ongoing personnel management, not discrete project work. *Id*.

**4.   Regular, periodic payment.** Bank statements from seven institutions show weekly or biweekly payments to the same individuals – the payroll cadence of employment, not the milestone or deliverable cadence of vendor contracts. *See* Exhibit I.

**5.   Agents, not vendors.** Ibanera held Powers of Attorney for numerous individuals and required NDAs (James Cecil, Japman Kharbanda). Arm's-length contractors do not give principals POAs or sign NDAs as a condition of engagement. *See* Composite Exhibit G.

**6.   Personnel files.** Ibanera maintained resumes, government IDs, and passports for its workers – the artifacts of a personnel function, not a vendor-management function. *Id*.

The countervailing indicia Ibanera will emphasize – 1099 tax treatment, Form 941 reporting of one employee, no workers' compensation insurance, the absence of benefits – are self-serving choices by the putative employer, not controlling *Darden* factors. Under *Darden* and *Cobb*,

tax labels are one factor among many, not the test. A reasonable jury could readily conclude that Ibanera's workers were misclassified employees.

**D.     Ibanera and Phoenix Connect LLC Must Be Aggregated Under Lyes and McKenzie.**

The Eleventh Circuit aggregates separate entities for Title VII purposes under the "single employer"/integrated-enterprise doctrine, the "joint employer" doctrine, or the "agency" doctrine. *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999); *McKenzie*, 834 F.2d at 933; *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1360 (11th Cir. 1994). The single-employer test asks four questions: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Lyes*, 166 F.3d at 1341. Each factor points the same way here.

**Common ownership.** Ibanera's own produced org charts show that Wyoming Partners Irrevocable Statutory Trust holds 99% of Odessa Partners LLC, which in turn owns *both* Ibanera LLC and Phoenix Connect LLC. Structural identity could not be clearer. *See* Exhibits B and C.

**Common management.** Ibanera has admitted under oath that Michael Carbonara is both President of Ibanera and Manager of Phoenix Connect, and that Jondalar Diepeveen holds senior operational roles at both Ibanera (COO) and Alpha Watt (Director of Operations) – the third Odessa Partners subsidiary. *See* Exhibit D at 9-10.

**Centralized control of labor relations.** The same leadership signed consulting agreements, addendums, and termination letters across both entities. Ibanera has admitted that Phoenix Connect's "independent contractors performed work for Ibanera LLC," confirming that the two entities' labor pools are functionally merged. *See* Composite Exhibit G; Exhibit D at 11.

**Common financial control.** Ibanera has admitted under oath that "Ibanera and Phoenix Connect had sources of funding in common." Bank statements confirm that payments to the same individuals flow from accounts held by both entities. *See* Exhibit D at 10.

Joint-employer analysis yields the same result. Under *Virgo*, the touchstone is whether two entities "share or co-determine those matters governing the essential terms and conditions of employment," with both actual control and the "authority or power to control" being "highly relevant." 30 F.3d at 1360-61. Ibanera's sworn responses that Phoenix Connect's workers "performed work for Ibanera," and that both entities are led by the same officers and funded in common, satisfy this test.  *See* Exhibit D at 11. Aggregating the two entities' workforces puts the 15-employee count well out of reach of summary judgment.

**E.     The Staff Directory, Standing Alone, Defeats Summary Judgment.**

Even setting every other argument aside, the authenticated Staff Directory independently forecloses summary judgment. The Court's prior Order never addressed this document. It is now authenticated by Ibanera's own Rule 36 admission (Exhibit A, RFA Resp. 26), and its content – that 15 individuals "provided services to Ibanera" – is conclusively established by Rule 36 admission (Exhibit A, RFA Resp. 27). Whether those 15 individuals also satisfy the *Walters* working-day test and the *Darden*/*Cobb* common-law test involves disputed factual questions that the jury, not the Court, must resolve. *Anderson*, 477 U.S. at 255.

**F.     Ibanera's Extraterritoriality Defense Fails or, at Minimum, Presents Contested Questions That Cannot Be Resolved on This Record.**

Ibanera argues that foreign-domiciled workers cannot be counted toward the 15-employee threshold. That premise is contested as a matter of law and, in any event, does not change the outcome here.

12

The governing statute exempts conduct, not counting. 42 U.S.C. § 2000e-1(a) exempts Title VII's substantive anti-discrimination prohibitions "with respect to the employment of aliens outside any State." 42 U.S.C. § 2000e-1(c)(2) exempts "foreign operations of an employer that is a foreign person not controlled by an American employer." Ibanera is a Nevada LLC owned by Odessa Partners LLC (also a Nevada LLC) and held by a Wyoming trust. On this record, Ibanera is not a "foreign person"; the 42 U.S.C. § 2000e-1(c)(2) exemption is therefore unavailable to it. Nor does 42 U.S.C. § 2000e-1(a) – which exempts substantive liability for employment of aliens abroad – speak to how employees are counted for coverage purposes.

