Docusign Envelope ID: 8FCAA295-62EC-4389-A7F6-985EE7377338

# Professional Services Agreement

**THIS AGREEMENT** (the "**Agreement**") is effective and made as of the date it is signed by the last party to sign it (as indicated by the date associated with that party's signature) and is by and between **Jay Torres** individual with an address ███████████████████████ (the "**Contractor**") and **PHOENIX CONNECT LLC** a company incorporated under the laws of Nevada under Company Number NV20171522946 of **78 SW 7th St Ste 7-118, Miami, FL 33130** (the "**Company**") (together, the "**Parties**," each, individually, a "**Party**").

**WHEREAS:**

(A)  The Company wishes to engage the Contractor to perform the Services (as defined below) to the Company as an independent contractor pursuant to the terms of the Agreement.

(B)  The Company and the Contractor have agreed to enter into a Professional Services relationship for their mutual benefit;

THIS AGREEMENT WITNESSES that the parties have agreed that the terms and conditions of the relationship shall be as follows:

1.      **PROFESSIONAL SERVICES**

1.1     The Contractor will begin Professional Services on **September 9th, 2024** (the **Start Date**).

1.2     The Contractor represents and warrants to the Company that the Contractor has the required skills and experience to perform the duties and exercise the responsibilities required for the **Sales Representative** position. In carrying out these duties and responsibilities the Contractor shall comply with all lawful and reasonable instructions as may be given by management of the Company.

1.3     The Contractor agrees that he or she will assume other duties and responsibilities as may from time to time be determined to be necessary by the Company.

1.4     The Contractor agrees to comply with and be bound by the terms and conditions of this Agreement.

1.5     In consideration for the Contractor's performance in accordance with this Agreement, the Company engages the Contractor.

1.6     The Contractor acknowledges and agrees that the effective performance of his or her duties requires the highest level of integrity and the Company's complete confidence in the Contractor's relationship with other Contractors of the Company and with all persons dealt with by the Contractor in the course of his or her Professional Services.

1.7     It is understood and agreed to by the Contractor that the Company reserves the right to unilaterally change the Contractor's assignments, duties and reporting relationships.

1.8     The Contractor agrees that any of the changes that may occur pursuant to Paragraph 1.7 of this Agreement will not affect or change any other part of this Agreement.

IBANERA 000837

# Professional Services Agreement

**2.     EXCLUSIVE SERVICE**

**2.1**     Unless agreed to in writing, during the term of Professional Services, the Contractor shall devote himself or herself exclusively to the business of the Company and shall not be employed or engaged in any capacity in promoting, undertaking, or carrying on any other business, without the prior approval of the Company.

**2.2**     The Contractor will be expected to work on a **full-time** basis exclusively for the Company. The Contractor understands and agrees that the expectation for the Contractor is that which is outlined in the Job Description attached hereto as Exhibit 1, although hours of work may vary as required to meet the objectives of his or her Professional Services.

**3.     CONFIDENTIAL INFORMATION**

**3.1**     The Contractor acknowledges that, as Contractor, it may acquire information about certain matters that are confidential to Company and its affiliates, and which information is proprietary to Company and its affiliates, including, but not limited to:

> **3.1.1**     product design and manufacturing information;
>
> **3.1.2**     lists of present and prospective customers, and related information;
>
> **3.1.3**     pricing and sales policies, techniques and concepts;
>
> **3.1.4**     lists of suppliers;
>
> **3.1.5**     trade secrets; and
>
> **3.1.6**     systems and procedures developed and/or acquired by the Company and its affiliates (collectively, "**Confidential Information**").

**3.2**     The Contractor acknowledges the Confidential Information could be used to the detriment of the Company. Accordingly, the Contractor undertakes to treat confidentially all Confidential Information and agrees not to disclose same to any third party, either during the term of his or her Professional Services (except as may be necessary in the proper discharge of his or her Professional Services under this agreement), or after the date of termination of Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), except with the written permission of an Officer of the Contractor. The Contractor also agrees that the unauthorized disclosure of any Confidential Information during his or her Professional Services will constitute just cause for the immediate termination of the Contractor's Professional Services, without notice or pay in lieu of such notice.

**3.3**     The Contractor acknowledges that in addition to any and all rights of the Company, the Company shall be entitled to injunctive relief in order to protect its rights and property as set out in Paragraphs 3.1 and 3.2.

**3.4**     The Contractor agrees that all papers, proposals, contracts, customer lists, lists of customer prospects, notes, records, DVDs, CDs, photographs, artwork, software, all other documents, all copies thereof relating to the Company's operations or business, including those prepared himself or herself, regardless of whether the same are confidential, are the exclusive property of the Company and will not be replicated or taken by the Contractor. All such items, including Company uniform items, shall be returned to Company upon Contractor's termination,

IBANERA 000838

# Professional Services Agreement

regardless of whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement.

3.5 The Contractor agrees that for the duration of the Contractor's Professional Services relationship with the Company, unless agreed to in writing, the Contractor will not engage, either directly or indirectly, in any activity (a "**Conflict of Interest**") which might adversely affect the Company or its affiliates, including ownership of a material interest in any supplier, contractor, distributor, customer or other entity with which the Company does business or accepting any payment, service, loan, gift, trip, entertainment or other favor from a supplier, contractor, distributor, customer or other entity with which the Company does business, and that the Contractor will promptly inform a Corporate Officer of the Company as to each offer received by the Contractor to engage in any such activity. The Contractor further agrees to disclose to the Company any other facts of which the Contractor becomes aware which might involve or give rise to a Conflict of Interest or potential Conflict of Interest.

### 4. INTELLECTUAL PROPERTY

4.1 All discoveries, designs, improvements, ideas and inventions, whether patentable or not, relating to (or suggested by or resulting from) products, services, or other technology of the Company or any affiliate or relating to (or suggested by or resulting from) methods or processes used or usable in connection with the business of the Company or any affiliate that may be conceived, developed, or made by the Contractor during Professional Services with the Company (hereinafter "**Inventions**"), either solely or jointly with others, shall automatically become the sole property of the Company or an affiliate of the Company. The Contractor shall immediately disclose to the Company all such Inventions and shall, without additional compensation, execute all assignments and other documents deemed necessary to perfect the property rights of the Company or any affiliate therein. These obligations shall continue beyond the termination of Executive's Professional Services with respect to Inventions conceived, developed, or made by Executive during Professional Services with the Company. The provisions of this clause shall not apply to any Invention for which no equipment, supplies, facility, or trade secret information of the Company or any affiliate is used by the Contractor and which is developed entirely on the Contractor's own time, unless (a) such Invention relates (i) to the business of the Company or an affiliate or (ii) to the actual or demonstrably anticipated research or development of the Company or an affiliate, or (b) such invention results from work performed by the Contractor for the Company.

4.2 The Company is and shall be the sole and exclusive owner of all right, title and interest through the world in and to all results, deliverables and proceeds of all work performed by the Contractor on behalf of the Company during the term ("**Deliverables**"), including, without limitation all patents, copyrights, trademarks, trade secrets and other intellectual property rights (collectively, "**Intellectual Property Rights**") therein. The Contractor irrevocably assigns the Company, all right, title and interest throughout the world in and to the Deliverables.

### 5. NON-SOLICITATION, NON-COMPETE

5.1 The Contractor acknowledges that he or she will gain a knowledge of, and a close working relationship with the Company's customers, which would injure the Company if made available to a competitor or if used for competitive purposes. Accordingly, the Contractor agrees that, during Professional Services and for a period of twelve (12) months from the termination of his or her Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), the Contractor will not (except with the prior written consent of the Company), directly or indirectly, contact any of the persons, clients, companies or institutions with whom the Contractor had dealings on behalf of the Company during his or her Professional

IBANERA 000839

Docusign Envelope ID: 8FCAA295-62EC-4389-A7F6-985EE7377338

# Professional Services Agreement

Services: (i) for the purpose or intent of competing with the Company; or (ii) to sell or offer for sale or solicit orders for the sale of any products that are competitive with products of the Company.

**6.     REMUNERATION AND BENEFITS**

**6.1**     The Contractor acknowledges and agrees that the Company reserves the right to unilaterally introduce and amend various payment for services or commission arrangements designed to remunerate the Contractor and agrees that such changes will not affect the application of this agreement.

**6.2**     In consideration of the Contractor's undertaking and the performance of the obligations contained in this agreement, the Company shall pay and grant the following:

**6.2.1**     a professional services rate of $3,000 **USD** per month ("**Base**"), payable in arrears in bi-weekly installments.

**6.2.2**     time off, as set out in Section 9; and

**6.2.3**     reimbursement of expenses, as set out in Section 10.

**6.3**     As a paid Contractor, it is expected that the standard workday; however, at times, it is expected that the Contractor work beyond these hours as his or her personal workload and specific responsibilities dictate to ensure projects or tasks he or she is managing/performing are completed in a timely manner as required by the specific task or project. Conversely, there will be occasions of slower periods that will warrant shorter work days at which point the Contractor may use his/her discretion to balance his/her workday.

**7.     PERFORMANCE REVIEW:**

**7.1**     The Consultant acknowledges that performance reviews are an integral part of this consulting agreement to ensure the satisfactory completion of services and alignment with the Client's objectives.

**7.2**     A performance review will be conducted by the Client at regular intervals, initially every 30 days from the effective date of this agreement.

**7.3**     During each performance review, the Consultant's performance, deliverables, and adherence to project timelines will be evaluated by the Client.

**7.4**     The Consultant agrees to actively participate in performance review discussions, provide updates on project progress, and address any feedback or concerns raised by the Client.

**7.5** Unsatisfactory performance may include but is not limited to:

- Failure to deliver work products or services within specified timelines.

IBANERA 000840

Docusign Envelope ID: 8FCAA295-62EC-4389-A7F6-985EE7377338

# Professional Services Agreement

- Substandard quality of work or deliverables.

- Lack of communication or responsiveness to client inquiries or requests.

- Breach of confidentiality or violation of contractual terms.

7.6     In the event of termination due to unsatisfactory performance, the Client shall not be liable for any further compensation or reimbursement to the Consultant beyond the date of termination.

## 8.     TERM AND TERMINATION

8.1     The "**Term**" of this Agreement shall commence on the Start Date and continue until the effective date of termination (the "**Termination Date**") as determined in accordance with this Section 8.

8.2     The following terms shall apply to this Section 8:

8.2.1     "**Cause**" means:

(a)  any violation by the Contractor of any material provision of this Agreement upon notice of same by the Company describing in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph (a), which breach, if capable of being cured, has not been cured to the Company's sole and absolute satisfaction within thirty (30) days after such notice (except for breaches of any provisions of Sections 3 or 5, which are not subject to cure or any notice);

(b)  embezzlement by the Contractor of funds or property of the Company;

(c)  habitual absenteeism, bad faith, fraud, refusal to perform duties, conduct that is materially detrimental to the business or the financial position of the Company, conduct that is of such a serious and substantial nature that it would injure the reputation of the Company if the Contractor were retained as an Contractor, gross negligence, poor performance after being advised as to the standard required or willful misconduct on the part of the Contractor in the performance of his or duties as an Contractor of the Company, provided that the Company has given written notice of and an opportunity of not less than thirty (30) days to cure such breach, which notice describes in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph (c), provided that no such notice or opportunity needs to be given if (i) in the judgment of the Company, such conduct is habitual or would unnecessarily or unreasonably expose the Company to undue risk or harm or (ii) previous notice has already been given under this Paragraph (c);

(d)  a felonious act, conviction, or plea of nolo contendere of the Contractor under the laws of the United States or any country (except for any conviction or plea based on a vicarious liability theory and not the actual conduct of the Contractor); or

(e)  any other condition that qualifies as Cause under the terms of this Agreement.

8.3     This Agreement, the Contractor's compensation under Section 6 and all other rights of the Contractor under this Agreement or otherwise as a Contractor of the Company shall terminate (except as otherwise provided in this Section 8):

IBANERA 000841

Docusign Envelope ID: 8FCAA295-62EC-4389-A7F6-985EE7377338

# Professional Services Agreement

**8.3.1**   upon termination of this Agreement by the Contractor;

**8.3.2**   upon termination of this Agreement by the Company;

**8.3.3**   upon the death of Contractor; or

**8.3.4**   upon the Disability of Contractor;

**8.4**   Effective upon the termination of this Agreement, the Company shall pay the Contractor (or, in the event of the Contractor's death, his or her designated beneficiary) only such compensation as is provided in this Paragraph 8.4:

**8.4.1**   If the Contractor terminates this Agreement, the Company shall pay the Contractor the full amount of unpaid Base compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

**8.4.2**   If the Company terminates this Agreement without Cause, it shall pay the Contractor the full amount of unpaid Base compensation.

**8.4.3**   If the Company terminates this Agreement for Cause, the Company shall pay the Contractor the full amount of unpaid compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

**8.4.4**   If this Agreement is terminated by either Party as a result of the Contractor's Disability, the Company shall pay the Contractor his or her Base compensation through the remainder of the calendar month.

**8.5**   The Parties understand and agree that the provision of notice or pay in lieu thereof by the Company to the Contractor on termination shall not prevent the Company from alleging Cause for the termination.

**8.6**   The Contractor authorizes the Company to deduct from any payment due to the Contractor at any time, including from pay in lieu of notice, any amounts owed to the Company by reason of purchases, advances, loans, save only that this provision shall be applied so as not to conflict with any applicable legislation.

**9.**   **Time Off**

**9.1**   Time off days taken by the Contractor are at the discretion of the Company and may only be taken at a time that does not hinder or impact the Company's ability to manage its business. Time off requests are to be submitted to an officer of the Company for approval.

**10.**   **EXPENSE REIMBURSEMENT**

**10.1**   An expense report with supporting and coded receipts (which show tax itemization) must be submitted for eligible expense reimbursement, which will occur within 1 (one) month of submission. The Company shall reimburse Contractors for reasonable expenses on pre-approved business. Such expenses include, but are not limited to, travel fare, accommodation, work-related meals, tips, telephone charges, office supplies, reasonable costs for entertaining clients and purchases made on behalf of the Company. Non-reimbursable expenses include, but are not limited to, personal travel insurance, in-room movies, games, expenses incurred by non-business travelers, personal reading materials, childcare, toiletries, cosmetics, meals consumed during the

IBANERA 000842

# Professional Services Agreement

standard workday, sporting activities and shows not related to the purpose of the business. Expenses are to be submitted monthly; otherwise, tax implications ensue against the Company's best interest.

**11.    TRAVEL GUIDELINES**

11.1    There is an expectation of needing to travel in this Professional Services position. Contractors are required to get prior approval from Company for travel flight class, hotel expense, per diem allocations, client entertainment, and any other expected expenses. If penalties are incurred when needing to rebook flights due to personal circumstances or errors, the Contractor will be responsible to pay for such fees.

**12.    INFORMATION SECURITY**

12.1    The Contractor recognizes that information security, in particular the protection of sensitive information, including, but not limited to, employee and customer personal data, as well as intellectual property, is of critical importance to the company and its affiliates.

12.2    The Contractor acknowledges that, in the course of his/her work, he/she will be responsible for the secure use, storage and transmission of sensitive information.

12.3    The Contractor understands and agrees that it is obligated to exercise due care in using, storing or transmitting sensitive information, and to use its best efforts to prevent such information from being exposed to unauthorized persons, damaged, deleted or otherwise rendered inaccessible.

12.4    The Contractor is required to read and become familiar with the provisions of the Information Security Annex included in the Company Manual.

12.5    The Contractor shall immediately report any incident, actual or potential, related to information security, in accordance with the Incident Response Procedure established by the Company.

12.6    Any failure to comply with contractual provisions relating to information security may result in the imposition of disciplinary measures, in accordance with the Company's internal policies.

12.7    In case of doubt about the Contractor's obligations with respect to information security, the Contractor agrees to consult with his supervisor or the relevant department in order to obtain the necessary clarifications.

**13.    GENERAL**

13.1    The rights which accrue to the Company under this Agreement shall pass to its successors or assigns. The rights of the Contractor under this Agreement are not assignable or transferable in any manner.

13.2    For a period commencing on the Start Date and continuing indefinitely, the Contractor hereby covenants and agrees that he or she shall not, directly or indirectly, defame, disparage, create false impressions, or otherwise put in a false or bad light the Company, its products or services, its business, reputation, conduct, practices, past or present Contractors, financial condition or otherwise.

13.3    In the event that any provision or part of this Agreement is deemed void or invalid by a court of competent jurisdiction, the remaining provisions, or parts of it, shall be and remain in full force and effect.

IBANERA 000843

# Professional Services Agreement

**13.4** In the event of a breach, threatened breach or attempted breach by the Contractor of the provisions of Sections 3 and/or 5 of this Agreement, the Company shall be entitled to an injunction restraining the Contractor from such breach. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or equity for such breach or threatened breach of this Agreement nor limiting the amount in damages recoverable in the event of a breach or threatened breach by the Contractor of the provisions of Sections 3 and/or 5. Without limiting the generality of the foregoing, the Contractor acknowledges that, in the event of a breach, threatened breach or attempted breach by him or her of any of the provisions of Sections 3 and/or 5, the damages of the Company may exceed the amount paid to the Contractor pursuant to this Agreement.  If the Company seeks any equitable relief contemplated by this Clause 13.4, the Contractor shall waive and not assert any defense or argument that a breach by the Contractor of any of the covenants herein contained would not or does not result in irreparable harm to the Company.

**13.5** This Agreement constitutes the entire Agreement between the Parties with respect to the Professional Services of the Contractor and any and all previous agreements, written or oral, express or implied between the Parties or on their behalf relating to the Professional Services of the Contractor by the Company are terminated and cancelled and each of the Parties releases and forever discharges the other of and from all manner of actions, causes of action, claim or demands whatsoever under or in respect of any such agreement.

**13.6** Any modification to this Agreement must be in writing, signed by the Contractor and an officer of the Company or it shall have no effect and shall be void.

