**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:25-cv-24118-LEIBOWITZ/AUGUSTIN-BIRCH**

**JANE DOE,**
        *Plaintiff,*

v.

**IBANERA, LLC,** *et al.,*
        *Defendants.*
_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon three motions to dismiss by three different sets of Defendants:   (1) Marriott International, Inc., Starwood Hotels & Resorts Management Co., LLC, and Starwood Hotels & Resorts Worldwide, LLC move to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) [ECF No. 50]; (2) Bjorn Snorrason moves to dismiss under Rules 12(b)(2) and 12(b)(3) [ECF No. 51]; and (3) Michael Carbonara, Ibanera, LLC, and David Parr move to dismiss under Rule 12(b)(6) [ECF No. 60] (collectively, the "Motions").   Plaintiff has responded in opposition to all three Motions [ECF Nos. 56, 57, 70], and Defendants have replied in support [ECF Nos. 65, 71, 72].   The Motions are, therefore, ripe for resolution.

Upon due consideration, the Court DISMISSES Defendants Marriott International, Inc., Starwood Hotels & Resorts Management Co., LLC, Starwood Hotels & Resorts Worldwide, LLC, and Bjorn Snorrason for lack of personal jurisdiction.   The Court further DISMISSES Plaintiff's sex trafficking claims (Counts I–IV) of the First Amended Complaint on grounds of *forum non conveniens* and failure to state a claim upon which relief may be granted under Rule 12(b)(6).   Finally, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims as the Court has granted partial summary judgment for Defendant Ibanera, LLC ("Ibanera"), and against Plaintiff on Plaintiff's Title VII claim—the last claim which conferred subject matter jurisdiction on this Court. [*See* ECF No. 91 (granting summary judgment for Ibanera and against Plaintiff on Count V (Title VII

sex discrimination); Count VI (Title VII hostile work environment); Count VII (Title VII retaliation); Count VIII (FCRA sex discrimination); Count IX (FCRA hostile work environment); and Count X (FCRA retaliation)].

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Plaintiff's alleged sexual assault by Defendant Icelandic citizen Bjorn Snorrason ("Snorrason"), during Plaintiff's business trip to Singapore.   [*See generally*, FAC, ECF No. 36].   The parties to this litigation include the following individuals and business entities:

(1)  Plaintiff is a former female independent contractor, who later turned into a client and employee of Defendant Ibanera, LLC ("Ibanera"). [*Id.* ¶¶ 5, 37, 49].

(2)  Defendant Ibanera "provides a platform that simplifies global payments and compliance for businesses, with the added capability of handling both traditional and decentralized financial systems."   [*Id.* ¶ 32].

(3)  Defendants Snorrason, Michael Carbonara ("Carbonara"), and David Parr ("Parr") "are the owners, agents, officers, and proxies for many businesses, corporations, and entities for which Plaintiff performed work," including Defendant Ibanera, during the relevant period.   [*Id.* ¶¶ 40, 42].

(4)  Marriott International, Inc., Starwood Hotels & Resorts Management Co., LLC, and Starwood Hotels & Resorts Worldwide, LLC (collectively, the "Hotel Defendants") allegedly "owned and/or operated" the Sheraton Towers in Singapore where Snorrason allegedly raped Plaintiff in September 2024.   [*See id.* ¶¶ 69, 107–39].

The factual allegations relevant to the Motions began in 2021 when "Plaintiff collaborated with Ibanera to essentially create a marketable application (the "app") … capable of processing high-volume cryptocurrency transactions and jointly agreed to split all commissions from the app."   [*Id.* ¶

34]. Throughout Plaintiff's interaction with Ibanera, "Ibanera regularly required Plaintiff to travel to Miami, Florida, to perform work for Ibanera within the United States."   [*Id.* ¶ 41].

Around July 2024, "Ibanera promoted Plaintiff to Client Relations and Success Manager and placed her on a salary."   [*Id.* ¶ 50].   In early September 2024, Parr told Plaintiff he needed her to travel to Singapore to attend a cryptocurrency convention, "TOKEN2024."   [*Id.* ¶ 58].   Parr purchased Plaintiff's plane tickets to Singapore and reserved a hotel room for her at the Singapore Sheraton Towers (the "Sheraton Towers").   [*Id.* ¶¶ 63, 68].

Several days before Plaintiff was scheduled to travel to the TOKEN2024 convention, Parr introduced Plaintiff to Snorrason by telephone, remarking to Snorrason: "Bjorn, this is the sexiest and most knowledgeable person with the most class that I can send you for this trip."   [*Id.* ¶ 65].

Plaintiff arrived in Singapore on September 14, 2024, and when she attempted to check-in to her hotel room at the Sheraton Towers, the front desk advised Plaintiff her room was not paid for. [*Id.* ¶¶ 67, 70].   Plaintiff then telephoned Parr, who instructed Plaintiff to contact Snorrason for assistance.   [*Id.* ¶ 70].   Snorrason subsequently arrived at the Sheraton Towers' front desk, remarking to Plaintiff, "Parr told me he was sending the sexiest employee to Singapore for me, and he wasn't lying."   [*Id.* ¶ 72].   As Plaintiff checked into her hotel room, Snorrason further remarked, "You have a nice ass, too, you should stay in my room."   [*Id.* ¶ 73].

Plaintiff declined Snorrason's offer to stay in his hotel room.   [*Id.* ¶ 77].   Instead, Plaintiff paid for her own accommodation at the Sheraton Towers.   [*Id.*].   Over the next two days and into the evenings, Snorrason repeatedly sexually harassed Plaintiff while on the job, attempting to ply Plaintiff with alcohol and "begging" her for sex.   [*Id.* ¶¶ 78–106].   On one occasion, Snorrason "grabbed" Plaintiff's hand and introduced her to company employees and clients as his "girlfriend." [*Id.* ¶ 81].   On another occasion, "Snorrason grabbed Plaintiff's face and forcefully kissed her on the

3

lips." [*Id.* ¶ 87]. Further, "Snorrason lured Plaintiff into his hotel room (around 5:00 a.m.)" one evening to assist him with "finding and administering his heart medication," and then coerced Plaintiff into spending the night in his hotel room for two nights in a row (albeit fully clothed with a barricade of pillows between them). [*Id.* ¶¶ 91, 93, 101, 106]. Snorrason's unwanted advances toward Plaintiff during her business trip in Singapore occurred at times "in front of clients and IBANERA's Singapore team," while Plaintiff was "simply trying to perform her job duties . . . at the conference." [*Id.* ¶ 88, 90, 108].

On the evening of September 17, 2024, things came to a head after Snorrason "put a date rape drug into [Plaintiff's] second drink of the night," after which "Plaintiff's vision became blurry and [Plaintiff] developed difficulty hearing." [*Id.* ¶¶ 115, 118]. Eventually, Plaintiff made it back to the Sheraton Towers where she screamed for help from hotel staff, telling them "Snorrason [had] drugged her and was dangerous." [*Id.* ¶ 123–24]. Shortly thereafter, Snorrason arrived at Plaintiff's hotel room and, in the presence of hotel staff, "falsely stat[ed] that he was Plaintiff's boyfriend, [that] Plaintiff was merely drunk, and [that] the hotel staff should leave so [Snorrason] could take care of [Plaintiff]"—however, Plaintiff was "screaming out of fear, begging the Sheraton staff not to [let] Snorrason into her room as he [had] drugged her." [*Id.* ¶¶ 124–25]. Things escalated such that the hotel manager called paramedics, who administered a blood alcohol test to Plaintiff, which came back "0.0." [*Id.* ¶¶ 129–30]. The paramedics offered to transport Plaintiff to the hospital, but Plaintiff declined, saying she lacked funds to pay for any treatment. [*Id.* ¶ 132]. Hotel staff then exited Plaintiff's hotel room, leaving Plaintiff alone with Snorrason "despite Plaintiff's pleas and protests." [*Id.* ¶¶ 135–36].

The next morning, Plaintiff woke up in her hotel room naked and covered with bruises, with Snorrason laying naked beside her. [*Id.* ¶¶ 140–43]. At that moment, Plaintiff realized Snorrason

had raped her.   [*Id.* ¶ 144].   Nevertheless, Plaintiff was forced to stay in Snorrason's hotel room four more nights as "her lodging had lapsed."   [*Id.* ¶¶ 153–72].   On September 20, 2024, Snorrason again raped Plaintiff, "mak[ing] it clear that so long as Plaintiff engaged in sexual activity with Snorrason, he would ensure Ibanera continued to develop her app and employ her as a more-highly-compensated employee with a higher status in the company."   [*Id.* ¶¶ 161, 173].

