IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-cv-24118-LEIBOWITZ/AUGUSTIN-BIRCH

JANE DOE,

Plaintiff,

v.

IBANERA LLC, et al.,

Defendants.
______________________________________/

**PLAINTIFF'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE [ECF NO. 97] AND REQUEST FOR HEARING**

Plaintiff Jane Doe alleges that she was drugged and brutally raped. Respectfully, the Court should not punish her counsel for trying to obtain for her every avenue of relief the law affords for that rape. Most importantly, Plaintiff had valid grounds to assert the TVPRA claims against Ibanera LLC, Michael Carbonara, and David Parr: the statute's text, binding Eleventh Circuit precedent, decisions accepting closely analogous claims, and specific allegations about each of them.

Derek Smith Law Group, PLLC ("DSLG") and Derek T. Smith, Esq. (together, "Counsel"), counsel for Plaintiff Jane Doe, respectfully respond to the Court's Order [ECF No. 97] (the "Order") directing Counsel to show cause why sanctions under 28 U.S.C. § 1927 should not be imposed for asserting claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA") against Defendants Ibanera LLC ("Ibanera"), Michael Carbonara, and David Parr (together, the "Ibanera Defendants"), and request a hearing before any sanction issues.

## I. INTRODUCTION

Plaintiff alleges that Ibanera sent her to Singapore on company business to meet one of its owners, Bjorn Snorrason, after another owner, Defendant David Parr, introduced her to Snorrason as "the sexiest and most knowledgeable person with the most class that I can send you for this trip." [ECF No. 36 ¶¶ 58–65]. Snorrason drugged her, raped her, kept her in his hotel room for four more nights through threats and financial control, raped her again, and told her that her app, her salary, her title, and her job depended on her continued sexual compliance. [*Id.* ¶¶ 115, 140–73; *see* ECF No. 92 at 4–5]. When she escaped and went to the police, Parr messaged her to go back to Snorrason. [ECF No. 36 ¶¶ 177–80].

The Court dismissed the TVPRA counts on forum non conveniens grounds and, in the alternative, under Rule 12(b)(6). [ECF No. 92 at 22–36]. Counsel respect that ruling and do not ask the Court to revisit it. The question now is narrower: whether pleading those counts was conduct "so egregious that it is 'tantamount to bad faith,'" such that counsel "knowingly or recklessly pursue[d] a frivolous claim." [ECF No. 97 at 8–9 (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991), and *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007))]. It was not, for three reasons.

First, § 1927's three requirements are conjunctive, and the Order finds only one. It makes no finding that the TVPRA counts multiplied the proceedings, and none that any fee was incurred because of them. The Eleventh Circuit has held that even an attorney who knew a claim was frivolous when he filed it is not subject to § 1927 where he "did not engage in any dilatory tactics nor did he multiply any proceeding." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). Second, the TVPRA counts tracked the statute's text and published decisions accepting closely analogous allegations, including a decision in this Circuit sustaining § 1591 claims

against an employer and the supervisor who raped an employee on a company business trip. *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1231 (M.D. Fla. 2023). Courts—including one in this District—have sustained such claims on comparable facts, even against a defendant who, like Parr, assaulted no one but recruited the victim and sent her to the man who did. *See* Part IV.B.1–2, *infra*. And the Eleventh Circuit was still clarifying the governing standards while this case was pending. *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1262 (11th Cir. 2026). Third, the Order itself recognizes that claims "meritorious enough to receive careful attention and review" are not groundless [ECF No. 97 at 6], and that "an attorney threatened with sanctions under § 1927 is entitled to a hearing" [*id.* at 9]. If the Court remains inclined to sanction, Counsel request the hearing the Order recognizes.

Finally, no sanction should issue against anyone. Section 1927 is personal, and each attorney's conduct must be measured on its own. Mr. Smith's name appears on the Complaint and the First Amended Complaint, but he has no recollection of authorizing it on either. [Ex. A ¶¶ 3–4].

## II. BACKGROUND

### A. The Allegations.

Plaintiff worked for Ibanera, a cross-border payments company owned and run by Snorrason, Carbonara, and Parr. [ECF No. 36 ¶¶ 26–29, 32]. In September 2024, Parr told Plaintiff that Ibanera required her to travel to Singapore "to meet with SNORRASON"; Parr and Carbonara knew she was being sent to Snorrason. [*Id.* ¶¶ 58–61]. Parr bought her ticket, introduced her to Snorrason with the remark quoted above, and, when her room had not been paid for on arrival, told her to call Snorrason. [*Id.* ¶¶ 63–70].

On September 17, 2024, Snorrason put a drug in Plaintiff's drink. [*Id.* ¶ 115]. When she reached her hotel, he told hotel staff he was her boyfriend and that they should leave so he could take care of her; they left her alone with him over her protests. [*Id.* ¶¶ 123–36]. She woke the next morning naked and bruised beside him; he had raped her while she was unconscious. [*Id.* ¶¶ 140–45]. Snorrason then extended her trip, and she "was forced to stay in Snorrason's hotel room four more nights," [ECF No. 92 at 5], "prevented from leaving through threats, intimidation, financial control, and fear of violence." [ECF No. 36 ¶¶ 151–53]. He raped her again, told her "sleeping with the boss has its perks," said Parr and Carbonara had agreed she "would get whatever she wanted now that she was SNORRASON's 'girlfriend,'" and made clear that so long as she submitted, Ibanera would continue developing her app and employ her at higher pay and status. [*Id.* ¶¶ 161–73]. She escaped and filed a police report; Parr then messaged her that Snorrason "would like for you to come back to the hotel." [*Id.* ¶¶ 177–80].