The numerosity count is about scale, not extraterritorial protection. The Second Circuit has squarely held that foreign employees are counted toward the numerosity threshold because "[t]he nose count of employees relates to the scale of the employer rather than to the extent of protection." *Morelli v. Cedel*, 141 F.3d 39, 45 (2d Cir. 1998) (ADEA). The Ninth Circuit extended *Morelli*'s reasoning to Title VII. *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 815–16 (9th Cir. 2002). *Shekoyan v. Sibley International*, 409 F.3d 414 (D.C. Cir. 2005), is not to the contrary: it holds that a non-U.S.-citizen working abroad is not a *covered plaintiff*, not that foreign workers are excluded from the numerosity count. *Shekoyan* is irrelevant to the counting question.

Mousa is distinguishable and reflects the minority view. The only S.D. Fla. case cited by the Court on this point, *Mousa v. Lauda Air Luftfahrt, A.G.*, 258 F. Supp. 2d 1329 (S.D. Fla. 2003), involved a foreign airline with 1,516 worldwide employees almost none of whom had any U.S. nexus. The present case involves a Nevada-based LLC owned by a Nevada LLC and a Wyoming trust, both with domestic workers – not a foreign entity.

The factual premise of Ibanera's defense is contested. Where each individual in the Staff Directory resides is itself a question of fact. Produced identity documents, W-9s, and U.S. bank

13

account information indicate that most or all of the 15 individuals listed are U.S.-domiciled. Resolution of that fact – worker-by-worker – cannot occur on summary judgment.

The numbers work without any foreign workers at all. Accepting Ibanera's legal framework *arguendo*, the 2024 1099s alone identify twelve U.S.-based payees, plus Japman Kharbanda's W-2 (thirteen), before adding any individual on the Staff Directory not yet separately accounted for, and before aggregating Phoenix Connect under *Lyes*. Combined, the undisputed U.S.-side headcount materially exceeds 15, or at minimum raises a triable dispute.

**G.      At a Minimum, Genuine Disputes of Material Fact Preclude Summary Judgment.**

Ibanera's motion rests on Michael Carbonara's declaration that the company had "only one employee in the United States" and "never had 15 or more employees." The record – Ibanera's own produced org charts, sworn interrogatory responses, Rule 36 admissions, 1099s, W-2, payroll detail, bank statements, consulting agreements, addendums, termination letters, NDAs, and POAs – flatly contradicts that declaration. A factual dispute this stark cannot be resolved against the non-movant. Ultimately, summary judgment must be denied at this time.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Ibanera LLC's Motion for Partial Summary Judgment and Combined Motion to Dismiss (ECF No. 58).

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

Dated this 27th day of April, 2026.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

/s/ Daniel J. Barroukh
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Danielb@dereksmithlaw.com

Derek T. Smith, Esq.
Florida Bar No.: 1014216
Derek@dereksmithlaw.com

15

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being

served on April 27, 2026, on all counsel of record on the service list below via CM/ECF.

By: */s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.

<u>**SERVICE LIST**</u>

**COLE SCHOTZ P.C.**
Scott J. Topolski
Florida Bar No. 0006394
2255 Glades Road, Suite 300E
Boca Raton, Florida 33431
Telephone: (561) 609-3856
Facsimile: (561) 423-0392
Email: stopolski@coleschotz.com
*Co-Counsel for Defendants Ibanera LLC,*
*Michael Carbonara, and David Parr*
**VIA CM/ECF**

**COGENT LAW GROUP, LLP**
Evan Ronald Smith
2001 L St. NW, Suite 500
Washington, DC 20036
Telephone: 202.644.8880
Email: esmith@cogentlaw.com
*Co-Counsel for Defendants Ibanera LLC,*
*Michael Carbonara, and David Parr*
**VIA CM/ECF**

**CARLTON FIELDS, P.A.**
Naomi M. Berry
Florida Bar No. 69916
2 Miami Central
700 NW 1st Avenue, Ste. 1200
Miami, FL 33136-4118
Telephone: (305) 530-0050
Email: nberry@carltonfields.com
*Counsel for Defendant Bjorn Snorrason*
**VIA CM/ECF**

**CARLTON FIELDS, P.A.**
Aaron S. Weiss
Florida Bar No. 48813
2 Miami Central
700 NW 1st Avenue, Ste. 1200
Miami FL, 33136-4118
Telephone: (305) 530-0050
Email: aweiss@carltonfields.com
*Counsel for Defendant Bjorn Snorrason*
**VIA CM/ECF**

**DLA PIPER LLP (US)**
Virginia Regis Callahan
Florida Bar No. 1058943
3111 W. Dr. Martin Luther King Jr. Blvd., Suite 200
Tampa, Florida 33607
Telephone: (410) 580-4328
Facsimile: (410) 580-3011
Email: Virginia.Callahan@us.dlapiper.com
*Counsel for Marriott International, Inc,*
*Starwood Hotels & Resorts Management Company, LLC, and*
*Starwood Hotels & Resorts Worldwide, LLC*
**VIA CM/ECF**

**DLA PIPER LLP (US)**
Ellen Dew
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
Tampa, Florida 33607
Telephone: (410) 580-4127
Fax: (410) 580-3001
Email: Ellen.Dew@us.dlapiper.com
*Counsel for Marriott International, Inc,*
*Starwood Hotels & Resorts Management Company, LLC, and*
*Starwood Hotels & Resorts Worldwide, LLC*
**VIA CM/ECF**