**13.7** Any notice required or permitted to be given to the Contractor shall be sufficiently given if delivered to the Contractor personally or if mailed by registered mail to the Contractor's address last known to the Company or if delivered to the Contractor via email. Any notice required or permitted to be given to the Company shall be sufficiently given if delivered to an officer of the Company personally or if mailed by registered mail to the Company's head office at its address last known to the Contractor or if delivered to the Company via email. Any notice given by mail shall be deemed to have been given ninety-six (96) working hours after the time it is posted.

**13.8** The headings utilized in this Agreement are for convenience only and are not to be construed in any way as additions or limitations of the covenants and agreements contained in this Agreement.

**13.9** This Agreement shall be governed by and construed in accordance with the laws of Florida. This Agreement will become effective when all Parties have signed it.

**13.10** It is the intent of the Parties that this Agreement will comply with all applicable Professional Services and labor legislation. Should any term of this Agreement fail to satisfy the minimum requirements of the legislation governing Professional Services and labor standards applicable to the Contractor's Professional Services at the relevant time, then the minimum legislated requirement shall apply and shall be deemed to be the Contractor's full entitlement under this Agreement in that respect and shall be substituted for the provision or provisions of this Agreement that failed to satisfy the minimum requirements of the applicable Professional Services or labor legislation.

**13.11** The Contractor hereby acknowledges that he or she has been advised and has had the opportunity to obtain independent legal advice regarding this Agreement.

Each Party is signing this Agreement on the date stated opposite such Party's signature. The signatures corresponding to this agreement are located on the following page.

IBANERA 000844

# Professional Services Agreement

Signed by:



(Sign)_____313B706099894DB_____

Name: Jay Torres

Position: Contractor

Signed by:



(Sign)_____4D9951961EAB469_____

Name: Michael Carbonara

Position: Director

**For and on behalf of PHOENIX CONNECT LLC**

IBANERA 000845

# Professional Services Agreement

**EXHIBIT 1**
**Sales Representative**
**Job Description**

**Key Responsibilities:**

- Prospecting and Lead Generation: Identifying potential clients through research, networking, cold calling, referrals, and social media.
- Client Relationship Management: Building and maintaining relationships with clients to ensure satisfaction and repeat business.
- Negotiating and Closing Deals: Handling negotiations regarding pricing, terms, and conditions, then finalizing sales contracts.
- Market Research: Staying informed about market trends, competitor products, and customer needs to adapt sales strategies.
- Reporting: Providing regular updates on sales performance, market conditions, and client feedback to the company.
- Order Management and Follow-Up: Coordinating orders, ensuring timely delivery, and following up to address any post-sale concerns.
- Networking: Attending trade shows, conferences, and events to expand their professional network and generate new sales opportunities.
- Achieving Sales Targets: Meeting or exceeding sales goals set by the company.
- Compliance: Ensuring adherence to legal and company policies related to the products or services being sold.
- Lead generation:  Provide 20 new leads p day with contact & follow up information

**Reports To:** Samuel Phillip Teitelbaum II

IBANERA 000846

DocuSign Envelope ID: A75581D4-EBD4-49F7-90B1-8D1A1DCF6444

# Professional Services Agreement

1. **THIS AGREEMENT** (the "**Agreement**") is effective and made as of the date it is signed by the last party to sign it (as indicated by the date associated with that party's signature) and is by and between **Jennifer Tregre** an individual with an address at ████████████████████ (the "**Contractor**") and **PHOENIX CONNECT LLC** a company incorporated under the laws of Nevada under Company Number NV20171 522946 of 78 SW 7th St Ste 7-118, Miami, FL 33130 (the "**Company**") (together, the "**Parties**," each, individually, a "**Party**").

**WHEREAS:**

(A) The Company wishes to engage the Contractor to perform the Services (as defined below) to the Company as an independent contractor pursuant to the terms of the Agreement.

(B) The Company and the Contractor have agreed to enter into a Professional Services relationship for their mutual benefit;

THIS AGREEMENT WITNESSES that the parties have agreed that the terms and conditions of the relationship shall be as follows:

**1.      PROFESSIONAL SERVICES**

1.1      The Contractor will begin Professional Services on July 5th, 2023 (the "**Start Date**").

1.2      The Contractor represents and warrants to the Company that the Contractor has the required skills and experience to perform the duties and exercise the responsibilities required of the Contractor as **Onboarding Analyst**. In carrying out these duties and responsibilities, the Contractor shall comply with all lawful and reasonable instructions as may be given by management of the Company.

1.3      The Contractor specifically undertakes and shall be responsible for the duties as further detailed in the attached job description. In addition to the duties and responsibilities outlined in the attached job description, the Contractor agrees that he or she will assume other duties and responsibilities as may from time to time be determined to be necessary by the Company.

1.4      The Contractor agrees to comply with and be bound by the terms and conditions of this Agreement.

1.5      In consideration for the Contractor's performance in accordance with this Agreement, the Company engages the Contractor.

1.6      The Contractor acknowledges and agrees that the effective performance of his or her duties requires the highest level of integrity and the Company's complete confidence in the Contractor's relationship with other Contractors of the Company and with all persons dealt with by the Contractor in the course of his or her Professional Services.

1.7      It is understood and agreed to by the Contractor that the Company reserves the right to unilaterally change the Contractor's assignments, duties and reporting relationships.

1.8      The Contractor agrees that any of the changes that may occur pursuant to Paragraph 1.7 of this Agreement will not affect or change any other part of this Agreement.

IBANERA 000847

DocuSign Envelope ID: A75581D4-EBD4-49F7-90B1-8D1A1DCF6444

# Professional Services Agreement

**2.    EXCLUSIVE SERVICE**

2.1    Unless agreed to in writing, during the term of Professional Services, the Contractor shall devote himself or herself exclusively to the business of the Company and shall not be employed or engaged in any capacity in promoting, undertaking or carrying on any other business, without the prior approval of the Company.

2.2    The Contractor will be expected to work on a **part-time (20-25 hours per week)** basis exclusively for the Company. The Contractor understands and agrees that the expectation for the Contractor is that which is outlined in the Job Description attached hereto as Exhibit 1, although hours of work may vary as required to meet the objectives of his or her Professional Services.

**3.    CONFIDENTIAL INFORMATION**

3.1    The Contractor acknowledges that, as a Contractor, he or she may acquire information about certain matters and things which are confidential to the Company, and which information is the exclusive property of the Company including, but not limited to:

    3.1.1    product design and manufacturing information;

    3.1.2    lists of present and prospective customers, and related information;

    3.1.3    pricing and sales policies, techniques and concepts;

    3.1.4    lists of suppliers;

    3.1.5    trade secrets; and

    3.1.6    systems and procedures developed and/or acquired by the Company (collectively, "**Confidential Information**").

3.2    The Contractor acknowledges the Confidential Information could be used to the detriment of the Company. Accordingly, the Contractor undertakes to treat confidentially all Confidential Information and agrees not to disclose same to any third party, either during the term of his or her Professional Services (except as may be necessary in the proper discharge of his or her Professional Services under this agreement), or after the date of termination of Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), except with the written permission of an Officer of the Contractor. The Contractor also agrees that the unauthorized disclosure of any Confidential Information during his or her Professional Services will constitute just cause for the immediate termination of the Contractor's Professional Services, without notice or pay in lieu of such notice.

3.3    The Contractor acknowledges that in addition to any and all rights of the Company, the Company shall be entitled to injunctive relief in order to protect its rights and property as set out in Paragraphs 3.1 and 3.2.

3.4    The Contractor agrees that all papers, proposals, contracts, customer lists, lists of customer prospects, notes, records, DVDs, CDs, photographs, artwork, software, all other documents, all copies thereof relating to the Company's operations or business, including those prepared himself or herself, regardless of whether the same are confidential, are the exclusive property of the Company and will not be replicated or taken by the Contractor. All such items, including Company uniform items, shall be returned to Company upon Contractor's termination,

IBANERA 000848

DocuSign Envelope ID: A75581D4-EBD4-49F7-90B1-8D1A1DCF6444

# Professional Services Agreement

regardless of whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement.

3.5 The Contractor agrees that for the duration of the Contractor's Professional Services relationship with the Company, unless agreed to in writing, the Contractor will not engage, either directly or indirectly, in any activity (a "**Conflict of Interest**") which might adversely affect the Company or its affiliates, including ownership of a material interest in any supplier, contractor, distributor, customer or other entity with which the Company does business or accepting any payment, service, loan, gift, trip, entertainment or other favor from a supplier, contractor, distributor, customer or other entity with which the Company does business, and that the Contractor will promptly inform a Corporate Officer of the Company as to each offer received by the Contractor to engage in any such activity. The Contractor further agrees to disclose to the Company any other facts of which the Contractor becomes aware which might involve or give rise to a Conflict of Interest or potential Conflict of Interest.

## 4.    INTELLECTUAL PROPERTY

4.1 All discoveries, designs, improvements, ideas and inventions, whether patentable or not, relating to (or suggested by or resulting from) products, services, or other technology of the Company or any affiliate or relating to (or suggested by or resulting from) methods or processes used or usable in connection with the business of the Company or any affiliate that may be conceived, developed, or made by the Contractor during Professional Services with the Company (hereinafter "**Inventions**"), either solely or jointly with others, shall automatically become the sole property of the Company or an affiliate of the Company. The Contractor shall immediately disclose to the Company all such Inventions and shall, without additional compensation, execute all assignments and other documents deemed necessary to perfect the property rights of the Company or any affiliate therein. These obligations shall continue beyond the termination of Executive's Professional Services with respect to Inventions conceived, developed, or made by Executive during Professional Services with the Company. The provisions of this clause shall not apply to any Invention for which no equipment, supplies, facility, or trade secret information of the Company or any affiliate is used by the Contractor and which is developed entirely on the Contractor's own time, unless (a) such Invention relates (i) to the business of the Company or an affiliate or (ii) to the actual or demonstrably anticipated research or development of the Company or an affiliate, or (b) such invention results from work performed by the Contractor for the Company.

4.2 The Company is and shall be the sole and exclusive owner of all right, title and interest through the world in and to all results, deliverables and proceeds of all work performed by the Contractor on behalf of the Company during the term ("**Deliverables**"), including, without limitation all patents, copyrights, trademarks, trade secrets and other intellectual property rights (collectively, "**Intellectual Property Rights**") therein. The Contractor irrevocably assigns the Company, all right, title and interest throughout the world in and to the Deliverables.

## 5.    NON-SOLICITATION, NON-COMPETE

5.1 The Contractor acknowledges that he or she will gain a knowledge of, and a close working relationship with the Company's customers, which would injure the Company if made available to a competitor or if used for competitive purposes. Accordingly, the Contractor agrees that, during Professional Services and for a period of twelve (12) months from the termination of his or her Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), the Contractor will not (except with the prior written consent of the Company), directly or indirectly, contact any of the persons, clients, companies or institutions with whom the Contractor had dealings on behalf of the Company during his or her Professional Services: (i) for the purpose or intent of competing with the Company; or (ii) to sell or offer for sale or solicit orders for the sale of any products that are competitive with products of the Company.

IBANERA 000849

DocuSign Envelope ID: A75581D4-EBD4-49F7-90B1-8D1A1DCF6444

# Professional Services Agreement

**6.       REMUNERATION AND BENEFITS**

6.1      The Contractor acknowledges and agrees that the Company reserves the right to unilaterally introduce and amend various payment for services or commission arrangements designed to remunerate the Contractor and agrees that such changes will not affect the application of this agreement.

6.2      In consideration of the Contractor's undertaking and the performance of the obligations contained in this agreement, the Company shall pay and grant the following:

   6.2.1     a professional services rate of **USD $1000 per month** , payable in arrears in two weeks installments;

   6.2.2     time off, as set out in Section **8.;** and

   6.2.3     reimbursement of expenses, as set out in Section 9.

6.3      As a paid Contractor, it is expected that the standard workday; however, at times, it is expected that the Contractor work beyond these hours as his or her personal workload and specific responsibilities dictate to ensure projects or tasks he or she is managing/performing are completed in a timely manner as required by the specific task or project. Conversely, there will be occasions of slower periods that will warrant shorter workdays at which point the Contractor may use his/her discretion to balance his/her workday.

**7.       TERM AND TERMINATION**

7.1      The "**Term**" of this Agreement shall commence on the Start Date and continue until the effective date of termination (the "**Termination Date**") as determined in accordance with this Section 7.

7.2      The following terms shall apply to this Section 7:

   7.2.1      "**Cause**" means:

   (a)   Any violation by the Contractor of any material provision of this Agreement upon notice of same by the Company describing in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph 7.2.1(a), which breach, if capable of being cured, has not been cured to the Company's sole and absolute satisfaction within thirty (30) days after such notice (except for breaches of any provisions of Sections 3 or 5, which are not subject to cure or any notice);

   (b)   Embezzlement by the Contractor of funds or property of the Company;

   (c)   Habitual absenteeism, bad faith, fraud, refusal to perform duties, conduct that is materially detrimental to the business or the financial position of the Company, conduct that is of such a serious and substantial nature that it would injure the reputation of the Company if the Contractor were retained as an Contractor, gross negligence, poor performance after being advised as to the standard required or willful misconduct on the part of the Contractor in the performance of his or duties as an Contractor of the Company, provided that the Company has given written notice of and an opportunity of not less than thirty (30) days to cure such breach, which notice describes in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph 7.2.1(c), provided

IBANERA 000850

DocuSign Envelope ID: A75581D4-EBD4-49F7-90B1-8D1A1DCF6444

# Professional Services Agreement

that no such notice or opportunity needs to be given if (i) in the judgment of the Company, such conduct is habitual or would unnecessarily or unreasonably expose the Company to undue risk or harm or (ii) previous notice has already been given under this Paragraph 7.2.1(c);

(d) A felonious act, conviction, or plea of nolo contendere of the Contractor under the laws of the United States or any country (except for any conviction or plea based on a vicarious liability theory and not the actual conduct of the Contractor); or

(e) Any other condition that qualifies as Cause under the terms of this Agreement.

7.3  This Agreement, the Contractor's compensation under Section 6 and all other rights of the Contractor under this Agreement or otherwise as a Contractor of the Company shall terminate (except as otherwise provided in this Section 10):

7.3.1  upon termination of this Agreement by the Contractor;

7.3.2  upon termination of this Agreement by the Company;

7.3.3  upon the death of Contractor; or

7.3.4  upon the Disability of Contractor;

7.4  Effective upon the termination of this Agreement, the Company shall pay the Contractor (or, in the event of the Contractor's death, his or her designated beneficiary) only such compensation as is provided in this Paragraph 7.4:

7.4.1  If the Contractor terminates this Agreement, the Company shall pay the Contractor the full amount of unpaid Base compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

7.4.2  If the Company terminates this Agreement without Cause, it shall pay the Contractor the full amount of unpaid Base compensation.

7.4.3  If the Company terminates this Agreement for Cause, the Company shall pay the Contractor the full amount of unpaid compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

7.4.4  If this Agreement is terminated by either Party as a result of the Contractor's Disability, the Company shall pay the Contractor his or her Base compensation through the remainder of the calendar month.

7.5  The Parties understand and agree that the provision of notice or pay in lieu thereof by the Company to the Contractor on termination shall not prevent the Company from alleging Cause for the termination.

7.6  The Contractor authorizes the Company to deduct from any payment due to the Contractor at any time, including from pay in lieu of notice, any amounts owed to the Company by reason of purchases, advances, loans, save only that this provision shall be applied so as not to conflict with any applicable legislation.

IBANERA 000851

DocuSign Envelope ID: A75581D4-EBD4-49F7-90B1-8D1A1DCF6444

# Professional Services Agreement

**8.      Time Off**

8.1     Time off days taken by the Contractor are at the discretion of the Company and may only be taken at a time that does not hinder or impact the Company's ability to manage its business. Time off requests are to be submitted to an officer of the Company for approval.

**9.      EXPENSE REIMBURSEMENT**

9.1     An expense report with supporting and coded receipts (which show tax itemization) must be submitted for eligible expense reimbursement, which will occur within 1 (one) month of submission. The Company shall reimburse Contractors for reasonable expenses on pre-approved business. Such expenses include, but are not limited to, travel fare, accommodation, work-related meals, tips, telephone charges, office supplies, reasonable costs for entertaining clients and purchases made on behalf of the Company. Non-reimbursable expenses include, but are not limited to, personal travel insurance, in-room movies, games, expenses incurred by non-business travelers, personal reading materials, childcare, toiletries, cosmetics, meals consumed during the standard workday, sporting activities and shows not related to the purpose of the business. Expenses are to be submitted monthly; otherwise, tax implications ensue against the Company's best interest.

**10.     TRAVEL GUIDELINES**

10.1    There is an expectation of needing to travel in this Professional Services position. Contractors are required to get prior approval from Company for travel flight class, hotel expense, per diem allocations, client entertainment, and any other expected expenses. If penalties are incurred when needing to rebook flights due to personal circumstances or errors, the Contractor will be responsible to pay for such fees.

10.2

**11.     GENERAL**

11.1    The rights which accrue to the Company under this Agreement shall pass to its successors or assigns. The rights of the Contractor under this Agreement are not assignable or transferable in any manner.

11.2    For a period commencing on the Start Date and continuing indefinitely, the Contractor hereby covenants and agrees that he or she shall not, directly or indirectly, defame, disparage, create false impressions, or otherwise put in a false or bad light the Company, its products or services, its business, reputation, conduct, practices, past or present Contractors, financial condition or otherwise.

11.3    In the event that any provision or part of this Agreement is deemed void or invalid by a court of competent jurisdiction, the remaining provisions, or parts of it, shall be and remain in full force and effect.