In desperation, Plaintiff texted a friend in Miami, Florida, "explaining the situation and that she was not safe, so [the friend] purchased [Plaintiff] a flight home for the next morning on September 23, 2024."   [*Id.* ¶ 174].   As Plaintiff made her way to the Singapore airport, the taxi driver convinced Plaintiff to go to the police station to file a police report, which she did.   [*Id.* ¶ 177].   After Plaintiff filed the police report, Parr "actively messaged Plaintiff during Plaintiff's attempted escape from Singapore, directing her to go back to Snorrason after she [had] fled."   [*Id.* ¶ 180].

"In the days following Plaintiff's escape from Snorrason, she contacted Defendant Carbonara to inform him of what happened"; however, Carbonara did nothing to assist Plaintiff while allowing Snorrason "to continue operating unchecked."   [*Id.* ¶¶ 182–85].   Sometime in late September 2024, after Plaintiff reported Snorrason's sexual assault, drugging, and sexual harassment to management, Ibanera terminated Plaintiff's employment.   [*Id.* ¶ 194].

Based on these allegations, Plaintiff asserts nineteen (19) counts against Defendants.   Counts I–IV arise under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), which claims are asserted against all Defendants as sex trafficking perpetrators and/or participants.   [*Id.* at 27–36]. Counts V–VII arise under Title VII and are asserted against Ibanera only.   [*Id.* at 36–42].   The Court has granted summary judgment to Defendant Ibanera on Plaintiff's Title VII claims.   [*See* ECF No. 91].   Counts VIII–XIX arise under Florida state law.   [*Id.* at 42–65].[1]   For relief, Plaintiff seeks "all

---

[1]     The Court also granted summary judgment for Ibanera and against Plaintiff on her employment-related claims arising under the Florida Civil Rights Act ("FCRA").   [*See* ECF No. 91].

damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation of the TVPA, Title VII, the FCRA, and all other applicable federal and state law."   [*Id.* at 65].

## II.    LEGAL STANDARDS

### A.  Dismissal under Rule 12(b)(2) for lack of personal jurisdiction.

A court must dismiss an action against a defendant over which it cannot exercise personal jurisdiction.  *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).   "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (internal quotation marks omitted)).

On a motion to dismiss for lack of personal jurisdiction, where the district court does not conduct an evidentiary hearing, "the plaintiff must establish a prima facie case of personal jurisdiction over the nonresident defendant."   *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) (citations omitted).   "When a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Louis Vuitton*, 736 F.3d at 1350 (citation modified) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).   "[T]he district court decides the motion to dismiss based solely on the complaint and affidavits."   *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021).

6

Whether the plaintiff satisfies the prima facie requirement is a purely legal question—the court must refrain from weighing evidence or making credibility determinations. *Id.* at 1364–65. A plaintiff meets this burden if she "presents enough evidence to withstand a motion for judgment as a matter of law." *Id.* at 1364. (citation omitted). The court should accept as true all unchallenged facts in the complaint and consider the parties' affidavit evidence. *Id.* To the extent that "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.* (citation omitted).

### B. *Forum non conveniens* **dismissal.**

"When ruling on a motion to dismiss for *forum non conveniens*, a court may 'consider matters outside the pleadings if presented in proper form by the parties.'" *Turner v. Costa Crociere S.P.A.*, 1:20-CV-21481-KMM, 488 F. Supp. 3d 1240, 1245–46 (S.D. Fla. Sept. 10, 2020) (citing *MGC Commc'ns, Inc. v. BellSouth Telecomm., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001)). Furthermore, "a court must accept the facts in the plaintiff's complaint as true, 'to the extent they are uncontroverted by the defendants' affidavits.'" *Id.* (citing *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (citation omitted)).

Although the initial venue selected by the plaintiff may be proper, the doctrine of *forum non conveniens* permits a district court to exercise its discretion and dismiss an action if a foreign court is the more appropriate and convenient forum to adjudicate the matter. *See Sinochem Int'l Co. Ltd. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007). To obtain dismissal based on the doctrine of *forum non conveniens*, the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *See Piper Aircraft Co. v. Reno*, 454 U.S. 235, 255–62 (1981); *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).

In a court's evaluation of private and public factors, "the private factors are 'generally considered more important' than the public factors[.]" *Leon*, 251 F.3d at 1311. That said, the better practice is to consider all factors in every case. *Id.* (citing *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283–84 (11th Cir. 2001); *but see McLane v. Los Suenos Marriott Ocean & Golf Resort*, 476 F. App'x 831, 834 n.3 (11th Cir. 2012) (noting public interest factors are considered when "the balance of private interest factors is not clear").

A significant private factor is the plaintiff's choice of forum. Even so, "[w]hen the plaintiff's choice is not its home forum, … the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." *Sinochem, Int'l Co.*, 549 U.S. at 423 (internal quotation marks and citations omitted); *see also Leon*, 251 F.3d at 1311 (concluding that in balancing private interests, "domestic plaintiffs [are afforded] a strong presumption that their forum choice is sufficiently convenient, and a weaker presumption applying in cases brought by foreign plaintiffs") (internal quotation marks omitted). Notwithstanding the strong presumption, "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *McLane*, 476 F. App'x at 833 (internal quotation marks and citations omitted). A district court's determination to dismiss an action on the doctrine of *forum non conveniens* will not be disturbed unless the court clearly abuses its discretion by failing to balance reasonably all the relevant public and private factors. *See id.* at 832.

The Eleventh Circuit mandates that district courts "require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir.

2004) (citation and internal quotation marks omitted); *see Norwood v. Kirkpatrick*, 349 U.S. 29, 42 n.3 (1955) (describing the "near-conclusiveness" that a plaintiff's decision to bring a lawsuit in her home forum has in the *forum non conveniens* analysis).

### C. Dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotations omitted)). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiffs receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678. However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Evidence on a 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).

### III.    DISCUSSION

Defendants urge dismissal on multiple grounds. The Court begins its analysis with Defendants' challenge to personal jurisdiction, taking up the Hotel Defendants' challenge first.

### A.    Personal jurisdiction.

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of pleading "sufficient material facts to establish the basis for exercise of such jurisdiction." *Future Tech. Today,*

*Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000*); see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). A plaintiff must establish personal jurisdiction by a preponderance of the evidence. *AcryliCon USA*, 985 F.3d at 1364. Florida courts apply a two-step analysis to determine whether personal jurisdiction is proper. *Doe v. Hyatt Hotels Corp.*, 2023 WL 7181703, at *2 (S.D. Fla. Oct. 17, 2023), *aff'd sub nom. Doe (V.H.) v. Hyatt Hotels Corp.*, 2024 WL 3859882 (11th Cir. Aug. 19, 2024). First, a plaintiff must prove that "the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of Florida's Long Arm Statute." *Id.* (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989)). Second, a plaintiff must show that "sufficient minimum contacts exist, in order to satisfy the due process requirements of the United States Constitution." *Id.*

1.      The Court lacks personal jurisdiction over the Hotel Defendants (Counts IV and XIX).

The Hotel Defendants maintain the Court lacks both general and specific personal jurisdiction over them. [ECF No. 50 at 8–10]. In opposition, Plaintiff insists the Court has jurisdiction because the Hotel Defendants "maintain extensive, continuous operations in Florida and derive substantial revenue from this forum." [*Id.* at 5 (citing *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010))]. In the alternative, Plaintiff contends the federal nature of Plaintiff's sex-trafficking claims provides an independent basis for personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). [ECF No. 56 at 6–7]. The Court addresses general and specific jurisdiction over the Hotel Defendants before turning to Plaintiff's invocation of Rule 4(k)(2).

*(a) General jurisdiction is lacking over the Hotel Defendants.*

General jurisdiction over a defendant exists only where the defendant has the kind of "continuous and systematic" contacts in a forum that would "render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (cleaned up). A defendant is generally

10

considered "at home" only in its "place of incorporation and principal place of business." *Id.* at 137. Indeed, "[o]utside of these two exemplars, a defendant's operations will be so substantial and of such a nature as to render the corporation at home in that State only in an exceptional case." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018) (cleaned up).

Plaintiff not established general jurisdiction over the Hotel Defendants. The Complaint alleges the Hotel Defendants are all Delaware corporations with their principal places of business in Maryland. [*See* FAC, ECF No. 36 ¶¶ 12–14]. Thus, this Court lacks general jurisdiction over the Hotel Defendants.