**B. The TVPRA Counts and Procedural History.**

The First Amended Complaint asserted perpetrator liability under 18 U.S.C. §§ 1591(a)(1) and 1595 (Count I) and beneficiary liability under §§ 1591(a)(2) and 1595 (Count II) against Ibanera, Carbonara, Parr, and Snorrason, and conspiracy (Count III) against Parr and Snorrason only. [ECF No. 36 ¶¶ 207–36]. Count IV named only the Hotel Defendants. [*Id.* ¶¶ 237–51].

The TVPRA claims were pleaded from the outset. [ECF No. 1]. After the Hotel Defendants and Snorrason moved to dismiss [ECF Nos. 30, 33] and the Ibanera Defendants filed a summary-judgment motion that was later stricken [ECF No. 32], Plaintiff amended once, on February 2, 2026, before any ruling. [ECF No. 36]. The Court denied the pending motions as moot. [ECF No. 43]. The Ibanera Defendants then moved to dismiss on forum non conveniens

grounds and under Rule 12(b)(6) [ECF No. 60] and joined a motion to stay discovery that the Court granted, later permitting only limited discovery on Ibanera's status as a covered employer. [ECF Nos. 52, 54, 63, 76; ECF No. 97 at 7]. Plaintiff opposed the motion in a single brief. [ECF No. 70]. On May 22, 2026, the Court dismissed Counts I–IV "on grounds of forum non conveniens and failure to state a claim." [ECF No. 92 at 1, 22–36]. The Court observed that "this case has only just begun: discovery has been stayed . . . and only limited motion practice has occurred." [*Id.* at 38].

The Ibanera Defendants then moved for fees. [ECF No. 94]. Their TVPRA argument occupied a single paragraph and segregated no fee attributable to the TVPRA counts. [*Id.* at 8–9]. Carbonara and Parr seek fees only as a sanction against counsel. [ECF No. 97 at 2 n.1]. The Court denied fees on the Title VII and FCRA claims, finding them not frivolous and noting that the discovery stay Defendants joined had kept the documents bearing on those claims from Plaintiff. [*Id.* at 6–8]. It then found the assertion of the TVPRA counts "objectively egregious conduct sufficient to support sanctions under Section 1927" and ordered counsel to show cause. [*Id.* at 9–10].

**C. The Signatures on the Pleadings.**

Daniel J. Barroukh, Esq., then an attorney with DSLG, drafted, signed, and filed the Complaint, the First Amended Complaint, and the opposition to the Ibanera Defendants' motion to dismiss. [ECF Nos. 1, 36, 70; Ex. A ¶ 2]. The Complaint and the First Amended Complaint also bear the electronic signature "/s/ Derek T. Smith." [ECF No. 1; ECF No. 36 at 66]. The day before the Complaint was filed, Mr. Barroukh asked Mr. Smith whether he would like Mr. Barroukh to include his name on the filing; Mr. Smith has no record of answering and does not recall authorizing it. [Ex. A ¶ 3]. Mr. Smith likewise does not recall authorizing his name on the

First Amended Complaint and has no record of doing so. [*Id.* ¶ 4]. Mr. Smith never filed a notice of appearance or any other paper in this case; the Complaint and the First Amended Complaint were both filed through Mr. Barroukh's CM/ECF account. [ECF Nos. 1, 36; Ex. A ¶ 5]. Mr. Barroukh is no longer with DSLG and withdrew as counsel of record on May 13, 2026. [Ex. A ¶ 6; ECF No. 87]. He has since appeared as an interested party through separate counsel and obtained until October 13, 2026 to respond to the Order. [ECF Nos. 98–100].

## III. LEGAL STANDARD

Section 1927 has three requirements: the attorney must engage in "unreasonable and vexatious" conduct; that conduct must "multipl[y] the proceedings"; and the sanction must "bear a financial nexus to the excess proceedings." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997); [ECF No. 97 at 8]. The requirements are conjunctive: "If one factor is missing, sanctions cannot be imposed." *Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006) (per curiam). "[N]egligent conduct, standing alone, will not support a finding of bad faith under § 1927"; the attorney "must knowingly or recklessly pursue a frivolous claim." *Amlong*, 500 F.3d at 1241–42; [ECF No. 97 at 9]. Because the statute is penal, it "must be strictly construed." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010) (quoting *Peterson*, 124 F.3d at 1395).

## IV. ARGUMENT

### A. The Order Finds Only One of the Three Elements Section 1927 Requires.

The Order finds that asserting the TVPRA counts was "objectively egregious conduct." [ECF No. 97 at 9]. It does not find that this conduct multiplied the proceedings, or that any fee was incurred because of it—the second and third requirements the Order itself recites. [*Id.* at 8]. Two of three conjunctive elements are missing.