11.4    In the event of a breach, threatened breach or attempted breach by the Contractor of the provisions of Sections 3 and/or 5 of this Agreement, the Company shall be entitled to an injunction restraining the Contractor from such breach. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or equity for such breach or threatened breach of this Agreement nor limiting the amount in damages recoverable in the event of a breach or threatened breach by the Contractor of the provisions of Sections 3 and/or 5. Without limiting the generality of the foregoing, the Contractor acknowledges that, in the event of a breach, threatened breach or attempted breach by him or her of any of the provisions of Sections 3 and/or 5, the damages of the Company may exceed the amount paid to the Contractor pursuant to this Agreement.  If the Company seeks any equitable relief contemplated by this Clause 11.4, the Contractor shall

IBANERA 000852

DocuSign Envelope ID: A75581D4-EBD4-49F7-90B1-8D1A1DCF6444

# Professional Services Agreement

waive and not assert any defense or argument that a breach by the Contractor of any of the covenants herein contained would not or does not result in irreparable harm to the Company.

11.5    This Agreement constitutes the entire Agreement between the Parties with respect to the Professional Services of the Contractor and any and all previous agreements, written or oral, express or implied between the Parties or on their behalf relating to the Professional Services of the Contractor by the Company are terminated and cancelled and each of the Parties releases and forever discharges the other of and from all manner of actions, causes of action, claim or demands whatsoever under or in respect of any such agreement.

11.6    Any modification to this Agreement must be in writing, signed by the Contractor and an officer of the Company or it shall have no effect and shall be void.

11.7    Any notice required or permitted to be given to the Contractor shall be sufficiently given if delivered to the Contractor personally or if mailed by registered mail to the Contractor's address last known to the Company or if delivered to the Contractor via email. Any notice required or permitted to be given to the Company shall be sufficiently given if delivered to an officer of the Company personally or if mailed by registered mail to the Company's head office at its address last known to the Contractor or if delivered to the Company via email. Any notice given by mail shall be deemed to have been given ninety-six (96) working hours after the time it is posted.

11.8    The headings utilized in this Agreement are for convenience only and are not to be construed in any way as additions or limitations of the covenants and agreements contained in this Agreement.

11.9    This Agreement shall be governed by and construed in accordance with the laws of Malta. This Agreement will become effective when all Parties have signed it.

11.10   It is the intent of the Parties that this Agreement will comply with all applicable Professional Services and labor legislation. Should any term of this Agreement fail to satisfy the minimum requirements of the legislation governing Professional Services and labor standards applicable to the Contractor's Professional Services at the relevant time, then the minimum legislated requirement shall apply and shall be deemed to be the Contractor's full entitlement under this Agreement in that respect and shall be substituted for the provision or provisions of this Agreement that failed to satisfy the minimum requirements of the applicable Professional Services or labor legislation.

11.11   The Contractor hereby acknowledges that he or she has been advised and has had the opportunity to obtain independent legal advice regarding this Agreement.

IBANERA 000853

# Professional Services Agreement

Each Party is signing this Agreement on the date stated opposite such Party's signature.

(Sign) _Jennifer Tregre_
329B1DF7694546B...

Name: Jennifer Tregre

Position: Consultant

(Sign) _Michael Carbonara_
4D9951961EAB469

Name: Michael Carbonara

Position: Director

**For and on behalf of PHOENIX CONNECT LLC**

IBANERA 000854

# Professional Services Agreement

**EXHIBIT 1**
**Job Title: Onboarding Analyst**
**Job Description: Ensure timely onboarding of new customers.**

**Tasks:**

- Monitor Onboarding Email

- Review submitted documents by clients and check if they are complete and accurate.

- Create Checklist files with missing documents per client for the Sales team.

- Monitor the Ibanera Admin Dashboard.

- Monitor Finclusive Dashboard.

**Reports To: Ingrid Rivera.**

IBANERA 000855

DocuSign Envelope ID: 6FA30602-9B41-460D-B0C1-4E4719505155

# Professional Services Agreement

1. **THIS AGREEMENT** (the "**Agreement**") is effective and made as of the date it is signed by the last party to sign it (as indicated by the date associated with that party's signature) and is by and between **Jondalar Diepeveen** an individual with an address at ▓▓▓▓▓▓▓▓▓▓▓; (the "**Contractor**") and **PHOENIX CONNECT LLC** a company incorporated under the laws of Nevada under Company Number NV20171522946 of 78 SW 7th St Ste 7-118, Miami, FL 33130 (the "**Company**") (together, the "**Parties**," each, individually, a "**Party**").

**WHEREAS:**

(A) The Company wishes to engage the Contractor to perform the Services (as defined below) to the Company as an independent contractor pursuant to the terms of the Agreement.

(B) The Company and the Contractor have agreed to enter into a Professional Services relationship for their mutual benefit;

THIS AGREEMENT WITNESSES that the parties have agreed that the terms and conditions of the relationship shall be as follows:

## 1. PROFESSIONAL SERVICES

1.1 The Contractor will begin Professional Services on January 2nd, 2023 (the "**Start Date**").

1.2 The Contractor represents and warrants to the Company that the Contractor has the required skills and experience to perform the duties and exercise the responsibilities required of the Contractor as a **COO & Solutions Engineer**. In carrying out these duties and responsibilities the Contractor shall comply with all lawful and reasonable instructions as may be given by management of the Company.

1.3 The Contractor specifically undertakes and shall be responsible for the duties as further detailed in the attached job description. In addition to the duties and responsibilities outlined in the attached job description, the Contractor agrees that he or she will assume other duties and responsibilities as may from time to time be determined to be necessary by the Company.

1.4 The Contractor agrees to comply with and be bound by the terms and conditions of this Agreement.

1.5 In consideration for the Contractor's performance in accordance with this Agreement, the Company engages the Contractor.

1.6 The Contractor acknowledges and agrees that the effective performance of his or her duties requires the highest level of integrity and the Company's complete confidence in the Contractor's relationship with other Contractors of the Company and with all persons dealt with by the Contractor in the course of his or her Professional Services.

1.7 It is understood and agreed to by the Contractor that the Company reserves the right to unilaterally change the Contractor's assignments, duties and reporting relationships.

1.8 The Contractor agrees that any of the changes that may occur pursuant to Paragraph 1.7 of this Agreement will not affect or change any other part of this Agreement.

IBANERA 000856

DocuSign Envelope ID: 6EA30602-9B41-460D-B0C1-4E4719505155

# Professional Services Agreement

**2.     EXCLUSIVE SERVICE**

2.1     Unless agreed to in writing, during the term of Professional Services, the Contractor shall devote himself or herself exclusively to the business of the Company and shall not be employed or engaged in any capacity in promoting, undertaking or carrying on any other business, without the prior approval of the Company.

2.2     The Contractor will be expected to work on a full-time basis exclusively for the Company. The Contractor understands and agrees that the expectation for the Contractor is that which is outlined in the Job Description attached hereto as Exhibit 1, although hours of work may vary as required to meet the objectives of his or her Professional Services.

**3.     CONFIDENTIAL INFORMATION**

3.1     The Contractor acknowledges that, as a Contractor, he or she may acquire information about certain matters and things which are confidential to the Company, and which information is the exclusive property of the Company including, but not limited to:

3.1.1     product design and manufacturing information;

3.1.2     lists of present and prospective customers, and related information;

3.1.3     pricing and sales policies, techniques and concepts;

3.1.4     lists of suppliers;

3.1.5     trade secrets; and

3.1.6     systems and procedures developed and/or acquired by the Company

(collectively, "**Confidential Information**").

3.2     The Contractor acknowledges the Confidential Information could be used to the detriment of the Company. Accordingly, the Contractor undertakes to treat confidentially all Confidential Information and agrees not to disclose same to any third party, either during the term of his or her Professional Services (except as may be necessary in the proper discharge of his or her Professional Services under this agreement), or after the date of termination of Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), except with the written permission of an Officer of the Contractor. The Contractor also agrees that the unauthorized disclosure of any Confidential Information during his or her Professional Services will constitute just cause for the immediate termination of the Contractor's Professional Services, without notice or pay in lieu of such notice.

3.3     The Contractor acknowledges that in addition to any and all rights of the Company, the Company shall be entitled to injunctive relief in order to protect its rights and property as set out in Paragraphs 3.1 and 3.2.

3.4     The Contractor agrees that all papers, proposals, contracts, customer lists, lists of customer prospects, notes, records, DVDs, CDs, photographs, artwork, software, all other documents, all copies thereof relating to the Company's operations or business, including those prepared himself or herself, regardless of whether the same are confidential, are the exclusive property of the Company and will not be replicated or taken by the Contractor.

IBANERA 000857

DocuSign Envelope ID: 6FA30602-9B41-460D-B0C1-4E4719505155

# Professional Services Agreement

All such items, including Company uniform items, shall be returned to Company upon Contractor's termination, regardless of whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement.

3.5    The Contractor agrees that for the duration of the Contractor's Professional Services relationship with the Company, unless agreed to in writing, the Contractor will not engage, either directly or indirectly, in any activity (a "**Conflict of Interest**") which might adversely affect the Company or its affiliates, including ownership of a material interest in any supplier, contractor, distributor, customer or other entity with which the Company does business or accepting any payment, service, loan, gift, trip, entertainment or other favor from a supplier, contractor, distributor, customer or other entity with which the Company does business, and that the Contractor will promptly inform a Corporate Officer of the Company as to each offer received by the Contractor to engage in any such activity. The Contractor further agrees to disclose to the Company any other facts of which the Contractor becomes aware which might involve or give rise to a Conflict of Interest or potential Conflict of Interest.

## 4.    INTELLECTUAL PROPERTY

4.1    All discoveries, designs, improvements, ideas and inventions, whether patentable or not, relating to (or suggested by or resulting from) products, services, or other technology of the Company or any affiliate or relating to (or suggested by or resulting from) methods or processes used or usable in connection with the business of the Company or any affiliate that may be conceived, developed, or made by the Contractor during Professional Services with the Company (hereinafter "**Inventions**"), either solely or jointly with others, shall automatically become the sole property of the Company or an affiliate of the Company. The Contractor shall immediately disclose to the Company all such Inventions and shall, without additional compensation, execute all assignments and other documents deemed necessary to perfect the property rights of the Company or any affiliate therein. These obligations shall continue beyond the termination of Executive's Professional Services with respect to Inventions conceived, developed, or made by Executive during Professional Services with the Company. The provisions of this clause shall not apply to any Invention for which no equipment, supplies, facility, or trade secret information of the Company or any affiliate is used by the Contractor and which is developed entirely on the Contractor's own time, unless (a) such Invention relates (i) to the business of the Company or an affiliate or (ii) to the actual or demonstrably anticipated research or development of the Company or an affiliate, or (b) such invention results from work performed by the Contractor for the Company.

4.2    The Company is and shall be the sole and exclusive owner of all right, title and interest through the world in and to all results, deliverables and proceeds of all work performed by the Contractor on behalf of the Company during the term ("**Deliverables**"), including, without limitation all patents, copyrights, trademarks, trade secrets and other intellectual property rights (collectively, "**Intellectual Property Rights**") therein. The Contractor irrevocably assigns the Company, all right, title and interest throughout the world in and to the Deliverables.

## 5.    NON-SOLICITATION, NON-COMPETE

5.1    The Contractor acknowledges that he or she will gain a knowledge of, and a close working relationship with the Company's customers, which would injure the Company if made available to a competitor or if used for competitive purposes. Accordingly, the Contractor agrees that, during Professional Services and for a period of twelve (12) months from the termination of his or her Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), the Contractor will not (except with the prior written consent of the Company), directly or indirectly, contact any of the persons, clients, companies or institutions with whom the Contractor had dealings on behalf of the Company during his or

IBANERA 000858

DocuSign Envelope ID: 6EA30602-9B41-460D-B0C1-4E4719505155

# Professional Services Agreement

her Professional Services: (i) for the purpose or intent of competing with the Company; or (ii) to sell or offer for sale or solicit orders for the sale of any products that are competitive with products of the Company.

**6.      REMUNERATION AND BENEFITS**

6.1      The Contractor acknowledges and agrees that the Company reserves the right to unilaterally introduce and amend various payment for services or commission arrangements designed to remunerate the Contractor and agrees that such changes will not affect the application of this agreement.

6.2      In consideration of the Contractor's undertaking and the performance of the obligations contained in this agreement, the Company shall pay and grant the following:

6.2.1      a professional services rate of USD $10,000.00 per month ("**Base**"), payable in arrears in bi-weekly installments.

6.2.2      time off, as set out in Section **8**; and

6.2.3      reimbursement of expenses, as set out in Section 9.

6.3      As a paid Contractor, it is expected that the standard workday; however, at times, it is expected that the Contractor work beyond these hours as his or her personal workload and specific responsibilities dictate to ensure projects or tasks he or she is managing/performing are completed in a timely manner as required by the specific task or project. Conversely, there will be occasions of slower periods that will warrant shorter workdays at which point the Contractor may use his/her discretion to balance his/her workday.

**7.      TERM AND TERMINATION**

7.1      The "**Term**" of this Agreement shall commence on the Start Date and continue until the effective date of termination (the "**Termination Date**") as determined in accordance with this Section 7.

7.2      The following terms shall apply to this Section 7:

7.2.1      "**Cause**" means:

(a)      any violation by the Contractor of any material provision of this Agreement upon notice of same by the Company describing in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph 7.2.1(a), which breach, if capable of being cured, has not been cured to the Company's sole and absolute satisfaction within thirty (30) days after such notice (except for breaches of any provisions of Sections 3 or 5, which are not subject to cure or any notice);

(b)      embezzlement by the Contractor of funds or property of the Company;

(c)      habitual absenteeism, bad faith, fraud, refusal to perform duties, conduct that is materially detrimental to the business or the financial position of the Company, conduct that is of such a serious and substantial nature that it would injure the reputation of the Company if the Contractor were retained as an Contractor, gross negligence, poor performance after being advised as to the standard required or willful misconduct on the part of the Contractor in the performance of his or duties as an

IBANERA 000859

DocuSign Envelope ID: 6FA30602-9B41-460D-B0C1-4E4719505155

# Professional Services Agreement

Contractor of the Company, provided that the Company has given written notice of and an opportunity of not less than thirty (30) days to cure such breach, which notice describes in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph 7.2.1(c), provided that no such notice or opportunity needs to be given if (i) in the judgment of the Company, such conduct is habitual or would unnecessarily or unreasonably expose the Company to undue risk or harm or (ii) previous notice has already been given under this Paragraph 7.2.1(c);

(d) a felonious act, conviction, or plea of nolo contendere of the Contractor under the laws of the United States or any country (except for any conviction or plea based on a vicarious liability theory and not the actual conduct of the Contractor); or

(e) any other condition that qualifies as Cause under the terms of this Agreement.

7.3   This Agreement, the Contractor's compensation under Section 6 and all other rights of the Contractor under this Agreement or otherwise as a Contractor of the Company shall terminate (except as otherwise provided in this Section 10):

7.3.1   upon termination of this Agreement by the Contractor;

7.3.2   upon termination of this Agreement by the Company;

7.3.3   upon the death of Contractor; or

7.3.4   upon the Disability of Contractor;

7.4   Effective upon the termination of this Agreement, the Company shall pay the Contractor (or, in the event of the Contractor's death, his or her designated beneficiary) only such compensation as is provided in this Paragraph 7.4:

7.4.1   If the Contractor terminates this Agreement, the Company shall pay the Contractor the full amount of unpaid Base compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

7.4.2   If the Company terminates this Agreement without Cause, it shall pay the Contractor the full amount of unpaid Base compensation.

7.4.3   If the Company terminates this Agreement for Cause, the Company shall pay the Contractor the full amount of unpaid compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

7.4.4   If this Agreement is terminated by either Party as a result of the Contractor's Disability, the Company shall pay the Contractor his or her Base compensation through the remainder of the calendar month.

7.5   The Parties understand and agree that the provision of notice or pay in lieu thereof by the Company to the Contractor on termination shall not prevent the Company from alleging Cause for the termination.

7.6   The Contractor authorizes the Company to deduct from any payment due to the Contractor at any time, including from pay in lieu of notice, any amounts owed to the Company by reason of purchases, advances, loans, save only that this provision shall be applied so as not to conflict with any applicable legislation.

IBANERA 000860

# Professional Services Agreement

**8.      Time Off**

8.1      Time off days taken by the Contractor are at the discretion of the Company and may only be taken at a time that does not hinder or impact the Company's ability to manage its business. Time off requests are to be submitted to an officer of the Company for approval.

**9.      EXPENSE REIMBURSEMENT**

9.1      An expense report with supporting and coded receipts (which show tax itemization) must be submitted for eligible expense reimbursement, which will occur within 1 (one) month of submission. The Company shall reimburse Contractors for reasonable expenses on pre-approved business. Such expenses include, but are not limited to, travel fare, accommodation, work-related meals, tips, telephone charges, office supplies, reasonable costs for entertaining clients and purchases made on behalf of the Company. Non-reimbursable expenses include, but are not limited to, personal travel insurance, in-room movies, games, expenses incurred by non-business travelers, personal reading materials, childcare, toiletries, cosmetics, meals consumed during the standard workday, sporting activities and shows not related to the purpose of the business. Expenses are to be submitted monthly; otherwise, tax implications ensue against the Company's best interest.

**10.     TRAVEL GUIDELINES**

10.1     There is an expectation of needing to travel in this Professional Services position. Contractors are required to get prior approval from Company for travel flight class, hotel expense, per diem allocations, client entertainment, and any other expected expenses. If penalties are incurred when needing to rebook flights due to personal circumstances or errors, the Contractor will be responsible to pay for such fees.

**11.     GENERAL**

11.1     The rights which accrue to the Company under this Agreement shall pass to its successors or assigns. The rights of the Contractor under this Agreement are not assignable or transferable in any manner.

11.2     For a period commencing on the Start Date and continuing indefinitely, the Contractor hereby covenants and agrees that he or she shall not, directly or indirectly, defame, disparage, create false impressions, or otherwise put in a false or bad light the Company, its products or services, its business, reputation, conduct, practices, past or present Contractors, financial condition or otherwise.