*(b) Specific jurisdiction is lacking over the Hotel Defendants.*

In specific jurisdiction cases, the court "examine[s] whether (1) the plaintiff's claims "arise out of or relate to" one of the defendant's contacts with the forum state; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of "fair play and substantial justice." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022) (*Louis Vuitton*, 736 F.3d at 1355). The plaintiff bears the burden of establishing the first two requirements. *See id.* If she carries that burden, the defendants must then make a "'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)). In sum, "[t]o establish specific jurisdiction, a plaintiff "must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship entered there." *Ford Motor Co. v. Montana Eighth Jud. Dist. Court,* 592 U.S. 351, 359–60 (2021) (cleaned up). And, "even then—because the defendant is not 'at home'—the forum State may exercise jurisdiction… *only if '[t]he plaintiff's claims… arise out of or relate to the defendant's contacts with the*

*forum.'"  Id.* (cleaned up) (emphasis added).

Plaintiff's Amended Complaint fails to allege facts sufficient to establish *in personam* jurisdiction over the Hotel Defendants under Section 48.193(1)(a)(1) ("carrying on business" in Florida) or Section 48.193(1)(a)(2) (tortious act directed at Florida), Florida Statutes.  Florida's long-arm statute, Section 48.193, states in relevant part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
>> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>>
>> 2. Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(a)(1) and (2).  Applying both provisions above to the facts alleged in the Amended Complaint, Plaintiff does not establish specific jurisdiction over the Hotel Defendants under either section, as discussed below.

(i)      <u>Plaintiff's alleged assault did not "arise out" of the Hotel Defendants' "carrying on" business in Florida.</u>

Under Section 48.193(1)(a)(1), a court can exercise specific jurisdiction over a defendant "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state."  Fla. Stat. § 48.193(1)(a)(1).  "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit."  *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam)). While not dispositive, when determining whether a defendant is "carrying on

business" in a state, courts have considered "the presence and operation of an office in Florida," "the possession and maintenance of a license to do business in Florida," "the number of Florida clients served," and "the percentage of overall revenue gleaned from Florida clients." *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1167 (internal citations omitted).

Plaintiff argues "the Hotel Defendants continuously franchise and license branded hotel properties in South Florida, maintain corporate sales offices, employ Florida-based marketing staff, and operate a centralized reservation platform that knowingly transacts with Florida residents" which "contacts satisfy the 'arise out of or relate to' standard articulated in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 362 (2021)," holding strict but-for causation is not required.   [ECF No. 56 at 5].   While Plaintiff is correct that the Hotel Defendants "carry on" business in the State of Florida, Plaintiff's tort claims arising from her sexual assault in Singapore do not "arise from" those contacts.   It is fundamental that claims must "arise out of" a defendant's contact with the forum for the court to exercise specific jurisdiction over the defendant.   *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222–23 (11th Cir. 2009).   Put simply, Plaintiff fails to connect the Hotel Defendants' Florida operations and her alleged assault in Singapore beyond alleging the Hotel Defendants "owned and operated" the Sheraton Towers where the assault took place.

Defendants, however, have supplied an affidavit, attesting that no such relationship between the Hotel Defendants and the Sheraton Towers exists:

> The Hotel Defendants do not own, operate, or manage the Sheraton Towers located at 39 Scotts RD, Singapore 228230 (the "Singapore Sheraton"). The relationship between the Hotel Defendants and the Singapore Sheraton is governed by a License Agreement, dated December 9, 1990, between Sheraton International, Inc. and Richvein PTE. LTD. (the "License Agreement").

[Declaration of Jack Tomburello ("Tomburello Decl."), ECF No. 50-1 ¶¶ 10–11].   Defendants further attest that the Singapore Sheraton Towers has no known operations in Florida.   [*Id.* ¶ 13].

Thus, Plaintiff's conclusory claims that the Hotel Defendants "own and operate" the Sheraton Towers in Singapore [FAC, ECF No. 36 ¶¶ 69, 107–39] cannot overcome the Hotel Defendants' showing, by affidavit to the contrary, that all substantive operations are performed by its franchisee.   [*See* Tomburello Decl. ¶ 13 ("The Hotel Defendants have no direct involvement in the Singapore Sheraton's operations and do not have any employees working at the Singapore Sheraton.")].

To the extent Plaintiff seeks to impute the Florida contacts of a Singapore franchisee to the Hotel Defendants, her attempt is foreclosed by Eleventh Circuit precedent.   As the Eleventh Circuit has explained, while apparent forum contacts from one actor can, in certain circumstances, be imputed from another actor for purposes of personal jurisdiction, such "jurisdictional veil piercing" or "alter ego" theories are "based on the rationale that when a defendant exerts a high degree of control over an entity, the contacts created by the entity are, in reality, created by the defendant."   *United States ex rel. v. Mortgage Inv'r Corp.*, 987 F.3d 1340, 1355 (11th Cir. 2021).   This is why such imputation can be justified only where, for example, one entity "unilaterally controlled" another and "ignored corporate formalities."   *Id.* at 1356.   Here, Plaintiff supplies no allegation supporting either a veil-piercing or alter-ego theory of personal jurisdiction.   There are no facts before the Court showing (1) that corporate formalities were ignored; (2) that the Hotel Defendants exerted extraordinary control over the Singapore franchisee; or (3) that some other entity who managed or franchised the Sheraton Towers is really the Hotel Defendants' alter ego for the purpose of personal jurisdiction.   Accordingly, the Court lacks personal jurisdiction over the Hotel Defendants under Section 48.193(1)(a)(1).

   (ii)        <u>The alleged tortious acts were not committed in Florida</u>.

Turning then to Section 48.193(1)(a)(2), it provides that a person "who personally or through an agent" commits a tortious act within this state "thereby submits himself or herself… to the jurisdiction of the courts of this state for any cause of action arising from… [c]ommitting a tortious

act within this state." Fla. Stat. § 48.193(1)(a)(2). "Th[at] statute expressly requires that the tort be committed in Florida." *Casita, L.P. v. Maplewood Equity Partners L.P.*, 960 So. 2d 854, 857 (Fla. Dist. Ct. App. 2007). "In analyzing whether tortious conduct has occurred within Florida, courts have looked to whether the nonresident defendant committed a substantial aspect of the alleged tort in Florida." *NHB Advisors, Inc. v. Czyzyk,* 95 So. 3d 444, 448 (Fla. Dist. Ct. App. 2012) (citation and internal quotation marks omitted); *see also Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1296 (11th Cir. 2009) ("For the purposes of the [long-arm] statute, the defendant does not have to be physically present in Florida for the tortious act to occur within that state."); *3Lions Publ'g, Inc. v. Interactive Media Corp.,* 389 F. Supp. 3d 1031, 1037 (M.D. Fla. 2019) ("Under the long-arm statute, a nonresident defendant need not have a physical presence in Florida for the Court to assert personal jurisdiction. Instead, such a nonresident defendant need only commit a tortious act that causes injury within Florida." (citations omitted)).

In this case, Plaintiff has not satisfied her burden to show that a substantial aspect of the alleged torts occurred within Florida. Plaintiff's employer's booking of a hotel reservation for Plaintiff at a Singapore hotel (which allegedly was not even paid for by the employer) is not tortious activity *by* the Hotel Defendants directed *at* Florida. [FAC, ECF No. 36 ¶¶ 67, 70]. Consequently, because Plaintiff's claims under the TVPRA do not "arise out of or relate to" the Hotel Defendants' contacts with Florida, the Court cannot exercise specific jurisdiction over the Hotel Defendants under Section 48.193(1)(a)(2) for those claims. *Cf.*, *Doe S.W.,* No. 2:19-cv-1194, 2020 WL 1244192, *3 (S.D. Ohio Mar. 16, 2020) (finding specific jurisdiction over Best Western where the plaintiff alleged, *inter alia*, (1) that sex trafficking was occurring *in the forum* and Best Western was willfully blind to its prevalence at hotel locations, (2) that Best Western failed to adequately train and monitor its properties *in the forum* while receiving profits from the forum hotels, and (3) that there was "a causal connection

15

between Best Western's activities managing hotels *in [the forum]* and the harm to plaintiff as a result of her sex trafficking in these hotel locations") (emphasis added).

Plaintiff has not alleged that any tort (alleged sex trafficking included) happened at the Hotel Defendants' hotels or offices in Florida.   Instead, Plaintiff alleges that she stayed at and was assaulted at the Sheraton Towers located in Singapore.   As a result, any activity by the Hotel Defendants in Florida is separate and unrelated to the claims brought against them by Plaintiff in this action.   *See Doe*, 2023 WL 7181703, at *5 ("Even with the Hyatt Defendants admitting [Hyatt] conducts business in the jurisdiction, without the alleged tort arising out of or relating to [Hyatt's] contacts with Florida, Due Process prevents the exercise of personal jurisdiction over the Hyatt Defendants."); *see also Sun Trust Bank v. Sun Int'l Hotels Ltd.*, 184 F. Supp. 2d 1246, 1270 (S.D. Fla. 2001) ("[A] negligence action for personal injuries sustained at a hotel while vacationing in another country does not 'arise from' the simple act of making a reservation by calling the hotel's reservations office in Florida.") (citing *Limardo v. Corp. Intercontinental*, 590 F. Supp. 1109, 1111 (S.D. Fla. 1984) (holding that a negligence claim brought against a hotel had no jurisdictionally significant connection to contractual arrangements made to secure reservations)).