**1. Pleading claims does not "multiply the proceedings."**

In *Peer*, the Eleventh Circuit found that counsel "knew that Peer's claim was frivolous before the complaint was filed" and "thus acted in bad faith," yet held that "sanctions are not appropriate under section 1927 because Rosenbaum did not delay the judicial proceedings after he filed the complaint." 606 F.3d at 1314. "Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." *Id.* (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001)). Section 1927 thus "only applies to unnecessary filings after the lawsuit has begun"; "[t]he filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927." *Macort*, 208 F. App'x at 786 (second quotation quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996)); *accord DeBauche v. Trani*, 191 F.3d 499, 511–12 (4th Cir. 1999).[1]

The Order identifies the sanctionable conduct as "asserting" the TVPRA claims. [ECF No. 97 at 9–10]. Those claims were asserted in the original Complaint. Plaintiff amended once, before any ruling, in response to the first round of motions, which the Court denied as moot. [ECF Nos. 36, 43]. Counsel did not replead a claim the Court had found deficient, disregard a judicial warning, or file serial amendments, and after the Court dismissed the counts, Counsel did not reassert them here. The counts were then addressed in a single motion and a single opposition, decided on the papers, while discovery was stayed and "only limited motion practice ha[d] occurred." [ECF No. 92 at 38]. *Macort* affirmed the denial of § 1927 sanctions on a

[1] The Order proceeds under § 1927 alone. [ECF No. 97 at 9–10]. Defendants concede they never served a Rule 11 safe-harbor motion [ECF No. 94 at 6], which forecloses Rule 11 sanctions on Defendants' motion. Fed. R. Civ. P. 11(c)(2). To the extent Defendants' alternative inherent-power request [ECF No. 94 at 8–9] remains pending, it requires subjective bad faith, *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224–25 (11th Cir. 2017), of which there is no evidence, and "specific findings about which conduct justifies sanctions," *J.C. Penney Corp. v. Oxford Mall, LLC*, 100 F.4th 1340, 1346 (11th Cir. 2024).

comparable record, where counsel "did not file voluminous or multiple pleadings." 208 F. App'x at 786. Nothing here multiplied the proceedings.

**2.There is no financial nexus to any excess cost.**

A sanction may not exceed the fees "reasonably incurred because of such conduct," 28 U.S.C. § 1927; *Peterson*, 124 F.3d at 1396—that is, the fees the movant "would not have incurred but for" the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103–04 (2017); *J.C. Penney Corp. v. Oxford Mall, LLC*, 100 F.4th 1340, 1347 (11th Cir. 2024); *see Fox v. Vice*, 563 U.S. 826, 838 (2011). The Ibanera Defendants' single motion to dismiss also challenged non-TVPRA counts asserted against each of them, and the same counsel defended Ibanera on the Title VII and FCRA claims throughout; Defendants have made no effort to separate those costs. [ECF No. 36 at 36–61; ECF No. 60]. The TVPRA counts generated no discovery. [ECF No. 92 at 38]. And Defendants have identified no fee incurred solely because of those counts, having expressly deferred any allocation. [ECF No. 94 at 8].

**B. The TVPRA Claims Had an Objectively Reasonable Basis.**

As this Court recognized, courts must "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." [ECF No. 97 at 5]; *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978). The Eleventh Circuit applies that principle under § 1927. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1187 (11th Cir. 2005) (reversing award against counsel where allegations, though insufficient, were not "so without circumstantial foundation as to have been frivolous"). Each TVPRA theory here rested on the statute's text, specific factual allegations, and published authority. Defendants, for their part, devoted a single paragraph to the TVPRA counts, cited no TVPRA authority, and identified no element that

Counsel lacked a basis to plead, asserting only that the alleged conduct "simply did not meet the Act's definition of trafficking." [ECF No. 94 at 8–9].

**1. The Amended Complaint alleged a "commercial sex act" under a theory courts have accepted.**

A "commercial sex act" is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). "[A]nything of value" "need not have a monetary or financial component." *United States v. Raniere*, 55 F.4th 354, 362 (2d Cir. 2022). Courts have held that career benefits can be the thing of value. *Noble v. Weinstein*, 335 F. Supp. 3d 504, 521 (S.D.N.Y. 2018); *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019). In *Treminio*, a court in this Circuit held that an employee raped by a supervisor on a company business trip plausibly alleged a commercial sex act where the things of value were continued employment, relief from threats of negative job references, and career advancement, because the supervisor's "alleged plan to use a business opportunity to lure [the plaintiff] into a vulnerable position where he could sexually assault her raises a reasonable inference that the things of value were received on account of the sex act." 649 F. Supp. 3d at 1231; *see Treminio v. Crowley Mar. Corp.*, 707 F. Supp. 3d 1234, 1248–49 (M.D. Fla. 2023) (denying summary judgment). Likewise, in this District, a court sustained a § 1591(a)(1) claim against a supervisor where the thing of value was overtime he withheld after the employee refused his advances. *Perez v. Sec. Alliance, LLC*, No. 21-21713-CIV, 2021 U.S. Dist. LEXIS 248262, at *18–26 (S.D. Fla. Dec. 30, 2021).

The Amended Complaint alleged exactly that kind of exchange. Snorrason "expressly linked continued app development, Plaintiff's salary, title, influence within IBANERA, and her job security to Plaintiff engaging in sexual activity with him." Snorrason also told her "sleeping with the boss has its perks," and made clear that so long as she submitted, Ibanera would develop