11.3     In the event that any provision or part of this Agreement is deemed void or invalid by a court of competent jurisdiction, the remaining provisions, or parts of it, shall be and remain in full force and effect.

11.4     In the event of a breach, threatened breach or attempted breach by the Contractor of the provisions of Sections 3 and/or 5 of this Agreement, the Company shall be entitled to an injunction restraining the Contractor from such breach. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or equity for such breach or threatened breach of this Agreement nor limiting the amount in damages recoverable in the event of a breach or threatened breach by the Contractor of the provisions of Sections 3 and/or 5. Without limiting the generality of the foregoing, the Contractor acknowledges that, in the event of a breach, threatened breach or attempted breach by him or her of any of the provisions of Sections 3 and/or 5, the damages of the Company may exceed the amount paid to the Contractor pursuant to this

IBANERA 000861

# Professional Services Agreement

Agreement.  If the Company seeks any equitable relief contemplated by this Clause 11.4, the Contractor shall waive and not assert any defense or argument that a breach by the Contractor of any of the covenants herein contained would not or does not result in irreparable harm to the Company.

11.5     This Agreement constitutes the entire Agreement between the Parties with respect to the Professional Services of the Contractor and any and all previous agreements, written or oral, express or implied between the Parties or on their behalf relating to the Professional Services of the Contractor by the Company are terminated and cancelled and each of the Parties releases and forever discharges the other of and from all manner of actions, causes of action, claim or demands whatsoever under or in respect of any such agreement.

11.6     Any modification to this Agreement must be in writing, signed by the Contractor and an officer of the Company or it shall have no effect and shall be void.

11.7     Any notice required or permitted to be given to the Contractor shall be sufficiently given if delivered to the Contractor personally or if mailed by registered mail to the Contractor's address last known to the Company or if delivered to the Contractor via email. Any notice required or permitted to be given to the Company shall be sufficiently given if delivered to an officer of the Company personally or if mailed by registered mail to the Company's head office at its address last known to the Contractor or if delivered to the Company via email. Any notice given by mail shall be deemed to have been given ninety-six (96) working hours after the time it is posted.

11.8     The headings utilized in this Agreement are for convenience only and are not to be construed in any way as additions or limitations of the covenants and agreements contained in this Agreement.

11.9     This Agreement shall be governed by and construed in accordance with the laws of Malta. This Agreement will become effective when all Parties have signed it.

11.10    It is the intent of the Parties that this Agreement will comply with all applicable Professional Services and labor legislation. Should any term of this Agreement fail to satisfy the minimum requirements of the legislation governing Professional Services and labor standards applicable to the Contractor's Professional Services at the relevant time, then the minimum legislated requirement shall apply and shall be deemed to be the Contractor's full entitlement under this Agreement in that respect and shall be substituted for the provision or provisions of this Agreement that failed to satisfy the minimum requirements of the applicable Professional Services or labor legislation.

11.11    The Contractor hereby acknowledges that he or she has been advised and has had the opportunity to obtain independent legal advice regarding this Agreement.

IBANERA 000862

# Professional Services Agreement

Each Party is signing this Agreement on the date stated opposite such Party's signature.

(Sign) *Jondalar Diepeveen*

Name: Jondalar Diepeveen

Position: Consultant

(Sign) *Michael Carbonara*

Name: Michael Carbonara

Position: Director

**For and on behalf of PHOENIX CONNECT LLC**

IBANERA 000863

# Professional Services Agreement

## EXHIBIT 1
## COO & Solutions Engineer
## JOB DESCRIPTION

- Oversee quality throughout the company by setting goals, develop and implement strategies to ensure that such goals are met and take appropriate measures to correct unsatisfactory performance and results.

- Lead the development of the Company's short- and long-term strategies and policies.

- Communicate with shareholders, the general public and government entities

- Represent the Company at functions, public meetings and industry events

- Help prepare annual budgets, analyze the risk of its investments and advise the board of directors on the risk and return of the investments.

- Monitor the company's performance indicators and any budgetary and financial activities.

- Appoint and manage key personnel.

- Ensure the Company's compliance with all applicable laws, rules, regulations, and standards.

- Negotiates with other companies regarding actions such as mergers, acquisitions, or joint ventures.

- Performs other related duties to benefit the mission of the company.

IBANERA 000864

# Professional Services Agreement

**THIS AGREEMENT** (the "**Agreement**") is effective and made as of the date it is signed by the last party to sign it (as indicated by the date associated with that party's signature) and is by and between **Jorge Araujo Fraga** individual with an address ████████████████████████ (the "**Contractor**") and **PHOENIX CONNECT LLC** a company incorporated under the laws of Nevada under Company Number NV20171522946 of **78 SW 7th St Ste 7-118, Miami, FL 33130** (the "**Company**") (together, the "**Parties**," each, individually, a "**Party**").

**WHEREAS:**

(A)   The Company wishes to engage the Contractor to perform the Services (as defined below) to the Company as an independent contractor pursuant to the terms of the Agreement.

(B)   The Company and the Contractor have agreed to enter into a Professional Services relationship for their mutual benefit;

THIS AGREEMENT WITNESSES that the parties have agreed that the terms and conditions of the relationship shall be as follows:

1.      **PROFESSIONAL SERVICES**

1.1      The Contractor will begin Professional Services on **August 19th ,2024** (the **Start Date**).

1.2      The Contractor represents and warrants to the Company that the Contractor has the required skills and experience to perform the duties and exercise the responsibilities required for the **Executive Assistant** position. In carrying out these duties and responsibilities the Contractor shall comply with all lawful and reasonable instructions as may be given by management of the Company.

1.3      The Contractor agrees that he or she will assume other duties and responsibilities as may from time to time be determined to be necessary by the Company.

1.4      The Contractor agrees to comply with and be bound by the terms and conditions of this Agreement.

1.5      In consideration for the Contractor's performance in accordance with this Agreement, the Company engages the Contractor.

1.6      The Contractor acknowledges and agrees that the effective performance of his or her duties requires the highest level of integrity and the Company's complete confidence in the Contractor's relationship with other Contractors of the Company and with all persons dealt with by the Contractor in the course of his or her Professional Services.

1.7      It is understood and agreed to by the Contractor that the Company reserves the right to unilaterally change the Contractor's assignments, duties and reporting relationships.

1.8      The Contractor agrees that any of the changes that may occur pursuant to Paragraph 1.7 of this Agreement will not affect or change any other part of this Agreement.

IBANERA 000865

# Professional Services Agreement

**2.      EXCLUSIVE SERVICE**

**2.1**      Unless agreed to in writing, during the term of Professional Services, the Contractor shall devote himself or herself exclusively to the business of the Company and shall not be employed or engaged in any capacity in promoting, undertaking, or carrying on any other business, without the prior approval of the Company.

**2.2**      The Contractor will be expected to work on a **full-time** basis exclusively for the Company. The Contractor understands and agrees that the expectation for the Contractor is that which is outlined in the Job Description attached hereto as Exhibit 1, although hours of work may vary as required to meet the objectives of his or her Professional Services.

**3.      CONFIDENTIAL INFORMATION**

**3.1**      The Contractor acknowledges that, as Contractor, it may acquire information about certain matters that are confidential to Company and its affiliates, and which information is proprietary to Company and its affiliates, including, but not limited to:

      **3.1.1**      product design and manufacturing information;

      **3.1.2**      lists of present and prospective customers, and related information;

      **3.1.3**      pricing and sales policies, techniques and concepts;

      **3.1.4**      lists of suppliers;

      **3.1.5**      trade secrets; and

      **3.1.6**      systems and procedures developed and/or acquired by the Company and its affiliates (collectively, "**Confidential Information**").

**3.2**      The Contractor acknowledges the Confidential Information could be used to the detriment of the Company. Accordingly, the Contractor undertakes to treat confidentially all Confidential Information and agrees not to disclose same to any third party, either during the term of his or her Professional Services (except as may be necessary in the proper discharge of his or her Professional Services under this agreement), or after the date of termination of Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), except with the written permission of an Officer of the Contractor. The Contractor also agrees that the unauthorized disclosure of any Confidential Information during his or her Professional Services will constitute just cause for the immediate termination of the Contractor's Professional Services, without notice or pay in lieu of such notice.

**3.3**      The Contractor acknowledges that in addition to any and all rights of the Company, the Company shall be entitled to injunctive relief in order to protect its rights and property as set out in Paragraphs 3.1 and 3.2.

**3.4**      The Contractor agrees that all papers, proposals, contracts, customer lists, lists of customer prospects, notes, records, DVDs, CDs, photographs, artwork, software, all other documents, all copies thereof relating to the Company's operations or business, including those prepared himself or herself, regardless of whether the same are confidential, are the exclusive property of the Company and will not be replicated or taken by the Contractor. All such items, including Company uniform items, shall be returned to Company upon Contractor's termination,

IBANERA 000866

Docusign Envelope ID: 53329D5D-DF20-43E4-B740-248C5E947C74

# Professional Services Agreement

regardless of whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement.

3.5     The Contractor agrees that for the duration of the Contractor's Professional Services relationship with the Company, unless agreed to in writing, the Contractor will not engage, either directly or indirectly, in any activity (a "**Conflict of Interest**") which might adversely affect the Company or its affiliates, including ownership of a material interest in any supplier, contractor, distributor, customer or other entity with which the Company does business or accepting any payment, service, loan, gift, trip, entertainment or other favor from a supplier, contractor, distributor, customer or other entity with which the Company does business, and that the Contractor will promptly inform a Corporate Officer of the Company as to each offer received by the Contractor to engage in any such activity. The Contractor further agrees to disclose to the Company any other facts of which the Contractor becomes aware which might involve or give rise to a Conflict of Interest or potential Conflict of Interest.

4.     **INTELLECTUAL PROPERTY**

4.1     All discoveries, designs, improvements, ideas and inventions, whether patentable or not, relating to (or suggested by or resulting from) products, services, or other technology of the Company or any affiliate or relating to (or suggested by or resulting from) methods or processes used or usable in connection with the business of the Company or any affiliate that may be conceived, developed, or made by the Contractor during Professional Services with the Company (hereinafter "**Inventions**"), either solely or jointly with others, shall automatically become the sole property of the Company or an affiliate of the Company. The Contractor shall immediately disclose to the Company all such Inventions and shall, without additional compensation, execute all assignments and other documents deemed necessary to perfect the property rights of the Company or any affiliate therein. These obligations shall continue beyond the termination of Executive's Professional Services with respect to Inventions conceived, developed, or made by Executive during Professional Services with the Company. The provisions of this clause shall not apply to any Invention for which no equipment, supplies, facility, or trade secret information of the Company or any affiliate is used by the Contractor and which is developed entirely on the Contractor's own time, unless (a) such Invention relates (i) to the business of the Company or an affiliate or (ii) to the actual or demonstrably anticipated research or development of the Company or an affiliate, or (b) such invention results from work performed by the Contractor for the Company.

4.2     The Company is and shall be the sole and exclusive owner of all right, title and interest through the world in and to all results, deliverables and proceeds of all work performed by the Contractor on behalf of the Company during the term ("**Deliverables**"), including, without limitation all patents, copyrights, trademarks, trade secrets and other intellectual property rights (collectively, "**Intellectual Property Rights**") therein. The Contractor irrevocably assigns the Company, all right, title and interest throughout the world in and to the Deliverables.

5.     **NON-SOLICITATION, NON-COMPETE**

5.1     The Contractor acknowledges that he or she will gain a knowledge of, and a close working relationship with the Company's customers, which would injure the Company if made available to a competitor or if used for competitive purposes. Accordingly, the Contractor agrees that, during Professional Services and for a period of twelve (12) months from the termination of his or her Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), the Contractor will not (except with the prior written consent of the Company), directly or indirectly, contact any of the persons, clients, companies or institutions with whom the Contractor had dealings on behalf of the Company during his or her Professional

IBANERA 000867

Docusign Envelope ID: 53329DED-DF20-43F4-B740-248C5E947C74

# Professional Services Agreement

Services: (i) for the purpose or intent of competing with the Company; or (ii) to sell or offer for sale or solicit orders for the sale of any products that are competitive with products of the Company.

**6.      REMUNERATION AND BENEFITS**

6.1      The Contractor acknowledges and agrees that the Company reserves the right to unilaterally introduce and amend various payment for services or commission arrangements designed to remunerate the Contractor and agrees that such changes will not affect the application of this agreement.

6.2      In consideration of the Contractor's undertaking and the performance of the obligations contained in this agreement, the Company shall pay and grant the following:

   6.2.1     a professional services rate of $3,000 USD per month ("**Base**"), payable in arrears in bi-weekly installments.

   6.2.2     time off, as set out in Section 9; and

   6.2.3     reimbursement of expenses, as set out in Section 10.

6.3      As a paid Contractor, it is expected that the standard workday; however, at times, it is expected that the Contractor work beyond these hours as his or her personal workload and specific responsibilities dictate to ensure projects or tasks he or she is managing/performing are completed in a timely manner as required by the specific task or project. Conversely, there will be occasions of slower periods that will warrant shorter work days at which point the Contractor may use his/her discretion to balance his/her workday.

**7.      PERFORMANCE REVIEW:**

7.1      The Consultant acknowledges that performance reviews are an integral part of this consulting agreement to ensure the satisfactory completion of services and alignment with the Client's objectives.

7.2      A performance review will be conducted by the Client at regular intervals, initially every 30 days from the effective date of this agreement.

7.3      During each performance review, the Consultant's performance, deliverables, and adherence to project timelines will be evaluated by the Client.

7.4      The Consultant agrees to actively participate in performance review discussions, provide updates on project progress, and address any feedback or concerns raised by the Client.

7.5    Unsatisfactory performance may include but is not limited to:
   - Failure to deliver work products or services within specified timelines.
   - Substandard quality of work or deliverables.

IBANERA 000868

Docusign Envelope ID: 53329D5D-DF20-43F4-B740-248C5E947C74

# Professional Services Agreement

- Lack of communication or responsiveness to client inquiries or requests.
- Breach of confidentiality or violation of contractual terms.

7.6   In the event of termination due to unsatisfactory performance, the Client shall not be liable for any further compensation or reimbursement to the Consultant beyond the date of termination.

8.   **TERM AND TERMINATION**

8.1   The "**Term**" of this Agreement shall commence on the Start Date and continue until the effective date of termination (the "**Termination Date**") as determined in accordance with this Section 8.

8.2   The following terms shall apply to this Section 8:

8.2.1   "**Cause**" means:

(a) any violation by the Contractor of any material provision of this Agreement upon notice of same by the Company describing in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph (a), which breach, if capable of being cured, has not been cured to the Company's sole and absolute satisfaction within thirty (30) days after such notice (except for breaches of any provisions of Sections 3 or 5, which are not subject to cure or any notice);

(b) embezzlement by the Contractor of funds or property of the Company;

(c) habitual absenteeism, bad faith, fraud, refusal to perform duties, conduct that is materially detrimental to the business or the financial position of the Company, conduct that is of such a serious and substantial nature that it would injure the reputation of the Company if the Contractor were retained as an Contractor, gross negligence, poor performance after being advised as to the standard required or willful misconduct on the part of the Contractor in the performance of his or duties as an Contractor of the Company, provided that the Company has given written notice of and an opportunity of not less than thirty (30) days to cure such breach, which notice describes in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph (c), provided that no such notice or opportunity needs to be given if (i) in the judgment of the Company, such conduct is habitual or would unnecessarily or unreasonably expose the Company to undue risk or harm or (ii) previous notice has already been given under this Paragraph (c);

(d) a felonious act, conviction, or plea of nolo contendere of the Contractor under the laws of the United States or any country (except for any conviction or plea based on a vicarious liability theory and not the actual conduct of the Contractor); or

(e) any other condition that qualifies as Cause under the terms of this Agreement.

8.3   This Agreement, the Contractor's compensation under Section 6 and all other rights of the Contractor under this Agreement or otherwise as a Contractor of the Company shall terminate (except as otherwise provided in this Section 8):

8.3.1   upon termination of this Agreement by the Contractor;

IBANERA 000869

# Professional Services Agreement

**8.3.2**   upon termination of this Agreement by the Company;

**8.3.3**   upon the death of Contractor; or

**8.3.4**   upon the Disability of Contractor;

**8.4**   Effective upon the termination of this Agreement, the Company shall pay the Contractor (or, in the event of the Contractor's death, his or her designated beneficiary) only such compensation as is provided in this Paragraph 8.4:

**8.4.1**   If the Contractor terminates this Agreement, the Company shall pay the Contractor the full amount of unpaid Base compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

**8.4.2**   If the Company terminates this Agreement without Cause, it shall pay the Contractor the full amount of unpaid Base compensation.

**8.4.3**   If the Company terminates this Agreement for Cause, the Company shall pay the Contractor the full amount of unpaid compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

**8.4.4**   If this Agreement is terminated by either Party as a result of the Contractor's Disability, the Company shall pay the Contractor his or her Base compensation through the remainder of the calendar month.

**8.5**   The Parties understand and agree that the provision of notice or pay in lieu thereof by the Company to the Contractor on termination shall not prevent the Company from alleging Cause for the termination.

**8.6**   The Contractor authorizes the Company to deduct from any payment due to the Contractor at any time, including from pay in lieu of notice, any amounts owed to the Company by reason of purchases, advances, loans, save only that this provision shall be applied so as not to conflict with any applicable legislation.

## 9.   Time Off

**9.1**   Time off days taken by the Contractor are at the discretion of the Company and may only be taken at a time that does not hinder or impact the Company's ability to manage its business. Time off requests are to be submitted to an officer of the Company for approval.