Accordingly, the Hotel Defendants must be dismissed for lack of personal jurisdiction under Rule 12(b)(2).

  *(c) Rule 4(k)(2) does not confer personal jurisdiction over the Hotel Defendants.*

In the alternative, Plaintiff argues this Court may exercise personal jurisdiction over the Hotel Defendants under Rule 4(k)(2).   [ECF No. 56 at 6].   While Plaintiff cites the correct legal test here, she misapplies it.   The three-part test set forth in *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1310 (11th Cir. 2022), for asserting personal jurisdiction under Rule 4(k)(2) requires that: (1) the claim arise under federal law; (2) the defendant is not subject to general

jurisdiction in any state court; and (3) exercising jurisdiction is consistent with the U.S. Constitution and federal law.  On the second element, Plaintiff says this Court has jurisdiction over the Hotel Defendants because "they are not subject to general jurisdiction *in Florida.*"  [ECF No. 56 at 6 (emphasis added)].  That is not the test.  As Plaintiff alleges in the Amended Complaint and reasserts in her opposition memorandum, the Hotel Defendants "are Delaware entities with principal places of business in Maryland."  [*See id.* at 6; Am. Compl., ECF No. 36 ¶¶ 12–14].  Thus, the Hotel Defendants are subject to general jurisdiction in those states.  Accordingly, the Hotel Defendants do not fall within the ambit of Rule 4(k)(2)'s second prong.

In sum, without any connection between Plaintiff's alleged assault in Singapore, the Hotel Defendants, and the State of Florida, this Court lacks personal jurisdiction over the Hotel Defendants. Accordingly, the Hotel Defendants are DISMISSED under Rule 12(b)(2) for lack of personal jurisdiction.  The Court next turns to whether it may exercise personal jurisdiction over Snorrason. Upon due consideration, Snorrason, too, must be dismissed for lack of personal jurisdiction.

2.      The Court lacks personal jurisdiction over Snorrason.

*(a)  No general jurisdiction over Snorrason.*

Florida's long-arm statute provides that "a defendant is subject to general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in substantial and not isolated activity in Florida."  *Waite*, 901 F.3d at 1312.  As the Eleventh Circuit has noted, "[b]ecause Florida's long-arm provision extends to the limits on personal jurisdiction imposed by the Due Process Clause, the Court need only determine whether the exercise of general jurisdiction… would exceed constitutional bounds."  *Id.* at 1316 (citation omitted).

Plaintiff does not (and cannot) allege that Snorrason is domiciled in Florida because he does not reside in this State (or the United States).   Accordingly, Plaintiff fails to demonstrate the existence of general jurisdiction.   *See, e.g., easyGroup Ltd. v. Skyscanner, Inc.*, 2020 WL 5500695, at *14 (S.D. Fla. Sept. 11, 2020) (Altonaga, C.J.) (the defendant "is a citizen and resident of Colombia … [he] was not served in and did not consent to jurisdiction in Florida.… General jurisdiction over [the defendant] is thus lacking."); *Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1086 (S.D. Fla. 2020) (Altonaga, C.J.) (same analysis and result).

*(b)  No specific jurisdiction over Snorrason.*

As for specific jurisdiction, Plaintiff does not allege facts sufficient to invoke any provision of Florida's long-arm statute governing specific jurisdiction as to Snorrason.   Nothing in Plaintiff's allegations suggests Snorrason operated, conducted, engaged in, or carried on a business or business venture in Florida, maintained an office or agency in the state, or otherwise engaged in purposeful activity within Florida.   *See* Fla. Stat. § 48.193(1)(a)(1).   Nor does Plaintiff allege Snorrason committed a tortious act *within Florida*.   *See* Fla. Stat. § 48.193(1)(a)(2).   To the contrary, Plaintiff alleges Snorrason is a foreign resident whose alleged case-connected conduct occurred outside Florida and without any direct connection to this forum.   Further, Plaintiff does not allege Snorrason worked from, traveled to, or conducted business in Florida, or that he had any ongoing interactions with Plaintiff while she was in Florida.   At most, Plaintiff alleges a brief telephone call with Snorrason shortly before she traveled to Singapore, followed by the alleged assault *in Singapore*.   [ECF No. 36 ¶¶ 65, 67].

Plaintiff's allegations (1) that Ibanera has a Florida office and (2) that Plaintiff performed work for Ibanera in Florida are not sufficient to confer personal jurisdiction over non-resident Snorrason. *See Carter v. Estate of Rambo*, 925 So. 2d 353, 355–56 (Fla. Dist. Ct. App. 2006) (holding that personal

18

jurisdiction did not exist over nonresident defendant despite the evidence showing the defendant signed business reports in the capacity of a managing member for the foreign LLC).   Indeed, "Florida law is clear that, generally, 'the actions of a [corporate entity] cannot be imputed to its [owners] for purposes of establishing long arm personal jurisdiction over the [owners].'"  *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1140 (S.D. Fla. 2007) (Altonaga, C.J.) (quoting *Suroor v. First Inv. Corp.*, 700 So. 2d 139, 141 (Fla. Dist. Ct. App. 1997)); *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993) ("While Southland Corporation, which operates business in Florida, could be haled into court … its chief executive officer is not by virtue of his position subject to personal jurisdiction.").

Nor does Plaintiff allege any facts to satisfy Section 48.193(1)(a)(6), which addresses tortious injury in Florida caused by an act or omission occurring *outside the state*.   That provision requires more than an assertion that a plaintiff experienced injury while located in Florida.   To invoke specific jurisdiction under this provision, a plaintiff must allege the defendant engaged in solicitation or service activities within Florida or placed products into the Florida stream of commerce in the ordinary course of business.  *See* Fla. Stat. § 48.193(1)(a)(6).   Plaintiff alleges neither.   Plaintiff does not allege Snorrason solicited Florida residents, provided services in Florida, directed activities toward Florida, or otherwise purposefully availed himself of Florida.

Likewise, Plaintiff fails to allege facts to satisfy any of the any of the remaining provisions of § 48.193(1)(a)(6) such as ownership or use of Florida real property, insurance of Florida risks, contractual obligations requiring performance in Florida, or any other statutorily enumerated basis for specific jurisdiction.  *See* Fla. Stat. § 48.193(1)(a)(6).   Accordingly, Plaintiff fails to allege facts bringing Snorrason within any provision of Florida's long-arm statute.   Thus, this Court lacks a statutory basis to exercise personal jurisdiction over Snorrason.

*(c)   No personal jurisdiction under Rule 4(k)(2) or conspiracy theory.*

19

As alternatives, Plaintiff argues the Court has jurisdiction over Snorrason under Rule 4(k)(2) or under a conspiracy theory of personal jurisdiction.   [ECF No. 57 at 4–7; 9–10].   Those paths also gain no traction.

First, as Plaintiff correctly points out, "jurisdiction is independently proper under Federal Rule of Civil Procedure 4(k)(2)… when (1) the claim arises under federal law, (2) the defendant is not subject to jurisdiction in any single state's courts of general jurisdiction, and (3) exercising jurisdiction *comports with due process*." [*Id.* at 5 (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (emphasis added))].   While Plaintiff's TVPRA claims arise under federal law and Snorrason does not seem to be subject to general jurisdiction in any State, Plaintiff cannot satisfy the third element—that exercising personal jurisdiction over Snorrason comports with due process.

In support of the constitutional prong of jurisdiction under Rule 4(k)(2), Plaintiff cites three recent cases: (1) *Fuld v. Palestine Liberation Org.*, 606 U.S. 1 (2025); (2) *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304 (11th Cir. 2025); and (3) *Doe v. WebGroup Czech Republic*, A.S., 93 F.4th 442 (9th Cir. 2024).   [*See* ECF No. 57 at 5–7].   None of these cases supports the exercise of personal jurisdiction over Snorrason.   First, *Fuld* upheld personal jurisdiction over the Palestinian Liberation Organization ("PLO") and the Palestinian Authority ("PA") under the Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA")—a statute not at issue here.   In *Fuld*, the Supreme Court held the PSJVTA's personal jurisdiction provision did not violate the Fifth Amendment's Due Process Clause because the statute reasonably tied the assertion of jurisdiction over the PLO and PA to conduct involving the United States and implicated sensitive foreign policy matters within the prerogative of the political branches.   *Id.* at 10–25.   Plaintiff's statement that *Fuld* requires the court to "ask[] whether the federal statute reasonably ties the assertion of federal jurisdiction to conduct that involves the United States," makes no sense here.   This case does not

20

involve the United States, and the TVPRA does not confer personal jurisdiction over violators. Therefore, Plaintiff's reliance on *Fuld* is unavailing.