her app and employ her at higher pay and status. [ECF No. 36 ¶¶ 163–65, 173]. The Omnibus Order focused on a different allegation—that Defendants "would have profited" from Plaintiff's work—and reasoned that, because Plaintiff was flown to Singapore for a conference, she "was not transported to Singapore to engage in commercial sex acts." [ECF No. 92 at 32 (discussing ECF No. 36 ¶ 212)]. But the Amended Complaint also alleged that Snorrason told Ibanera's Singapore team that he "brought Plaintiff to Singapore because she 'has nice tits,'" and later told Plaintiff, "I didn't bring you here to flirt with the fucking client. I want something no one else can have." [ECF No. 36 ¶¶ 85, 116]. Those allegations, which the Omnibus Order did not address, supported the inference that the business trip was the vehicle, not the purpose. And the plaintiff in *Treminio* likewise traveled for a legitimate company purpose. Courts have sustained § 1591 claims on facts that track this case. *See Doe v. Louis P. Bucky M.D. P.C.*, No. 2:23-cv-04059-PD, ECF No. 19, at 2, 9 (E.D. Pa. Apr. 23, 2024) (employer who paid for employee's conference trip, called it part of her job, and assaulted her in his hotel room plausibly "fraudulently coerced her to Miami"); *Doe v. Was*, No. 2:24-cv-05916-LMG-JRA, ECF No. 49, at 6, 9–10 (D.N.J. Aug. 4, 2026) (paying for plaintiff's trip abroad plausibly alleged enticement and a "commercial sex act"); *Doe v. Knight*, 624 F. Supp. 3d 857, 862–64 (E.D. Mich. 2022) (invitation to travel for career networking, followed by sexual assault, plausibly alleged a "commercial sex act"). A theory grounded in the statute's text, supported by specific allegations, and accepted by other federal courts—including in this District and this Circuit—is not one for which there was "absolutely no basis."

**2. Transportation is not an element, and the Amended Complaint alleged harboring, maintaining, obtaining, and enticement.**

Section 1591(a)(1) does not require transportation. It reaches whoever "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means

a person." 18 U.S.C. § 1591(a)(1); *accord* 22 U.S.C. § 7102(12) (defining "sex trafficking" as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act"). These are alternative means, and proof of one suffices. *United States v. Mozie*, 752 F.3d 1271, 1286 (11th Cir. 2014), *superseded by statute on other grounds as recognized in United States v. Whyte*, 928 F.3d 1317, 1329–31 (11th Cir. 2019). In *Mozie*, the Eleventh Circuit held that "the statute also applies to anyone who 'harbors'" a victim, and that evidence the victim stayed at the defendant's house "for five days and four nights" was "sufficient to convict." *Id.* at 1286.

The Omnibus Order quoted the statute's verbs [ECF No. 92 at 30–31], but the perpetrator test it then applied, drawn from an A.L.R. annotation, omits "harbors" and "maintains" [*id.* at 31], and its transportation rationale looked to the purpose of the trip rather than to what happened after Plaintiff arrived [*id.* at 32]. The Amended Complaint alleged, and the Court itself recounted, that after drugging Plaintiff and persuading hotel staff to leave her alone with him, Snorrason raped her, kept her in his hotel room "four more nights," and conditioned her app development, salary, title, and job security on continued sex. [*Id.* at 4–5; ECF No. 36 ¶¶ 123–73]. Those allegations describe conduct within "harbors," "maintains," "obtains," and "entices," whatever the purpose of her original travel. *See Noble*, 335 F. Supp. 3d at 517 (sustaining claim based on enticement through promises of a career opportunity). Counsel do not suggest the Court was required to accept that reading. But a reading that tracks the statute's text and binding circuit precedent is not the knowing or reckless pursuit of a frivolous claim.

The allegations against Parr, rest on his own words and acts. Parr told Plaintiff that Ibanera required her to travel to Singapore "to meet with SNORRASON," bought her ticket, and introduced her to Snorrason as "the sexiest . . . person . . . that I can send you for this trip"—a

remark Snorrason confirmed when he greeted her by saying **Parr "told me he was sending the sexiest employee to Singapore *for me*."** [ECF No. 36 ¶¶ 58–65, 72]. During the trip, Snorrason had Plaintiff pose for photographs with him because he needed to "send a good one over to [PARR]." [*Id.* ¶ 100]. When her room was unpaid on arrival, Parr told her to call Snorrason; and **after she escaped and went to the police, Parr messaged her that Snorrason "would like for you to come back to the hotel."** [*Id.* ¶¶ 70, 178–80]. Those allegations describe recruiting, enticing, and transporting a person within § 1591(a)(1). Together with the prior sexual-assault accusation against Snorrason that had been reported to Ibanera, the closely held company Parr co-owned and helped run [*id.* ¶¶ 28–29, 84], they supported the inference that Parr at least "acted in reckless disregard of the fact that force . . . would be used"—the mental state in the test the Court itself applied. [ECF No. 92 at 31]. That mental state is measured when the defendant acts: it "must develop . . . before the forced sex act has occurred, that is, typically when the defendant is recruiting, enticing, or transporting the victim," and it "does not require factual certainty about future events." *Moore v. Rubin*, 160 F.4th 271, 291–92 (2d Cir. 2025). In addressing the conspiracy count, the Court stated that Parr "is not alleged to have known about Snorrason's assaults upon Plaintiff until after they occurred." [ECF No. 92 at 36 (citing ECF No. 36 ¶ 180)]. Respectfully, the Amended Complaint did allege advance knowledge. It alleged that Parr knew Plaintiff was being sent to Snorrason [ECF No. 36 ¶ 61]; that **Parr and Snorrason acted "with the intent that Plaintiff engage in sexual activities with SNORRASON"** [*id.* ¶ 196]; and that Parr recruited and enticed Plaintiff "knowing the fact that the means of force, threats of force, and coercion would be used to cause Plaintiff to engage in a commercial sex act" [*id.* ¶ 220]. Knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). But the question now is whether

pleading the claim against Parr had any basis, and his own alleged words and acts, together with these allegations, supplied one.