## 10.   EXPENSE REIMBURSEMENT

**10.1**   An expense report with supporting and coded receipts (which show tax itemization) must be submitted for eligible expense reimbursement, which will occur within 1 (one) month of submission. The Company shall reimburse Contractors for reasonable expenses on pre-approved business. Such expenses include, but are not limited to, travel fare, accommodation, work-related meals, tips, telephone charges, office supplies, reasonable costs for entertaining clients and purchases made on behalf of the Company. Non-reimbursable expenses include, but are not limited to, personal travel insurance, in-room movies, games, expenses incurred by non-business travelers, personal reading materials, childcare, toiletries, cosmetics, meals consumed during the standard workday, sporting activities and shows not related to the purpose of the business. Expenses are to be submitted monthly; otherwise, tax implications ensue against the Company's best interest.

IBANERA 000870

# Professional Services Agreement

**11.     TRAVEL GUIDELINES**

**11.1**     There is an expectation of needing to travel in this Professional Services position. Contractors are required to get prior approval from Company for travel flight class, hotel expense, per diem allocations, client entertainment, and any other expected expenses. If penalties are incurred when needing to rebook flights due to personal circumstances or errors, the Contractor will be responsible to pay for such fees.

**12.     INFORMATION SECURITY**

**12.1**     The Contractor recognizes that information security, in particular the protection of sensitive information, including, but not limited to, employee and customer personal data, as well as intellectual property, is of critical importance to the company and its affiliates.

**12.2**     The Contractor acknowledges that, in the course of his/her work, he/she will be responsible for the secure use, storage and transmission of sensitive information.

**12.3**     The Contractor understands and agrees that it is obligated to exercise due care in using, storing or transmitting sensitive information, and to use its best efforts to prevent such information from being exposed to unauthorized persons, damaged, deleted or otherwise rendered inaccessible.

**12.4**     The Contractor is required to read and become familiar with the provisions of the Information Security Annex included in the Company Manual.

**12.5**     The Contractor shall immediately report any incident, actual or potential, related to information security, in accordance with the Incident Response Procedure established by the Company.

**12.6**     Any failure to comply with contractual provisions relating to information security may result in the imposition of disciplinary measures, in accordance with the Company's internal policies.

**12.7**     In case of doubt about the Contractor's obligations with respect to information security, the Contractor agrees to consult with his supervisor or the relevant department in order to obtain the necessary clarifications.

**13.     GENERAL**

**13.1**     The rights which accrue to the Company under this Agreement shall pass to its successors or assigns. The rights of the Contractor under this Agreement are not assignable or transferable in any manner.

**13.2**     For a period commencing on the Start Date and continuing indefinitely, the Contractor hereby covenants and agrees that he or she shall not, directly or indirectly, defame, disparage, create false impressions, or otherwise put in a false or bad light the Company, its products or services, its business, reputation, conduct, practices, past or present Contractors, financial condition or otherwise.

**13.3**     In the event that any provision or part of this Agreement is deemed void or invalid by a court of competent jurisdiction, the remaining provisions, or parts of it, shall be and remain in full force and effect.

**13.4**     In the event of a breach, threatened breach or attempted breach by the Contractor of the provisions of Sections 3 and/or 5 of this Agreement, the Company shall be entitled to an injunction restraining the Contractor from such

IBANERA 000871

# Professional Services Agreement

breach. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or equity for such breach or threatened breach of this Agreement nor limiting the amount in damages recoverable in the event of a breach or threatened breach by the Contractor of the provisions of Sections 3 and/or 5. Without limiting the generality of the foregoing, the Contractor acknowledges that, in the event of a breach, threatened breach or attempted breach by him or her of any of the provisions of Sections 3 and/or 5, the damages of the Company may exceed the amount paid to the Contractor pursuant to this Agreement.  If the Company seeks any equitable relief contemplated by this Clause 12.4, the Contractor shall waive and not assert any defense or argument that a breach by the Contractor of any of the covenants herein contained would not or does not result in irreparable harm to the Company.

13.5    This Agreement constitutes the entire Agreement between the Parties with respect to the Professional Services of the Contractor and any and all previous agreements, written or oral, express or implied between the Parties or on their behalf relating to the Professional Services of the Contractor by the Company are terminated and cancelled and each of the Parties releases and forever discharges the other of and from all manner of actions, causes of action, claim or demands whatsoever under or in respect of any such agreement.

13.6    Any modification to this Agreement must be in writing, signed by the Contractor and an officer of the Company or it shall have no effect and shall be void.

13.7    Any notice required or permitted to be given to the Contractor shall be sufficiently given if delivered to the Contractor personally or if mailed by registered mail to the Contractor's address last known to the Company or if delivered to the Contractor via email. Any notice required or permitted to be given to the Company shall be sufficiently given if delivered to an officer of the Company personally or if mailed by registered mail to the Company's head office at its address last known to the Contractor or if delivered to the Company via email. Any notice given by mail shall be deemed to have been given ninety-six (96) working hours after the time it is posted.

13.8    The headings utilized in this Agreement are for convenience only and are not to be construed in any way as additions or limitations of the covenants and agreements contained in this Agreement.

13.9    This Agreement shall be governed by and construed in accordance with the laws of Florida. This Agreement will become effective when all Parties have signed it.

13.10   It is the intent of the Parties that this Agreement will comply with all applicable Professional Services and labor legislation. Should any term of this Agreement fail to satisfy the minimum requirements of the legislation governing Professional Services and labor standards applicable to the Contractor's Professional Services at the relevant time, then the minimum legislated requirement shall apply and shall be deemed to be the Contractor's full entitlement under this Agreement in that respect and shall be substituted for the provision or provisions of this Agreement that failed to satisfy the minimum requirements of the applicable Professional Services or labor legislation.

13.11   The Contractor hereby acknowledges that he or she has been advised and has had the opportunity to obtain independent legal advice regarding this Agreement.

Each Party is signing this Agreement on the date stated opposite such Party's signature. The signatures corresponding to this agreement are located on the following page.

IBANERA 000872

# Professional Services Agreement

Signed by:

*Jorge Fraga*

(Sign) ___91D5C79922044E0...___

Name: **Jorge Araujo Fraga**

Position: Contractor

Signed by:

*Michael Carbonara*

(Sign) ___4D9951961EAB469...___

Name: Michael Carbonara

Position: Director

**For and on behalf of PHOENIX CONNECT LLC**

IBANERA 000873

# Professional Services Agreement

**EXHIBIT 1**
**Executive assistant**
**Job Description**

**Key Responsibilities:**

- **Administrative Support:** Provide high-level administrative support to executives, including managing calendars, scheduling meetings, and handling travel arrangements.
- **Document Preparation:** Prepare, edit, and format reports, presentations, and other documents as required by the executive team.
- **Communication:** Act as a liaison between executives and internal/external stakeholders, handling correspondence, calls, and inquiries with professionalism.
- **Meeting Coordination:** Organize and coordinate meetings, including preparing agendas, taking minutes, and tracking follow-up actions.
- **Project Assistance**: Support the execution of various projects by tracking progress, setting deadlines, and ensuring timely completion of tasks.
- **Confidentiality:** Handle sensitive and confidential information with the highest level of discretion.
- **Event Planning:** Help plan and execute company events, meetings, and conferences.

**Reports To: Ingrid Rivera**

IBANERA 000874

# Professional Services Agreement

**THIS AGREEMENT** (the "**Agreement**") is effective and made as of the date it is signed by the last party to sign it (as indicated by the date associated with that party's signature) and is by and between **Pedro Cavallari** individual with an address ▇▇▇▇▇▇▇▇▇▇▇▇ (the "**Contractor**") and **PHOENIX CONNECT LLC** a company incorporated under the laws of Nevada under Company Number NV20171522946 of **78 SW 7th St Ste 7-118, Miami, FL 33130** (the "**Company**") (together, the "**Parties**," each, individually, a "**Party**").

**WHEREAS:**

(A)  The Company wishes to engage the Contractor to perform the Services (as defined below) to the Company as an independent contractor pursuant to the terms of the Agreement.

(B)  The Company and the Contractor have agreed to enter into a Professional Services relationship for their mutual benefit;

THIS AGREEMENT WITNESSES that the parties have agreed that the terms and conditions of the relationship shall be as follows:

**1.       PROFESSIONAL SERVICES**

1.1      The Contractor will begin Professional Services on **September 16th, 2024** (the **Start Date**).

1.2      The Contractor represents and warrants to the Company that the Contractor has the required skills and experience to perform the duties and exercise the responsibilities required for the **Sales Representative** position. In carrying out these duties and responsibilities the Contractor shall comply with all lawful and reasonable instructions as may be given by management of the Company.

1.3      The Contractor agrees that he or she will assume other duties and responsibilities as may from time to time be determined to be necessary by the Company.

1.4      The Contractor agrees to comply with and be bound by the terms and conditions of this Agreement.

1.5      In consideration for the Contractor's performance in accordance with this Agreement, the Company engages the Contractor.

1.6      The Contractor acknowledges and agrees that the effective performance of his or her duties requires the highest level of integrity and the Company's complete confidence in the Contractor's relationship with other Contractors of the Company and with all persons dealt with by the Contractor in the course of his or her Professional Services.

1.7      It is understood and agreed to by the Contractor that the Company reserves the right to unilaterally change the Contractor's assignments, duties and reporting relationships.

1.8      The Contractor agrees that any of the changes that may occur pursuant to Paragraph 1.7 of this Agreement will not affect or change any other part of this Agreement.

IBANERA 000875

Docusign Envelope ID: 6927B3C6-F15A-4187-86A9-5369C494B5C6

# Professional Services Agreement

**2.     EXCLUSIVE SERVICE**

2.1     Unless agreed to in writing, during the term of Professional Services, the Contractor shall devote himself or herself exclusively to the business of the Company and shall not be employed or engaged in any capacity in promoting, undertaking, or carrying on any other business, without the prior approval of the Company.

2.2     The Contractor will be expected to work on a **full-time** basis exclusively for the Company. The Contractor understands and agrees that the expectation for the Contractor is that which is outlined in the Job Description attached hereto as Exhibit 1, although hours of work may vary as required to meet the objectives of his or her Professional Services.

**3.     CONFIDENTIAL INFORMATION**

3.1     The Contractor acknowledges that, as Contractor, it may acquire information about certain matters that are confidential to Company and its affiliates, and which information is proprietary to Company and its affiliates, including, but not limited to:

   **3.1.1**     product design and manufacturing information;

   **3.1.2**     lists of present and prospective customers, and related information;

   **3.1.3**     pricing and sales policies, techniques and concepts;

   **3.1.4**     lists of suppliers;

   **3.1.5**     trade secrets; and

   **3.1.6**     systems and procedures developed and/or acquired by the Company and its affiliates (collectively, "**Confidential Information**").

3.2     The Contractor acknowledges the Confidential Information could be used to the detriment of the Company. Accordingly, the Contractor undertakes to treat confidentially all Confidential Information and agrees not to disclose same to any third party, either during the term of his or her Professional Services (except as may be necessary in the proper discharge of his or her Professional Services under this agreement), or after the date of termination of Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), except with the written permission of an Officer of the Contractor. The Contractor also agrees that the unauthorized disclosure of any Confidential Information during his or her Professional Services will constitute just cause for the immediate termination of the Contractor's Professional Services, without notice or pay in lieu of such notice.

3.3     The Contractor acknowledges that in addition to any and all rights of the Company, the Company shall be entitled to injunctive relief in order to protect its rights and property as set out in Paragraphs 3.1 and 3.2.

3.4     The Contractor agrees that all papers, proposals, contracts, customer lists, lists of customer prospects, notes, records, DVDs, CDs, photographs, artwork, software, all other documents, all copies thereof relating to the Company's operations or business, including those prepared himself or herself, regardless of whether the same are confidential, are the exclusive property of the Company and will not be replicated or taken by the Contractor. All such items, including Company uniform items, shall be returned to Company upon Contractor's termination,

IBANERA 000876

Docusign Envelope ID: 6927B3C6-F15A-4187-86A9-5369C494B5C6

# Professional Services Agreement

regardless of whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement.

3.5     The Contractor agrees that for the duration of the Contractor's Professional Services relationship with the Company, unless agreed to in writing, the Contractor will not engage, either directly or indirectly, in any activity (a "**Conflict of Interest**") which might adversely affect the Company or its affiliates, including ownership of a material interest in any supplier, contractor, distributor, customer or other entity with which the Company does business or accepting any payment, service, loan, gift, trip, entertainment or other favor from a supplier, contractor, distributor, customer or other entity with which the Company does business, and that the Contractor will promptly inform a Corporate Officer of the Company as to each offer received by the Contractor to engage in any such activity. The Contractor further agrees to disclose to the Company any other facts of which the Contractor becomes aware which might involve or give rise to a Conflict of Interest or potential Conflict of Interest.

4.      **INTELLECTUAL PROPERTY**

4.1     All discoveries, designs, improvements, ideas and inventions, whether patentable or not, relating to (or suggested by or resulting from) products, services, or other technology of the Company or any affiliate or relating to (or suggested by or resulting from) methods or processes used or usable in connection with the business of the Company or any affiliate that may be conceived, developed, or made by the Contractor during Professional Services with the Company (hereinafter "**Inventions**"), either solely or jointly with others, shall automatically become the sole property of the Company or an affiliate of the Company. The Contractor shall immediately disclose to the Company all such Inventions and shall, without additional compensation, execute all assignments and other documents deemed necessary to perfect the property rights of the Company or any affiliate therein. These obligations shall continue beyond the termination of Executive's Professional Services with respect to Inventions conceived, developed, or made by Executive during Professional Services with the Company. The provisions of this clause shall not apply to any Invention for which no equipment, supplies, facility, or trade secret information of the Company or any affiliate is used by the Contractor and which is developed entirely on the Contractor's own time, unless (a) such Invention relates (i) to the business of the Company or an affiliate or (ii) to the actual or demonstrably anticipated research or development of the Company or an affiliate, or (b) such invention results from work performed by the Contractor for the Company.

4.2     The Company is and shall be the sole and exclusive owner of all right, title and interest through the world in and to all results, deliverables and proceeds of all work performed by the Contractor on behalf of the Company during the term ("**Deliverables**"), including, without limitation all patents, copyrights, trademarks, trade secrets and other intellectual property rights (collectively, "**Intellectual Property Rights**") therein. The Contractor irrevocably assigns the Company, all right, title and interest throughout the world in and to the Deliverables.

5.      **NON-SOLICITATION, NON-COMPETE**

5.1     The Contractor acknowledges that he or she will gain a knowledge of, and a close working relationship with the Company's customers, which would injure the Company if made available to a competitor or if used for competitive purposes. Accordingly, the Contractor agrees that, during Professional Services and for a period of twelve (12) months from the termination of his or her Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), the Contractor will not (except with the prior written consent of the Company), directly or indirectly, contact any of the persons, clients, companies or institutions with whom the Contractor had dealings on behalf of the Company during his or her Professional

IBANERA 000877

Docusign Envelope ID: 6927B3C6-F15A-4187-86A9-5369C494B5C6

# Professional Services Agreement

Services: (i) for the purpose or intent of competing with the Company; or (ii) to sell or offer for sale or solicit orders for the sale of any products that are competitive with products of the Company.

## 6. REMUNERATION AND BENEFITS

**6.1** The Contractor acknowledges and agrees that the Company reserves the right to unilaterally introduce and amend various payment for services or commission arrangements designed to remunerate the Contractor and agrees that such changes will not affect the application of this agreement.

**6.2** In consideration of the Contractor's undertaking and the performance of the obligations contained in this agreement, the Company shall pay and grant the following:

**6.2.1** a professional services rate of $3,000 USD per month ("**Base**"), payable in arrears in bi-weekly installments.

**6.2.2** time off, as set out in Section 9; and

**6.2.3** reimbursement of expenses, as set out in Section 10.

**6.3** As a paid Contractor, it is expected that the standard workday; however, at times, it is expected that the Contractor work beyond these hours as his or her personal workload and specific responsibilities dictate to ensure projects or tasks he or she is managing/performing are completed in a timely manner as required by the specific task or project. Conversely, there will be occasions of slower periods that will warrant shorter workdays at which point the Contractor may use his/her discretion to balance his/her workday.

**6.4** The commission for each referral will be assessed on an individual basis and at the Company discretion. The Company reserves the right to determine the appropriate commission based on various factors, including but not limited to, the type of referral, the volume of business generated, and any other relevant criteria established by the Company. The commission structure may differ from one client to another and will be paid in U.S. dollars. Any exchange rate calculations will be based on the nominal indexation agreed upon by the Parties, which may be reviewed or updated annually by the Company.

## 7. PERFORMANCE REVIEW:

**7.1** The Consultant acknowledges that performance reviews are an integral part of this consulting agreement to ensure the satisfactory completion of services and alignment with the Client's objectives.

**7.2** A performance review will be conducted by the Client at regular intervals, initially every 30 days from the effective date of this agreement.

**7.3** During each performance review, the Consultant's performance, deliverables, and adherence to project timelines will be evaluated by the Client.

IBANERA 000878

Docusign Envelope ID: 6927B3C6-F15A-4187-86A9-5369C494B5C6

# Professional Services Agreement

**7.4**     The Consultant agrees to actively participate in performance review discussions, provide updates on project progress, and address any feedback or concerns raised by the Client.

**7.5** Unsatisfactory performance may include but is not limited to:

- Failure to deliver work products or services within specified timelines.
- Substandard quality of work or deliverables.
- Lack of communication or responsiveness to client inquiries or requests.
- Breach of confidentiality or violation of contractual terms.

**7.6**     In the event of termination due to unsatisfactory performance, the Client shall not be liable for any further compensation or reimbursement to the Consultant beyond the date of termination.

**8.     TERM AND TERMINATION**

**8.1**     The "**Term**" of this Agreement shall commence on the Start Date and continue until the effective date of termination (the "**Termination Date**") as determined in accordance with this Section 8.