So, too, is Plaintiff's reliance on *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.,* 140 F.4th 1304, 1311 (11th Cir. 2025)—a trademark infringement case.  In *Jekyll Island*, the Eleventh Circuit found the defendant "purposefully availed itself of the benefits of United States law to protect its substantial portfolio of intellectual property, [such that] a federal court may hold it 'to account for related misconduct.'" *Id.* (citation omitted).   This case has nothing in common with *Jekyll Island*.   This is obviously not a trademark infringement case, and Snorrason is not alleged to have purposefully availed himself of the benefits of United States law in any way, shape, or manner.   Accordingly, *Jekyll Island* is well off the mark.

As for *Doe v. WebGroup Czech Republic*, A.S., 93 F.4th 442 (9th Cir. 2024), the Ninth Circuit there allowed the court to exercise personal jurisdiction over Czech child pornography website operators who "purposefully directed" their websites at the United States.  *Id.*   Applying Rule 4(k)(2)'s three-part test, the Court of Appeals found all three elements satisfied.   *Id.* at 452. Importantly, the Ninth Circuit determined the exercise of personal jurisdiction over the foreign defendants comported with due process under the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984). *Id.*   The *Calder* "effects test" asks whether the defendant "(1) committed an intentional tort (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."   465 U.S. at 789.   In this case, Plaintiff cannot show either that Snorrason "expressly aimed" his tort *at Florida* or that Snorrason knew any harm would be suffered *in Florida.* Thus, the Court cannot exercise personal jurisdiction over Snorrason under Rule 4(k)(2), as the constitutional prong fails the *Calder* effects test.

Finally, Plaintiff attempts to gain personal jurisdiction over Snorrason under a civil conspiracy theory.   [ECF No. 57 at 9–10 (citing N. *Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1339 (11th Cir. 2025) (holding that Florida's long-arm statute confers personal jurisdiction over nonresident alleged conspirators even if none of them personally acted in Florida, so long as any co-conspirator committed an act in Florida in furtherance of the conspiracy); *United Techs. Corp. v. Maze*r, 556 F.3d 1260, 1280–82 (11th Cir. 2009); *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 585 (Fla. 2000))].   Here, Plaintiff argues roughly as follows:

> (1) Florida-based co-defendants Ibanera, Carbonara, and Parr—all of whom operate and conduct business *in Florida*—conspired to recruit, entice, and transport Plaintiff to Singapore for the purpose of sexual exploitation by Snorrason.   [FAC, ECF No. 36 ¶¶ 232–36 (emphasis added)]; and
> (2) Overt acts in furtherance of this conspiracy took place *in Florida* where Parr directed Plaintiff to travel to Singapore; Parr purchased Plaintiff's plane ticket to Singapore; Parr introduced Plaintiff to Snorrason *via* telephone; and Parr directed Plaintiff *via* text message to return to Snorrason after she had escaped from him and fled to Miami.   [*Id.* ¶¶ 58; 63; 65, 179–80 (emphasis added)].

Whether the Court may exercise personal jurisdiction over Snorrason under a conspiracy theory turns largely on whether Plaintiff, in fact, states a claim for conspiracy under the TVPRA.   She does not, as detailed below.   Thus, the Court lacks personal jurisdiction over Snorrason under a conspiracy theory as well.

In sum, Snorrason must be dismissed for lack of personal jurisdiction under Rule 12(b)(2).

**B.   Counts I–IV are dismissed on *forum non conveniens* grounds.**

Next, the Court turns to the obvious point that Plaintiff's TVPRA claims should not be litigated in Florida because all events giving rise to the claims occurred in Singapore.   All Defendants move for dismissal of these claims on *forum non conveniens* grounds.   [*See* ECF No. 50 at 10–12; ECF No. 51 at 12–17; ECF No. 60 at 3–6].   Plaintiff responds that Singapore is not an adequate alternative forum because "Singapore's Prevention of Human Trafficking Act 2014… is an exclusively criminal

and regulatory statute," which provides "no private civil right of action, no right to sue traffickers or their beneficiaries for damages, no attorneys' fees provision, and no beneficiary liability."   [ECF No. 56 at 8; 57 at 10 (citing *Piper Aircraft,* 454 U.S. at 254 (exception applies where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all."))]. Further, Plaintiff argues the public and private interests of the *forum non conveniens* analysis weigh in favor of this Court's retention of her TVPRA claims.   [ECF No. 56 at 9–10; 57 at 11–12].   The Court disagrees with Plaintiff on both fronts.

1.   Singapore is an available, alternative, and adequate forum.

The Court examines the first factor of *forum non conveniens*—whether Singapore is an available, adequate, alternative forum.   "Availability and adequacy warrant separate consideration." *Leon*, 251 F.3d at 1311.   An alternative forum is *available* simply "when the defendant is amenable to process in the other jurisdiction."   *Piper Aircraft,* 454 U.S. at 255 n.22 (quotation omitted).   But the Court must also consider whether remedy offered in the other forum is *adequate. Id.*   A remedy is inadequate when it is amounts to "no remedy at all."   *Id.* at 254.

In this case, Defendants contend Singapore is an adequate alternative forum "as its civil proceedings derive from the English common law, permitting actions in negligence and the recovery of damages in personal injury cases."   [ECF No. 50 at 11 (citing *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 775 (C.D. Cal. 2006), *aff'd sub nom. Schijndel v. Boeing Co.*, 263 F. App'x 555 (9th Cir. 2008))].   Plaintiff does not deny such remedies are available in Singapore.   [*See* ECF No. 56 at 8]. Instead, Plaintiff complains that "common-law negligence and assault claims are not substitutes for the TVPRA's specialized civil remedy, which was enacted precisely to provide trafficking victims with a comprehensive federal cause of action against all participants in a trafficking venture – including financial beneficiaries like hotel franchisors."   [*Id.*].

The Court finds Singapore to be an adequate alternative forum for Plaintiff's TVPRA claims. First, Singapore is *available*, as the appropriate Defendants are subject to service of process there. Additionally, "[f]ederal courts have repeatedly held that Singapore constitutes an adequate forum for a wide variety of claims."   *Mayhem Crude, Inc. v. Borrelli Walsh Pte., Ltd.*, 445 F. Supp. 3d 337, 346 (N.D. Cal. 2020) (citing *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696 (9th Cir. 1995); *Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 377 (S.D.N.Y. 2010) ("the Court is satisfied that Singapore offers more than adequate remedies for the subject of Plaintiffs' lawsuit"); *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 775 (C.D. Cal. 2006); *Sherrill v. Brinkerhoff Mar. Drilling*, 615 F. Supp. 1021, 1031 (N.D. Cal. 1985) ("Singapore's status as a major center of international trade and commerce and the base of operation in South East Asia for many corporations, American and foreign" is a fact that "lends weight to [the] assertion of its adequacy as an alternative forum.")); *see also Akerblom v. Ezra Holdings Ltd.,* No. 4:11-CV-00694, 2012 WL 464917, at *4 (S.D. Tex. Feb. 13, 2012), *aff'd,* 509 F. App'x 340 (5th Cir. 2013) (concluding "that Singapore is an available, adequate alternative forum" for the plaintiff's claims for breach of contract, common law fraud, statutory fraud, breach of fiduciary duty, intentional infliction of emotional distress, intentional interference with an existing contract, and civil conspiracy); *Wave Studio, LLC v. Gen'l Hotel Mgm't Ltd.,* No. 13-CV-9239 (CS), 2017 WL 972117, at *7 (S.D.N.Y. Mar. 10, 2017), *aff'd,* 712 F. App'x 88 (2d Cir. 2018) (finding "Singapore is an adequate alternative forum" for the plaintiff's copyright infringement claims).

Just because Plaintiff cannot obtain exactly the same remedies in Singapore does not make it an inadequate forum.   *Leon,* 251 F.3d at 1311 (identical remedies are not required where the alternative forum offers "at least some relief.").   Because Plaintiff may obtain relief for her alleged injuries in Singapore, the Court finds Singapore is an adequate alternative form, satisfying the first *forum non conveniens* factor.

24

When an alternative forum is adequate, dismissal on *forum non conveniens* grounds is then appropriate where the "private interest" and the "public interest" factors strongly favor trial in a foreign country.   The Court examines those factors below.

2.   <u>Private interest factors weigh in favor of dismissal</u>.

When weighing private interests, a "plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947), especially where plaintiff is a U.S. Citizen.   *See SME Racks Inc. v. Sistemas Mcanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004).   In this case, Plaintiff has not alleged U.S. Citizenship, nor has she alleged Florida residency for that matter.   [*See* FAC, ECF No. 36].   Thus, Plaintiff's preferred choice of forum does not carry the same weight as it would have had she alleged U.S. Citizenship.