Courts have sustained § 1591(a)(1) claims against exactly this kind of defendant. In *Lawson v. Rubin*, the perpetrator's assistant assaulted no one, but "knowingly recruited and solicited women in interstate commerce to travel to New York to meet with Rubin," bought their flights, and assured them Rubin would not make them uncomfortable. No. 17-cv-6404, 2018 U.S. Dist. LEXIS 71582, at *10, *12, *56 (E.D.N.Y. Apr. 29, 2018). The court dismissed the claim against a second recruiter because nothing showed she knew of the abuse, *id.* at *35–36, but sustained it against the assistant, who knew of the perpetrator's earlier violence, leaving her claimed belief in consent for summary judgment, *id.* at *56–58. Although a jury later found for the assistant, the claim was tried, not dismissed as baseless. Parr's alleged knowledge rests on comparable facts: his sexualized description of the employee he chose to send, and a prior assault accusation, reported to the company, against the co-owner he sent her to. [ECF No. 36 ¶¶ 65, 72, 84]. Similarly, in *Acevedo v. eXp Realty, LLC*, a recruiter who urged the plaintiff to attend a company event as another agent's guest and to stay in that agent's hotel room, where she was drugged and assaulted, plausibly "enticed" her under § 1591(a)(1); the statute "does not require that the perpetrator commit the sex act himself." 713 F. Supp. 3d 740, 767, 771 (C.D. Cal. 2024).

**3. The Amended Complaint alleged specific facts tying each Ibanera Defendant to the venture.**

Section 1595(a) reaches "whoever knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in" a TVPRA violation. "Participation in a venture" in § 1595 carries its ordinary meaning and is not limited by § 1591(e)(4)'s narrower criminal definition. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724–25 (11th Cir. 2021). In March 2026, while the motion to dismiss was pending, the Eleventh Circuit

set out to "clarify what is required for a civil beneficiary claim," observed that "nothing in the plain language of § 1595(a) requires that the 'venture' be a 'sex trafficking venture,'" held that the "something more" participation requires "is a fact-specific inquiry" that may consist of "personalized support," and held that the knowledge element "requires constructive or actual knowledge that the undertaking or enterprise violated the TVPRA, nothing more." *A.G.*, 171 F.4th at 1262, 1269–70. *A.G.* was decided thirteen days after Plaintiff filed her opposition [ECF No. 70], and the Omnibus Order did not discuss it. The Omnibus Order instead recited § 1591(e)(4)'s criminal definition [ECF No. 92 at 30] and applied out-of-circuit district court formulations—one decided after the Amended Complaint was filed—under which knowledge and benefit turned on the existence of a "sex-trafficking venture." [*Id.* at 33–35 (citing *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 405 (S.D.N.Y. 2023), and *Doe v. Bank of Am., N.A.*, 2026 WL 380385, at *10 (S.D.N.Y. Feb. 11, 2026))].

Measured against the Eleventh Circuit's standard, the Amended Complaint alleged specific facts as to each Ibanera Defendant. As to Parr: the facts set out in Part IV.B.2 above. As to Carbonara: he knew she was being sent to Snorrason, Snorrason said Carbonara and Parr had agreed she would "get whatever she wanted" as his "girlfriend," and after learning of the rape Carbonara isolated her and allowed Snorrason "to continue operating unchecked." [ECF No. 36 ¶¶ 61, 171, 182–91, 196]. As to Ibanera: a prior sexual-assault accusation against Snorrason by another employee sent on company travel "had been previously reported to IBANERA," Snorrason, who committed the assaults, was himself one of Ibanera's owners, and Ibanera stood to benefit from Plaintiff's work and her app, "which was explicitly tied to Plaintiff's continued sexual compliance." [ECF No. 36 ¶¶ 26–29, 84, 166–67]; *cf. Harris v. Henry*, No. 1:22-cv-00366-LY, 2022 U.S. Dist. LEXIS 203047, at *17 (W.D. Tex. Nov. 7, 2022) (R. & R.)

(company owned and operated by the alleged perpetrator "had constructive knowledge of the sexual assault"), *adopted*, 2023 U.S. Dist. LEXIS 71313 (W.D. Tex. Jan. 11, 2023). Selecting Plaintiff for Snorrason with that remark, routing her to him on arrival, and urging her back to him after she went to the police is the kind of "personalized support" *A.G.* describes.

*Treminio* confirms these were not idle theories. There, allegations of the supervisor's sexual assaults "permit[ted] the reasonable inference" that the employer "knew that [he] had committed sex acts using some level of force," and the court declined "to find that the TVPRA precludes vicarious liability." 649 F. Supp. 3d at 1231–32. The court later denied summary judgment, holding that the employer's ordinary business could be the "venture" and that whether the supervisor "used the mutual business venture he engaged in with [the employer] to his advantage . . . is a question for a jury." *Treminio*, 707 F. Supp. 3d at 1248–49, 1252; *accord Doe #1 v. Crowley Mar. Corp.*, No. 3:23-cv-383-MMH-JBT, 2024 U.S. Dist. LEXIS 57338, at *30–31 (M.D. Fla. Mar. 29, 2024).