**8.2**     The following terms shall apply to this Section 8:

**8.2.1**     "**Cause**" means:

**(a)** any violation by the Contractor of any material provision of this Agreement upon notice of same by the Company describing in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph (a), which breach, if capable of being cured, has not been cured to the Company's sole and absolute satisfaction within thirty (30) days after such notice (except for breaches of any provisions of Sections 3 or 5, which are not subject to cure or any notice);

**(b)** embezzlement by the Contractor of funds or property of the Company;

**(c)** habitual absenteeism, bad faith, fraud, refusal to perform duties, conduct that is materially detrimental to the business or the financial position of the Company, conduct that is of such a serious and substantial nature that it would injure the reputation of the Company if the Contractor were retained as an Contractor, gross negligence, poor performance after being advised as to the standard required or willful misconduct on the part of the Contractor in the performance of his or duties as an Contractor of the Company, provided that the Company has given written notice of and an opportunity of not less than thirty (30) days to cure such breach, which notice describes in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph (c), provided that no such notice or opportunity needs to be given if (i) in the judgment of the Company, such conduct is habitual or would unnecessarily or unreasonably expose the Company to undue risk or harm or (ii) previous notice has already been given under this Paragraph (c);

**(d)** a felonious act, conviction, or plea of nolo contendere of the Contractor under the laws of the United States or any country (except for any conviction or plea based on a vicarious liability theory and not the actual conduct of the Contractor); or

IBANERA 000879

Docusign Envelope ID: 6927B3C6-F15A-4187-86A9-5369C494B5C6

# Professional Services Agreement

**(e)** any other condition that qualifies as Cause under the terms of this Agreement.

**8.3** This Agreement, the Contractor's compensation under Section 6 and all other rights of the Contractor under this Agreement or otherwise as a Contractor of the Company shall terminate (except as otherwise provided in this Section 8):

> **8.3.1** upon termination of this Agreement by the Contractor;
>
> **8.3.2** upon termination of this Agreement by the Company;
>
> **8.3.3** upon the death of Contractor; or
>
> **8.3.4** upon the Disability of Contractor;

**8.4** Effective upon the termination of this Agreement, the Company shall pay the Contractor (or, in the event of the Contractor's death, his or her designated beneficiary) only such compensation as is provided in this Paragraph 8.4:

> **8.4.1** If the Contractor terminates this Agreement, the Company shall pay the Contractor the full amount of unpaid Base compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.
>
> **8.4.2** If the Company terminates this Agreement without Cause, it shall pay the Contractor the full amount of unpaid Base compensation.
>
> **8.4.3** If the Company terminates this Agreement for Cause, the Company shall pay the Contractor the full amount of unpaid compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.
>
> **8.4.4** If this Agreement is terminated by either Party as a result of the Contractor's Disability, the Company shall pay the Contractor his or her Base compensation through the remainder of the calendar month.

**8.5** The Parties understand and agree that the provision of notice or pay in lieu thereof by the Company to the Contractor on termination shall not prevent the Company from alleging Cause for the termination.

**8.6** The Contractor authorizes the Company to deduct from any payment due to the Contractor at any time, including from pay in lieu of notice, any amounts owed to the Company by reason of purchases, advances, loans, save only that this provision shall be applied so as not to conflict with any applicable legislation.

**9.    Time Off**

**9.1** Time off days taken by the Contractor are at the discretion of the Company and may only be taken at a time that does not hinder or impact the Company's ability to manage its business. Time off requests are to be submitted to an officer of the Company for approval.

**10.    EXPENSE REIMBURSEMENT**

**10.1** An expense report with supporting and coded receipts (which show tax itemization) must be submitted for eligible expense reimbursement, which will occur within 1 (one) month of submission. The Company shall

IBANERA 000880

Docusign Envelope ID: 6927B3C6-F15A-4187-86A9-5369C494B5C6

# Professional Services Agreement

reimburse Contractors for reasonable expenses on pre-approved business. Such expenses include, but are not limited to, travel fare, accommodation, work-related meals, tips, telephone charges, office supplies, reasonable costs for entertaining clients and purchases made on behalf of the Company. Non-reimbursable expenses include, but are not limited to, personal travel insurance, in-room movies, games, expenses incurred by non-business travelers, personal reading materials, childcare, toiletries, cosmetics, meals consumed during the standard workday, sporting activities and shows not related to the purpose of the business. Expenses are to be submitted monthly; otherwise, tax implications ensue against the Company's best interest.

**11.    TRAVEL GUIDELINES**

**11.1**    There is an expectation of needing to travel in this Professional Services position. Contractors are required to get prior approval from Company for travel flight class, hotel expense, per diem allocations, client entertainment, and any other expected expenses. If penalties are incurred when needing to rebook flights due to personal circumstances or errors, the Contractor will be responsible to pay for such fees.

**12.    INFORMATION SECURITY**

**12.1**    The Contractor recognizes that information security, in particular the protection of sensitive information, including, but not limited to, employee and customer personal data, as well as intellectual property, is of critical importance to the company and its affiliates.

**12.2**    The Contractor acknowledges that, in the course of his/her work, he/she will be responsible for the secure use, storage and transmission of sensitive information.

**12.3**    The Contractor understands and agrees that it is obligated to exercise due care in using, storing or transmitting sensitive information, and to use its best efforts to prevent such information from being exposed to unauthorized persons, damaged, deleted or otherwise rendered inaccessible.

**12.4**    The Contractor is required to read and become familiar with the provisions of the Information Security Annex included in the Company Manual.

**12.5**    The Contractor shall immediately report any incident, actual or potential, related to information security, in accordance with the Incident Response Procedure established by the Company.

**12.6**    Any failure to comply with contractual provisions relating to information security may result in the imposition of disciplinary measures, in accordance with the Company's internal policies.

**12.7**    In case of doubt about the Contractor's obligations with respect to information security, the Contractor agrees to consult with his supervisor or the relevant department in order to obtain the necessary clarifications.

**13.    GENERAL**

**13.1**    The rights which accrue to the Company under this Agreement shall pass to its successors or assigns. The rights of the Contractor under this Agreement are not assignable or transferable in any manner.

**13.2**    For a period commencing on the Start Date and continuing indefinitely, the Contractor hereby covenants and agrees that he or she shall not, directly or indirectly, defame, disparage, create false impressions, or otherwise put

IBANERA 000881

Docusign Envelope ID: 6927B3C6-F15A-4187-86A9-5369C494B5C6

# Professional Services Agreement

in a false or bad light the Company, its products or services, its business, reputation, conduct, practices, past or present Contractors, financial condition or otherwise.

13.3   In the event that any provision or part of this Agreement is deemed void or invalid by a court of competent jurisdiction, the remaining provisions, or parts of it, shall be and remain in full force and effect.

13.4   In the event of a breach, threatened breach or attempted breach by the Contractor of the provisions of Sections 3 and/or 5 of this Agreement, the Company shall be entitled to an injunction restraining the Contractor from such breach. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or equity for such breach or threatened breach of this Agreement nor limiting the amount in damages recoverable in the event of a breach or threatened breach by the Contractor of the provisions of Sections 3 and/or 5. Without limiting the generality of the foregoing, the Contractor acknowledges that, in the event of a breach, threatened breach or attempted breach by him or her of any of the provisions of Sections 3 and/or 5, the damages of the Company may exceed the amount paid to the Contractor pursuant to this Agreement.  If the Company seeks any equitable relief contemplated by this Clause 13.4, the Contractor shall waive and not assert any defense or argument that a breach by the Contractor of any of the covenants herein contained would not or does not result in irreparable harm to the Company.

13.5   This Agreement constitutes the entire Agreement between the Parties with respect to the Professional Services of the Contractor and any and all previous agreements, written or oral, express or implied between the Parties or on their behalf relating to the Professional Services of the Contractor by the Company are terminated and cancelled and each of the Parties releases and forever discharges the other of and from all manner of actions, causes of action, claim or demands whatsoever under or in respect of any such agreement.

13.6   Any modification to this Agreement must be in writing, signed by the Contractor and an officer of the Company or it shall have no effect and shall be void.

13.7   Any notice required or permitted to be given to the Contractor shall be sufficiently given if delivered to the Contractor personally or if mailed by registered mail to the Contractor's address last known to the Company or if delivered to the Contractor via email. Any notice required or permitted to be given to the Company shall be sufficiently given if delivered to an officer of the Company personally or if mailed by registered mail to the Company's head office at its address last known to the Contractor or if delivered to the Company via email. Any notice given by mail shall be deemed to have been given ninety-six (96) working hours after the time it is posted.

13.8   The headings utilized in this Agreement are for convenience only and are not to be construed in any way as additions or limitations of the covenants and agreements contained in this Agreement.

13.9   This Agreement shall be governed by and construed in accordance with the laws of Florida. This Agreement will become effective when all Parties have signed it.

13.10   It is the intent of the Parties that this Agreement will comply with all applicable Professional Services and labor legislation. Should any term of this Agreement fail to satisfy the minimum requirements of the legislation governing Professional Services and labor standards applicable to the Contractor's Professional Services at the relevant time, then the minimum legislated requirement shall apply and shall be deemed to be the Contractor's full entitlement under this Agreement in that respect and shall be substituted for the provision or provisions of this Agreement that failed to satisfy the minimum requirements of the applicable Professional Services or labor legislation.

IBANERA 000882

# Professional Services Agreement

**13.11**   The Contractor hereby acknowledges that he or she has been advised and has had the opportunity to obtain independent legal advice regarding this Agreement.

Each Party is signing this Agreement on the date stated opposite such Party's signature. The signatures corresponding to this agreement are located on the following page.

(Sign) *Pedro Cavallari*

DocuSigned by:
E57680BDDB294A3...

Name: Pedro Cavallari

Position: Contractor

(Sign) *Michael Carbonara*

Signed by:
4D9951961EAB469...

Name: Michael Carbonara

Position: Director

**For and on behalf of PHOENIX CONNECT LLC**

IBANERA 000883

# Professional Services Agreement

**EXHIBIT 1**
**Sales Representative**
**Job Description**

**Key Responsibilities:**

- **Prospecting and Lead Generation:** Identifying potential clients through research, networking, cold calling, referrals, and social media.
- **Client Relationship Management:** Building and maintaining relationships with clients to ensure satisfaction and repeat business.
- **Negotiating and Closing Deals**: Handling negotiations regarding pricing, terms, and conditions, then finalizing sales contracts.
- **Market Research:** Staying informed about market trends, competitor products, and customer needs to adapt sales strategies.
- **Reporting:** Providing regular updates on sales performance, market conditions, and client feedback to the company.
- **Order Management and Follow-Up:** Coordinating orders, ensuring timely delivery, and following up to address any post-sale concerns.
- **Networking:** Attending trade shows, conferences, and events to expand their professional network and generate new sales opportunities.
- **Achieving Sales Targets:** Meeting or exceeding sales goals set by the company.
- Compliance: Ensuring adherence to legal and company policies related to the products or services being sold.
- **Lead generation:**  Provide 20 new leads p day with contact & follow up information

**Reports To:** Samuel Phillip Teitelbaum II

IBANERA 000884

Docusign Envelope ID: F5472826-127E-4DEF-BA2D-3F6CD942AA8D

# Professional Services Agreement

**THIS AGREEMENT** (the "**Agreement**") is effective and made as of the date it is signed by the last party to sign it (as indicated by the date associated with that party's signature) and is by and between **Samuel Phillip Teitelbaum II** individual with an address ███████████████████████ (the "**Contractor**") and **PHOENIX CONNECT LLC** a company incorporated under the laws of Nevada under Company Number NV20171522946 of **78 SW 7th St Ste 7-118, Miami, FL 33130** (the "**Company**") (together, the "**Parties**," each, individually, a "**Party**").

**WHEREAS:**

(A)   The Company wishes to engage the Contractor to perform the Services (as defined below) to the Company as an independent contractor pursuant to the terms of the Agreement.

(B)   The Company and the Contractor have agreed to enter into a Professional Services relationship for their mutual benefit;

THIS AGREEMENT WITNESSES that the parties have agreed that the terms and conditions of the relationship shall be as follows:

**1.      PROFESSIONAL SERVICES**

1.1      The Contractor will begin Professional Services on **September 9th,2024** (the **Start Date**).

1.2      The Contractor represents and warrants to the Company that the Contractor has the required skills and experience to perform the duties and exercise the responsibilities required for the **Vegas Sales Manager** position. In carrying out these duties and responsibilities the Contractor shall comply with all lawful and reasonable instructions as may be given by management of the Company.

1.3      The Contractor agrees that he or she will assume other duties and responsibilities as may from time to time be determined to be necessary by the Company.

1.4      The Contractor agrees to comply with and be bound by the terms and conditions of this Agreement.

1.5      In consideration for the Contractor's performance in accordance with this Agreement, the Company engages the Contractor.

1.6      The Contractor acknowledges and agrees that the effective performance of his or her duties requires the highest level of integrity and the Company's complete confidence in the Contractor's relationship with other Contractors of the Company and with all persons dealt with by the Contractor in the course of his or her Professional Services.

1.7      It is understood and agreed to by the Contractor that the Company reserves the right to unilaterally change the Contractor's assignments, duties and reporting relationships.

1.8      The Contractor agrees that any of the changes that may occur pursuant to Paragraph 1.7 of this Agreement will not affect or change any other part of this Agreement.

IBANERA 000885

Docusign Envelope ID: F5472826-127E-4DEF-BA2D-3F6CD942AA8D

# Professional Services Agreement

**2.     EXCLUSIVE SERVICE**

2.1     Unless agreed to in writing, during the term of Professional Services, the Contractor shall devote himself or herself exclusively to the business of the Company and shall not be employed or engaged in any capacity in promoting, undertaking, or carrying on any other business, without the prior approval of the Company.

2.2     The Contractor will be expected to work on a **full-time** basis exclusively for the Company. The Contractor understands and agrees that the expectation for the Contractor is that which is outlined in the Job Description attached hereto as Exhibit 1, although hours of work may vary as required to meet the objectives of his or her Professional Services.

**3.     CONFIDENTIAL INFORMATION**

3.1     The Contractor acknowledges that, as Contractor, it may acquire information about certain matters that are confidential to Company and its affiliates, and which information is proprietary to Company and its affiliates, including, but not limited to:

   **3.1.1**     product design and manufacturing information;

   **3.1.2**     lists of present and prospective customers, and related information;

   **3.1.3**     pricing and sales policies, techniques and concepts;

   **3.1.4**     lists of suppliers;

   **3.1.5**     trade secrets; and

   **3.1.6**     systems and procedures developed and/or acquired by the Company and its affiliates (collectively, "**Confidential Information**").

3.2     The Contractor acknowledges the Confidential Information could be used to the detriment of the Company. Accordingly, the Contractor undertakes to treat confidentially all Confidential Information and agrees not to disclose same to any third party, either during the term of his or her Professional Services (except as may be necessary in the proper discharge of his or her Professional Services under this agreement), or after the date of termination of Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), except with the written permission of an Officer of the Contractor. The Contractor also agrees that the unauthorized disclosure of any Confidential Information during his or her Professional Services will constitute just cause for the immediate termination of the Contractor's Professional Services, without notice or pay in lieu of such notice.

3.3     The Contractor acknowledges that in addition to any and all rights of the Company, the Company shall be entitled to injunctive relief in order to protect its rights and property as set out in Paragraphs 3.1 and 3.2.

3.4     The Contractor agrees that all papers, proposals, contracts, customer lists, lists of customer prospects, notes, records, DVDs, CDs, photographs, artwork, software, all other documents, all copies thereof relating to the Company's operations or business, including those prepared himself or herself, regardless of whether the same are confidential, are the exclusive property of the Company and will not be replicated or taken by the Contractor. All such items, including Company uniform items, shall be returned to Company upon Contractor's termination,

IBANERA 000886

Docusign Envelope ID: F5472826-127E-4DEF-BA2D-3F6CD942AA8D

# Professional Services Agreement

regardless of whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement.

3.5     The Contractor agrees that for the duration of the Contractor's Professional Services relationship with the Company, unless agreed to in writing, the Contractor will not engage, either directly or indirectly, in any activity (a "**Conflict of Interest**") which might adversely affect the Company or its affiliates, including ownership of a material interest in any supplier, contractor, distributor, customer or other entity with which the Company does business or accepting any payment, service, loan, gift, trip, entertainment or other favor from a supplier, contractor, distributor, customer or other entity with which the Company does business, and that the Contractor will promptly inform a Corporate Officer of the Company as to each offer received by the Contractor to engage in any such activity. The Contractor further agrees to disclose to the Company any other facts of which the Contractor becomes aware which might involve or give rise to a Conflict of Interest or potential Conflict of Interest.

## 4.     INTELLECTUAL PROPERTY

4.1     All discoveries, designs, improvements, ideas and inventions, whether patentable or not, relating to (or suggested by or resulting from) products, services, or other technology of the Company or any affiliate or relating to (or suggested by or resulting from) methods or processes used or usable in connection with the business of the Company or any affiliate that may be conceived, developed, or made by the Contractor during Professional Services with the Company (hereinafter "**Inventions**"), either solely or jointly with others, shall automatically become the sole property of the Company or an affiliate of the Company. The Contractor shall immediately disclose to the Company all such Inventions and shall, without additional compensation, execute all assignments and other documents deemed necessary to perfect the property rights of the Company or any affiliate therein. These obligations shall continue beyond the termination of Executive's Professional Services with respect to Inventions conceived, developed, or made by Executive during Professional Services with the Company. The provisions of this clause shall not apply to any Invention for which no equipment, supplies, facility, or trade secret information of the Company or any affiliate is used by the Contractor and which is developed entirely on the Contractor's own time, unless (a) such Invention relates (i) to the business of the Company or an affiliate or (ii) to the actual or demonstrably anticipated research or development of the Company or an affiliate, or (b) such invention results from work performed by the Contractor for the Company.