Turning then to the private-interest factors, which include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."   *Am. Dredging Co. v. Miller,* 510 U.S. 443, 448 (1994) (quotation omitted).

Defendants correctly point out that all of the private interest factors weigh in favor of dismissal, as follows: (1) the alleged assaults occurred at the Sheraton Towers, which is located in Singapore; (2) "all relevant business records, surveillance footage, employee records, and operational documents" are located in Singapore; (3) most witnesses are either employees of the Sheraton Towers or paramedics and police officers, and they are all located in Singapore; (4) litigating in Florida would "require international travel, translations, and cross-border discovery for nearly all relevant witnesses"; (5) and "most of the essential witness and custodians [with respect to Plaintiff's TVPRA claims] are

… beyond this Court's subpoena power."   [ECF No. 50 at 11–12; *see also* ECF No. 51 at 13–15; ECF No. 60 at 4–6].

Plaintiff responds that (1) "key witnesses and evidence" are located "in Florida and the United States," but she does not identify them; (2) Plaintiff routinely performs work in Florida, and co-defendant Ibanera has its principal place of business in Sunrise, Florida—however, Plaintiff admits she was in Singapore when the alleged assaults occurred; (3) the "Hotel Defendants' corporate compliance officers, brand standards architects, and reservation system personnel are in the United States"—yet, Plaintiff does not connect these witnesses to her alleged assaults; (4) relevant documents are stored electronically and can be "produced anywhere"; and (5) "Singapore-based witnesses—hotel staff, paramedics, police—are peripheral to the TVPRA's focus on venture participation and knowledge."   [ECF No. 56 at 9].   On the last two points, the Court agrees with Plaintiff that electronically stored documents do not present the same kind of access problem as do hard copies, though the Court disagrees with Plaintiff that the Singapore witnesses are "peripheral."   Indeed, the only alleged witnesses to the events of September 2024 besides Plaintiff and Snorrason are the Singapore hotel staff, police, paramedics, and possibly the taxi driver.   All of these witnesses are located in Singapore.

A court views *forum non conveniens* arguments through the lens of convenience.   *See King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1383 (11th Cir. 2009).   "In assessing the litigants' access to sources of evidence, a court must consider the elements of the plaintiffs' causes of action, consider the evidence necessary to prove or disprove each element, and make a reasoned assessment as to the likely location of such proof."   *Aragon v. NCL (Bahamas) Ltd.,* No. 1:24-CV-20670-DPG, 2025 WL 2244060, at *13 (S.D. Fla. July 10, 2025), *report and recommendation adopted*, No. 1:24-CV-20670, 2025 WL 2239259 (S.D. Fla. Aug. 6, 2025) (citations and internal quotation marks omitted).   Here, Counts

I–IV arise from an alleged sexual assault that occurred in Singapore.   All relevant sources of evidence in support of these claims (both documentary and testimonial) lie in Singapore.   Singapore is well outside the subpoena power of this Court.   Accordingly, the Court finds that the private factors strongly favor dismissal of Counts I–IV of the Amended Complaint.

> 3.   Public factors weigh in favor of dismissal.

Although "private factors are generally considered more important" than public ones, courts should consider both public and private factors "in all cases."   *Leon*, 251 F.3d at 1311.   Public factors include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty.

*Piper,* 454 U.S. at 241 n.6 (internal citation omitted).   In weighing these factors, this Court must consider the "sovereigns' interests in deciding the dispute."   *See SME Racks*, 382 F.3d at 1104 (quoting *Republic of Panama, v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 953 (11th Cir. 1997)).

In support of the public interest factors, Defendants argue: (1) "the Southern District of Florida has one of the busiest dockets in the country" [ECF No. 50 at 12 (quoting *Grape Stars Int'l, Inc. v. nVentive, Inc.*, 2020 WL 4586123, at *12 (S.D. Fla. Aug. 10, 2020))]; (2) Florida's interest in this litigation is minimal where Plaintiff's tort claims arise from alleged criminal conduct in Singapore [*id.* (citing *Lambert*, 526 F. Supp. 3d at 1223); (3) nothing reasonably bars Plaintiff from reinstating her suit in the alternative forum and Singapore is equally, if not more, convenient for the majority of non-party witnesses [*id.*]; and (4) Plaintiff would face less prejudice from witness unavailability, unwillingness, or cross-border compulsory process issues if her TVPRA claims proceeded in Singapore [*id.*].   Based on the totality of the circumstances, Defendants argue "litigating in Singapore

27

does not impose an atypical or undue burden on the Plaintiff compared to the far greater burden of attempting to relocate most witnesses and evidence away from the jurisdiction where the alleged events of the dispute occurred."   [*Id.*; *see also* ECF No. 51 at 15–17; ECF No. 60 at 6].

Plaintiff counters as follows:

Florida has a strong interest in protecting employees who work in the state of Florida from sex trafficking facilitated through franchise systems operated by entities doing continuous business in this state.   The TVPRA is a federal statute that this Court is equipped to apply without the foreign-law complications that would attend Singapore tort claims.   Indeed, requiring a Singapore court to apply American federal trafficking law would impose a far greater administrative burden than adjudicating these claims in this Court.

[ECF No. 56 at 10; *see* ECF No. 57 at 11].

After due consideration, the Court concludes Defendants have met their burden to show the public factors strongly favor dismissal.   There is simply no Florida connection to the events that took place in Singapore in September 2024.   While Ibanera's principal place of business is allegedly located in Florida, Plaintiff has not shown that Ibanera (a Wyoming limited liability company) is a Florida citizen.   [*See* FAC, ECF No. 36 ¶ 6].   *See Purchasing Power, LLC v. Bluestem Brands, LLC,* 851 F.3d 1218, 1220 (11th Cir. 2017) (explaining LLC's citizenship is determined by the citizenship of *all* of its members not by its place of incorporation or principal place of business).   Nor has Plaintiff even alleged that *she* is a citizen or resident of Florida.   [*See* ECF No. 36 ¶ 5 ("Plaintiff is an individual female who performed work for Defendant in the State of Florida.")].   "When the plaintiff's choice is not its home forum, … the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'"   *Sinochem Int'l Co.* 549 U.S. at 430 (quoting *Piper Aircraft Co.,* 454 U.S. at 255–256).   Further, Plaintiff has not alleged that any of the individual Defendants is a Florida citizen.   [*See* FAC, ECF No. 36 ¶¶ 26–28 ("Carbonara was an individual male who was employed by Ibanera as CEO and Owner"; "Snorrason

28

was an individual male who was employed by Ibanera as Owner"; "Parr was an individual male who was employed by Ibanera as Owner.")]. Finally, three of the four corporate Defendants in this litigation are foreign corporations: Marriott International, Starwood Mgmt., and Starwood Worldwide. [*See id.* ¶¶ 12–13]. Then adding the crucial fact that *all* of the events about which Plaintiff complains in Counts I–IV took place in Singapore (not Florida), the conclusion follows that Plaintiff's claims arising from those events should not be litigated here. Indeed, the only alleged Florida connection to events in Singapore in September 2024 is Plaintiff's friend's purchase of a plane ticket for Plaintiff to fly from Singapore to Miami on September 23, 2024 (to escape the alleged sexual assaults and harassment). [ECF No. 36 ¶ 174]. That flight happened well after the alleged assaults transpired between September 18 and September 21, 2024. Therefore, it would be extremely unfair to burden this Court and a jury of Florida citizens with the adjudication of claims that have *zero* connection to Florida.

Accordingly, Plaintiff's TVPRA claims arising from her alleged sexual assault in Singapore in September 2024 (Counts I–IV) are due to be dismissed for *forum non conveniens*.

### C.     Plaintiff's TVRPA claims (Counts I-V) must also be dismissed under Rule 12(b)(6).

Even if the undersigned agreed that Plaintiff's claims may be brought in Florida for purposes of *forum non conveniens*, the Amended Complaint fails to state a claim under the TVPRA regardless.

When enacted in 2000, the TVPRA imposed only criminal liability on sex traffickers. *See* Pub. L. 108-193, § 4(a)(4). In 2003, Congress created a civil cause of action under the Act, providing that

> [a]n individual who is a victim of [a TVPRA violation] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

18 U.S.C. § 1595(a).   Section 1595(a) creates civil liability for two types of defendants.   The first type of defendant is a TVPRA "perpetrator"—an individual or entity that "recruit[ed], harbor[ed], transport[ed], provid[ed], obtain[ed], advertise[d], maintain[ed], patroniz[ed], or solicit[ed] by any means" a sex trafficking victim.   A sex trafficking victim is defined under the TVPRA as someone who was caused to have commercial sex by the perpetrator's use of force, threats of force, fraud, coercion, or any combination thereof, or who was under the age of 18 when induced by the perpetrator to have sex.   18 U.S.C. § 1591(a)(1).   The term "'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person."   18 U.S.C § 1591(e)(3).