Courts have also sustained beneficiary claims against both a company and its chief executive on comparable allegations. In *Acevedo*, the court denied the motions of a real-estate company and its founder and CEO to dismiss § 1595 claims arising from the drugging and sexual assault of agents by the company's top recruiters at company events, rejecting the argument that the plaintiffs sought to "transform" workplace sexual assault into sex trafficking. 713 F. Supp. 3d at 765–66, 776–83. The court held that the lack of any allegation that the CEO knew of the misconduct before the plaintiffs were assaulted was "irrelevant": "[t]he issue is when he received the benefit," and he was alleged to keep benefiting. *Id.* at 782. So too Carbonara, a co-owner of the company that stood to gain from Plaintiff's work and app, who learned of the rape, isolated Plaintiff, and allowed Snorrason "to continue operating unchecked." [ECF No. 36 ¶¶ 26–29,

166–67, 182–91, 196]. In *Doe #1*, a court in this Circuit likewise held that an earlier rape report about the same supervisor on a similar business trip supplied the employer's knowledge, and that its decision to keep employing him and cover up his conduct to protect its reputation and business relationships plausibly alleged participation in a venture. 2024 U.S. Dist. LEXIS 57338, at *21–22, *30–31.

#### 4. The conspiracy count invoked a new provision whose key term Congress left undefined.

Count III, asserted against Parr alone among the Ibanera Defendants, alleged conspiracy under 18 U.S.C. § 1594, which reaches "[w]hoever conspires with another to violate section 1591," and invoked § 1595, whose "attempts or conspires to benefit" language was added only by the Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347, § 102, 136 Stat. 6199, 6200 (2023). [ECF No. 36 ¶¶ 231–35]. As the Court noted, "[t]he statute does not define 'conspires.'" [ECF No. 92 at 35]. Pleading a conspiracy claim whose operative term Congress left undefined, on specific factual allegations [ECF No. 36 ¶¶ 65, 72, 171, 179–80], is not bad faith.

#### 5. The governing standards were unsettled, and discovery never tested the claims.

When the courts of appeals are still defining a statute's elements during the life of a case, pleading under that statute is not the knowing or reckless pursuit of a frivolous claim. *See Cordoba*, 419 F.3d at 1185–86 (theory the court held legally unviable was not frivolous where its own prior opinions contained language supporting it). In *A.G.*, the Eleventh Circuit vacated three summary judgments entered against trafficking victims, described *Red Roof*'s formulation of the knowledge element as "non-binding dicta," and acknowledged that its own "something more" standard "is not very illuminating guidance." 171 F.4th at 1262, 1269–70. A court in this Circuit

has since applied *A.G.*, recognizing that it "modif[ied] *Red Roof*'s formulation of the 'knowledge' element." *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 6:26-cv-57, 2026 U.S. Dist. LEXIS 126657, at *4–6 (M.D. Fla. June 8, 2026). At most, if Counsel misjudged how far these authorities extend, that is a failure to meet the standard of a reasonable attorney, which "will not warrant sanctions." *Amlong*, 500 F.3d at 1242.

Nor did anything "become[] apparent" that required abandoning the claims. *Norelus*, 628 F.3d at 1287 (quoting *Avirgan*, 932 F.2d at 1582). Discovery was stayed at Defendants' request, and the claims were resolved on the pleadings. [ECF Nos. 52, 54, 63; ECF No. 92 at 38]. In rejecting fees on the Title VII and FCRA claims, the Court recognized that the stay kept from Plaintiff documents bearing on her claims and that her "refusal to take Defendants' 'word for it' was not unreasonable." [ECF No. 97 at 7–8]. The same is true here: what Ibanera knew about the prior accusation against Snorrason [ECF No. 36 ¶ 84] was in Defendants' possession. And because every underlying event occurred in Singapore [ECF No. 92 at 25–29], Counsel's pre-suit investigation necessarily depended on the client's account and her contemporaneous records.

**C. Claims That Received Careful Consideration Are Not "Baseless."**

The Order quotes the controlling principle: a claim "should not be considered groundless or without foundation . . . when the claims are meritorious enough to receive careful attention and review." [ECF No. 97 at 6 (quoting *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1559 (11th Cir. 1995))]. "Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation.'" [*Id.* (quoting *Hughes v. Rowe*, 449 U.S. 5, 15–16 (1980))]. The TVPRA counts received exactly that treatment. The Court first dismissed them on forum non conveniens, a ground that "den[ies] audience to a case on the merits" and "does not entail any assumption by the court of substantive

'law-declaring power.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432–33 (2007) (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999)). It then analyzed the pleadings in the alternative over seven pages. [ECF No. 92 at 29–36].

Section 1927's bad-faith standard is more demanding than *Christiansburg*'s, so a claim that is not groundless under *Hughes* and *Walker* cannot have been knowingly or recklessly pursued as frivolous. *See Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1259, 1266 (11th Cir. 2007) (affirming denial of § 1927 sanctions although claims had been held "little more than frivolous"); *Harris*, 2022 U.S. Dist. LEXIS 203047, at *25–26 (denying sanctions, even under Rule 11's objective standard, for dismissed § 1591 claims against the defendant who paid for the trip, because they were "not so obviously foreclosed by precedent as to make them legally indefensible"); *Jones v. Combs*, 759 F. Supp. 3d 534, 542 (S.D.N.Y. 2024) (denying § 1927 sanctions for TVPA claims that "may have ultimately failed regardless" but "were not so thoroughly without a basis that the Court can infer bad faith from their assertion alone"). *Norelus* marks the line. There, sanctions rested on post-filing conduct, and the court was explicit that "[t]he issue is not whether bringing the action in the first place was sanctionable." 628 F.3d at 1291. Here the Order targets the bringing of the claims themselves. And even where its elements are met, § 1927 is permissive: an attorney "may be required" to pay. 28 U.S.C. § 1927. The Court itself recognized that Plaintiff's allegations were disturbing. [ECF No. 92 at 32]. It should exercise its discretion not to sanction counsel for seeking every avenue of relief for them.