4.2     The Company is and shall be the sole and exclusive owner of all right, title and interest through the world in and to all results, deliverables and proceeds of all work performed by the Contractor on behalf of the Company during the term ("**Deliverables**"), including, without limitation all patents, copyrights, trademarks, trade secrets and other intellectual property rights (collectively, "**Intellectual Property Rights**") therein. The Contractor irrevocably assigns the Company, all right, title and interest throughout the world in and to the Deliverables.

## 5.     NON-SOLICITATION, NON-COMPETE

5.1     The Contractor acknowledges that he or she will gain a knowledge of, and a close working relationship with the Company's customers, which would injure the Company if made available to a competitor or if used for competitive purposes. Accordingly, the Contractor agrees that, during Professional Services and for a period of twelve (12) months from the termination of his or her Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), the Contractor will not (except with the prior written consent of the Company), directly or indirectly, contact any of the persons, clients, companies or institutions with whom the Contractor had dealings on behalf of the Company during his or her Professional

IBANERA 000887

Docusign Envelope ID: F5472826-127E-4DEF-BA2D-3F6CD942AA8D

# Professional Services Agreement

Services: (i) for the purpose or intent of competing with the Company; or (ii) to sell or offer for sale or solicit orders for the sale of any products that are competitive with products of the Company.

## 6.    REMUNERATION AND BENEFITS

6.1     The Contractor acknowledges and agrees that the Company reserves the right to unilaterally introduce and amend various payment for services or commission arrangements designed to remunerate the Contractor and agrees that such changes will not affect the application of this agreement.

6.2     In consideration of the Contractor's undertaking and the performance of the obligations contained in this agreement, the Company shall pay and grant the following:

6.2.1    a professional services rate of $5,833 USD per month ("**Base**"), payable in arrears in bi-weekly installments.

6.2.2    time off, as set out in Section 9; and

6.2.3    reimbursement of expenses, as set out in Section 10.

6.3     As a paid Contractor, it is expected that the standard workday; however, at times, it is expected that the Contractor work beyond these hours as his or her personal workload and specific responsibilities dictate to ensure projects or tasks he or she is managing/performing are completed in a timely manner as required by the specific task or project. Conversely, there will be occasions of slower periods that will warrant shorter work days at which point the Contractor may use his/her discretion to balance his/her workday.

## 7.    PERFORMANCE REVIEW:

7.1     The Consultant acknowledges that performance reviews are an integral part of this consulting agreement to ensure the satisfactory completion of services and alignment with the Client's objectives.

7.2     A performance review will be conducted by the Client at regular intervals, initially every 30 days from the effective date of this agreement.

7.3     During each performance review, the Consultant's performance, deliverables, and adherence to project timelines will be evaluated by the Client.

7.4     The Consultant agrees to actively participate in performance review discussions, provide updates on project progress, and address any feedback or concerns raised by the Client.

7.5   Unsatisfactory performance may include but is not limited to:
- Failure to deliver work products or services within specified timelines.
- Substandard quality of work or deliverables.

IBANERA 000888

Docusign Envelope ID: F5472826-127E-4DEF-BA2D-3F6CD942AA8D

# Professional Services Agreement

- Lack of communication or responsiveness to client inquiries or requests.
- Breach of confidentiality or violation of contractual terms.

7.6    In the event of termination due to unsatisfactory performance, the Client shall not be liable for any further compensation or reimbursement to the Consultant beyond the date of termination.

**8.    TERM AND TERMINATION**

8.1    The "**Term**" of this Agreement shall commence on the Start Date and continue until the effective date of termination (the "**Termination Date**") as determined in accordance with this Section 8.

8.2    The following terms shall apply to this Section 8:

8.2.1    "**Cause**" means:

(a)  any violation by the Contractor of any material provision of this Agreement upon notice of same by the Company describing in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph (a), which breach, if capable of being cured, has not been cured to the Company's sole and absolute satisfaction within thirty (30) days after such notice (except for breaches of any provisions of Sections 3 or 5, which are not subject to cure or any notice);

(b)  embezzlement by the Contractor of funds or property of the Company;

(c)  habitual absenteeism, bad faith, fraud, refusal to perform duties, conduct that is materially detrimental to the business or the financial position of the Company, conduct that is of such a serious and substantial nature that it would injure the reputation of the Company if the Contractor were retained as an Contractor, gross negligence, poor performance after being advised as to the standard required or willful misconduct on the part of the Contractor in the performance of his or duties as an Contractor of the Company, provided that the Company has given written notice of and an opportunity of not less than thirty (30) days to cure such breach, which notice describes in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph (c), provided that no such notice or opportunity needs to be given if (i) in the judgment of the Company, such conduct is habitual or would unnecessarily or unreasonably expose the Company to undue risk or harm or (ii) previous notice has already been given under this Paragraph (c);

(d)  a felonious act, conviction, or plea of nolo contendere of the Contractor under the laws of the United States or any country (except for any conviction or plea based on a vicarious liability theory and not the actual conduct of the Contractor); or

(e)  any other condition that qualifies as Cause under the terms of this Agreement.

8.3    This Agreement, the Contractor's compensation under Section 6 and all other rights of the Contractor under this Agreement or otherwise as a Contractor of the Company shall terminate (except as otherwise provided in this Section 8):

8.3.1    upon termination of this Agreement by the Contractor;

IBANERA 000889

Docusign Envelope ID: F5472826-127E-4DEF-BA2D-3F6CD942AA8D

# Professional Services Agreement

**8.3.2**   upon termination of this Agreement by the Company;

**8.3.3**   upon the death of Contractor; or

**8.3.4**   upon the Disability of Contractor;

**8.4**   Effective upon the termination of this Agreement, the Company shall pay the Contractor (or, in the event of the Contractor's death, his or her designated beneficiary) only such compensation as is provided in this Paragraph 8.4:

**8.4.1**   If the Contractor terminates this Agreement, the Company shall pay the Contractor the full amount of unpaid Base compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

**8.4.2**   If the Company terminates this Agreement without Cause, it shall pay the Contractor the full amount of unpaid Base compensation.

**8.4.3**   If the Company terminates this Agreement for Cause, the Company shall pay the Contractor the full amount of unpaid compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

**8.4.4**   If this Agreement is terminated by either Party as a result of the Contractor's Disability, the Company shall pay the Contractor his or her Base compensation through the remainder of the calendar month.

**8.5**   The Parties understand and agree that the provision of notice or pay in lieu thereof by the Company to the Contractor on termination shall not prevent the Company from alleging Cause for the termination.

**8.6**   The Contractor authorizes the Company to deduct from any payment due to the Contractor at any time, including from pay in lieu of notice, any amounts owed to the Company by reason of purchases, advances, loans, save only that this provision shall be applied so as not to conflict with any applicable legislation.

**9.**   **Time Off**

**9.1**   Time off days taken by the Contractor are at the discretion of the Company and may only be taken at a time that does not hinder or impact the Company's ability to manage its business. Time off requests are to be submitted to an officer of the Company for approval.

**10.**   **EXPENSE REIMBURSEMENT**

**10.1**   An expense report with supporting and coded receipts (which show tax itemization) must be submitted for eligible expense reimbursement, which will occur within 1 (one) month of submission. The Company shall reimburse Contractors for reasonable expenses on pre-approved business. Such expenses include, but are not limited to, travel fare, accommodation, work-related meals, tips, telephone charges, office supplies, reasonable costs for entertaining clients and purchases made on behalf of the Company. Non-reimbursable expenses include, but are not limited to, personal travel insurance, in-room movies, games, expenses incurred by non-business travelers, personal reading materials, childcare, toiletries, cosmetics, meals consumed during the standard workday, sporting activities and shows not related to the purpose of the business. Expenses are to be submitted monthly; otherwise, tax implications ensue against the Company's best interest.

IBANERA 000890

Docusign Envelope ID: F5472826-127E-4DEF-BA2D-3F6CD942AA8D

# Professional Services Agreement

**11.    TRAVEL GUIDELINES**

11.1    There is an expectation of needing to travel in this Professional Services position. Contractors are required to get prior approval from Company for travel flight class, hotel expense, per diem allocations, client entertainment, and any other expected expenses. If penalties are incurred when needing to rebook flights due to personal circumstances or errors, the Contractor will be responsible to pay for such fees.

**12.    INFORMATION SECURITY**

12.1    The Contractor recognizes that information security, in particular the protection of sensitive information, including, but not limited to, employee and customer personal data, as well as intellectual property, is of critical importance to the company and its affiliates.

12.2    The Contractor acknowledges that, in the course of his/her work, he/she will be responsible for the secure use, storage and transmission of sensitive information.

12.3    The Contractor understands and agrees that it is obligated to exercise due care in using, storing or transmitting sensitive information, and to use its best efforts to prevent such information from being exposed to unauthorized persons, damaged, deleted or otherwise rendered inaccessible.

12.4    The Contractor is required to read and become familiar with the provisions of the Information Security Annex included in the Company Manual.

12.5    The Contractor shall immediately report any incident, actual or potential, related to information security, in accordance with the Incident Response Procedure established by the Company.

12.6    Any failure to comply with contractual provisions relating to information security may result in the imposition of disciplinary measures, in accordance with the Company's internal policies.

12.7    In case of doubt about the Contractor's obligations with respect to information security, the Contractor agrees to consult with his supervisor or the relevant department in order to obtain the necessary clarifications.

**13.    GENERAL**

13.1    The rights which accrue to the Company under this Agreement shall pass to its successors or assigns. The rights of the Contractor under this Agreement are not assignable or transferable in any manner.

13.2    For a period commencing on the Start Date and continuing indefinitely, the Contractor hereby covenants and agrees that he or she shall not, directly or indirectly, defame, disparage, create false impressions, or otherwise put in a false or bad light the Company, its products or services, its business, reputation, conduct, practices, past or present Contractors, financial condition or otherwise.

13.3    In the event that any provision or part of this Agreement is deemed void or invalid by a court of competent jurisdiction, the remaining provisions, or parts of it, shall be and remain in full force and effect.

13.4    In the event of a breach, threatened breach or attempted breach by the Contractor of the provisions of Sections 3 and/or 5 of this Agreement, the Company shall be entitled to an injunction restraining the Contractor from such

IBANERA 000891

# Professional Services Agreement

breach. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or equity for such breach or threatened breach of this Agreement nor limiting the amount in damages recoverable in the event of a breach or threatened breach by the Contractor of the provisions of Sections 3 and/or 5. Without limiting the generality of the foregoing, the Contractor acknowledges that, in the event of a breach, threatened breach or attempted breach by him or her of any of the provisions of Sections 3 and/or 5, the damages of the Company may exceed the amount paid to the Contractor pursuant to this Agreement.  If the Company seeks any equitable relief contemplated by this Clause 13.4, the Contractor shall waive and not assert any defense or argument that a breach by the Contractor of any of the covenants herein contained would not or does not result in irreparable harm to the Company.

13.5    This Agreement constitutes the entire Agreement between the Parties with respect to the Professional Services of the Contractor and any and all previous agreements, written or oral, express or implied between the Parties or on their behalf relating to the Professional Services of the Contractor by the Company are terminated and cancelled and each of the Parties releases and forever discharges the other of and from all manner of actions, causes of action, claim or demands whatsoever under or in respect of any such agreement.

13.6    Any modification to this Agreement must be in writing, signed by the Contractor and an officer of the Company or it shall have no effect and shall be void.

13.7    Any notice required or permitted to be given to the Contractor shall be sufficiently given if delivered to the Contractor personally or if mailed by registered mail to the Contractor's address last known to the Company or if delivered to the Contractor via email. Any notice required or permitted to be given to the Company shall be sufficiently given if delivered to an officer of the Company personally or if mailed by registered mail to the Company's head office at its address last known to the Contractor or if delivered to the Company via email. Any notice given by mail shall be deemed to have been given ninety-six (96) working hours after the time it is posted.

13.8    The headings utilized in this Agreement are for convenience only and are not to be construed in any way as additions or limitations of the covenants and agreements contained in this Agreement.

13.9    This Agreement shall be governed by and construed in accordance with the laws of Florida. This Agreement will become effective when all Parties have signed it.

13.10   It is the intent of the Parties that this Agreement will comply with all applicable Professional Services and labor legislation. Should any term of this Agreement fail to satisfy the minimum requirements of the legislation governing Professional Services and labor standards applicable to the Contractor's Professional Services at the relevant time, then the minimum legislated requirement shall apply and shall be deemed to be the Contractor's full entitlement under this Agreement in that respect and shall be substituted for the provision or provisions of this Agreement that failed to satisfy the minimum requirements of the applicable Professional Services or labor legislation.

13.11   The Contractor hereby acknowledges that he or she has been advised and has had the opportunity to obtain independent legal advice regarding this Agreement.

Each Party is signing this Agreement on the date stated opposite such Party's signature. The signatures corresponding to this agreement are located on the following page.

IBANERA 000892

Docusign Envelope ID: F5472826-127E-4DEF-BA2D-3F6CD942AA8D

# Professional Services Agreement



(Sign)

Name: Samuel Phillip Teitelbaum II

Position: Contractor




(Sign)

Name: Michael Carbonara

Position: Director

**For and on behalf of PHOENIX CONNECT LLC**

IBANERA 000893

Case 1:25-cv-24118-DSL   Document 80-9   Entered on FLSD Docket 04/27/2026   Page 58 of 68

Docusign Envelope ID: F5472826-127E-4DEF-BA2D-3F6CD942AA8D

# Professional Services Agreement

**EXHIBIT 1**
**Vegas Sales Manager**
**Job Description**

**Key Responsibilities:**

**1. Sales Team Management:**
- Set Sales Targets: Establish clear sales goals for the team and ensure each member understands their objectives.
- Monitor Performance: Track individual and team performance against set targets, providing regular feedback.
- Motivate the Team: Keep the team motivated to meet and exceed sales quotas, often through incentives, coaching, and recognition.

**2. Recruitment and Hiring:**
- Identify Staffing Needs: Assess the current team's capacity and determine when new hires are needed based on growth and workload.
- Source and Interview Candidates: Work independently to source potential candidates through job postings, networking, or recruitment agencies. Conduct interviews to assess candidates' skills, experience, and fit for the company culture.
- Build a Talented Team: Focus on recruiting top-performing salespeople who can bring value to the team and contribute to the company's growth.

**3. Development:**
- Provide Training: Conduct initial and ongoing training sessions on sales techniques, product knowledge, and company policies.
- Coach for Success: Offer one-on-one coaching to team members to improve their sales skills, close deals, and overcome

**4. Sales Strategy and Execution:**
- Develop Sales Plans: Create and implement sales strategies that align with company goals. Adjust tactics based on market conditions and sales performance.

**5. Client Relationship Management:**
- Build and Maintain Relationships: Serve as a key point of contact for high-value clients and assist the team in nurturing relationships with potential customers.

**6. Sales Reporting and Analysis:**
- Track Sales Metrics: Monitor KPIs such as sales volume, close rates, and customer retention to gauge the team's effectiveness.
- Identify Areas for Improvement: Use data to pinpoint gaps in performance and implement solutions to boost sales.

**Reports To:** Bella Garcia

IBANERA 000894

# Professional Services Agreement

**THIS AGREEMENT** (the "**Agreement**") is effective and made as of the date it is signed by the last party to sign it (as indicated by the date associated with that party's signature) and is by and between **Victoria Rios** individual with an address ███████████████████████████████ (the "**Contractor**") and **PHOENIX CONNECT LLC** a company incorporated under the laws of Nevada under Company Number NV20171522946 of **78 SW 7th St Ste 7-118, Miami, FL 33130** (the "**Company**") (together, the "**Parties**," each, individually, a "**Party**").

**WHEREAS:**

(A)  The Company wishes to engage the Contractor to perform the Services (as defined below) to the Company as an independent contractor pursuant to the terms of the Agreement.

(B)  The Company and the Contractor have agreed to enter into a Professional Services relationship for their mutual benefit;

THIS AGREEMENT WITNESSES that the parties have agreed that the terms and conditions of the relationship shall be as follows:

**1.      PROFESSIONAL SERVICES**

1.1     The Contractor will begin Professional Services on **October 7th, 2024** (the **Start Date**).

1.2     The Contractor represents and warrants to the Company that the Contractor has the required skills and experience to perform the duties and exercise the responsibilities required for the **Client Relations Specialist** position. In carrying out these duties and responsibilities the Contractor shall comply with all lawful and reasonable instructions as may be given by management of the Company.

1.3     The Contractor agrees that he or she will assume other duties and responsibilities as may from time to time be determined to be necessary by the Company.

1.4     The Contractor agrees to comply with and be bound by the terms and conditions of this Agreement.

1.5     In consideration for the Contractor's performance in accordance with this Agreement, the Company engages the Contractor.

1.6     The Contractor acknowledges and agrees that the effective performance of his or her duties requires the highest level of integrity and the Company's complete confidence in the Contractor's relationship with other Contractors of the Company and with all persons dealt with by the Contractor in the course of his or her Professional Services.

1.7     It is understood and agreed to by the Contractor that the Company reserves the right to unilaterally change the Contractor's assignments, duties and reporting relationships.

1.8     The Contractor agrees that any of the changes that may occur pursuant to Paragraph 1.7 of this Agreement will not affect or change any other part of this Agreement.

IBANERA 000895

Docusign Envelope ID: 9FE7F262-6CF0-412A-84B2-5E0846DC12B9

# Professional Services Agreement

## 2.    EXCLUSIVE SERVICE

2.1    Unless agreed to in writing, during the term of Professional Services, the Contractor shall devote himself or herself exclusively to the business of the Company and shall not be employed or engaged in any capacity in promoting, undertaking, or carrying on any other business, without the prior approval of the Company.

2.2    The Contractor will be expected to work on a **full-time** basis exclusively for the Company. The Contractor understands and agrees that the expectation for the Contractor is that which is outlined in the Job Description attached hereto as Exhibit 1, although hours of work may vary as required to meet the objectives of his or her Professional Services.