The second type of defendant is a TVPRA "participant"—a person or entity that "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that [defendant] knew or should have known has engaged in an act in violation of [the TVPRA]."   18 U.S.C. § 1595(a).   "'The term 'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."   18 U.S.C § 1591(e)(4).

Congress amended Section 1595 through the Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347, 136 Stat. 6199 (2023) ("ATRA") to allow a victim of sex trafficking to sue for conspiracy as follows:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts *or conspires to benefit*, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

18 U.S.C. § 1595(a) (2023) (emphasis added).

Counts I and IV of First Amended Complaint assert "perpetrator" liability against Ibanera, Carbonara, Parr, Snorrason, and the Hotel Defendants.   [*See* FAC, ECF No. 36 ¶¶ 207–30].   Count

II asserts "participant" liability against Ibanera, Carbona, Parr, and Snorrason.   [*Id.* ¶¶ 237–51]. Count III asserts a TVPRA conspiracy claim against Parr and Snorrason.   [*Id.* ¶¶ 231–36].

As discussed above, the Court lacks personal jurisdiction over the Hotel Defendants and Snorrason, and Plaintiff's TVPRA claims must be dismissed for *forum non conveniens.*   That said, the Court will analyze Plaintiff's TVPRA claims as pleaded to show that, even if the Court could exercise personal jurisdiction over the Hotel Defendants and Snorrason and Singapore were not found to be an adequate, alternative forum, Plaintiff's TVPRA claims must still be dismissed under Rule 12(b)(6).

1.   <u>Plaintiff fails to plausibly plead "perpetrator" liability (Counts I and IV)</u>.

In relevant part, a TVPRA victim may bring a civil action against a defendant who knowingly "in or affecting interstate or foreign commerce … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person" who is forced to engage in a "commercial sex act."   18 U.S.C. § 1591(a)(1); *see Doe v. Bank of Am., N.A.,* No. 25-CV-8520 (JSR), 2026 WL 380385, at *8–12 (S.D.N.Y. Feb. 11, 2026) (analyzing TVPRA "perpetrator" and "participant" claims).   "To state a claim for direct or perpetrator liability on the part of a sex trafficker defendant under the TVPRA, a plaintiff must demonstrate that the defendant: (1) violated 18 U.S.C. § 1591(a)(1) by knowingly recruiting, enticing, transporting providing, obtaining advertising, patronizing or soliciting a person; and (2) knew or acted in reckless disregard of the fact that force, threats of force, fraud, or coercion would be used to cause the person to engage in a commercial sex act (or that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act)."   91 A.L.R. Fed. 3d Art. 1 (originally published in 2024).

The Amended Complaint fails to plausibly plead a TVPRA "perpetrator" claim against Ibanera, Carbonara, Parr, Snorrason, and the Hotel Defendants.   That is because Plaintiff alleges no facts to show that Snorrason's alleged sexual assaults upon her constituted a "commercial sex act" as

that term is defined under the TVPRA.   Moreover, Plaintiff's allegations in Count I that Defendants Ibanera, Carbonara, Parr, and Snorrason, "would have profited and obtained revenue from Plaintiff if she had performed work for existing clients and signed up additional clients," does not show that "anything of value" was given or received in connection with the alleged rapes of Plaintiff.   [*See* FAC, ECF No. 36 ¶ 212].   *See* 18 U.S.C § 1591(e)(3) (defining "commercial sex act").   Finally, Plaintiff unambiguously alleges she was flown to Singapore to attend the TOKEN 2026 conference where she met up with Ibanera's clients.   [FAC, ECF No. 36 ¶¶ 58, 65].   Accordingly, Plaintiff was not *transported* to Singapore to *engage in* commercial sex acts.   Disturbingly and unequivocally, Plaintiff alleges that she sexually assaulted while on a business trip overseas.   But more than sexual assault is required to support a claim for TVPRA *sex trafficking.*

Plaintiff's allegations in Count IV against the Hotel Defendants fail for similar reasons.   *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) ("[T]he [plaintiffs] must plead sufficient facts to plausibly allege that the venture in which the franchisors participated committed one of these crimes against them.").   In this case, Plaintiff alleges only that the "Hotel Defendants would have profited and obtained revenue from Plaintiff… [as] the Sheraton generated a substantial amount of revenue from the renting rooms, food and beverage sales, valet services, tips, and more[.]"   [FAC, ECF No. 36 ¶ 242].   The Hotel Defendant's making money off normal operations as hotels does not point toward the Hotel Defendants' knowledge about sex trafficking at the Sheraton Towers in Singapore.   *Red Roof Inns*, 21 F.4th at 727 ("observing something is not the same as participating in it"); *see also A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) ("[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking."); *A.D. v. Wyndham Hotels & Resorts, Inc.*, 4:19CV120, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020) ("[A] failure to affirmatively prevent or inhibit sex trafficking does not constitute participation.").   That is especially

true here, where Parr booked Plaintiff's hotel room at the Sheraton Towers such that the Hotel Defendants did not "recruit" Plaintiff in any way. Bottom line: Without a "*commercial* sex act," *see* 18 U.S.C § 1591(e)(3), Plaintiff is not a *sex trafficking* victim entitled to relief under the TVPRA. Accordingly, Counts I and IV are due to be dismissed under Rule 12(b)(6).

2. Plaintiff fails to plausibly plead "participant" liability (Count II).

Plaintiff's "participant" TVPRA claims also fail. Plaintiff has not shown she was trafficked for commercial sex in violation of the TVPRA.

To state a claim for participant (or "beneficiary") liability, in violation of 18 U.S.C. § 1591(a)(2), a plaintiff must "plausibly allege" four elements: (1) the defendant knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA.[2] The Court discusses each of these elements as applied to each of the defendants named in Count II.

*(a) Participation.*

Plaintiff's "participant" claims against Ibanera, Carbonara, Parr, and even Snorrason are nonstarters right out of the gate. Participation, for purposes of a claim under Section 1595(a), requires allegations of "specific conduct that furthered the sex trafficking venture," that is, allegations of conduct that amounts to "more than just passive facilitation" and, instead, reaches "some level of active engagement." *Doe 1 v. Deutsche Bank Aktiengellschaft,* 671 F. Supp. 3d 387, 405 (S.D.N.Y. 2023) (collecting cases). Plaintiff has not alleged any facts to show these Defendants were actively engaged

---

[2] "Although some courts may phrase these elements in slightly different ways, in general, to state a claim for beneficiary liability under the TVPRA, a plaintiff must demonstrate that: (1) the defendant knowingly benefited; (2) from participating in a venture; (3) the venture violated the TVPRA as to the plaintiff; and (4) the defendant knew or should have known that the venture violated the TVPRA." 91 A.L.R. Fed. 3d Art. 1 (Originally published in 2024)

in a *sex trafficking venture*.   At most, Plaintiff alleges Ibanera, Carbonara, and Parr sent her on a business trip to Singapore where Snorrason sexually assaulted her, and no consequences were imposed on Snorrason after Plaintiff reported the alleged assault to management upon her return.   [*See* FAC, ECF No. 36 ¶¶ 182–85].   Those allegations are a far cry from Defendants' knowing Snorrason would force Plaintiff to have sex with him, or that Defendants "benefitted" from the alleged rapes as contemplated under the TVPRA.   Without Defendants' active participation in a *sex trafficking venture*, Plaintiff has no TVPRA participant claim against Ibanera, Carbonara, Parr, or Snorasson.

    *(b)  Knowledge.*

The same deficiency is found with the knowledge prong of Plaintiff's TVPRA participant claims.   To satisfy the knowledge prong for TVPRA participant liability, a defendant must know or recklessly disregard the fact that "force, fraud, or coercion was used in the '*sex-trafficking venture* that [defendant] is alleged to have participated in.'"   *Doe v. Bank of Am., N.A.,* No. 25-CV-8520, 2026 WL 380385, at *10 (S.D.N.Y. Feb. 11, 2026) (Rakoff, J.) (citing *Deutsche Bank,* 671 F. Supp. 3d at 406) (emphasis added)).   "Section 1591(a)(2) expressly defines the scope of liability under the TVPA in terms of a defendant's having knowingly benefited from 'participation in a venture' that has *trafficked* plaintiff, not in terms of a defendant's having knowingly benefited from participation in the trafficking of plaintiff personally."   *Id.* (emphasis added).   As Plaintiff fails to show in the first instance that she was "trafficked" for "commercial sex" as discussed above, it follows that Defendants could not have knowingly participated in a sex-trafficking venture.