**D. No Sanction Should Issue Against Anyone.**

For the reasons above, no sanction should issue against any attorney or DSLG. Section 1927 is personal: it reaches an "attorney . . . who so multiplies the proceedings," who "may be required by the court to satisfy personally" the resulting costs. 28 U.S.C. § 1927. It therefore

turns on each attorney's own conduct. Mr. Barroukh, who had primary responsibility for the matter and drafted and filed the pleadings [ECF Nos. 1, 36, 70; Ex. A ¶ 2], pleaded claims that rested on the statute's text, specific allegations, and supporting authority, and nothing he filed multiplied the proceedings. See Parts IV.A–C, *supra*.

As set out in Part II.C, Mr. Smith never filed a notice of appearance or any other paper in this case and has no record of authorizing his signature on either pleading. [Ex. A ¶¶ 3–5]. In candor, Mr. Smith received an early draft complaint before suit, shared research on hotel liability under the TVPRA and communicated with him about whether and when to amend [*id.* ¶¶ 2, 4]. But none of that is conduct by which an attorney "knowingly or recklessly pursue[s] a frivolous claim." *Amlong*, 500 F.3d at 1242. Nor does § 1927 supply a basis to sanction DSLG as a firm; the statute reaches an "attorney or other person admitted to conduct cases," who pays "personally." 28 U.S.C. § 1927.

## V. REQUEST FOR HEARING

Counsel respectfully request that, before any sanction issues, the Court (1) hold the hearing to which "an attorney threatened with sanctions under § 1927 is entitled," [ECF No. 97 at 9 (quoting *Amlong*, 500 F.3d at 1242)]; *see Reynolds v. Roberts*, 207 F.3d 1288, 1302 (11th Cir. 2000); (2) identify the specific post-filing conduct, if any, it considers sanctionable and the attorney to whom it is attributed, *see United States v. Shaygan*, 652 F.3d 1297, 1317–18 (11th Cir. 2011) (attorney must receive "fair notice that his conduct may warrant sanctions and the reasons why"); and (3) require Carbonara and Parr to file contemporaneous billing records identifying any fee they contend was incurred solely because of that conduct.

If the Court is inclined to make findings about what Counsel knew, investigated, or believed when the TVPRA counts were pleaded, Counsel expressly request an evidentiary

hearing. The failure to hold one is an abuse of discretion "where an evidentiary hearing was requested, where there were disputes of fact, and where the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303–04 (11th Cir. 1988); *see Thompson v. Pharmacy Corp. of Am., Inc.*, 334 F.3d 1242, 1245–46 (11th Cir. 2003). Each element is present. The finding that there was "absolutely no basis" for the counts [ECF No. 97 at 9] concerns the pre-suit investigation, the client's account and records, and the research underlying the counts. None of that is in the record because discovery was stayed at Defendants' request and no Rule 11 motion was ever served. A determination of bad faith is "particularly sensitive to demeanor and other intangible cues often not reflected in a transcript." *Amlong*, 500 F.3d at 1250. Mr. Barroukh, who had primary responsibility for the matter and conducted the pre-suit investigation, is the principal witness with knowledge of it. [Ex. A ¶ 2]. Because that evidence necessarily touches privileged communications with a pseudonymous sexual-assault plaintiff, Counsel request leave to file it under seal.

## VI. CONCLUSION

Counsel respectfully request that the Court discharge the Order to Show Cause [ECF No. 97] and decline to impose sanctions. In the alternative, Counsel request that the Court afford the process requested in Section V before imposing any sanction, impose no sanction on DSLG or Mr. Smith, and limit any award to fees that Carbonara and Parr prove were incurred solely because of post-filing conduct that multiplied these proceedings.[2]

Dated: October 6, 2026

[2] The undersigned, Caroline H. Miller, had no role in drafting, reviewing, or filing the Complaint, the First Amended Complaint, or the opposition to the motion to dismiss, and did not participate in this matter until she appeared on May 4, 2026, after Mr. Barroukh's departure from DSLG. [ECF No. 84].

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC
Counsel for Plaintiff

*/s/ Caroline H. Miller*
Caroline H. Miller, Esq.
Florida Bar No. 1012331
1628 Pine Street
Philadelphia, Pennsylvania 19103
Tel: (215) 391-4790
Fax: (215) 893-5288
Email: caroline@dereksmithlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will send a notice of electronic filing to all counsel of record, including counsel on the Service List below and counsel for Daniel J. Barroukh, Esq., who has appeared as an interested party.

*/s/ Caroline H. Miller*
Caroline H. Miller, Esq.