## 3.    CONFIDENTIAL INFORMATION

3.1    The Contractor acknowledges that, as Contractor, it may acquire information about certain matters that are confidential to Company and its affiliates, and which information is proprietary to Company and its affiliates, including, but not limited to:

    3.1.1    product design and manufacturing information;

    3.1.2    lists of present and prospective customers, and related information;

    3.1.3    pricing and sales policies, techniques and concepts;

    3.1.4    lists of suppliers;

    3.1.5    trade secrets; and

    3.1.6    systems and procedures developed and/or acquired by the Company and its affiliates (collectively, "**Confidential Information**").

3.2    The Contractor acknowledges the Confidential Information could be used to the detriment of the Company. Accordingly, the Contractor undertakes to treat confidentially all Confidential Information and agrees not to disclose same to any third party, either during the term of his or her Professional Services (except as may be necessary in the proper discharge of his or her Professional Services under this agreement), or after the date of termination of Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), except with the written permission of an Officer of the Contractor. The Contractor also agrees that the unauthorized disclosure of any Confidential Information during his or her Professional Services will constitute just cause for the immediate termination of the Contractor's Professional Services, without notice or pay in lieu of such notice.

3.3    The Contractor acknowledges that in addition to any and all rights of the Company, the Company shall be entitled to injunctive relief in order to protect its rights and property as set out in Paragraphs 3.1 and 3.2.

3.4    The Contractor agrees that all papers, proposals, contracts, customer lists, lists of customer prospects, notes, records, DVDs, CDs, photographs, artwork, software, all other documents, all copies thereof relating to the Company's operations or business, including those prepared himself or herself, regardless of whether the same are confidential, are the exclusive property of the Company and will not be replicated or taken by the Contractor. All such items, including Company uniform items, shall be returned to Company upon Contractor's termination,

IBANERA 000896

Docusign Envelope ID: 9FE7F262-6CF0-412A-84B2-5E0846DC12B9

# Professional Services Agreement

regardless of whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement.

3.5    The Contractor agrees that for the duration of the Contractor's Professional Services relationship with the Company, unless agreed to in writing, the Contractor will not engage, either directly or indirectly, in any activity (a "**Conflict of Interest**") which might adversely affect the Company or its affiliates, including ownership of a material interest in any supplier, contractor, distributor, customer or other entity with which the Company does business or accepting any payment, service, loan, gift, trip, entertainment or other favor from a supplier, contractor, distributor, customer or other entity with which the Company does business, and that the Contractor will promptly inform a Corporate Officer of the Company as to each offer received by the Contractor to engage in any such activity. The Contractor further agrees to disclose to the Company any other facts of which the Contractor becomes aware which might involve or give rise to a Conflict of Interest or potential Conflict of Interest.

## 4.    INTELLECTUAL PROPERTY

4.1    All discoveries, designs, improvements, ideas and inventions, whether patentable or not, relating to (or suggested by or resulting from) products, services, or other technology of the Company or any affiliate or relating to (or suggested by or resulting from) methods or processes used or usable in connection with the business of the Company or any affiliate that may be conceived, developed, or made by the Contractor during Professional Services with the Company (hereinafter "**Inventions**"), either solely or jointly with others, shall automatically become the sole property of the Company or an affiliate of the Company. The Contractor shall immediately disclose to the Company all such Inventions and shall, without additional compensation, execute all assignments and other documents deemed necessary to perfect the property rights of the Company or any affiliate therein. These obligations shall continue beyond the termination of Executive's Professional Services with respect to Inventions conceived, developed, or made by Executive during Professional Services with the Company. The provisions of this clause shall not apply to any Invention for which no equipment, supplies, facility, or trade secret information of the Company or any affiliate is used by the Contractor and which is developed entirely on the Contractor's own time, unless (a) such Invention relates (i) to the business of the Company or an affiliate or (ii) to the actual or demonstrably anticipated research or development of the Company or an affiliate, or (b) such invention results from work performed by the Contractor for the Company.

4.2    The Company is and shall be the sole and exclusive owner of all right, title and interest through the world in and to all results, deliverables and proceeds of all work performed by the Contractor on behalf of the Company during the term ("**Deliverables**"), including, without limitation all patents, copyrights, trademarks, trade secrets and other intellectual property rights (collectively, "**Intellectual Property Rights**") therein. The Contractor irrevocably assigns the Company, all right, title and interest throughout the world in and to the Deliverables.

## 5.    NON-SOLICITATION, NON-COMPETE

5.1    The Contractor acknowledges that he or she will gain a knowledge of, and a close working relationship with the Company's customers, which would injure the Company if made available to a competitor or if used for competitive purposes. Accordingly, the Contractor agrees that, during Professional Services and for a period of twelve (12) months from the termination of his or her Professional Services (whether such termination is occasioned by the Contractor, by the Company with or without cause, or by mutual agreement), the Contractor will not (except with the prior written consent of the Company), directly or indirectly, contact any of the persons, clients, companies or institutions with whom the Contractor had dealings on behalf of the Company during his or her Professional

IBANERA 000897

# Professional Services Agreement

Services: (i) for the purpose or intent of competing with the Company; or (ii) to sell or offer for sale or solicit orders for the sale of any products that are competitive with products of the Company.

**6.     REMUNERATION AND BENEFITS**

6.1     The Contractor acknowledges and agrees that the Company reserves the right to unilaterally introduce and amend various payment for services or commission arrangements designed to remunerate the Contractor and agrees that such changes will not affect the application of this agreement.

6.2     In consideration of the Contractor's undertaking and the performance of the obligations contained in this agreement, the Company shall pay and grant the following:

   6.2.1     a professional services rate of $4,500 USD per month ("**Base**"), payable in arrears in bi-weekly installments.

   6.2.2     time off, as set out in Section 9; and

   6.2.3     reimbursement of expenses, as set out in Section 10.

6.3     As a paid Contractor, it is expected that the standard workday; however, at times, it is expected that the Contractor work beyond these hours as his or her personal workload and specific responsibilities dictate to ensure projects or tasks he or she is managing/performing are completed in a timely manner as required by the specific task or project. Conversely, there will be occasions of slower periods that will warrant shorter work days at which point the Contractor may use his/her discretion to balance his/her workday.

**7.     PERFORMANCE REVIEW:**

7.1     The Consultant acknowledges that performance reviews are an integral part of this consulting agreement to ensure the satisfactory completion of services and alignment with the Client's objectives.

7.2     A performance review will be conducted by the Client at regular intervals, initially every 30 days from the effective date of this agreement.

7.3     During each performance review, the Consultant's performance, deliverables, and adherence to project timelines will be evaluated by the Client.

7.4     The Consultant agrees to actively participate in performance review discussions, provide updates on project progress, and address any feedback or concerns raised by the Client.

7.5     Unsatisfactory performance may include but is not limited to:
   •     Failure to deliver work products or services within specified timelines.

IBANERA 000898

Docusign Envelope ID: 9FE7F262-6CF0-412A-84B2-5E0846DC12B9

# Professional Services Agreement

- Substandard quality of work or deliverables.
- Lack of communication or responsiveness to client inquiries or requests.
- Breach of confidentiality or violation of contractual terms.

**7.6**    In the event of termination due to unsatisfactory performance, the Client shall not be liable for any further compensation or reimbursement to the Consultant beyond the date of termination.

## 8.    TERM AND TERMINATION

**8.1**    The "**Term**" of this Agreement shall commence on the Start Date and continue until the effective date of termination (the "**Termination Date**") as determined in accordance with this Section 8.

**8.2**    The following terms shall apply to this Section 8:

**8.2.1**    "**Cause**" means:

**(a)**    any violation by the Contractor of any material provision of this Agreement upon notice of same by the Company describing in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph (a), which breach, if capable of being cured, has not been cured to the Company's sole and absolute satisfaction within thirty (30) days after such notice (except for breaches of any provisions of Sections 3 or 5, which are not subject to cure or any notice);

**(b)**    embezzlement by the Contractor of funds or property of the Company;

**(c)**    habitual absenteeism, bad faith, fraud, refusal to perform duties, conduct that is materially detrimental to the business or the financial position of the Company, conduct that is of such a serious and substantial nature that it would injure the reputation of the Company if the Contractor were retained as an Contractor, gross negligence, poor performance after being advised as to the standard required or willful misconduct on the part of the Contractor in the performance of his or duties as an Contractor of the Company, provided that the Company has given written notice of and an opportunity of not less than thirty (30) days to cure such breach, which notice describes in detail the breach asserted and stating that it constitutes notice pursuant to this Paragraph (c), provided that no such notice or opportunity needs to be given if (i) in the judgment of the Company, such conduct is habitual or would unnecessarily or unreasonably expose the Company to undue risk or harm or (ii) previous notice has already been given under this Paragraph (c);

**(d)**    a felonious act, conviction, or plea of nolo contendere of the Contractor under the laws of the United States or any country (except for any conviction or plea based on a vicarious liability theory and not the actual conduct of the Contractor); or

**(e)**    any other condition that qualifies as Cause under the terms of this Agreement.

**8.3**    This Agreement, the Contractor's compensation under Section 6 and all other rights of the Contractor under this Agreement or otherwise as a Contractor of the Company shall terminate (except as otherwise provided in this Section 8):

IBANERA 000899

Docusign Envelope ID: 9FE7F262-6CF0-412A-84B2-5E0846DC12B9

# Professional Services Agreement

**8.3.1** upon termination of this Agreement by the Contractor;

**8.3.2** upon termination of this Agreement by the Company;

**8.3.3** upon the death of Contractor; or

**8.3.4** upon the Disability of Contractor;

**8.4** Effective upon the termination of this Agreement, the Company shall pay the Contractor (or, in the event of the Contractor's death, his or her designated beneficiary) only such compensation as is provided in this Paragraph 8.4:

**8.4.1** If the Contractor terminates this Agreement, the Company shall pay the Contractor the full amount of unpaid Base compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

**8.4.2** If the Company terminates this Agreement without Cause, it shall pay the Contractor the full amount of unpaid Base compensation.

**8.4.3** If the Company terminates this Agreement for Cause, the Company shall pay the Contractor the full amount of unpaid compensation earned by the Contractor pursuant to this Agreement through and including the Termination Date.

**8.4.4** If this Agreement is terminated by either Party as a result of the Contractor's Disability, the Company shall pay the Contractor his or her Base compensation through the remainder of the calendar month.

**8.5** The Parties understand and agree that the provision of notice or pay in lieu thereof by the Company to the Contractor on termination shall not prevent the Company from alleging Cause for the termination.

**8.6** The Contractor authorizes the Company to deduct from any payment due to the Contractor at any time, including from pay in lieu of notice, any amounts owed to the Company by reason of purchases, advances, loans, save only that this provision shall be applied so as not to conflict with any applicable legislation.

**9.     Time Off**

**9.1** Time off days taken by the Contractor are at the discretion of the Company and may only be taken at a time that does not hinder or impact the Company's ability to manage its business. Time off requests are to be submitted to an officer of the Company for approval.

**10.    EXPENSE REIMBURSEMENT**

**10.1** An expense report with supporting and coded receipts (which show tax itemization) must be submitted for eligible expense reimbursement, which will occur within 1 (one) month of submission. The Company shall reimburse Contractors for reasonable expenses on pre-approved business. Such expenses include, but are not limited to, travel fare, accommodation, work-related meals, tips, telephone charges, office supplies, reasonable costs for entertaining clients and purchases made on behalf of the Company. Non-reimbursable expenses include, but are not limited to, personal travel insurance, in-room movies, games, expenses incurred by non-business travelers, personal reading materials, childcare, toiletries, cosmetics, meals consumed during the

IBANERA 000900

Docusign Envelope ID: 9FE7F262-6CF0-412A-84B2-5E0846DC12B9

# Professional Services Agreement

standard workday, sporting activities and shows not related to the purpose of the business. Expenses are to be submitted monthly; otherwise, tax implications ensue against the Company's best interest.

**11.    TRAVEL GUIDELINES**

11.1    There is an expectation of needing to travel in this Professional Services position. Contractors are required to get prior approval from Company for travel flight class, hotel expense, per diem allocations, client entertainment, and any other expected expenses. If penalties are incurred when needing to rebook flights due to personal circumstances or errors, the Contractor will be responsible to pay for such fees.

**12.    INFORMATION SECURITY**

12.1    The Contractor recognizes that information security, in particular the protection of sensitive information, including, but not limited to, employee and customer personal data, as well as intellectual property, is of critical importance to the company and its affiliates.

12.2    The Contractor acknowledges that, in the course of his/her work, he/she will be responsible for the secure use, storage and transmission of sensitive information.

12.3    The Contractor understands and agrees that it is obligated to exercise due care in using, storing or transmitting sensitive information, and to use its best efforts to prevent such information from being exposed to unauthorized persons, damaged, deleted or otherwise rendered inaccessible.

12.4    The Contractor is required to read and become familiar with the provisions of the Information Security Annex included in the Company Manual.

12.5    The Contractor shall immediately report any incident, actual or potential, related to information security, in accordance with the Incident Response Procedure established by the Company.

12.6    Any failure to comply with contractual provisions relating to information security may result in the imposition of disciplinary measures, in accordance with the Company's internal policies.

12.7    In case of doubt about the Contractor's obligations with respect to information security, the Contractor agrees to consult with his supervisor or the relevant department in order to obtain the necessary clarifications.

**13.    GENERAL**

13.1    The rights which accrue to the Company under this Agreement shall pass to its successors or assigns. The rights of the Contractor under this Agreement are not assignable or transferable in any manner.

13.2    For a period commencing on the Start Date and continuing indefinitely, the Contractor hereby covenants and agrees that he or she shall not, directly or indirectly, defame, disparage, create false impressions, or otherwise put in a false or bad light the Company, its products or services, its business, reputation, conduct, practices, past or present Contractors, financial condition or otherwise.

13.3    In the event that any provision or part of this Agreement is deemed void or invalid by a court of competent jurisdiction, the remaining provisions, or parts of it, shall be and remain in full force and effect.

IBANERA 000901

Docusign Envelope ID: 9FE7F262-6CF0-412A-84B2-5E0846DC12B9

# Professional Services Agreement

13.4    In the event of a breach, threatened breach or attempted breach by the Contractor of the provisions of Sections 3 and/or 5 of this Agreement, the Company shall be entitled to an injunction restraining the Contractor from such breach. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or equity for such breach or threatened breach of this Agreement nor limiting the amount in damages recoverable in the event of a breach or threatened breach by the Contractor of the provisions of Sections 3 and/or 5. Without limiting the generality of the foregoing, the Contractor acknowledges that, in the event of a breach, threatened breach or attempted breach by him or her of any of the provisions of Sections 3 and/or 5, the damages of the Company may exceed the amount paid to the Contractor pursuant to this Agreement.  If the Company seeks any equitable relief contemplated by this Clause 13.4, the Contractor shall waive and not assert any defense or argument that a breach by the Contractor of any of the covenants herein contained would not or does not result in irreparable harm to the Company.

13.5    This Agreement constitutes the entire Agreement between the Parties with respect to the Professional Services of the Contractor and any and all previous agreements, written or oral, express or implied between the Parties or on their behalf relating to the Professional Services of the Contractor by the Company are terminated and cancelled and each of the Parties releases and forever discharges the other of and from all manner of actions, causes of action, claim or demands whatsoever under or in respect of any such agreement.

13.6    Any modification to this Agreement must be in writing, signed by the Contractor and an officer of the Company or it shall have no effect and shall be void.

13.7    Any notice required or permitted to be given to the Contractor shall be sufficiently given if delivered to the Contractor personally or if mailed by registered mail to the Contractor's address last known to the Company or if delivered to the Contractor via email. Any notice required or permitted to be given to the Company shall be sufficiently given if delivered to an officer of the Company personally or if mailed by registered mail to the Company's head office at its address last known to the Contractor or if delivered to the Company via email. Any notice given by mail shall be deemed to have been given ninety-six (96) working hours after the time it is posted.

13.8    The headings utilized in this Agreement are for convenience only and are not to be construed in any way as additions or limitations of the covenants and agreements contained in this Agreement.

13.9    This Agreement shall be governed by and construed in accordance with the laws of Florida. This Agreement will become effective when all Parties have signed it.

13.10   It is the intent of the Parties that this Agreement will comply with all applicable Professional Services and labor legislation. Should any term of this Agreement fail to satisfy the minimum requirements of the legislation governing Professional Services and labor standards applicable to the Contractor's Professional Services at the relevant time, then the minimum legislated requirement shall apply and shall be deemed to be the Contractor's full entitlement under this Agreement in that respect and shall be substituted for the provision or provisions of this Agreement that failed to satisfy the minimum requirements of the applicable Professional Services or labor legislation.

13.11   The Contractor hereby acknowledges that he or she has been advised and has had the opportunity to obtain independent legal advice regarding this Agreement.

Each Party is signing this Agreement on the date stated opposite such Party's signature. The signatures corresponding to this agreement are located on the following page.

IBANERA 000902

Docusign Envelope ID: 9EE7F262-6CF0-412A-84B2-5E0846DC12B9

# Professional Services Agreement

(Sign) *Victoria Rios*

Name: Victoria Rios

Position: Contractor

(Sign) *Michael Carbonara*

Name: Michael Carbonara

Position: Director

**For and on behalf of PHOENIX CONNECT LLC**

IBANERA 000903

# Professional Services Agreement

**EXHIBIT 1**
**Client Relations Specialist**
**Job Description**


**Key Responsibilities:**

- Maintain and monitor relationships with the company's clients or customers, determine their needs, answer their questions about the products and recommend the right solutions.
- Advocate for ways to improve the customer experience in our product and our processes.
- Represent the Company at functions, public meetings, and industry events.
- Provide solutions to customers, from simple concerns to escalated and complex situations.
- Maintain customer confidentiality at all times in accordance with established client policies and procedures.
- Work on special projects created to improve the customer experience and company performance.
- Perform other related duties to benefit the mission of the company.

**Reports To:  Japman Kharbanda & Jondalar Diepeveen**

IBANERA 000904