    *(c)    Benefit.*

Finally, Plaintiff's TVPRA "participant" claims also fail at the third prong.   The third prong requires Plaintiff to show that a defendant knowingly benefitted from participation in what he knew or should have known was a forbidden venture.   *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d

156, 169 (S.D.N.Y. 2019). As already explained, without a "commercial sex act," there can be no "sex trafficking." And without sex trafficking, there can be no "sex-trafficking venture." Without a sex-trafficking venture, there can be no knowing benefit from participation in such venture. Accordingly, Count II must be dismissed under Rule 12(b)(6).

       3.   <u>Plaintiff fails to plausibly plead a TVPRA conspiracy (Count III)</u>.

Finally, Plaintiff has not pleaded a cognizable TVPRA conspiracy. The civil remedy provision of the TVPRA permits suit against any person who "conspires to benefit" from participation in a sex trafficking venture. *See* 18 U.S.C. § 1595(a). The statute does not define "conspires," but where Congress uses a legal term with a well-established common law meaning, courts presume that Congress intends to incorporate that meaning. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484–85 (2023) (quoting *Sekhar v. United States*, 570 U.S. 729, 733 (2013)). At common law, "[t]he elements of a civil conspiracy are: (1) a conspiracy between two or more parties, (2) to do an unlawful act or a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the act performed pursuant to the conspiracy." *Walters v. Blankenship,* 931 So.2d 137, 140 (Fla. 5th DCA 2006).

Plaintiff bases her conspiracy TVPRA claims against Parr and Snorrason by alleging in conclusory fashion that:

> Defendants PARR and SNORRASON engaged and conspired in a common scheme and enterprise of recruiting, enticing, providing, transporting, soliciting, and forcing Plaintiff and individuals similarly situated to Plaintiff, with the intent that Plaintiff engage in sexual activities with Defendants PARR and SNORRASON, in exchange for access to employment with Defendants, including but are not limited to developing an app, performing work for existing customers, and procuring new clientele.

[FAC, ECF No. 36 ¶ 234]. These conclusory statements are bereft of any facts. And the statements are inconsistent with factual allegations stating there was no interaction between Parr and Snorrason (except for one telephone call whereby Parr introduced Plaintiff to Snorrason before Plaintiff's trip to

Singapore during which Parr remarked: "Bjorn, this is the sexiest and most knowledgeable person with the most class that I can send you for this trip.")   [*Id.* ¶ 65].   That one sexist remark does not show a conspiracy between Parr and Snorrason to do anything other than make sure Plaintiff was introduced to Snorrason before her business trip to Singapore where the pair would meet in person for work.

Furthermore, the only person Plaintiff alleges sexually assaulted her was Snorrason, and there are no allegations of any agreement to commit sexual assault or have Plaintiff engage in a commercial sex act (formal or informal, direct or circumstantial) between Snorrason and anyone else.   [*Id.* ¶¶ 144, 153–72].   Indeed, Parr is not alleged to have known about Snorrason's assaults upon Plaintiff until *after* they occurred.   [*See id.* ¶ 180].   So, Plaintiff's allegations do not plausibly plead that Parr and Snorrason *conspired* to benefit from a sex trafficking venture.   One person's alleged criminal act does not constitute a conspiracy, let alone a conspiracy to violate the TVPRA.   As a result, Count III is due to be dismissed under Rule 12(b)(6).

To wrap up.   Counts I–IV of the First Amended Complaint must be dismissed for failure to plausibly plead any claim under the TVPA, irrespective of the Court's rulings on personal jurisdiction and *forum non conveniens*.

### D.  **The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.**

The remaining claims arise under Florida law.   [*See* FAC, ECF No. 36 at 42–65].[3]  The Court declines to retain jurisdiction over those claims.

When a district court has original jurisdiction over an action, the court "shall have

---

[3] The Court granted summary judgment against Plaintiff and in favor of Ibanera on Plaintiff's FCRA claims (Counts VIII, IX, and X).   [*See* ECF No. 91].

supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   28 U.S.C. § 1367(a).   However, a district court "may decline to exercise supplemental jurisdiction over a claim … [if] the district court has dismissed all claims over which it has original jurisdiction[.]"   28 U.S.C. § 1367(c)(3).   "Section 1367(c) gives a court *discretion* to dismiss a supplemental claim or party 'when the district court has dismissed all claims over which it has original jurisdiction.'"   *Palmer v. Hosp. Auth. of Randolph Cnty.,* 22 F.3d 1559, 1568 (11th Cir. 1994) (quoting 28 U.S.C. § 1367(c)(3)) (emphasis in original); *see also West v. City of Albany*, 830 F. App'x 588, 596 (11th Cir. 2020) (per curiam) (noting that a "district court's decision to either retain or reject" supplemental jurisdiction over state law claims is "purely discretionary" and "not a jurisdictional matter." (citations and internal quotation marks omitted)).

The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when … the federal claims have been dismissed prior to trial."   *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam). (citation omitted).   As announced in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966), a district court should consider the factors of judicial economy, convenience, fairness, and comity before doing so.   *Id.* at 726; *West*, 830 F. App'x at 597 (citations omitted).   The *Gibbs* factors "may, by their presence or absence, influence the court in its decision concerning the exercise of such discretion" to retain or reject supplemental jurisdiction.   *Palmer*, 22 F.3d at 1569.

After considering the § 1367(c) and *Gibbs* factors, which weigh in favor of dismissal, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.   Concerns of comity weigh heavily in favor of dismissal.   This case now consists entirely of state causes of action that would be more appropriately resolved by a Florida state court.   *Pinkert v. Schwade*, No. 11-CIV-

23324, 2012 WL 3962386, at *2 (S.D. Fla. Sept. 10, 2012); *see also Ameritox, Ltd. v. Millennium Laboratories, Inc.*, 803 F.3d 518, 540 (11th Cir. 2015) ("state courts, not federal courts, should be the final arbiters of state law in our federalist system") (alteration adopted; citation and internal quotation marks omitted)).   Further, this case has only just begun: discovery has been stayed pending resolution of the jurisdictional challenges, and only limited motion practice has occurred.   Finally, Plaintiff can litigate her remaining claims in state court.   *See Zen Grp., Inc. v. Harris*, No. 1:20-CV-23218, 2021 WL 6802922, at *2 (S.D. Fla. Dec. 29, 2021) (citing *Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-CIV-21244, 2018 WL 1729757, at *11 (S.D. Fla. Apr. 10, 2018) ("However, the question of whether [p]laintiffs could timely bring its state law claims in state court is a non-issue.  This is because § 1367(d) tolls the statute of limitations for state claims during the period in which they have been pending in federal court and for 30 days after an order of dismissal.")); *see* 28 U.S.C. § 1367(d)).

Accordingly, the Court DISMISSES Counts XI, XII, XIII, XIV, and XVIII WITHOUT PREJUDICE.   *See Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999) (if the district court chooses to dismiss the state law claims, it should do so without prejudice "so that the claims may be refiled in the appropriate state court").

## IV.   CONCLUSION

For all these reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  The Hotel Defendants' Motions to Dismiss [**ECF No. 50**] is **GRANTED**.   Defendants Marriott International, Inc., Starwood Hotels & Resorts Management Co., LLC, Starwood Hotels & Resorts Worldwide, LLC ("Starwood Worldwide") are DISMISSED from this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *The Clerk* is DIRECTED to TERMINATE these Defendants from this action.

2. Defendant Bjorn Snorrason's Motion to Dismiss [**ECF No. 51**] is **GRANTED**. Bjorn Snorrason is DISMISSED from this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).   *The Clerk* is DIRECTED to TERMINATE Defendant Bjorn Snorrason from this action.

3. Defendant Michael Carbonara, Ibanera, LLC, and David Parr's Motion to Dismiss [**ECF No. 60**] is **GRANTED IN PART**.   Counts I, II, III, and IV of the First Amended Complaint are DISMISSED for *forum non conveniens* and for failure to state a claim upon which relief may be granted under Rule 12(b)(6).   The Court declines to exercise its discretion to retain supplemental jurisdiction over Count XI (negligence) against Ibanera; Count XII (negligent retention) against Ibanera; Count XIII (negligent supervision) against Ibanera; Count XIV (negligent failure to train) against Ibanera; and Count XVIII (negligent infliction of emotional distress) against Parr and Carbonara.   These Counts are DISMISSED WITHOUT PREJUDICE.

4. *The Clerk* is DIRECTED to CLOSE this case.

5. All deadlines are terminated and any pending motions are DENIED AS MOOT.

**DONE AND ORDERED** in the Southern District of Florida, on May 21, 2026.

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:     counsel of record