## SERVICE LIST

GRAYROBINSON, P.A.
Scott J. Topolski, Florida Bar No. 0006394
One Boca Place, 2255 Glades Road, Suite 301E
Boca Raton, Florida 33431
Tel: (561) 368-3808
Email: scott.topolski@gray-robinson.com
*Co-Counsel for Defendants Ibanera LLC, Michael Carbonara, and David Parr*

COGENT LAW GROUP, LLP
Evan R. Smith (admitted pro hac vice)
2001 L St. NW, Suite 500
Washington, DC 20036
Tel: (202) 644-8880
Email: esmith@cogentlaw.com
*Co-Counsel for Defendants Ibanera LLC, Michael Carbonara, and David Parr*

CARLTON FIELDS, P.A.
Naomi M. Berry, Florida Bar No. 69916
Aaron S. Weiss, Florida Bar No. 48813
2 Miami Central, 700 NW 1st Avenue, Suite 1200
Miami, Florida 33136-4118
Tel: (305) 530-0050
Email: nberry@carltonfields.com; aweiss@carltonfields.com
*Counsel for Defendant Bjorn Snorrason*

DLA PIPER LLP (US)
Virginia Regis Callahan, Florida Bar No. 1058943
3111 W. Dr. Martin Luther King Jr. Blvd., Suite 200, Tampa, Florida 33607

Ellen Dew, 650 South Exeter Street, Suite 1100, Baltimore, MD 21202
Email: Virginia.Callahan@us.dlapiper.com; Ellen.Dew@us.dlapiper.com
*Counsel for Marriott International, Inc., Starwood Hotels & Resorts Management Company, LLC, and Starwood Hotels & Resorts Worldwide, LLC*

MLE LAW
Michael Lewis Elkins, Esq., Florida Bar No. 523781
1212 NE 16th Terrace
Fort Lauderdale, Florida 33304
Tel : (954) 401-2608
Email: melkins@mlelawfirm.com; elkinslaw@yahoo.com
Counsel for Non-Party Daniel J. Barroukh, Esq.

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-cv-24118-LEIBOWITZ/AUGUSTIN-BIRCH

**DECLARATION OF DEREK T. SMITH, ESQ.**

I, Derek T. Smith, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the founding and managing partner of Derek Smith Law Group, PLLC ("DSLG"), counsel for Plaintiff Jane Doe. I am admitted to practice in Florida. I have personal knowledge of the facts stated here.

2. Daniel J. Barroukh, Esq., then an attorney with DSLG, had primary responsibility for this matter. He conducted the pre-suit investigation, drafted the Complaint [ECF No. 1], the First Amended Complaint [ECF No. 36], and Plaintiff's opposition to the Ibanera Defendants' motion to dismiss [ECF No. 70], and filed each of them. I did not draft the Complaint or the First Amended Complaint. On October 28, 2024, before suit, Mr. Barroukh sent me an early draft complaint, and on November 12, 2024, I sent him legal research on hotel liability under the TVPRA. While the case was pending, I also sent Mr. Barroukh draft materials. On January 21, 2026, I sent him a draft opposition to the Ibanera Defendants' summary-judgment motion [ECF No. 32], with related drafts; that motion was stricken, Plaintiff amended her complaint, and none of those drafts was filed. On March 3, 2026, I sent him a draft declaration addressing personal jurisdiction over the Hotel Defendants.

3. On September 8, 2025, Mr. Barroukh emailed me the final draft of the Complaint and asked whether he had my "green light to file, and if you would like me to include your name on the filing." I have no record of answering that email, and I do not recall authorizing Mr.

Barroukh to include my name or signature on the Complaint. The Complaint was filed the next day bearing the electronic signatures "/s/ Derek T. Smith" and "/s/ Daniel J. Barroukh."

4. I do not recall authorizing my name or signature on the First Amended Complaint, and I have no record of doing so. Before it was filed, Mr. Barroukh and I communicated by email about whether and when to amend. The First Amended Complaint was filed on February 2, 2026 bearing the electronic signatures "/s/ Derek T. Smith" and "/s/ Daniel J. Barroukh," and Mr. Barroukh alone signed its certificate of service.

5. Plaintiff's opposition to the Ibanera Defendants' motion to dismiss [ECF No. 70] bears only Mr. Barroukh's signature. I never filed a notice of appearance or any other paper in this case. The Complaint and the First Amended Complaint were filed through Mr. Barroukh's CM/ECF account.

6. Mr. Barroukh left DSLG on or about May 1, 2026. DSLG does not represent him in this proceeding; he is represented by separate counsel.

7. Despite the above, I believe the TVPRA claims had a sound basis in law and fact and that Mr. Barroukh had adequately set forth sound claims against the Defendants under the TVPRA. DSLG has litigated TVPRA claims arising from sexual assaults tied to employment or career opportunities in other federal courts, and in each of the following cases, all decided before this action was filed, the court denied a motion to dismiss a TVPRA claim: *Doe v. TRX Insurance Services, Inc.*, No. 2:20-cv-04095, ECF No. 16 (E.D. Pa. Apr. 20, 2021) (employer-owner who took the plaintiff on work trips and conditioned her employment on sex); *Perez v. Sec. Alliance, LLC*, No. 21-21713-CIV, 2021 U.S. Dist. LEXIS 248262, at *18–26 (S.D. Fla. Dec. 30, 2021) (sustaining § 1591(a)(1) claim against supervisor who sexually assaulted the plaintiff and tied her overtime to sex; the beneficiary claim against the employer was dismissed);

*Doe v. Knight*, 624 F. Supp. 3d 857, 862–64 (E.D. Mich. 2022) (defendant who invited the plaintiff to travel for career networking and then sexually assaulted her); and *Doe v. Louis P. Bucky M.D. P.C.*, No. 2:23-cv-04059, ECF No. 19 (E.D. Pa. Apr. 23, 2024) (employer who sent the plaintiff to a conference as part of her job and assaulted her there). With great respect, I submit that Plaintiff's TVPRA claims were sound and even meritorious. I respect the Court's ruling. I ask only that the Court recognize that reasonable attorneys, reading the statute and the decisions available when these claims were pleaded, could have reached the conclusion Counsel did.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 6, 2026.

*/s/ Derek T. Smith*
Derek T. Smith, Esq.